UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No. 05-40026-FDS |
| | ) | |
| MUHAMED MUBAYYID, and | ) | |
| EMADEDDIN Z. MUNTASSER, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANTS'
MOTION FOR BILL OF PARTICULARS**

The United States, by and through Michael J. Sullivan, and B. Stephanie Siegmann and Aloke Chakravarty, Assistant United States Attorneys for the District of Massachusetts, hereby opposes the defendants' Motion for a Bill of Particulars on the grounds that the indictment is sufficiently specific to inform the defendants of the nature of the alleged offenses for which they are charged. Furthermore, as discussed in detail below, the defendants' motion is simply being used as an illegitimate discovery tool designed to obtain a preview of the government's trial evidence and legal theories. This Court should deny the defendants' motion for three reasons.

First, the defendant's motion is akin to a request for written interrogatories permissible in civil litigation. The motion consists of 33 numbered requests, one of which contains ten separate subparts. Federal courts have repeatedly held that motions for bill of particulars are not discovery tools and this

1

motion should be denied solely on that basis.

Second, as described in detail below, the Indictment is not impermissibly vague but rather sets forth the charges against the defendants with sufficient precision to enable the defendants to prepare their defense and avoid unfair surprise at trial.  To the extent that the defendants required any clarification of the indictment, the extensive pre-trial discovery obviated that need. See United States v. Chen, 378 F.3d 151, 163 (2d Cir. 2004) ("'a bill of particulars is not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other means.'"); United States v. Torres, 901 F. 2d 205, 233-34 (2d Cir. 1990) (upholding district court's denial of bill of particulars where "a wealth of evidentiary detail from discovery to date, including electronic intercepts, search evidence and exhaustive supporting affidavits" was supplied).  After the indictment against the defendants was returned, the government produced two affidavits further detailing the defendants' criminal activities and produced thousands of pages of materials referenced in, or relevant to, the allegations contained in the indictment.

Third, the defendants failed to comply with Fed. R. Crim. P. 7(f), which requires motions for bill for particulars to be filed within 10 days after arraignment unless the defendants obtain the court's permission to file such a motion.  The defendants failed

to obtain the court's permission to file this motion as required
by the rule.

## FACTUAL BACKGROUND

In May 2005, the grand jury returned an indictment against
the defendants charging both of them with committing two criminal
violations: (1) engaging in a scheme to conceal materials facts
from the Internal Revenue Service ("IRS"), the Federal Bureau of
Investigation ("FBI"), and the Immigration and Naturalization
Service, now part of the Department of Homeland Security,
("INS/DHS") in violation of 18 U.S.C. §1001(a)(1) and §2 (count
one); and (2) conspiracy "to defraud the United States for the
purpose of impeding, impairing, interfering, obstructing and
defeating through deceit, craft, trickery and dishonest means the
lawful functions of the IRS in the ascertainment, assessment, and
determination of whether Care International, Inc., qualified and
should be designated as a §501(c)(3) organization in 1993 and
should continue to be accorded status as §501(c)(3) organization
thereafter" in violation of 18 U.S.C. §371 (count two).
Defendant Mubayyid is separately charged in counts three-five
with filing fax tax returns for Care International, Inc. ("Care")
between November 4, 2000-June 7, 2002 in violation of 26 U.S.C. §
7206(1).  Defendant Muntasser is also separately charged with
making a false statement on April 7, 2003 to the FBI when he
falsely denied having traveled to Afghanistan in or about 1994 in

3

violation of 18 U.S.C. §1001(a)(2).

The Indictment is very specific and detailed, spanning 18 pages.  The Indictment contains an introductory section, which is incorporated into each count.  This section clearly puts the defendants on notice of the factual basis for the charges.  It describes how defendant Muntasser incorporated Care, after the New York office of Al-Kifah Refugee Center (the Boston branch office of which Muntasser was involved in operating) was linked in media reports to the 1993 World Trade Center bombing. Indictment at ¶¶3-4.  This section further describes how Care continued the activities of Al-Kifah (Boston) despite the change of name: "Care was located at Al-Kifah's Boston office, and assumed publication of Al-Kifah's pro-jihad newsletter, Al-Hussam."  Indictment at ¶5.

In addition to the Indictment, a 60 page search warrant affidavit and a 20 page affidavit in support of criminal complaint against Defendant Muntasser, both of which were produced in discovery in August 2005, provide additional factual support for the indictment's allegations regarding the connections between Al-Kifah and Care.  The 60 page search warrant affidavit filed to obtain the search warrant to search Care's storage unit located at Unit 5033, 160 Otis Street, Northboro, Massachusetts in April 2003, also describes a solicitation of Al-Kifah signed by Muntasser (under his alias

4

"Abu Abdulrahman") for donations for the mujahideen.  Copies of
the documents referenced in the search warrant affidavit were
also produced in discovery to the defendants.  The complaint
affidavit describes Muntasser's control over Al-Kifah's bank
accounts and wire transfers he authorized on behalf of Al-Kifah.
The government has produced all documents that support these
allegations to the defendants.

The introductory section of the Indictment further details
what information defendant Muntasser and later defendant
Mubayyid, who became Care's treasurer in 1997, concealed from the
IRS, FBI, INS/DHS.  After incorporating Care, Muntasser filed a
IRS Form 1023, the Application for Recognition of Exemption Under
Section 501(c)(3) of the Internal Revenue Code ("1023
Application"), which he signed under the penalty of perjury,
which contained false information.  Nowhere in that 1023
application did Muntasser disclose that Care would be soliciting
contributions for, and distributing publications to promote,
jihad and mujahideen.

The Indictment specifically references examples of these
solicitations for contributions for jihad and the mujahideen,
including Care's "Zakat Calculation Guides" and website
solicitations.  Copies of these "Zakat Calculation Guides,"
printouts and electronic copies of Care's website in 1998-2001,
and checks received by Care in response to their solicitations

5

for contributions for the mujahideen have been produced in discovery.  These solicitations are further described in the search warrant affidavit and complaint affidavit.  The complaint affidavit also describes examples of checks received by Care and Al-Kifah, in response to their solicitations, from donors directed to support jihad and the mujahideen.

The Indictment specifically references examples of these pro-jihad publications, including Al-Hussam and a book entitled "Join the Caravan."  Copies of these publications have been produced in discovery to the defendants.

In addition to failing to disclose certain activities of Care to the IRS, the introductory section of the Indictment also alleges that Muntasser lied on the 1023 application when he answered "no" to the question whether Care "was an outgrowth of (or successor to) another organization, or does it have a special relationship with another organization by reason of interlocking directorates or other factors?"  As described above, the defense has been provided three separate documents, a specific and detailed indictment, and two affidavits, that provide an extraordinary amount of factual details demonstrating the falsity of this statement.

The introductory section of the Indictment further alleges that Care's subsequent tax filings between 1993-2003, consisting of annual Form 990 tax returns, many of which were filed by the

defendants, concealed its "activities involving the solicitations and expenditure of funds to support and promote the mujahideen and jihad, including the distribution of pro-jihad publications."[1] All of these tax filings have been produced to the defendants. The search warrant affidavit discusses in detail the tax returns signed by Mubayyid.

The introductory section of the Indictment also clearly articulates the materiality of the information the defendants concealed from the IRS: had Muntasser and/or Mubayyid provided truthful information on Care's tax filings (the 1023 application and 990 tax returns), the IRS would not have granted Care its tax exempt status in April 1993 or continued to be accorded tax exempt status until 2003. Indictment at ¶¶14-15. The introductory section of the Indictment concludes with a description of statements made by the defendants to the FBI and INS/DHS. Indictment at ¶¶16-21.

---

[1]The government does not allege in the Indictment nor has it ever alleged in any public hearings or any pleading that such activities were illegal. The defendants have not been charged with providing material support to terrorists or terrorist organizations in violation of 18 U.S.C. §2339B. On the contrary, the defendants are charged with failing to disclose, and concealing, activities of Care that both defendants were aware of, directed, participated or acquiesced in, as a result of their positions at Care. Muntasser served as Care's president from 1993-1996 and Mubayyid served as Care's treasurer from 1997-2003.

**DEFENDANTS' PRIOR DISCOVERY REQUESTS AND MOTION FOR BILL OF PARTICULARS**

This is not the first time that the defendants have made discovery requests in the form of civil interrogatories. The defendants' first joint discovery request, dated October 28, 2005, contained twenty numbered questions about the indictment. The government objected to these requests on grounds that there is no provision for the propounding of interrogatories as part of criminal discovery under the Federal Rules of Criminal Procedure.

On June 16, 2006, the defendants filed their Motion for a Bill of Particulars, consisting of 33 separate numbered requests, requesting, among other things: (1) the identity of every member, employee, associate or agent of Care between 1990 and 2003 who performed any of the acts or omissions alleged in the Indictment; (2) the who, what, when, where, and how of all Care's activities involving the solicitation or expenditure of funds to support and promote the mujahideen and jihad; (3) all information about Care's distribution of pro-jihad publications, including the number of copies distributed, where the publications were distributed, by whom the publications were distributed, to whom the publications were distributed, and by what means the publications were distributed; (4) the identity of each person who is alleged to have filed Care's Form 990 tax returns[2]; (5)

---

[2]In August 2005, the government produced to the defendants all of Care's tax filings, including all of Care's 990 tax

the when, where, and by what means Muntasser became a member of Al-Kifah; (6) the time, place, manner and means by which each defendant joined the conspiracy; (7) the time, place, manner and means by which each unindicted co-conspirator joined the conspiracy; (8) any overt act committed by any unindicted co-conspirator; (9) any overt act committed by either defendant; and (10) the exact time and date each of the acts or omissions alleged in the indictment occurred.

As described below, courts have frowned upon detailed discovery requests disguised as motions for bills of particulars, such as those made by the defendants in this case.  The defendants' motion is tantamount to a request for wholesale discovery of the government's evidence, which is not the proper purpose of a bill of particulars under Fed. R. Crim. P. 7(f).

## ARGUMENT

It is well settled that a motion for a bill of particulars is not a means of obtaining additional discovery.  In recognizing that such motions are rarely employed in modern federal practice, the First Circuit Court of Appeals has instructed that motions for bill of particulars should only be granted "if the accused, in the absence of a more detailed specification, will be disabled from preparing a defense, caught by unfair surprise at trial, or

returns.  The defendants can easily determine the identity of the person who filed each of tax returns by simply looking at these documents.

hampered in seeking the shelter of the Double Jeopardy Clause."
United States v. Sepulveda, 15 F.3d 1161, 1192 (1st Cir. 1993).
A bill of particulars is not an investigate tool to be used for
the "[a]cquisition of evidentiary detail." Torres, 901 F.2d at
234 (citations omitted). Nor is it appropriate to use a bill of
particulars "as a device [(1)] to compel disclosure of the
government's evidence or its legal theory prior to trial or [(2)]
to foreclose the government from using proof it may develop as
the trial approaches." United States v. Jimenez, 824 F. Supp.
351, 363 (S.D.N.Y. 1993); see United States v. Glecier, 923 F.2d
496, 502 (7th Cir. 1991) (defendants not entitled through bill of
particulars to obtain details of how government will prove
offense); United States v. Mitlof, 165 F. Supp. 2d 558, 569
(S.D.N.Y. 2001) ("The Government may not be compelled to provide
a bill of particulars disclosing the manner in which it will
attempt to prove the charges, the precise manner in which the
defendant committed the crime charged, or a preview of the
Government's evidence or legal theories."). As a result, courts
have routinely denied detailed discovery requests like those at
issue here. See, e.g., United States v. Armocida, 515 F.2d 49,
54 (3d Cir. 1975) (defendant's "request for the 'when, where and
how' of any overt acts not alleged in the indictment was
tantamount to a request for 'wholesale discovery of the
Government's evidence,' which is not the purpose of a bill of

10

particulars"); <u>United States v. Coffey</u>, 361 F. Supp. 2d 102, 121 (E.D.N.Y. 2005) (upholding denial of motion for bill of particulars in multi-defendant extortion conspiracy case where it comprised "twenty-two different categories of information, and which would require the Government to define and explain virtually every term and phrase used in the indictment").

The government is not required to provide a bill of particulars where an indictment is sufficiently specific and not impermissibly vague. <u>United States v. Hallock</u>, 941 F.2d 36, 40-41 (1st Cir. 1991). "[A]n indictment is sufficiently particular if it elucidates the elements of the crime, enlightens a defendant as to the nature of the charge against which she must defend, and enables her to plead double jeopardy in bar of future prosecutions for the same offense." <u>Sepulveda</u>, 15 F.3d at 1192. The indictment in this case easily meets this standard.

The Indictment and the thousands of pages of materials produced by the government in discovery is sufficient to inform the defendants of the charges against them. In addition to setting forth the essential elements of the crimes, the six count Indictment spanning 18 pages contains details about the nature of the charges, well exceeding what is required under applicable law. For instance, the eight-page introductory section, as described above, which is incorporated into each count, provides specific information about the background of the charges

including:

   (a)  a description of Care and its predecessor, Al-Kifah
        Refugee Center;

   (b)  an explanation of the context in which Care was
        established;

   (c)  a description of the each defendants' relationship to
        Care;

   (d)  a description of Care's tax filings to obtain, and
        maintain its, tax exempt status as a charitable
        organization under 26 U.S.C. §501(c)(3);

   (e)  the information, the government alleges, the defendants
        chose to conceal from the IRS about Care's activities
        in order to obtain and maintain its tax exempt status;
        and

   (f)  a description of the materiality of the information the
        defendants chose to conceal from the IRS and the tax
        liability that resulted from the defendants actions.

Similarly, the conspiracy count, pled in five pages,

provides ample detail about the conspiracy and meets the pleading

requirements for violations of 18 U.S.C. §371.  "[A] conspiracy

charge under §371 is sufficient as long as it (1) charges that

there was an agreement, (2) describes the unlawful acts toward

which the agreement was directed, and (3) charges that the

defendants committed an overt act in furtherance of the

agreement."  United States v. Tarvers, 833 F.3d 1068, 1075 (1st

Cir. 1987) (citation omitted).  The Indictment sets forth in

detail the object, manner and means of the conspiracy charged in

count two.  Although the government is only required to plead one

overt act, the indictment provides notice to the defendants of 13

12

separate overt acts.

The government cannot be required to particularize each and every evidentiary detail sought by the defendants. The defendants' motion is simply not a legitimate motion for a bill of particulars but rather a request for discovery of evidentiary details to which he is not entitled. The vast majority of the defendants' request seek information that courts have held to be outside the function of a bill of particulars.

Specifically, as described above, the defendants, among other things, seek the disclosure of: precise dates and locations as to when the defendants joined the conspiracy; precise dates and locations as to when the unindicted co-conspirators joined the conspiracy; precise dates, locations, and details regarding the activities of the conspirators; and details about each and every overt act committed by the defendants or any unindicted co-conspirator. The defendants are not entitled to obtain such extensive discovery through a motion for a bill of particulars. See United States v. Hallock, 941 F.2d 36, 40-41 (1st Cir. 1991) (absence of statement of precise dates and locations of overt acts does not mean that indictment is impermissibly vague requiring government to provide bill of particulars); Tarvers, 833 F.2d at 1075-76 (no bill of particulars warranted where seven page indictment adequately alleged conspiracy to defraud United States by impeding actions of IRS but failed to state years

13

defendants allegedly impeded IRS and omitted name of specific person or entity whose tax liability defendants endeavored to conceal); United States v. Paiva, 892 F.2d 148, 153-54 (1st Cir. 1989) (upholding denial of motion for bill of particulars for, among other things, information regarding all members of a conspiracy to defraud United States by interfering with tax collection and dates, time, and places of any particular acts of the conspiracy in which defendant allegedly participated); see also United States v. Gambino, 809 F. Supp. 1061, 1071 (S.D.N.Y. 1992) (courts have repeatedly denied requests for the "when" and "whereas" and "with whoms" concerning the formation of schemes and conspiracies); United States v. Matos-Peralta, 691 F. Supp. 780, 791 (S.D.N.Y. 1988) ("since the government is not required to prove exactly when or how a conspiracy was formed or when or how a particular defendant joined a scheme, and as the circumstantial proof on which the government usually relies to prove the existence of a scheme often does not reveal such details, the courts have consistently rejected demands for particulars as to the formation of a conspiracy or the entry into the conspiracy of a particular defendant or confederate.").

While a bill of particulars may be useful to a defendant, the thrust of the inquiry must focus on whether the information is truly necessary because a bill of particulars limits the government's proof at trial and restricts the government's

14

ability to present its case.  See United States v. Feola, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987) ("Because a bill of particulars confines the Government's proof to particulars furnished, requests for a bill of particulars should not be granted where the consequences would be to restrict unduly the Government's ability to present its case.") (citations omitted).  In this case, the answer to this inquiry is clear.  The defendants have been provided exhaustive details about the criminal violations alleged in the indictment.  In addition to the indictment, the government has produced to the defendants two lengthy affidavits, one for a search warrant and the other for a criminal complaint against Muntasser, of two FBI agents that investigated the activities of the defendants and Care; hundreds of pages of reports of witness interviews; grand jury testimony of numerous potential witnesses; reports of the interviews of the defendants by FBI and INS/DHS; documents and computer media obtained from the search of Care's storage unit (produced in same order as they were kept); bank records of the defendants; copies of the publications and solicitations referenced in the Indictment; and interceptions of hundreds of telephonic and facsimile communications involving the defendants, unindicted co-conspirators, and members of Care.

**CONCLUSION**

For the foregoing reasons, the defendants' Motion for a Bill of Particulars should be denied.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:  /s/ B. Stephanie Siegmann
     B. STEPHANIE SIEGMANN
     ALOKE CHAKRAVARTY
     Assistant U.S. Attorneys

Date: June 30, 2006

Certificate of Service

I do hereby certify that a copy of foregoing opposition was served upon the counsel of record for the defendants by electronic notice on this 30th day of June 2006.

/s/ B. Stephanie Siegmann
B. Stephanie Siegmann
Assistant U.S. Attorney

16