UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
UNITED STATES OF AMERICA,               )        CRIMINAL NO.  05-40026-FDS
                                        )
                                        )
V.                                      )
                                        )
MUHAMED MUBAYYID and                    )
EMADEDDIN Z. MUNTASSER,                 )
                    Defendants          )
_____)

**DEFENDANTS' MOTION FOR JURY SELECTION FROM THE
EASTERN DIVISION OF THE DISTRICT OF MASSACHUSETTS**

Now come defendants Emadeddin Z. Muntasser and Muhammed Mubayyid and

respectfully move this Honorable Court to order that a jury be selected at time of trial from a

venire drawn from citizens of the eastern rather than central division of the District of

Massachusetts.  As reasons therefor, Defendants state as follows:

1.    The Sixth Amendment to the United States Constitution provides that "[i]n all

      criminal prosecutions, the accused shall enjoy the right to a speedy and public

      trial, by an impartial jury of the State and district wherein the crime shall have

      been committed; which district shall have been previously ascertained by law."

2.    Local Rule 40.1(E) provides that "[c]riminal cases shall be assigned to that

      division in which the most significant criminal conduct related to the alleged

      violations occurred within the District of Massachusetts."

3.    It is manifest that the "most significant criminal conduct" alleged in this case –

      indeed virtually the entirety of the conduct alleged – occurred in the Eastern

      Division of Massachusetts, as Care International, the charitable organization at

issue in the indictment, is a Boston-based rather than Worcester-based institution.

4.    As set forth in the Affidavit of Attorney Malick W. Ghachem attached hereto as Exhibit 1, and as evidenced by the Criminal Case Cover Sheet that appears as Exhibit 2, it is Defendants' position that the Government improperly manipulated the procedures for venue selection in this case in order to secure a venue seen as more favorable to the Government, despite the fact that the only proper venue for this case, under the Sixth Amendment and Local Rule 40.1(E), is the eastern division of Massachusetts.

5.    The Government's manipulation of the forum selection procedures of this Court violates Local Rule 40.1(E) and the Defendants' Sixth Amendment right to be tried by a jury "of the State and district wherein the crime shall have been committed; which district shall have been previously ascertained by law."

6.    An additional reason for this Court to order the selection of a jury from the eastern division is that the Worcester Telegram and Gazette, the most prominent local newspaper in the central division, has published a series of highly prejudicial and inflammatory articles about this case falsely contending that Defendants have been implicated in the financing of terrorist activities abroad.  These articles are attached hereto as Exhibit 3.

7.    Selection of a jury from the eastern division of Massachusetts is thus necessary to secure to the Defendants' their Sixth Amendment right not only to be tried by a jury of the "State and district wherein the crime shall have been committed," but also to be tried "by an impartial jury" of that State and district.

2

WHEREFOR Defendants respectfully move this Court for an order requiring that the jury be selected from a venire drawn from the Eastern Division of Massachusetts.

## REQUEST FOR ORAL ARGUMENT

Defendants request oral argument on the above motion.

Respectfully submitted,

MUHAMMED MUBAYYID,                    EMADEDDIN Z. MUNTASSER
By his attorney,                                  By his attorneys,


_/s Michael C. Andrews_____          /s/ Malick W. Ghachem_____
Michael C. Andrews BBO# 546470)          Norman S. Zalkind (BBO# 538880)
21 Custom House Street                   Elizabeth A. Lunt (BBO# 307700)
Boston, MA 02110                         Malick W. Ghachem (BBO#661018)
(617) 951-0072                           Zalkind, Rodriguez, Lunt & Duncan LLP
                                         65a Atlantic Ave.
                                         Boston, MA 02110

                                         /s/ Susan R. Estrich_____
                                         Susan R. Estrich
                                         University of Southern California Law
                                         School
                                         University Park, MC-0071
                                         Los Angeles, CA 90089-0071

                                         /s/ Harvey Silverglate_____
                                         Harvey Silverglate (BBO # 462640)
                                         607 Franklin St.
                                         Cambridge, MA 02139


Dated: October 5, 2006

<u>Certificate of Service</u>

      I hereby certify that I have served a copy of the foregoing document by electronic notice upon the following attorneys of record this 5th day of October 2006.

B. Stephanie Siegmann
Assistant U.S. Attorney

Aloke Chakravarty
Assistant U.S. Attorney


                <u>/s/ Malick W. Ghachem</u>
                Malick W. Ghachem

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                              )
UNITED STATES OF AMERICA,          )       CRIMINAL NO.  05-40026-FDS
                          Plaintiff       )
                                              )
V.                                           )
                                              )
MUHAMED MUBAYYID and             )
EMADEDDIN Z. MUNTASSER,         )
                          Defendants    )
_____)

**AFFIDAVIT OF ATTORNEY MALICK W. GHACHEM**

Now comes Attorney Malick W. Ghachem, on behalf of defendant Emadeddin Z.

Muntasser, and being duly sworn does depose and say as follows:

1.     On June 8, 2004, my client, Emadeddin Z. Muntasser, filed a petition for a hearing

       on naturalization in the United States District Court for the District of

       Massachusetts.

2.     The case was drawn by Judge Rya Zobel, sitting in Boston, in the eastern division

       of the District of Massachusetts, as Case No. 04-CV-11259-RWZ.

3.     Judge Zobel denied the Government's motion to remand the proceedings to the

       Department of Homeland Security and granted the Government two stays of the

       naturalization hearing in order to allow the Government to complete its

       investigation of Mr. Muntasser.  Judge Zobel also scheduled a status conference

       on the matter for April 7, 2005.

4.     On April 6, 2005, the Government brought a sealed criminal complaint against

       Mr. Muntasser.  On the Criminal Case Cover Sheet that accompanied the criminal

complaint (attached hereto as Exhibit 2), the Government indicated in typescript

the words "Boston and elsewhere" and "Suffolk and elsewhere" as the city and

county wherein the alleged offenses took place. The Government subsequently

drew a line through the words "Boston" and "Suffolk" and replaced both with

"Worcester."

5.      At the conclusion of the April 7, 2005 status conference, Judge Zobel announced

that the evidentiary hearing on Mr. Muntasser's naturalization petition would take

place on May 12, 2005, and that no further stays would be permitted the

Government.

6.      On May 11, 2005, the day before Judge Zobel was to have presided over Mr.

Muntasser's naturalization hearing, the Government brought its indictment in the

instant case, having convened a grand jury sitting in Worcester in the central

division of Massachusetts, pursuant to the second of its two designations for the

place of offense on the Criminal Case Cover Sheet that accompanied the April 6,

2005 criminal complaint.

7.      Given that the vast majority of the alleged criminal conduct in the instant case

took place in the eastern rather than central division of Massachusetts, it is a

reasonable inference that the Government crossed out the words "Boston" and

"Suffolk" on the Criminal Case Cover Sheet and replaced them with "Worcester"

in order to avoid the possibility that the instant criminal case would be drawn by

Judge Zobel. The Government may also have been seeking to secure a venue that

the Government perceived as more favorable to it than the eastern division of

2

Massachusetts.

8.      The copy of the Criminal Case Cover Sheet that follows this affidavit as Exhibit 2

in support of Defendants' Motion for Jury Selection from the Eastern Division of

Massachusetts is a true and authentic copy of the original.

9.      In light of the above considerations, it is my belief that the Government has in this

instance improperly manipulated the procedures for the assignment of criminal

cases established by the United States District Court for the District of

Massachusetts, in violation of my client's rights under the Sixth Amendment to

the United States Constitution and Local Rule 40.1(E).

Signed under the penalties of perjury this 5th day of October, 2006.


 /s/ Malick W. Ghachem
Malick W. Ghachem (BBO# 661018)


<u>Certificate of Service</u>

I hereby certify that I have served a copy of the foregoing document by electronic notice upon the following attorneys of record this 5th day of October 2006.

B. Stephanie Siegmann
Assistant U.S. Attorney

Aloke Chakravarty
Assistant U.S. Attorney

Michael Andrews
Counsel for Muhammed Mubayyid


/s/ Malick W. Ghachem
Malick W. Ghachem

3

JS 45 (5/97) - (Revised USAO MA 3/25/02)

**Criminal Case Cover Sheet**                    **U.S. District Court - District of Massachusetts**

Place of Offense:                Category No. II          Investigating Agency FBI

City    Worsts                   Related Case Information:
        Boston and elsewhere

County  Worsts                   Superseding Ind./ Inf.  None        Case No. 05 - 1657-CBS
        Suffolk and elsewhere    Same Defendant _____         New Defendant _____
                                 Magistrate Judge Case Number _____
                                 Search Warrant Case Number   03-M-1028 and 1029-JGD
                                 R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name   Emadeddin Muntasser                    Juvenile  [ ] Yes  [x] No

Alias Name _____

Address _____

Birth date: 12/10/64   SS#: 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   Sex: M  Race: _____    Nationality: Libya

Defense Counsel if known:   Norman Zalkind        Address: 65a Atlantic Avenue
                                                           Boston, MA

Bar Number: _____

**U.S. Attorney Information:**

AUSA   Michael Ricciuti/Stephanie Siegmann        Bar Number if applicable _____

Interpreter:    [ ] Yes  [x] No       List language and/or dialect: _____

Matter to be SEALED:    [x] Yes  [ ] No

        [ ] Warrant Requested          [ ] Regular Process          [ ] In Custody

Location Status:

Arrest Date:    None

[ ] Already in Federal Custody as _____ in _____ .
[ ] Already in State Custody _____   [ ] Serving Sentence   [ ] Awaiting Trial
[ ] On Pretrial Release:   Ordered by _____ on _____

Charging Document:    [x] Complaint    [ ] Information    [ ] Indictment

Total # of Counts:    [ ] Petty _____   [ ] Misdemeanor _____   [2] Felony _____

Continue on Page 2 for Entry of U.S.C. Citations

[x]    I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are
       accurately set forth above.

Date: 4/6/05              Signature of AUSA: _____

JS 45 (5/97) - (Revised USAO MA 3/25/02) Page 2 of 2 or Reverse

District Court Case Number (To be filled in by deputy clerk): _____

Name of Defendant    Emadeddin Muntasser _____

## U.S.C. Citations

| Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|
| Set 1  18 USC 1001(a)(1) | False Statements Scheme | 1 |
| Set 2  18 USC 2 | Aiding and Abetting | 1 |
| Set 3  18 USC 1001(a)(2) | False Statements | 2 |
| Set 4 | | |
| Set 5 | | |
| Set 6 | | |
| Set 7 | | |
| Set 8 | | |
| Set 9 | | |
| Set 10 | | |
| Set 11 | | |
| Set 12 | | |
| Set 13 | | |
| Set 14 | | |
| Set 15 | | |

ADDITIONAL INFORMATION: _____

_____

_____

js45.wpd - 3/13/02



To print this article open the file menu and choose Print.
Click here to return to previous page
Article published Jul 1, 2006

Jul 1, 2006

# Defendants seek surveillance data

## Allegations include funding terrorists

**By Kevin Keenan TELEGRAM & GAZETTE STAFF**

**WORCESTER—** Two Massachusetts men, including a Shrewsbury resident, indicted last year for allegedly funneling money to Islamic terrorists, petitioned a federal judge to order prosecutors to produce electronic surveillance materials obtained by the government either with or without warrants.

Emadeddin Z. Muntasser of Brookline and Muhamed Mubayyid, 41, of Shrewsbury, were indicted in May 2005 and charged with running Care International Inc., which prosecutors allege supported Islamic terrorism abroad and in the United States.

The defendants, through their lawyers, have petitioned Magistrate Judge Timothy S. Hillman to compel prosecutors to provide evidence obtained by the government from warrantless surveillance. Magistrate Judge Hillman has given federal prosecutors additional time to respond to the request and scheduled a hearing for motions to be heard on the issue Aug. 17.

The New York Times reported in December that the National Security Agency has since Sept. 11, 2001, monitored some international phone calls and e-mails through a controversial program the NSA now calls "Terrorism Surveillance Program," without obtaining warrants. The program has drawn criticism but the Bush administration has argued that warrantless wiretaps are legal and necessary to fight the war on terror. Congress is considering legislation to address warrantless wiretapping.



Mr. Mubayyid and Mr. Muntasser organized Care as an Islamic charity in Boston in 1993. The government claims it initially operated as the Boston branch of the New York City-based Islamic charity Al-kifah, which allegedly supported Islamic holy fighters and jihad, including the 1993 World Trade Center bombing, before changing its name to Care. The U.S. Treasury Department classified Al-kifah as a terrorist-supporting organization shortly after Sept. 11, 2001, according to an affidavit filed by James T. Marinelli a member of the FBI's Joint Terrorism Task Force.

Both men were charged in an indictment in U.S. District Court in May 2005. Mr. Mubayyid, a Lebanese national, pleaded not guilty to charges of conspiracy to defraud the U.S. government, aiding and abetting a scheme to conceal material facts from the Internal Revenue Service, and to three counts of filing false tax returns. Mr. Muntasser, a Libyan national, pleaded not guilty to charges of engaging in a scheme to conceal material facts from the government, conspiring to defraud the government and making false statements. Both men are out on bond while awaiting trial. Mr. Mubayyid works at The Home Depot in Shrewsbury and is on an electronic monitoring program, according to court records.

Prosecutors filed notice that they intend to use evidence in the case gathered from electronic surveillance authorized by

Foreign Intelligence Surveillance Act warrants. Defense lawyers asked that prosecutors submit all materials gathered with or without FISA warrants, but the government has yet to answer the request, to which the defense has objected. Magistrate Judge Hillman has given prosecutors until Aug. 14 to answer the defense team's requests for FISA and non-FISA material, according to court records.

Lawyers for both defendants submitted a motion June 16 that asks Magistrate Judge Hillman to order prosecutors to provide more detailed evidence to support the allegations made in the charges. Defense lawyers Norman S. Zalkind, and Michael C. Andrews, could not be reached for comment.

"... Allegations in the indictment are in part so vague and general that they provide insufficient notice of the charges against them. ... A bill of particulars should be required where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused," the motion said.

Prosecutors sought and won a protective order from Magistrate Judge Charles B. Swartwood III, who preceded Magistrate Judge Hillman, that bars the defense from disclosing any of the evidence gathered by the government for the case that is not already public or made public by prosecutors, to the news media or to the public. There also have been several sealed motions submitted in the case.

Prosecutors have given defense lawyers more than 18,000 documents related to the case, 40 videotapes, four computer hard drives, and 100 computer diskettes, among other evidence. Defense lawyers argue that the deluge of data was provided without indexing or ordering the material, making it impossible to determine what the government considers relevant to this case.

"The prosecution should not be able to hide behind this mountain of paper to avoid the defendants' reasonable requests for particulars and specifics," Mr. Zalkind and Mr. Andrews wrote in a motion.

---

Order the Telegram & Gazette, delivered daily to your home or office! **www.telegram.com/homedelivery**

---

Copyright 2006 Worcester Telegram & Gazette Corp.



To print this article open the file menu and choose Print.
Click here to return to previous page
Article published Jul 6, 2006

Jul 6, 2006

# Suspects in terrorism-financing case mount defense

By Kevin Keenan
**TELEGRAM & GAZETTE STAFF**

**WORCESTER—** Two Bay State men accused of funneling money to Islamic terrorists through an alleged charity filed a motion last month that is an "illegitimate" attempt to gain information about the government's case against them, according to a brief filed by prosecutors.

The men, Emadeddin Z. Muntasser of Brookline and Muhamed Mubayyid, 41, of Shrewsbury, were indicted in May 2005 and charged with running Care International Inc., a Boston-based charity the government claims supported Islamic terrorism abroad and in the United States.

Care International Inc., registered as a nonprofit charity in Massachusetts in 1993 and dissolved in 2002. It was not affiliated with CARE International, an international humanitarian agency with offices in 12 countries.

The two men filed a motion June 16 saying the government's case against them is vague, and filed a motion asking Magistrate Judge Timothy S. Hillman to compel the government to clarify the charges in case. Both men were indicted in U.S. District Court in May 2005.

Defense lawyers argued in their motion, filed June 30, that the deluge of data was provided without indexing or ordering the material, making it impossible to determine what the government considers relevant to the case.

The lawyers, Michael C. Andrews, and, Norman S. Zalkind, wrote that the prosecution is hiding behind a "mountain of paper" to avoid the defendants' requests for specifics. Neither lawyer could be reached for comment.

In a response to the defense team's motion, filed June 30, prosecutors argue that the charges are clearly defined, and that the materials seized from the defendants was given back in the same order it was taken. Prosecutors argued that the defendants are seeking information that is more common in civil lawsuits, not criminal cases.

"... the defendants motion is simply being used as an illegitimate discovery tool designed to obtain a preview of the government's trial evidence an legal theories," according to the motion submitted by assistant U.S. attorneys B. Stephanie Siegmann, and Aloke Chakravarty.

The prosecutors also argued that the defendants' motion should have been filed no later than 10 days after their arraignment, which was held in May 2005.

Mr. Mubayyid, a Lebanese national, pleaded not guilty to charges of conspiracy to defraud the U.S. government, aiding and abetting a scheme to conceal material facts from the Internal Revenue Service, and to three counts of filing false tax returns.

Mr. Muntasser, a Libyan national, pleaded not guilty to charges of engaging in a scheme to conceal material facts from the government, conspiring to defraud the government and making false statements. Both men are out on bond while awaiting trial.

The men are not charged with providing material support to terrorist organizations, rather, with concealing information from the U.S. government about their charity's activities.

The government alleges they used Care to send money to Islamic holy fighters and jihadists around the world, and concealed that information from the IRS, among other things. Mr. Muntasser served as Care's president from 1993-96 and Mr. Mubayyid served as the charity's treasurer from 1997-2003.

The government raided a storage facility in Northboro and confiscated records kept by the alleged charity. More than 18,000 pages of material were taken, in addition to 40 videotapes, four computer hard drives, and 100 computer diskettes, among other evidence.

Mr. Mubayyid and Mr. Muntasser organized Care as an Islamic charity in Boston in 1993. The government claims the charity originally operated as the Boston branch of the New York City-based Islamic charity Al-kifah, which allegedly supported Islamic holy fighters and jihad, including the 1993 World Trade Center bombing, before changing its name to Care in 1993.

The U.S. Treasury Department classified Al-kifah as a terrorist-supporting organization shortly after Sept. 11, 2001, according to an affidavit filed by James T. Marinelli a member of the FBI's Joint Terrorism Task Force.

---

Order the Telegram & Gazette, delivered daily to your home or office! **www.telegram.com/homedelivery**

---

Copyright 2006 Worcester Telegram & Gazette Corp.



To print this article open the file menu and choose Print.
Click here to return to previous page
Article published Jul 19, 2006

Jul 19, 2006

# Legalese aside, it's still 'terror' in real language

**Chris Sinacola Sina-cism**
csinacola@telegram.com

When is a case of supporting terrorism not a case of supporting terrorism? When lawyers get involved, of course.

In May 2005, federal prosecutors indicted Emadeddin Z. Muntasser of Brookline and Muhamed Mubayyid of Shrewsbury on charges in connection with their work as officers of Boston-based Care International Inc., a now-defunct organization that the U.S. government maintains supported Islamic terrorism.

After the Telegram & Gazette reported earlier this month on the latest motions in the case, the defendants' lawyers, Norman S. Zalkind and Michael C. Andrews, wrote the newspaper a letter, complaining that coverage of the case included serious mistakes "falsely implicating our clients with involvement in activities in which they have no part."

The lawyers point out that one article states that Mr. Muntasser and Mr. Mubayyid "are accused of funneling money to Islamic terrorists through a charity," when they are not, in fact, so charged.

Talk about a distinction without a difference.

The government's indictment lists three counts against Mr. Muntasser, a native of Libya, and five counts against Mr. Mubayyid, a native of Lebanon.



Both men are charged with scheming to conceal the fact that Care was an "outgrowth of and successor to the Al-Kifah Refugee Center," an organization that was implicated in the bombing of the World Trade Center in New York on Feb. 26, 1993. Also, both men are charged with conspiracy to defraud the Internal Revenue Service by falsely representing Care as a nonprofit, 501 (c) (3) organization, when in fact it was involved in the support of jihadist and mujahideen organizations in numerous countries.

In addition, Mr. Muntasser, president of Care from 1993 to 1996, faces one count of making false statements, and Mr. Mubayyid, who was treasurer of Care from 1997 to 2003, faces three counts of filing false tax returns.

From that, the lawyers conclude that a newspaper headline was wrong to refer to the matter as a "terrorist funding case." Would "Tax slipup obscures philosophical difference of opinion?" hit closer to the mark?

Sure, it would seem that neither Mr. Muntasser nor Mr. Mubayyid personally supplied ammunition to any mujahideen fighters or picked up an AK-47 in any of the world's current war zones. But let us take a closer look at the 22 introductory allegations presented by the grand jury that precede the actual counts in the indictment. They include: that the Al-Kifah Refugee Center supported Muslim holy warriors engaged in violent, religiously based military conflict overseas; that Care acted as Al-Kifah's Boston arm; that Care distributed pro-jihad publications; and that, over a 10-year period, Care collected approximately $1.7 million in donations that would not have been considered tax-exempt had Mr. Muntasser and/or Mr. Mubayyid provided truthful information to the IRS.

Would Mr. Zalkind and Mr. Andrews have us believe that neither of their clients had any idea where and how the $1.7 million was spent? Is it not obvious that had the defendants been involved in only legitimate charity work they would have had no reason to lie to the IRS, and U.S. prosecutors would not have wasted a single dime going after any technical deficiencies in their tax returns?

An FBI special agent with the Joint Terrorism Task Force found that Care published Al-Hussam (Arabic for The Sword), which offered readers "a current events section detailing the activities and victories of the mujahideen in places such as Bosnia, Algeria, Libya and Chechnya ..."; that Care received checks, ranging from $50 to $500, made out to Care "for Jihad only," "Mujahideen of Bosnia," "Bosnia Jihad fund," and "Chechen Muslim Fighters"; that Care published a pamphlet titled "Join the Caravan," which advocates jihad until "every last piece of land, which was in the hands of Muslims, but has been occupied by the disbelievers, is liberated." The pamphlet's author? Abdullah Yusuf Azzam, a Palestinian who was the ideological father of the worldwide Islamic militant movement, and a forerunner of al-Qaida.

If Care could have duped the IRS for just a few more years, they could have published pamphlets detailing the Chechen "freedom fighters" who butchered 344 people, including 186 children, at the School No. 1 in Beslan, North Ossetia, Russia, in September 2004. They could have told wonderful stories about Abu Musab al-Zarqawi's struggle to liberate the people of Iraq from any chance at a better life. About Hamas winning the Palestinian elections, the better to share bomb-making and kidnapping tips with coming generations of Palestinian boys and girls. About Hezbollah cleverly subverting the Lebanese government and trying to ignite a regional war involving Israel.

Because the United States is a nation of laws, Mr. Muntasser and Mr. Mubayyid will get their day in court, complete with creative lawyers who will deny they had anything to do with the horrors unleashed by Islamic terrorism. I wish them no luck. As for Mr. Zalkind's and Mr. Andrews' request for a retraction of our recent reporting, sorry, gentlemen, but today's column is the best I can offer.

Contact Chris Sinacola by e-mail at csinacola@telegram.com.

---

Order the Telegram & Gazette, delivered daily to your home or office! **www.telegram.com/homedelivery**

---

Copyright 2006 Worcester Telegram & Gazette Corp.



To print this article open the file menu and choose Print.
Click here to return to previous page
Article published Jul 20, 2006

Jul 20, 2006

# Story had errors on suspect charity

**NORMAN ZALKIND, Boston / MICHAEL ANDREWS, Boston**

Three-quarters of the way through an article about our clients' case ("Pair in terrorist-funding case rebuts fed charges/Shrewsbury man allegedly bankrolled jihadists via charity," Telegram & Gazette, July 7), it is clearly and correctly stated that they "are not charged with providing material support to terrorist organizations."

Why, then, does the headline refer to this case as a "terrorist funding case" when it is not?

The first line of the article states, entirely erroneously, that our clients "are accused of funneling money to Islamic terrorists through a charity." They are not.

The mistakes in the article are serious, falsely implicating our clients with involvement in activities in which they have no part.



The headline writers should read the story more carefully before creating the headline, and T&G reporters writing on legal matters must first seek to read the legal documents at issue, such as the indictment, before submitting their stories for publication, especially in these times of sensationalized terror prosecutions.

We ask that the T&G retract the erroneous statements and issue a correction.

NORMAN ZALKIND

Boston

MICHAEL ANDREWS

Boston

EDITOR'S NOTE: Norman Zalkind is a lawyer
representing Emadeddin Z. Muntasser. Michael Andrews is a lawyer representing Muhamed Mubayyid. The Telegram & Gazette stands by the story.

---

Order the Telegram & Gazette, delivered daily to your home or office! **www.telegram.com/homedelivery**

---

Copyright 2006 Worcester Telegram & Gazette Corp.



To print this article open the file menu and choose Print.
Click here to return to previous page
Article published Aug 4, 2006

Aug 4, 2006

# Two men are denied access to evidence

## Government upheld on right to secrecy

By Kevin Keenan TELEGRAM & GAZETTE STAFF

WORCESTER— A federal judge has refused to let two Massachusetts defendants see warrantless wiretap evidence obtained during investigations into activities allegedly connected to terrorism.

The men, Emadeddin Z. Muntasser of Brookline and Muhamed Mubayyid, 41, of Shrewsbury, are charged in U.S. District Court with making misrepresentations about Care International Inc., a Boston-based charity that the government claims supported Islamic terrorism abroad and in the United States. Care International Inc. registered as a nonprofit charity in Massachusetts in 1993 and was dissolved in 2002. It was not affiliated with CARE International, an international humanitarian agency.

In May, the two men filed a motion to require prosecutors to provide additional evidence, including any electronic surveillance obtained by government agents without court warrants during an investigation. The government filed a classified motion in response to the request on July 7, and Judge F. Dennis Saylor IV denied the motion on Aug. 1. No information on the government's motion is available to the public.

The men are not charged with providing material support to terrorist organizations. Rather, they are charged with scheming to conceal the fact that Care was an "outgrowth of and successor to the Al-Kifah Refugee Center," an organization that was implicated in the bombing of the World Trade Center in New York on Feb. 26, 1993. Also, both men are charged with conspiracy to defraud the Internal Revenue Service by falsely representing Care as a nonprofit organization, when, in fact, it was allegedly supporting jihadist and mujahedin organizations in numerous countries.



After Sept. 11, 2001, the National Security Agency began monitoring some international phone calls and e-mail without obtaining court warrants as part of what the NSA now calls the Terrorism Surveillance Program. The program has drawn criticism but the Bush administration has argued that warrantless wiretaps are legal and necessary to prevent terrorism.

The U.S. Treasury Department classified Al-Kifah as a terrorist-supporting organization shortly after Sept. 11, 2001, according to an affidavit filed by James T. Marinelli, a member of the FBI's Joint Terrorism Task Force.

Both men were indicted in May 2005. Mr. Mubayyid, a Lebanese national, pleaded not guilty to charges of conspiracy to defraud the U.S. government, aiding and abetting a scheme to conceal material facts from the Internal Revenue Service, and to three counts of filing false tax returns. Mr. Muntasser, a Libyan national, pleaded not guilty to charges of engaging in a scheme to conceal material facts from the government, conspiring to defraud the government and making false statements. Both men are free on bond while awaiting trial.

The government raided a storage facility in Northboro and confiscated records kept by Care. More than 18,000 pages of material were taken.

---

Order the Telegram & Gazette, delivered daily to your home or office! **www.telegram.com/homedelivery**

---

Copyright 2006 Worcester Telegram & Gazette Corp.



To print this article open the file menu and choose Print.
Click here to return to previous page
Article published Sep 11, 2006

Sep 11, 2006

# Analysts say fundraising for terrorists went on without notice

## Boston-based charity with area ties aided al-Qaida connected jihadists

**By Kevin Keenan TELEGRAM & GAZETTE STAFF**

A car bomb that killed Islamic radical Abdullah Azzam and his two sons in Peshawar, Pakistan, in 1989 went unnoticed here, but some experts say his teachings inspired local fundraising for a group that later became al-Qaida.

Five years after Sept. 11, Mr. Azzam's name and face are nearly unrecognizable, compared with his former partner and successor, Osama bin Laden, who remains at large.

Mr. Azzam, considered by some experts to be the godfather of worldwide Islamic jihad, inspired a former Boston charity with some Central Massachusetts connections to raise money from local sources for terror groups, including organizations with ties to al-Qaida, before Sept. 11. Two men, Muhamed Mubayyid of Shrewsbury and Emadeddin Muntasser of Brookline, were charged in federal court in Worcester with providing the U.S. government false information about the charity, Care International, among other charges. They are not charged with supporting or financing terrorists.

A pair of highly regarded terrorism analysts say Care International was raising money for the global jihad at a time when no one here was paying attention.

"It is related to al-Qaida, there's no doubt about that," said Rachel Ehrenfeld, a terrorism researcher and author who wrote "Funding Evil: How Terrorism is Financed — and How to Stop It."



Mr. Mubayyid, Mr. Muntasser and several others worked for Care International, which operated from about 1993 to around 2003, when it ceased. The FBI says Care International was an outgrowth and successor organization to the Boston branch of the Al-Kifah Refugee Center, a Muslim charity. Al-Kifah's Brooklyn headquarters gained notoriety in 1993 when members were linked to the first bombing of the World Trade Center. After the 1993 bombing, the Boston branch changed its name to Care International, which is the basically same name of the well-known, worldwide charity based in Atlanta, Care. The two were not affiliated. Suheil Laher, a former president of Care International, told the FBI that Al-Kifah's Boston branch changed its name because it didn't want to be associated with its Brooklyn parent after media reports linked the Brooklyn branch to the 1993 World Trade Center bombing.

Mr. Laher wrote and distributed material advocating the global jihad in Care International's name, according to the Investigative Project, a Washington, D.C.-based terrorism research group led by author and journalist Steven Emerson. Mr. Emerson, author of "American Jihad: The Terrorists Among Us," has one of the largest archival intelligence centers in the world on Islamic terrorism. Mr. Emerson began researching the organization in 1993, while researching terrorism funding in America.

The project researched Care International and several people who worked there, compiling newsletters and Web postings that were published and distributed by the organization.

The FBI raided a unit that belonged to Care International at a Northboro storage facility in April 2003 during its investigation of the charity and confiscated more than 18,000 pages of material, 40 videotapes, four computer hard drives and 100 computer diskettes, among other evidence that belonged to the organization, according to court records.

Introducing a piece by Mr. Azzam, Mr. Laher wrote the following, according to information held by the project:

"The martyred shaykh and mujahid, 'Abdullah' Azzam (may Allah's mercy be upon him) dispels some common misconceptions/misgivings about the practical realization of jihad today. The extract following is from 'Al-Difa' an 'Aradi al-Muslimeen' (Defence of the Muslim Lands). Please note that the text is copyrighted. With all due respect to other shaykhs, the fatwa of a shaykh living in the midst of a situation must be given priority to someone speaking from the outside. In addition, those who perform ribat and jihad are in a spiritually sharpened state of mind, which makes their fatawa very weighty and valuable. Thus, whenever an issue was ambiguous or enigmatic for people, they would say, 'Ask the people of the frontline, for they are the closest of people to Allah.' "

The "misconceptions/misgivings" Mr. Laher referred to were related to an Islamic call to arms and how Muslims should participate, given other responsibilities.

"If only the Muslims applied the command of their Lord, and executed the verdict of their Shariah in going out to Palestine (for jihad) for a single week, palestine(sic) would be permanently purified of the Jews," Mr. Azzam wrote.

Care International's newsletter was named "Al-Hussam," which means "The Sword." The group solicited donations from area Muslims to satisfy the Muslim duty "zakat" which requires devotees to donate a percentage of their income to charity.

Mr. Muntasser served as Care International's president from 1993 from 1996 and Mr. Mubayyid served as the charity's treasurer from 1997 to 2003.

Ms. Ehrenfeld, a leading authority on terrorism financing, is director of the New York-based American Center for Democracy and the Center for the Study of Corruption & the Rule of Law. One advisory board member of the organization is R. James Woolsey, former director of the CIA. She says Mr. Azzam inspired al-Qaida, and anyone who distributed or published his material was savvy to that.

"Abdullah Azzam was bin Laden's mentor, who planned the development and globalization of the jihad movement. For them (Care International) to say they didn't know who he was, is like saying they don't know who is bin Laden," Ms. Ehrenfeld said.

A publication of Al-Hussam claimed that Mr. Azzam himself founded the Boston-based Care International, according to the FBI.

"Care is a nonprofit organization founded by Imam Abdullah Azzam to provide services to war victims and refugees around the world," according to a Care International pamphlet cited by the FBI in a court filing.

The FBI claims that Care International raised about $1.7 million from 1993 to 2003. The CIA estimated that al-Qaida spent about $20 million annually before Sept. 11. Care International claimed to raise money for widows and orphans of mujahedeen fighters but even such purported charitable causes aids terrorist organizations, Ms. Ehrenfeld said.

"Since money is fungible," she said, "they often use it to pay for more martyrs, thus creating more widows and orphans."

Muslim charities sometimes blurred the line between legitimate charitable causes and nefarious ones, said Tamar Tesler, a researcher at the Investigative Project. U.S.-based Muslim charities often sold two different versions of their mission — one for legitimate charitable purposes, such as raising money for the needy, and the other, for funding the global jihad.

"A lot of their donors didn't want to hear about jihad," Ms. Tesler said.

Care International claimed it raised money for widows and orphans — which it may have legitimately done — but it also raised money for terror groups, according to the FBI. Court records in the Worcester case say checks deposited into Care International accounts had phrases such as "for jihad only" and "Bosnia Jihad fund" and "Chechen Muslim Fighters" handwritten on the memo lines of donors' personal checks.

After Sept. 11 the Treasury Department placed numerous organizations on a specially designated terrorist watch list. The first group it put on the list was Makhtab al-Khidamat/Al-Kifah, on Sept. 23, 2001. Makhtab al-Khidamat, translates to "the Services Office" in English, a group that the FBI says was founded by Mr. Azzam and a precursor to al-Qaida. The

Boston-based Care sent about $60,000 to the "Human Service Office," or variations of that name, in Bosnia, according to the FBI. The agency believes the money was intended for Makhtab al-Khidamat.

Mr. Azzam was a Palestinian radical who fought the Soviets in Afghanistan and inspired Islamic radicals, including Osama bin Laden, to undertake global jihad. When the Soviets left Afghanistan in 1988, Mr. Azzam and bin Laden were considered the two leading jihadists, though they may have had different agendas. Mr. Azzam, a Palestinian, may have desired to focus on his homeland and the Israelis, while bin Laden had larger ambitions. His murder was never solved by Pakistani authorities. His words were distributed by Care International in Massachusetts for several years.

Mr. Muntasser told a member of the agency's Joint Terrorism Taskforce that he visited Peshawar, Pakistan, in 1994 for humanitarian purposes. He later told a federal immigration officer that he traveled to Pakistan and Afghanistan seven times between March 1993 and November 1997, including one 30-day trip to the two countries from December 1994 to January 1995.

Much of the case involving Mr. Muntasser and Mr. Mubayyid is sealed, with the government submitting sealed motions and a judge issuing an order forbidding the defense lawyers from giving information to reporters. The defense, however, submitted a lengthy request for information to the court, asking a judge to compel the prosecutors to share more information with them.

---

Order the Telegram & Gazette, delivered daily to your home or office! www.telegram.com/homedelivery

---

Copyright 2006 Worcester Telegram & Gazette Corp.



To print this article open the file menu and choose Print.
Click here to return to previous page
Article published Sep 19, 2006

Sep 19, 2006

# U.S. gave to charities promoting mujahideen

Once again, Kevin Keenan's article (Telegram & Gazette, Sept. 11) has dutifully carried the government's water in reporting about the prosecution against our client, Emadeddin Muntasser. He fails to note that in the 1980s and early 1990s, many Muslim-American charities were aiding widows and orphans in Afghanistan, and the American government was providing military and humanitarian support to the Afghan resistance itself. In fact, the CIA poured many millions into helping the anti-Soviet resistance.

The reason why Mr. Muntasser is not charged with supporting or financing terrorists is quite simply because he did not in fact aid terrorists in any way. The government alleges that Care International acted outside the scope of the charitable tax laws by soliciting funds in support of the same groups supported by official American policy and taxpayers' money. Indeed, the United States government contributed substantial amounts of money to pro-resistance charities, including the Afghan mujahideen's own cultural council. The government does not claim that Mr. Muntasser had any involvement in running Care International after 1996, years before American policy shifted course after Sept. 11, 2001.

Mr. Keenan offered to submit questions to us in writing but then never followed up when we agreed to respond to them. Had he done so, and had he taken the time to consult the many publicly available documents demonstrating United States government support for charities promoting the Afghan mujahideen, he might have avoided the many mistakes in his article.

NORMAN S. ZALKIND

ELIZABETH A. LUNT

MALICK W. GHACHEM

Counsel for Emadeddin Muntasser

Boston



Order the Telegram & Gazette, delivered daily to your home or office!
www.telegram.com/homedelivery

Copyright 2006 Worcester Telegram & Gazette Corp.