UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

                                                    )
UNITED STATES OF AMERICA          )
                                                    )
              v.                                    )          Crim. No. 05-40026-FDS
                                                    )
MUHAMED MUBAYYID, and           )
EMADEDDIN Z. MUNTASSER,          )
                                                    )
              Defendants.                      )
                                                    )
_____)


DEFENDANTS' MOTION FOR DISCOVERY


        Now come Defendants Emadeddin Z. Muntasser and Muhamed Mubayyid,

pursuant to F. R. Crim. P. 12 and 16, to move this Honorable Court to order the

Government to provide the below described discovery.  The discovery at issue concerns

internal IRS and Treasury Department memoranda or other documents relating to

changes made in the wording of the IRS Form 1023 and its instructions between 1993

and the present.  Defendants' requests for these materials, attached as Exhibit 1 to this

motion, were prompted by information that has come to Defendants' attention since the

deadline for filing discovery letters in this case was reached.

        In its response, attached as Exhibit 2, the Government takes the incredible

position that the requests are overbroad and the materials at issue irrelevant to this case,

even though the essence of this case as the Government has theorized it concerns

Defendants' alleged failure to properly answer certain questions on the Form 1023 filed

by Care International in 1993.  Defendants' requests, complete with line item

specifications and OMB document identification numbers, were limited to the precise questions on the Form 1023 that constitute the heart of the indictment. The need to litigate and adjudicate the instant motion is a frivolous waste of judicial resources, and must be seen as an attempt to shield from this Court information that is damaging to the Government's and critical to Defendants' cases.

## Request for Hearing

As contemplated at the previous status conference, Defendants request that a portion of the January 22, 2007 status conference be set aside for oral argument on this motion. Mr. Muntasser, through undersigned counsel, has requested the Clerk of Court that the January 22, 2007 status conference be held in person at the Federal Court in Worcester rather than by telephone in order to facilitate the Court's disposition of this motion. Should this Court find that oral argument is not necessary in order to grant this motion, a proposed draft order is attached as Exhibit 3, and in that event Defendants would withdraw their request that the January 22 status conference be held in person at Worcester.

## Requested Materials

1. Copies of any Department of Treasury (DOT) or Internal Revenue Service (IRS) memoranda, notes, emails, reports, correspondence, or other documents or communications relating to revisions made subsequent to September 1990 to Line 5 of Part II of the Form 1023 identified as Rev. 9-90, OMB No. 1545-0056.

2. Copies of any and all DOT or IRS memoranda, notes, emails, reports, correspondence, or other documents or communications relating to the revision

process that gave rise to Line 1 of Part VII of the Form 1023 identified as Rev. 6-2006, OMB No. 1545-0056.

3. Copies of any and all DOT or IRS memoranda, notes, emails, reports, correspondence, or other documents or communications relating to the revision process that gave rise to Schedule G of the Form 1023 identified as Rev. 6-2006, OMB No. 1545-0056.

4. Copies of any and all DOT or IRS memoranda, notes, emails, reports, correspondence, or other documents or communications relating to the revision process that gave rise to that part of the Instructions identified as Rev. June 2006, Cat. No. 17132z, for Line 1 of Part VII of the Form 1023 identified as Rev. 6-2006, OMB No. 1545-0056.

5. Copies of any and all DOT or IRS memoranda, notes, emails, reports, correspondence, or other documents relating to the revision process that gave rise to that part of the Instructions identified as Rev. June 2006, Cat. No. 17132z, for Schedule G of the Form 1023 identified as Rev. 6-2006, OMB No. 1545-0056.

6. Copies of any and all DOT or IRS memoranda, notes, emails, reports, correspondence, or other documents or communications relating to the revision process that gave rise to Line 15 of Part VIII of the Form 1023 identified as Rev. 6-2006, OMB No. 1545-0056.

7. Copies of any and all DOT or IRS memoranda, notes, emails, reports, correspondence, or other documents or communications relating to the revision process that gave rise to that part of the Instructions identified as Rev. June 2006,

Cat. No. 17132z, for Line 15 of Part VIII of the Form 1023 identified as Rev. 6-2006, OMB No. 1545-0056.

## Specificity and Relevance of Requested Materials

A centerpiece of the indictment in this case is the allegation that Mr. Muntasser failed to indicate on the Form 1023 that he filed in 1993 that Care International was the "successor" or "outgrowth" of the Al-Kifah Refugee Center.  See Indictment at 1-2, 4, 7, 9, 11-13.

Line 5 of Part II of the 1990 Form 1023 asks "[i[s the organization the outgrowth of (or successor to) another organization, or does it have a special relationship with another organization by reason of interlocking directorates or other factors?"  See Exhibit 4.  The 1993 instructions for Form 1023 contain absolutely no instructions as to the meaning of the terms "outgrowth" or "successor."

The current (2006) Form 1023 has entirely done away with the "outgrowth" inquiry and asks simply, under the heading "Part VII: Your History", "[a]re you a successor to another organization?"  See Exhibit 5.  The deletion of the "outgrowth" inquiry demonstrates that today "outgrowth" is not seen by the IRS as even relevant to the exemption question.  In further contrast to the 1993 form and instructions, the current form and instructions together provide a tight definition of "successor."  Thus, the current Form 1023 directs an applicant to answer "yes" to the "successor" inquiry "if you have taken or will take over the activities of another organization; you took over 25% or more of the fair market value of the net assets of another organization; or you were established upon the conversion of an organization from for-profit to non-profit status."  Id.  The current (2006) instructions state in a very similar vein that a "successor"  organization is

one that has "substantially taken over all of the assets or activities of another

organization, been converted or merged from another organization, or installed the same

officers, directors, or trustees as another organization that no longer exists and that had

purpose(s) similar to your purpose(s)." <u>See</u> Exhibit 6.

      While no longer posing the "outgrowth" inquiry that featured in the 1993 version

of Form 1023, the current form, under the heading "Part VIII: Your Specific Activities,"

at line 15, asks "[d]o you have a close connection with any organizations?" <u>See</u> Exhibit

7.  The current instructions provide an elaborate definition of the phrase "close

connection."  Thus, for example, a "close connection" exists if "you control the

organization or it controls you through common officers, directors, or trustees, or through

authority to approve budgets or expenditures," or if "you and the organization were

created at approximately the same time and by the same persons." <u>See</u> Exhibit 8.

Nothing near this level of specificity was provided to filers in 1993.

      Moreover, the current Form 1023 now includes a Schedule G entitled "Successors

to Other Organizations" that asks some sixteen detailed questions about an applicant's

potential "successor" relationship with another organization. <u>See</u> Exhibit 9.  The current

1023 instructions provide additional guidance relating to Schedule G, <u>see</u> Exhibit 10,

guidance that perforce was not available in 1993 because Schedule G itself did not exist

at that time.

      The Government would have this Court believe that none of these subsequent

changes to the 1993 Form 1023 and its instructions is relevant to this case.  This assertion

simply does not pass the straight face test.  Defendants have argued in their motion to

dismiss, and will argue at trial if this case proceeds to trial, that they did not have clear

notice of what the law required by way of answers to the Form 1023 questions at issue in the indictment, most notably the successor/outgrowth question.[1]  It is manifest that, at some point between 1993 and the present, the IRS or the DOT determined, whether by way of feedback from the public, tax lawyers, or the IRS's and DOT's own rulemakers,[2] that greater specificity in the wording of the Form 1023 and its instructions was needed to enable the public to accurately answer the successor/outgrowth inquiry.  That information – the circumstances and deliberations that led to this determination, and the process by which additional (and more detailed) questions and instructions were incorporated into the IRS materials – is plainly and incontrovertibly relevant to the instant prosecution.  That materially important revisions were made to the Form 1023 is not a speculative or hypothetical matter, but a fact amply demonstrated in Defendants' Motion to Dismiss at 45-47 and the cross-references therein to the Appendix to Defendants' Motion to Dismiss.

The Government's argument that Defendants' requests involve going back "more than thirteen years after defendant Muntasser completed the Form 1023 application at issue in this case," see Ex. B at 2, is disingenuous in the extreme.  The Government, not Mr. Muntasser, has decided to go rummaging about in the history books in order to come up with something that can be regarded as (but is not) a remotely plausible basis for interrupting Mr. Muntasser's citizenship proceedings before Judge Zobel.  In short, the

---

[1] This argument is grounded in the Due Process Clause of the Fourteenth Amendment and the federal common law rule of lenity.

[2] Defendants have requested both DOT and IRS materials because it has been pointed out to them by an expert in the law of tax-exempt organizations that the Department of Treasury, which oversees the IRS, is responsible for some elements of the rulemaking and drafting process that have resulted in revisions to the Form 1023.

Government by its own actions in this prosecution has made the requested materials directly relevant to this case. Indeed, it is difficult to imagine a set of discovery requests that could be more relevant to this prosecution that the ones at issue here. This is not a fishing expedition. See Brady v. Maryland, 373 U.S. 83, 87 (1963) (requiring the Government to locate and disclose exculpatory material).

### Conclusion

For all of the above reasons Defendants respectfully urge this Court to order the Government to provide the requested discovery.

Respectfully submitted,

MUHAMMED MUBAYYID,                    EMADEDDIN Z. MUNTASSER
By his attorney,                      By his attorneys,


 /s/ Michael C. Andrews                 /s/ Malick W. Ghachem
Michael C. Andrews BBO# 546470)       Norman S. Zalkind (BBO# 538880)
21 Custom House Street                Elizabeth A. Lunt (BBO# 307700)
Boston, MA 02110                      Malick W. Ghachem (BBO#661018)
(617) 951-0072                        Zalkind, Rodriguez, Lunt & Duncan LLP
                                      65a Atlantic Ave.
                                      Boston, MA 02110

                                      Susan R. Estrich
                                      Robert Kingsley Professor of Law and
                                      Political Science
                                      Univ. of Southern California Law School
                                      University Park, MC-0071
                                      Los Angeles, CA 90089-0071

                                      Harvey Silverglate (BBO # 462640)
                                      607 Franklin St.
                                      Cambridge, MA 02139

Dated: January 4, 2007

7

# Zalkind, Rodriguez, Lunt & Duncan LLP

ATTORNEYS AT LAW

## 65a Atlantic Avenue, Boston, Massachusetts 02110

TELEPHONE (617) 742-6020

FAX (617) 742-3269

www.zrld.com

Norman S. Zalkind

Elizabeth A. Lunt

David Duncan
also member of PA Bar

Inga S. Bernstein

William B. Van Lonkhuyzen
also member of CA Bar

Monica Pastorok
also member of NY and CA Bars

Malick W. Ghachem

Of Counsel:
Barbara Equen Rodriguez

December 1, 2006

AUSA Stephanie Siegmann
U.S. Courthouse, Suite 9200
1 Courthouse Way
Boston, MA 02210

**BY ECF AND FAX TO: 617-748-3974**

Re: <u>U.S. v. Muhamed Mubayyid and Emadeddin Z. Muntasser</u> , No. 05-40026-FDS

Dear Ms. Siegmann,

We write with the following discovery requests, which were prompted by information that has come to our attention since the deadline for filing discovery letters in this case was reached. These requests concern exculpatory material that the Government is required to disclose under <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963). Request #10 seeks more legible copies of certain discovery material previously provided.

1. Please state the version and OMB number of the 1023 form that the Internal Revenue Service made available for public use for the fiscal year 1993.

2. Please state the version and OMB number for the 990 forms that the Internal Revenue Servide made available for public use for each of the fiscal years 1993 to 2005.

3. Please provide copies of any Department of Treasury (DOT) or Internal Revenue Service (IRS) memoranda, notes, emails, reports, correspondence, or other documents or communications relating to revisions made subsequent to September 1990 to Line 5 of Part II of the Form 1023 identified as Rev. 9-90, OMB No. 1545-0056.

4. Please provide copies of any and all DOT or IRS memoranda, notes, emails, reports,

correspondence, or other documents or communications relating to the revision process that gave rise to Line 1 of Part VII of the Form 1023 identified as Rev. 6-2006, OMB No. 1545-0056.

5.    Please provide copies of any and all DOT or IRS memoranda, notes, emails, reports, correspondence, or other documents or communications relating to the revision process that gave rise to Schedule G of the Form 1023 identified as Rev. 6-2006, OMB No. 1545-0056.

6.    Please provide copies of any and all DOT or IRS memoranda, notes, emails, reports, correspondence, or other documents or communications relating to the revision process that gave rise to that part of the Instructions identified as Rev. June 2006, Cat. No. 17132z, for Line 1 of Part VII of the Form 1023 identified as Rev. 6-2006, OMB No. 1545-0056.

7.    Please provide copies of any and all DOT or IRS memoranda, notes, emails, reports, correspondence, or other documents or communications relating to the revision process that gave rise to that part of the Instructions identified as Rev. June 2006, Cat. No. 17132z, for Schedule G of the Form 1023 identified as Rev. 6-2006, OMB No. 1545-0056.

8.    Please provide copies of any and all DOT or IRS memoranda, notes, emails, reports, correspondence, or other documents or communications relating to the revision process that gave rise to Line 15 of Part VIII of the Form 1023 identified as Rev. 6-2006, OMB No. 1545-0056.

9.    Please provide copies of any and all DOT or IRS memoranda, notes, emails, reports, correspondence, or other documents or communications relating to the revision process that gave rise to that part of the Instructions identified as Rev. June 2006, Cat. No. 17132z, for Line 15 of Part VIII of the Form 1023 identified as Rev. 6-2006, OMB No. 1545-0056.

10.    Please provide legible copies of the following previously provided discovery materials:

CI ELSUR 00602
CI ELSUR 00620 - CI ELSUR 00621
CI ELSUR 00595
CI ELSUR 00164
CI ELSUR 00691 - CI ELSUR 00692
CI ELSUR 00534 - CI ELSUR 00536
CI ELSUR 00688
CI ELSUR 00533
CI ELSUR 00678

CI ELSUR 00532
CI ELSUR 00529 - CI ELSUR 00531
CI ELSUR 00679
CI ELSUR 00537
CI ELSUR 00680 - CI ELSUR 00683
CI ELSUR 00524 - CI ELSUR 00526

**

For each of these supplemental discovery requests with which you intend to comply, please indicate the date by which you will furnish the requested discovery, in accordance with Local Rule 116.3(A). If you do not agree to provide the information or materials specified in a particular request, please provide a written statement of the basis for your position, in accordance with Local Rule 116.3(C).

Sincerely,

/s/ Michael C. Andrews
Michael C. Andrews
Attorney for Muhamed Mubayyid

Malick W. Ghachem
Attorney for Emadeddin Muntasser

3




**U.S. Department of Justice**

*Michael J. Sullivan*
*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

December 15, 2006

**Via Hand Delivery**

Michael C. Andrews, Esq.
21 Custom House
Boston, MA 02110

Malick W. Ghachem, Esq.
Zalkind, Rodriguez, Lunt & Duncan LLP
65a Atlantic Avenue
Boston, MA 02110

  Re: United States v. Muhamed Mubayyid and Emadeddin Z.
    Muntasser
    <u>Criminal No. 05-40026-FDS</u>

Dear Counsel:

  Pursuant to Local Rule 116.3(A), the government hereby
responds to the defendants' discovery requests of December 1,
2006 as follows:

1. This request constitutes an interrogatory request used in
civil discovery. There is no procedure under the Federal Rules
of Criminal Procedure for the propounding of interrogatories.
Without waiving this objection, the government will produce the
versions of the 1023 form available for public use for the fiscal
year 1993 when copies are located by the Internal Revenue
Service. Please note the government has already produced a copy
of the actual Form 1023 application defendant Muntasser completed
and filed for Care International, Inc., in June 1993.

2. This request constitutes an interrogatory request used in
civil discovery. There is no procedure under the Federal Rules
of Criminal Procedure for the propounding of interrogatories.
Without waiving this objection, enclosed as documents bates
labeled C.I. 940-1022 are the Form 990 returns made available by

December 15, 2006
Page 2

the IRS for fiscal years 1992-2005.

3.  The government objects to this request on the grounds of
relevance.  The government further objects to this request on the
grounds that it is overbroad and exceeds the scope of permissible
discovery under Fed. R. Crim. P. 16 and the Local Rules.
Accordingly, the government declines to comply with this request.

4-9.  The government objects to these requests on the grounds
that they are overbroad and seek information that is not relevant
to the pending charges alleged in the indictment.  These requests
seek internal memoranda, notes, reports, e-mail correspondence,
or other communications of the entire U.S. Department of Treasury
and Internal Revenue Service regarding changes made to the Form
1023 in 2006, more than thirteen years after defendant Muntasser
completed the Form 1023 application at issue in this case.  The
government further objects to this request on the grounds that
they exceed the scope of permissible discovery under Fed. R.
Crim. P. 16 and the Local Rules.  Accordingly, the government
declines to comply with these requests.

10.  The government disagrees with the defendants' implication
that the government has previously produced illegible copies of
certain summaries of recorded conversations.  These documents
were obtained from a different division of the Federal Bureau of
Investigation and the government believes it has produced the
most legible copies of the documents that exist.  Furthermore,
none of these documents will be used at trial as the actual
recordings involving either defendant have been previously
produced or will be produced shortly.  Similarly, verbatim
translations of the recorded conversations, which the government
intends to use at trial, have previously been produced or will be
produced shortly.

December 15, 2006
Page 3

    If you have any questions, please feel free to contact AUSA
Siegmann at (617) 748-3191 or AUSA Chakravarty at (617) 748-3658.

Very truly yours,

MICHAEL J. SULLIVAN
United States Attorney

By:

B. STEPHANIE SIEGMANN
ALOKE S. CHAKRAVARTY
Assistant U.S. Attorneys

Enclosures

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                           )
UNITED STATES OF AMERICA    )
                                           )
        v.                                 )          Crim. No. 05-40026-FDS
                                           )
MUHAMED MUBAYYID, and      )
EMADEDDIN Z. MUNTASSER,     )
                                           )
        Defendants.                   )
                                           )
_____)

## ORDER CONCERNING DISCOVERY

Upon Motion of Defendants for an order requiring the disclosure of discovery materials,

and for good cause shown, it is hereby ORDERED that Defendants' Motion for discovery, dated

January 4, 2007, is GRANTED.  It is further ORDERED that the Government disclose to

Defendants by no later than _____, 2007 the following materials:

1.      Copies of any Department of Treasury (DOT) or Internal Revenue Service (IRS)

memoranda, notes, emails, reports, correspondence, or other documents or communications

relating to revisions made subsequent to September 1990 to Line 5 of Part II of the Form 1023

identified as Rev. 9-90, OMB No. 1545-0056.

2.      Copies of any and all DOT or IRS memoranda, notes, emails, reports, correspondence, or

other documents or communications relating to the revision process that gave rise to Line 1 of

Part VII of the Form 1023 identified as Rev. 6-2006, OMB No. 1545-0056.

3.      Copies of any and all DOT or IRS memoranda, notes, emails, reports, correspondence, or

other documents or communications relating to the revision process that gave rise to Schedule G

of the Form 1023 identified as Rev. 6-2006, OMB No. 1545-0056.

4.      Copies of any and all DOT or IRS memoranda, notes, emails, reports, correspondence, or other documents or communications relating to the revision process that gave rise to that part of the Instructions identified as Rev. June 2006, Cat. No. 17132z, for Line 1 of Part VII of the Form 1023 identified as Rev. 6-2006, OMB No. 1545-0056.

5.      Copies of any and all DOT or IRS memoranda, notes, emails, reports, correspondence, or other documents relating to the revision process that gave rise to that part of the Instructions identified as Rev. June 2006, Cat. No. 17132z, for Schedule G of the Form 1023 identified as Rev. 6-2006, OMB No. 1545-0056.

6.      Copies of any and all DOT or IRS memoranda, notes, emails, reports, correspondence, or other documents or communications relating to the revision process that gave rise to Line 15 of Part VIII of the Form 1023 identified as Rev. 6-2006, OMB No. 1545-0056.

7.      Copies of any and all DOT or IRS memoranda, notes, emails, reports, correspondence, or other documents or communications relating to the revision process that gave rise to that part of the Instructions identified as Rev. June 2006, Cat. No. 17132z, for Line 15 of Part VIII of the Form 1023 identified as Rev. 6-2006, OMB No. 1545-0056.

SO ORDERED,

_____
Hon. Timothy Hillman
U.S. Magistrate Judge

Dated: _____, 2007

Form 1023 (Rev. 9-90)    Page 3

## Part II    Activities and Operational Information (Continued)

4. Give the following information about the organization's governing body:

a. Names, addresses, and titles of officers, directors, trustees, etc.

b. Annual Compensation

1. Emadeddin Z. Muntasser - 2 Kimball Ct., #109,
   (President)                Woburn, MA 01801          NIL

2. Munther Baara - 15 Leicester St., #Q, Brighton, MA
   (Treasurer)        02135

3. Ahmad Nawras - 56 Arlington St., Everett, MA 02149
   (Secretary)

Direc- 4. Afif Kadri - 15 Walbridge St., #27, Allston, MA 02134
tors: 5. Mohamad Akra - 784 Main St., #1, Cambridge, MA 02139-3573
(4-6) 6. Wessim Abu Yasin - 11 Hancock St., #60, Everett, MA 02149

c. Do any of the above persons serve as members of the governing body by reason of being public officials or being appointed by public officials? . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes  ☒ No
If "Yes," name those persons and explain the basis of their selection or appointment.

d. Are any members of the organization's governing body "disqualified persons" with respect to the organization (other than by reason of being a member of the governing body) or do any of the members have either a business or family relationship with "disqualified persons"? (See the specific instructions for line 4d.) . . . . ☐ Yes  ☒ No
If "Yes," explain.

5. Does the organization control or is it controlled by any other organization? . . . . . . . . . . . . . ☐ Yes  ☒ No
Is the organization the outgrowth of (or successor to) another organization, or does it have a special relationship with another organization by reason of interlocking directorates or other factors? . . . . . . . . . . . . ☐ Yes  ☒ No
If either of these questions is answered "Yes," explain.

6. Does or will the organization directly or indirectly engage in any of the following transactions with any political organization or other exempt organization (other than 501(c)(3) organizations): (a) grants; (b) purchases or sales of assets; (c) rental of facilities or equipment; (d) loans or loan guarantees; (e) reimbursement arrangements; (f) performance of services, membership, or fundraising solicitations; or (g) sharing of facilities, equipment, mailing lists or other assets, or paid employees? . . . . . . . . . . . . . . . . . . . ☐ Yes  ☒ No
If "Yes," explain fully and identify the other organizations involved.

7. Is the organization financially accountable to any other organization? . . . . . . . . . . . . . . . ☐ Yes  ☒ No
If "Yes," explain and identify the other organization. Include details concerning accountability or attach copies of reports if any have been submitted.

US-00828

00036

Form 1023 (Rev. 6-2006)     Name:                                    EIN:        –                    Page **5**

**Part V**     **Compensation and Other Financial Arrangements With Your Officers, Directors, Trustees, Employees, and Independent Contractors** *(Continued)*

   **b**  Describe any written or oral arrangements you made or intend to make.

   **c**  Identify with whom you have or will have such arrangements.

   **d**  Explain how the terms are or will be negotiated at arm's length.

   **e**  Explain how you determine or will determine you pay no more than fair market value or that you are paid at least fair market value.

   **f**  Attach a copy of any signed leases, contracts, loans, or other agreements relating to such arrangements.

**Part VI**     **Your Members and Other Individuals and Organizations That Receive Benefits From You**

The following "Yes" or "No" questions relate to goods, services, and funds you provide to individuals and organizations as part of your activities. Your answers should pertain to *past, present,* and *planned* activities. (See instructions.)

| | | | |
|---|---|---|---|
| **1a** | In carrying out your exempt purposes, do you provide goods, services, or funds to individuals? If "Yes," describe each program that provides goods, services, or funds to individuals. | ☐ Yes | ☐ No |
| **b** | In carrying out your exempt purposes, do you provide goods, services, or funds to organizations? If "Yes," describe each program that provides goods, services, or funds to organizations. | ☐ Yes | ☐ No |
| **2** | Do any of your programs limit the provision of goods, services, or funds to a specific individual or group of specific individuals? For example, answer "Yes," if goods, services, or funds are provided only for a particular individual, your members, individuals who work for a particular employer, or graduates of a particular school. If "Yes," explain the limitation and how recipients are selected for each program. | ☐ Yes | ☐ No |
| **3** | Do any individuals who receive goods, services, or funds through your programs have a family or business relationship with any officer, director, trustee, or with any of your highest compensated employees or highest compensated independent contractors listed in Part V, lines 1a, 1b, and 1c? If "Yes," explain how these related individuals are eligible for goods, services, or funds. | ☐ Yes | ☐ No |

**Part VII**     **Your History**

The following "Yes" or "No" questions relate to your history. (See instructions.)

| | | | |
|---|---|---|---|
| **1** | Are you a **successor** to another organization? Answer "Yes," if you have taken or will take over the activities of another organization; you took over 25% or more of the fair market value of the net assets of another organization; or you were established upon the conversion of an organization from for-profit to non-profit status. If "Yes," complete Schedule G. | ☐ Yes | ☐ No |
| **2** | Are you submitting this application more than 27 months after the end of the month in which you were legally formed? If "Yes," complete Schedule E. | ☐ Yes | ☐ No |

**Part VIII**     **Your Specific Activities**

The following "Yes" or "No" questions relate to specific activities that you may conduct. Check the appropriate box. Your answers should pertain to *past, present,* and *planned* activities. (See instructions.)

| | | | |
|---|---|---|---|
| **1** | Do you support or oppose candidates in **political campaigns** in any way? If "Yes," explain. | ☐ Yes | ☐ No |
| **2a** | Do you attempt to **influence legislation?** If "Yes," explain how you attempt to influence legislation and complete line 2b. If "No," go to line 3a. | ☐ Yes | ☐ No |
| **b** | Have you made or are you making an **election** to have your legislative activities measured by expenditures by filing Form 5768? If "Yes," attach a copy of the Form 5768 that was already filed or attach a completed Form 5768 that you are filing with this application. If "No," describe whether your attempts to influence legislation are a substantial part of your activities. Include the time and money spent on your attempts to influence legislation as compared to your total activities. | ☐ Yes | ☐ No |
| **3a** | Do you or will you operate bingo or **gaming** activities? If "Yes," describe who conducts them, and list all revenue received or expected to be received and expenses paid or expected to be paid in operating these activities. **Revenue and expenses** should be provided for the time periods specified in Part IX, Financial Data. | ☐ Yes | ☐ No |
| **b** | Do you or will you enter into contracts or other agreements with individuals or organizations to conduct bingo or gaming for you? If "Yes," describe any written or oral arrangements that you made or intend to make, identify with whom you have or will have such arrangements, explain how the terms are or will be negotiated at arm's length, and explain how you determine or will determine you pay no more than fair market value or you will be paid at least fair market value. Attach copies or any written contracts or other agreements relating to such arrangements. | ☐ Yes | ☐ No |
| **c** | List the states and local jurisdictions, including Indian Reservations, in which you conduct or will conduct gaming or bingo. | | |

00838

taxable and non-taxable, should be documented and copies retained in your permanent records.

**Line 4g.** "Reasonable compensation" is the amount that would ordinarily be paid for like services by like organizations under like circumstances as of the date the compensation arrangement is made. Establishing and documenting reasonable compensation is important because excessive compensation may result in excise taxes on both the individual and the organization. In addition, this may jeopardize the organization's tax exemption.

**Line 5a.** A "conflict of interest" arises when a person in a position of authority over an organization, such as a director, officer, or manager, may benefit personally from a decision he or she could make. A *Sample Conflict of Interest Policy* is included as *Appendix A*.

Adoption of a conflict of interest policy is not required to obtain tax-exempt status. However, by adopting the sample policy or a similar policy, you will be choosing to put in place procedures that will help you avoid the possibility that those in positions of authority over you may receive an inappropriate benefit.

**Line 6a.** A "fixed payment" means a payment that is either a set dollar amount or fixed through a specific formula where the amount does not depend on discretion. For example, a base salary of $200,000 that is adjusted annually based on the increase in the Consumer Price Index is a fixed payment.

A "non-fixed payment" means a payment that depends on discretion. For example, a bonus of up to $100,000 that is based on an evaluation of performance by the governing board is a non-fixed payment because the governing body has discretion over whether the bonus is paid and the amount of the bonus.

**Line 7a.** Do not include purchases of goods and services in your normal course of operations that are available to the general public under similar terms and conditions.

*Arm's length.* An arm's length standard exists where the parties have an adverse (or opposing) interest. For example, a seller wants to sell his goods at the highest possible price, while a buyer wants to buy at the lowest possible price. These are adverse interests.

In negotiating with a person, an adverse interest is assumed if that person is otherwise unrelated to you in the sense of not being in a position to exercise substantial influence over you or your affairs. If the person is in a position to exercise substantial influence over your affairs, then an arm's length standard requires additional precautions to eliminate the effect of the relationship.

Using a conflict of interest policy, information about comparable transactions between unrelated parties, and reliable methods for evaluating the transaction, are examples of precautions

that would help make the negotiation process equivalent to one between unrelated persons.

*Fair market value.* This is the price at which property or the right to use property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy, sell, or transfer property or the right to use property, and both having reasonable knowledge of relevant facts.

**Line 7b.** Do not include sales of goods and services in your normal course of operations that are available to the general public under similar terms and conditions.

**Line 9a.** Answer "Yes" if any of your officers, directors, or trustees:
• Is an officer, director, or trustee in another organization (other than a section 501(c)(3) organization) that has a lease, contract, loan, or other agreement with you
• Possess more than a 35% ownership interest in any organization that has a lease, contract, loan, or other agreement with you. For example, you would answer "Yes" if one of your directors were an officer for a section 501(c)(4) organization with whom you had a lease for office space. You would also answer "Yes" if one of your directors owns more than 35% of the voting stock of a corporation to which you made a loan.

## Part VI. Your Members and Other Individuals, and Organizations That Receive Benefits From You

**Line 1a. Benefits to individuals.** Describe any programs where you provide goods, services, or funds to individuals. For example, describe programs by which you provide food to the homeless, employment counseling to senior citizens, or grants to victims of a disaster.

**Line 1b. Benefits to organizations.** Describe any programs where you provide goods, services, or funds to organizations. For example, programs where you provide equipment, accounting assistance, or grants to other organizations.

**Line 2.** For programs that are available only for members, include a sample membership application and a schedule of membership dues. Also, describe any different membership levels and the benefits each membership level receives.

**Line 3.** Describe any business or family relationship between individuals who receive goods, services, or funds through your programs with any officer, director, trustee, or with any of the five-highest compensated employees or independent contractors listed in *Part V*, lines 1a, 1b, or 1c.

## Part VII. Your History

**Line 1.** You are a "successor" if you have:
• Substantially taken over all of the assets or activities of another organization,
• Been converted or merged from another organization, or
• Installed the same officers, directors, or trustees as another organization that no longer exists and that had purpose(s) similar to your purpose(s).

 *The predecessor organization may be or may not have been a tax-exempt or non-exempt organization.*

## Part VIII. Your Specific Activities

**Line 1.** You participate in a political campaign if you promote or oppose the candidacy of an individual for public office. Your explanation should include representative copies of your political literature, brochures, pamphlets, etc. Candidate debates and nonpartisan voter education are permitted.

 *Organizations described in section 501(c)(3) are prohibited from supporting or opposing candidates for public office in any political campaign. If you answer "Yes," you are not qualified for tax exemption under section 501(c)(3) and should reconsider whether the filing of application Form 1023 is appropriate for your organization. See Publication 557 for a description of other Internal Revenue Code sections under which you may qualify.*

**Line 2a.** You are attempting to "influence legislation" if you directly contact or urge the public to contact members of a legislative body for the purpose of proposing, supporting, or opposing legislation. You are also attempting to influence legislation if you advocate the adoption or rejection of legislation. If you answer "Yes," your explanation should include the percentage of your total time and total funds spent on such legislative activities. Also, submit representative copies of your legislative literature, brochures, pamphlets, etc.

Organizations described in section 501(c)(3) are prohibited from engaging in a substantial amount of legislative activities. Whether you are engaged in substantial legislative activities depends on all of the facts and circumstances.

**Line 2b.** By filing Form 5768 your legislative activities will be measured solely by expenditure limits under section 501(h) rather than by whether legislative activity is considered substantial. Form 5768 is included in Package 1023 for your convenience. It describes the types of organizations that are eligible to make an election. For a discussion of the requirements of section 501(h), see Publication 557. If you are an organization that elects to use

00871

Form 1023 (Rev. 6-2006)       Name:                                      EIN:        –              Page **8**

| **Part VIII** | **Your Specific Activities** *(Continued)* | | |
|---|---|---|---|
| 15 | Do you have a **close connection** with any organizations? If "Yes," explain. | ☐ Yes | ☐ No |
| 16 | Are you applying for exemption as a **cooperative hospital service organization** under section 501(e)? If "Yes," explain. | ☐ Yes | ☐ No |
| 17 | Are you applying for exemption as a **cooperative service organization of operating educational organizations** under section 501(f)? If "Yes," explain. | ☐ Yes | ☐ No |
| 18 | Are you applying for exemption as a **charitable risk pool** under section 501(n)? If "Yes," explain. | ☐ Yes | ☐ No |
| 19 | Do you or will you operate a **school**? If "Yes," complete Schedule B. Answer "Yes," whether you operate a school as your main function or as a secondary activity. | ☐ Yes | ☐ No |
| 20 | Is your main function to provide **hospital** or **medical care**? If "Yes," complete Schedule C. | ☐ Yes | ☐ No |
| 21 | Do you or will you provide **low-income housing** or housing for the **elderly** or **handicapped**? If "Yes," complete Schedule F. | ☐ Yes | ☐ No |
| 22 | Do you or will you provide scholarships, fellowships, educational loans, or other educational grants to individuals, including grants for travel, study, or other similar purposes? If "Yes," complete Schedule H. | ☐ Yes | ☐ No |

**Note: Private foundations** may use Schedule H to request advance approval of individual grant procedures.

00841

• You control the recipient organization or it controls you through common officers, directors, or trustees, or through authority to approve budgets or expenditures.
• You and the recipient organization were created at approximately the same time and by the same persons.
• You and the recipient organization operate in a coordinated manner with respect to facilities, programs, employees, or other activities.
• Persons who exercise substantial influence over you also exercise substantial influence over the other organization.

**Line 14a.** Answer "Yes" if you make grants, loans, or other distributions, such as goods, to a foreign organization. For purposes of completing this application, a domestic organization is one that is formed under the laws of the United States, its territories and possessions, federally recognized Indian Tribal and Alaska Native governments (including political subdivisions), or the District of Columbia. A "foreign organization" is one that is not a domestic organization.

A list of federally recognized Indian tribes is provided in Rev. Proc. 2002-64, 2002-2 C.B. 717. A list of entities that are treated as political subdivisions of Indian tribal governments is provided in Rev. Proc. 86-17, 1986-1 C.B. 550 and Rev. Proc. 84-36, 1984-1 C.B. 510.

**Line 15.** A "close connection" between you and another organization includes the following situations:
• You control the organization or it controls you through common officers, directors, or trustees, or through authority to approve budgets or expenditures.
• You and the organization were created at approximately the same time and by the same persons.

For example, you were formed within months of the time that a social welfare organization and a political action committee were established by the same persons who were instrumental in your formation.
• You and the organization operate in a coordinated manner with respect to facilities, programs, employees, or other activities.

For example, you share rental expenses for office space and employees with a for-profit corporation.
• Persons who exercise substantial influence over you also exercise substantial influence over the other organization and (1) you either conduct activities in common or (2) you have a financial relationship.

For example, a voting member of your governing body is also a voting member of the governing body of a business league with which you intend to cooperate in planning an advertising campaign that will inform the public about the benefits of a particular program.

For example, a voting member of your governing body is also a voting member

of the governing body of a business league that has made a loan to you.

**Line 16.** A "cooperative hospital service organization" described in section 501(e) is organized and operated on a cooperative basis to provide its section 501(c)(3) hospital members one or more of the following activities.
• Data processing.
• Purchasing (including purchasing insurance on a group basis).
• Warehousing.
• Billing and collection (including purchasing patron accounts receivable on a recourse basis).
• Food.
• Clinical.
• Industrial engineering
• Laboratory.
• Printing.
• Communications.
• Record center.
• Personnel (including selecting, testing, training, and educating personnel) services.

A cooperative hospital service organization must also meet certain other requirements specified in section 501(e). For additional information, see Publication 557.

**Line 17.** A cooperative service organization of operating educational organizations described in section 501(f) is organized and operated to provide investment services to its members. Those members must be organizations described in section 170(b)(1)(A)(ii) or (iv), and either tax exempt under section 501(a) or whose income is excluded from taxation under section 115(a).

See Publication 557 for additional information.

**Line 18.** A "charitable risk pool" described in section 501(n) is organized and operated to pool insurable risks of its section 501(c)(3) members (other than risks related to medical malpractice). A section 501(n) organization must be organized under state law provisions authorizing risk pooling arrangements for charitable organizations and also meet certain other requirements provided by section 501(n).

See Publication 557 for additional information.

**Line 19.** "A school" is an educational organization whose primary function is the presentation of formal instruction and which normally maintains a regular faculty and curriculum and normally has a regularly enrolled body of pupils or students in attendance at the place where its educational activities are regularly carried on. A school may include a:
• Primary, secondary, preparatory, or high school.
• College or university.
• Trade or technical school.
• Nursery or pre-school.
• School that you operate as an activity, such as a school that is operated as an

activity of a museum, historical society, or church.

If you are a nursery or pre-school that meets the description of a school, you would answer "Yes" to line 19 and complete *Schedule B*. You would also answer "No" to *Part VIII*, line 9a.

If you are a nursery or pre-school that does not meet the description of a school, you would answer "No" to line 19. You would answer "Yes" to *Part VIII*, line 9a, if you are applying for exemption as a childcare organization.

See Publication 557 for additional information.

**Line 20.** "Hospital or medical care" includes the treatment of any physical or mental disability or condition, whether as an inpatient or outpatient. A hospital includes:
• Hospitals and rehabilitation institutions, outpatient clinics, or community mental health or drug treatment centers if the principal purpose or function is the providing of medical or hospital care or medical education or research.
• Medical research organizations, if the principal purpose or function is the continuous active conduct of medical research in conjunction with a hospital.

See Publication 557 for additional information.

**Line 21.** "Low-income housing" refers to rental or ownership housing provided to persons based on financial need. "Elderly housing" refers to rental or ownership housing provided to persons based on age, including retirement, assisted-living, independent living, continuous care, and life care arrangements. "Handicapped housing" refers to rental or ownership housing provided to persons based on physical or mental disabilities, including nursing homes.

If you are a skilled nursing facility, you should also complete *Schedule C*.

**Line 22.** Answer "Yes" if you pay monies to an individual as a scholarship, fellowship, or educational loan, for travel, study, or other similar purposes. Also answer "Yes" if you pay such amounts on behalf of an individual to a school or a tuition or educational savings program

Travel, study, or other similar purposes include payments to enhance a literary, artistic, musical, scientific, teaching or other similar capacity, skill, or talent of the individual recipient. For example amounts paid to:
• Vocational high school students to be used to purchase basic tools.
• Teachers to induce them to teach in an economically depressed, public school system.
• A scientific researcher to underwrite that individual's research project.

Educational grants do not include amounts you pay to an individual as compensation, such as payments made to a consultant for personal services or to produce a report for you.

00873

Form 1023 (Rev. 6-2006)    Name:                                    EIN.    −        Page **24**

## Schedule G. Successors to Other Organizations

**1a** Are you a **successor** to a **for-profit organization**? If "Yes," explain the relationship with the **predecessor** organization that resulted in your creation and complete line 1b. ☐ Yes ☐ No

**b** Explain why you took over the activities or assets of a for-profit organization or converted from for-profit to nonprofit status.

**2a** Are you a successor to an organization other than a for-profit organization? Answer "Yes" if you have taken or will take over the activities of another organization; or you have taken or will take over 25% or more of the fair market value of the net assets of another organization. If "Yes," explain the relationship with the other organization that resulted in your creation. ☐ Yes ☐ No

**b** Provide the tax status of the predecessor organization.

**c** Did you or did an organization to which you are a successor previously apply for tax exemption under section 501(c)(3) or any other section of the Code? If "Yes," explain how the application was resolved. ☐ Yes ☐ No

**d** Was your prior tax exemption or the tax exemption of an organization to which you are a successor revoked or suspended? If "Yes," explain. Include a description of the corrections you made to re-establish tax exemption. ☐ Yes ☐ No

**e** Explain why you took over the activities or assets of another organization.

**3** Provide the name, last address, and EIN of the predecessor organization and describe its activities.
Name: _____ EIN: __−_____
Address: _____

**4** List the owners, partners, principal stockholders, officers, and governing board members of the predecessor organization. Attach a separate sheet if additional space is needed.

| Name | Address | Share/Interest (If a for-profit) |
|------|---------|----------------------------------|
|      |         |                                  |
|      |         |                                  |
|      |         |                                  |
|      |         |                                  |
|      |         |                                  |

**5** Do or will any of the persons listed in line 4, maintain a working relationship with you? If "Yes," describe the relationship in detail and include copies of any agreements with any of these persons or with any for-profit organizations in which these persons own more than a 35% interest. ☐ Yes ☐ No

**6a** Were any assets transferred, whether by gift or sale, from the predecessor organization to you? If "Yes," provide a list of assets, indicate the value of each asset, explain how the value was determined, and attach an appraisal, if available. For each asset listed, also explain if the transfer was by gift, sale, or combination thereof. ☐ Yes ☐ No

**b** Were any restrictions placed on the use or sale of the assets? If "Yes," explain the restrictions. ☐ Yes ☐ No

**c** Provide a copy of the agreement(s) of sale or transfer.

**7** Were any debts or liabilities transferred from the predecessor for-profit organization to you? If "Yes," provide a list of the debts or liabilities that were transferred to you, indicating the amount of each, how the amount was determined, and the name of the person to whom the debt or liability is owed. ☐ Yes ☐ No

**8** Will you lease or rent any property or equipment previously owned or used by the predecessor for-profit organization, or from persons listed in line 4, or from for-profit organizations in which these persons own more than a 35% interest? If "Yes," submit a copy of the lease or rental agreement(s). Indicate how the lease or rental value of the property or equipment was determined. ☐ Yes ☐ No

**9** Will you lease or rent property or equipment to persons listed in line 4, or to for-profit organizations in which these persons own more than a 35% interest? If "Yes," attach a list of the property or equipment, provide a copy of the lease or rental agreement(s), and indicate how the lease or rental value of the property or equipment was determined. ☐ Yes ☐ No

Form **1023** (Rev. 6-2006)

00857

in detail the reasons for filing late based on the factors listed above. Do not complete the rest of this schedule.

Answer "No" if you do not wish to request an extension under these provisions and go to line 6a.

**Line 6a.** By checking "Yes," and completing *Part X*, line 6a, you are eligible for an advance ruling to be classified as a public charity from the postmark date of your application.

Do not complete line 6a, 6b, or 7 if you checked the boxes in *Part X*, lines 5a, 5b, 5c, 5d, or 5e.

**Line 6b.** If you anticipate significant changes in your sources of support in the future, answer "Yes," and we will base your qualification for an advance ruling on the financial information you provide in line 7. If you check "Yes," complete the financial information requested in line 7 of Schedule E.

If you answer "No," we will base your qualification for an advance ruling on the financial information you provided in *Part IX*. If you answer "No," do not complete line 7 of *Schedule E*.

**Line 7.** Complete projected budgets of income for the first two full tax years after the date you mailed your Form 1023. See the specific instructions for *Part IX-A, Statement of Revenues and Expenses*, lines 1 through 13, if you need guidance on what to include in the various categories.

**Line 8.** Check the box if you wish to request exemption under section 501(c)(4) for the period before the postmark date of your Form 1023. If you check the box, attach page 1 of Form 1024. Form 1024 is available on the IRS website at *www.irs.gov* or by calling 1-800-829-3676.

If you qualify for exemption under section 501(c)(4), you will not be liable for income tax returns as a taxable entity, but you will need to file any exempt organization returns for which you may be responsible. Contributions to section 501(c)(4) organizations are generally not deductible by donors.

Do not check the box if you do not wish to be tax exempt under section 501(c)(4) for the period before the postmark date of your Form 1023. If you do not request and obtain exemption under section 501(c)(4) for the period before the postmark date of your Form 1023, you may be liable for income tax returns as a taxable entity for that time period.

## Schedule F. Homes for the Elderly or Handicapped and Low-Income Housing

**General Information:**
Homes for the elderly or handicapped are eligible for tax exemption as charitable

organizations only if they meet the special needs of the elderly or handicapped for residential facilities designed to meet their physical, social, recreation, health care, and transportation needs. Homes for the elderly or handicapped must also be within the financial reach of a significant segment of the elderly or handicapped in the community. Once admitted to the elderly or handicapped housing facility, the organization must have an established policy to maintain them as residents, to the extent possible, even if the residents subsequently become unable to pay the monthly charges.

Low-income housing must provide affordable housing for a significant segment of individuals in your community with low incomes. Your housing may serve a combination of purposes, such as for poor, frail, and elderly persons.

### Section I. General Information about Your Housing

**Line 1.** The type of housing you provide should include both a description of the type of facility provided, such as apartment complex, condominium, cooperative, or private residence, and the nature of your facility, such as assisted-living facility, continuing-care facility, nursing home, low-income facility, etc.

**Line 7.** See the instructions for *Part V*, line 7a, for a description of the terms arm's length and fair market value.

**Line 8.** Answer "Yes" if you manage or intend to manage your programs through your own employees or by using volunteers. Answer "No" if you engage or intend to engage a separate organization or independent contractor. Make sure your answer is consistent with the information provided in *Part VIII*, line 7b.

**Line 9.** Government programs include federal, state, or local government programs.

### Section II. Homes for the Elderly or Handicapped

**Line 2a.** Answer "Yes" if you charge a one-time fee for admission to your facility.

**Line 2b.** Answer "Yes" if you charge daily, weekly, monthly, or annual fees or maintenance charges.

**Line 2c.** A "community" refers to the area that will be served by your facility. For example, a community may be a local area or a region.

**Line 3a.** Describe what happens to individuals if they become unable to pay your regular charges. For example, you may have a policy whereby you have a reserve fund for maintaining residents who are having trouble in paying their regular charges. You may also have a

policy of keeping residents who are having trouble in paying their regular charges in place for a period of time to permit them to find alternative housing. Include a copy of any printed materials that informs the public about your policy.

**Line 3b.** Describe any arrangements you have or expect to have with welfare agencies, sponsoring organizations, or others to assist residents who become unable to afford to remain residents.

**Line 4.** Describe how you provide for the health care needs of residents, including the services provided. This can include providing for the activities of daily living of residents at your facilities and transporting residents to other facilities for medical services.

**Line 5.** Describe how living units and common areas are designed to meet the physical needs of residents (such as grab bars in bathrooms, wide doorways and hallways, design of kitchens and bathrooms, etc.). Also, include information about facilities and programs designed to meet some combination of physical, emotional, recreational, social, religious, and similar needs of residents.

### Section III. Low-Income Housing

**Line 2.** Answer "Yes" if you charge daily, weekly, monthly, or annual fees or maintenance charges.

## Schedule G. Successors to Other Organizations

**General Information:**
You should complete this schedule as a successor organization if any of the following situations pertain to you.
• You have taken or will take over the activities that were previously conducted by another.
• You have taken or will take over 25 percent or more of the fair market value of the net assets of another organization.
• You were established upon the conversion of an organization from for-profit to non-profit status.

The other organization is the predecessor organization. You should complete this schedule regardless of whether the predecessor (other organization) was exempt or not exempt from federal income tax.

**Line 1a.** For purposes of this schedule, a "for-profit" organization is one in which persons are permitted to have an ownership or partnership interest, such as corporate stock. It includes sole proprietorships, corporations, and other entities that provide for ownership interests.

-22-

Instructions for Form 1023

**00884**