UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                                     )<br>)<br>MUHAMED MUBAYYID, and            )<br>EMADEDDIN Z. MUNTASSER,         )<br>)<br>)<br>Defendants.                              ) | Crim. No. 05-40026-FDS |

**GOVERNMENT'S MOTION FOR LEAVE TO FILE SURREPLY TO DEFENDANT'S
MOTION TO DISMISS**

The United States of America hereby moves, pursuant to Local Rules 7.1(b)(3), for leave to file a Surreply to the Defendant's Motion to Dismiss.

As reasons therefore, the government states that the Defendant's Reply to the Government's Opposition to the Motion to Dismiss raised issues and new arguments not previously discussed. The Government's brief Surreply is being submitted to assist the Court in its analysis of the constitutional and other complex issues involved in the Motion to Dismiss. A copy of the document is being attached to this motion. Wherefore, the Government respectfully requests that leave to file a Surreply be granted.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:     /s/ Aloke Chakravarty
        ALOKE CHAKRAVARTY
        B. STEPHANIE SIEGMANN
        Assistant U.S. Attorneys

Date: January 10, 2007

Certificate of Service

    I do hereby certify that a copy of foregoing motion was served upon the counsel of record for the defendants by electronic notice on this 10th day of January 2007.

                                      /s/ Aloke Chakravarty
                                      Aloke Chakravarty
                                      Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>MUHAMED MUBAYYID, and )<br>EMADEDDIN Z. MUNTASSER, )<br>)<br>)<br>Defendants. ) | Crim. No. 05-40026-FDS<br>Leave to file granted on \_\_\_\_\_ |

## GOVERNMENT'S SURREPLY TO DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS

### INTRODUCTION

The United States, by and through its attorney, Michael J. Sullivan, the United States Attorney for the District of Massachusetts, and Aloke Chakravarty and B. Stephanie Siegmann, Assistant United States Attorneys, hereby responds to the Defendants' Reply to the Government's Opposition to Motion to Dismiss (the "Reply").

In general, all of the defendants' arguments are based on the false premise that it was constitutionally improper to require the defendants to disclose that Care International, Inc. ("Care") was planning (and engaging in activities designed) to support the international mujahideen (holy warriors) between 1993 and 2003. Accordingly, the defendants argue, the entire indictment is unconstitutional on First Amendment grounds. This conclusion is fundamentally flawed. The defendants are not being prosecuted for their religious beliefs. Nor are they being prosecuting for merely advocating for the mujahideen. Rather, they are being prosecuted for lying to and concealing information from the government. The motion to dismiss should therefore be denied.

### ARGUMENT

I.  **The IRS' Tax Exemption Analysis of Care's Activities Did Not Infringe Upon the Defendants' Free Exercise rights.**

The defendants boldly declare that they had an "absolute constitutional right" to lie to the IRS because the IRS could not inquire about the defendants' ideology or religious affiliation, matters which the defendants contend are protected under the Constitution. See Defendant's Reply at 8-9. This proposition is absurd and demonstrates the defendants' continuing efforts to recast a tax fraud case as an attack on and condemnation of their political and religious beliefs. Regardless of their beliefs, which are not material to this prosecution, the defendants simply had no right, constitutional or otherwise, to conceal the activities of the organization in order to obtain a tax benefit.

Indeed, the IRS did not even ask the defendants about the organization's ideology or religious affiliation.[1]  Moreover**,** the IRS asks these same neutral questions of all applicants for tax exempt status under 26 U.S.C. § 501(c)(3). See 26 C.F.R. § 1.501(c)(3)-1(b)(1)(v)(requiring submission of detailed statement of past, present, and proposed activities.)  The defendants

---

[1]The questions on the Form 1023 ask:
1.  Provide a detailed narrative description of all the activities of the organization – past, present, and planned. . . . [including], as a minimum, the following: (a) a detailed description of the activity including its purpose; (b) when the activity was or will be initiated; and (c) where and by whom the activity will be conducted[;]
2.  Where are or will be the organization's sources of financial support? . . .
3.  Describe the organization's fundraising program, both actual and planned, and explain to what extent it has been put into effect. Include details of fundraising activities such as selective mailings, formation of fundraising committees, use of volunteers or professional fundraisers, etc. Attach representative copies of solicitations for financial support. . . .
5.  Is the organization the outgrowth of (or successor to) another organization, or does it have a special relationship with another organization by reason of interlocking directorates or other factors?

See Defendants' Appendix at 35. IRS Form 1023, Part II.

suggest that what is material to the IRS' tax determination process necessarily offends the Constitution because it would entail some degree of judgment as to whether the defendants' political and religious beliefs were acceptable. See Reply at 8 n. 8.  To the contrary, the IRS' analysis was based solely on whether the described activities were exclusively charitable, not illegal, and in accordance with public policy.  See Bob Jones University v. United States, 461 U.S. 574, 586 (1983).

Committing fraud upon the government is not a protected activity.  Similarly, a conspiracy to defraud the government is not constitutionally protected even if the charged overt acts incidentally include the defendants' speech, or are inspired by the defendants' interpretation of their religion.[2]  The Constitution protects, and this prosecution does not seek to punish, the pure advocacy of armed conflict abroad.  The defendants are lawfully permitted to engage in such activities, even if it is contrary to public policy.  However, the defendants are not entitled to a tax-exempt status in order to support, expend funds, or solicit money on behalf of combatants, because such activities are simply not charitable.  Nor is the federal government required to subsidize such activities through the grant of a tax exemption.

Even if the government's inquiry offended the First Amendment, which it did not, the defendants still could not elect to lie to the government without repercussion. See Dennis v. United States, 384 U.S. 855, 867 (1966)(holding that defendant who engages in "self-help ...

---

[2] See United States v. Lanier, 920 F.2d 887, 893 (11th Cir. 1991)("an overt act need not be criminal, and may indeed by otherwise innocent"); United States v. Donner, 497 F.2d 184, 192 (7th Cir. 1974)(holding constitutionally protected speech can constitute an overt act); United States v. Al-Arian, 308 F.Supp.2d 1322, 1342 ("The reason that an overt act can include even protected speech is that it is the agreement that is punishable in a conspiracy charge and not the overt act itself.")

may not escape the consequences by urging that his conduct be excused because the [requirements] which he sought to evade [are] unconstitutional" or unauthorized by statute or regulation). This is especially the case, since the defendants voluntarily chose to seek a tax exempt status and they were not compelled to do so. Rumsfeld v. Forum for Academic and Institutional Rights, Inc. ("FAIR"), 126 S.Ct. 1297, 1307 (2006).

Similarly, whether the IRS *could have* legally denied Care its application for tax exempt status based on the defendants' statements is irrelevant to whether the defendants made material misrepresentations or concealed material information from the IRS, so long as it appears that the IRS has colorable authority to take such an action.[3] The crime occurs through their deception, not in the merits of their tax-exemption application.[4] In short, tax-exemption applicants or officers of applicant organizations such as the defendants just cannot take matters into their own hands and second-guess the IRS' function of determining what is important to the ascertainment of whether an applicant qualifies for a tax benefit. See Dennis, 384 U.S. at 867. Furthermore,

---

[3] See Bryson v. United States, 396 U.S. 64, 71 (1969)("A statutory basis for an agency's request for information provides jurisdiction enough to punish fraudulent statements under §1001"); United States v. Barra, 149 F.2d 489 (2nd Cir. 1945)(affirming §1001 conviction based on failure to disclose membership in Nazi Party on a form which he claimed was invalid); United States v. Holroyd, 732 F.2d 1122, 1127 (2nd Cir. 1984)(26 U.S.C. §7206 case reversing dismissal of false statement counts of indictment because revenue officer's authority to rely on the form was irrelevant to defendant's lie); United States v. Parten, 462 F.2d 430, 432 (5th Cir. 1972)(affirming §1001 conviction even if Customs service had no right to require defendants to execute form on which they lied).

[4] Regardless of whether the IRS would have in fact denied Care's application, which the evidence will show it would have, the Government need only prove that the concealed information could affect the IRS' determination. See e.g. United States v. Knox, 396 U.S. 77, 78-80 (1969)(reversing dismissal of section 1001 indictment despite argument that statute requiring submission of tax form to IRS was unconstitutional).

individuals or organizations have a mechanism to appeal an adverse decision by the IRS.[5]

Neither does the "unconstitutional conditions" doctrine prevent the IRS from its section 501(c)(3) inquiry.  Government benefits are routinely conferred upon condition that the applicant for the benefit give up a constitutional right.  See Rust v. Sullivan, 500 U.S. 173, 196-199 (1991)(reasonably conditioning employment on restrictions on freedom of expression).   The Supreme Court has squarely addressed the issue of whether a charity can abuse its section 501(c)(3) status and still be permitted to invoke the "unconstitutional conditions" doctrine for relief.  The answer is unequivocally that it cannot.  See Regan v. Taxation with Representation of Washington, 461 U.S. 540, 544-545 (1983)(upholding Congress' refusal to subsidize the lobbying activities of tax-exempt charitable organizations by prohibiting use of such contributions to support their lobbying).  This is the case even if the charity abuses this status exclusively through its advocacy.  Id.

Contrary to the defendants' suggestion, even if Care were being prosecuted for merely advocating support for overseas armed combat, which it is not, Care would not be entitled to a tax-exemption because these activities are not charitable.  Accordingly, the IRS would not have relied on any alleged unconstitutional restriction as the basis of the denial.  See Dolan v. City of Tigard, 512 U.S. 374, 391 (1994).  The current Supreme Court in Rumsfeld v. FAIR also made clear that those who are free to decline a government benefit conditioned on certain conduct

---

[5]Even if the taxpayer disagrees with the denial of an exemption, the Tax Court has admonished that a taxpayer does not "have the right to refuse to comply with the law, even though the policies of the Federal Government ... may not accord with the dictates of his conscience or religion." Muste v. Commissioner, 35 T.C. 913, 915 (1961); see also Hernandez v. Commissioner, 490 U.S. 680 (1989)(holding tax laws need not accommodate myriad exceptions flowing from a wide variety of religious beliefs).

cannot claim that their activities were unconstitutionally restricted. Id. at 1305-1307 (citations omitted)(explaining also that federal subsidization cannot be unconstitutional if a restriction on the behavior could be constitutionally imposed directly). When the government appropriates public funds or subsidizes a program, the government is entitled to define the limits of that program.[6] That the defendants are not charged with actually providing the money they solicited to the mujahideen is not relevant to this analysis; the point is that the IRS had a right to know under what conditions and for what purpose Care was soliciting donations, and to refuse to subsidize the flow of tax-exempt donations to non-charitable causes.

**II.     This Prosecution Does Not Restrict Defendants' Religious Freedom.**

The defendants argue that this is a "racially and religiously discriminatory" prosecution in violation of the Religious Freedom Restoration Act ("RFRA"), but the defendants' religious freedom did not permit them to lie about or conceal Care activities from the IRS or its relationship to any predecessor organizations.[7] See Reply at 11. The defendants' reliance on Gonzalez v. O Centro Espirita Beneficente Uniao de Vegetal, 126 S.Ct. 1211, 1219 (2006) is misplaced because that case is not about the defendants' right to support the mujahideen. O Centro Espirita involved an exception to the drug laws for a religious sect's use of a narcotic by relying on the long-standing exception for peyote. The exception for such religious use had been

---

[6]See Rust v. Sullivan, 500 U.S. 173, 196-199 (1991); United States v. American Library Association, 539 U.S. 194 (2003)(providing library assistance funds only to those libraries who agree to block obscene Internet sites); see also Legal Services Corp v. Velazques, 531 U.S. 533, 541 (2001)(holding the government can choose to subsidize the viewpoints it wants to when it is the subsidizer).

[7]The defendants had not previously made a claim under this statutory scheme, and consequently, the Court should only entertain this argument in its discretion.

endorsed during the legislative process itself.[8]  Id.  To incongruously apply such an exception to the tax laws would be to require this Court and indeed any other court presented with such a claim, to craft an exception for every religious charity which solicits money in the name of religion to support armed conflict overseas.[9]  In short, the RFRA offers the defendants no relief.[10]  If the defendants can engage in the identical Free Exercise activity without the tax exemption, such a burden cannot be substantial.  See generally Rumsfeld v. FAIR, 126 S.Ct. at 1307.  In the end, the defendants have failed to make the *prima facie* showing that their religious beliefs compelled their conduct, that defendants' religious beliefs were sincere, and that their religious exercise was substantially burdened. See O Centro Espirita, 126 S.Ct. at 1219.

**III.    The Government is Not Estopped from Prosecuting Defendants for Fraud Because Other Organizations Received a Tax Exemption**.

---

[8]In response to Employment Division, Department of Human Resources of Oregon v. Smith ("Smith"), 494 U.S 872 (1990), Congress created a statutory framework to balance the interests of the government with the interests of free exercise of religion. 42 U.S.C. §§ 2000bb (RFRA).  RFRA restored the balancing test that was applied in the case of United States v. Lee, 455 U.S. 252 (1982) (created out of Sherbert v. Verner, 374 U.S. 398 (1963) and Wisconsin v. Yoder, 406 U.S. 205 (1972)), and to provide a defense to persons whose religious exercise was **substantially burdened** by the government.  See 42 U.S.C. §2000bb(b)(1) (emphasis added.). The Lee Court stated, "[b]ecause the broad public interest in maintaining a sound tax system is of such a high order, religious belief in conflict with the payment of taxes affords no basis for resisting the tax." Id. at 258-259

[9]Compare with Farrakhan v. Regan, 669 F. Supp. 506 (D.D.C. 1987), aff'd 851 F.2d 1500 (D.C.Cir. 1988)(holding that the ultimate destination of *zakat* is regulatable by the executive despite First Amendment challenge).

[10]A defendants' criminal activities, even if inspired by their interpretation of religion, are not protected merely because of that motive.  See United States v. Lindh, 212 F.Supp.2d 541, 567 (E.D.Va. 2002)(("Discriminatory purpose cannot be inferred from a recitation of historical facts that merely provide context for criminal charges".)(citing United States v. Hastings, 126 F.3d 310, 314 (4th Cir. 1997)(distinguishing IRS' notation of taxpayers political affiliation from reason for prosecution), 569 (citing American Life League, Inc. v. Reno, 47 F.3d 642, 648 (4th Cir. 1995)("The use of force or violence is outside the scope of First Amendment protection.")).

7

The defendants also argue that the government should be estopped from prosecuting this case because the government had allegedly supported the same entities and activities at an earlier time that they contend they are being prosecuted for having assisted. This argument fails as a matter of law because it relies exclusively on cases in which courts found that the government had waived or lost the right to prosecute the defendant because the government had affirmatively defrauded the applicant or changed the basis for granting a government benefit after first telling the defendant otherwise.[11] Just the reverse is true in this case; in this case the defendants did the defrauding. The defendants have not cited a single case to support the proposition that an individual or entity could affirmatively escape prosecution where they, in order to obtain a tax benefit, concealed from the IRS their support for certain entities and activities in violation of public policy, based simply on a showing that the government had at some time in the past supported that same entity or its goals.

Further, the defendants once again misapprehend the gravamen of this indictment by citing to a number of ostensibly charitable organizations who apparently also advocated for the Afghan mujahideen. Again, the defendants are not being prosecuted because of the unpopularity of their beliefs or that of the charity, or for advocacy at all. They are being prosecuted because they intentionally lied and concealed Care's activities to obtain, and maintain, a tax exempt status. Moreover, none of the other groups cited have been shown to have solicited money for or engaged in the activities similar to those which Care was engaged in, and none of the other groups have been shown to have concealed those activities or its predecessor from the IRS or

---

[11] Cf. Simmons v. United States, 308 F.2d 938, 945 (5th Cir. 1962); United States v. Asmar, 827 F.2d 907, 912 (3rd Cir. 1987); Akbarin v. Immigration and Naturalization Service, 669 F.2d 839, 843 (1st Cir. 1982).

lied to other governmental entities.

The defendants' argument also fails on the facts because they cannot show that other organizations are similarly situated. More specifically, the defendants not only directly solicited money for the mujahideen in Afghanistan, but also for combatants in Chechnya, Bosnia, Sudan and other locations overseas. They also misrepresented that their organization was an outgrowth of another organization. They filed for section 501(c)(3) status well *after* the Soviet withdrawal from Afghanistan, and after the 1993 World Trade Center attack on American soil by Afghan-trained militants. In April 1993, days after the negative media reports linked Al-Kifah Refugee Center to the 1993 World Trade Center, the Boston chapter of Al-Kifah Refugee Center ceased to exist and was transformed into Care. Shortly thereafter, in June 1993, Care filed for §501(c)(3) tax exempt status. Whatever the political policies before that time, by June 1993 the circumstances changed.

The defendants miss the point by alleging that this prosecution is based on the U.S. government's change of heart. This case is not about the defendants' views on foreign policy, nor what the U.S. government's foreign policy was, nor whether other organizations were committing fraud or supporting terrorists -- it is about the defendants' fraud upon the government by lying and concealing information. In that vein, it would not matter even if the defendants were able to show that like-minded organizations had received a tax benefit.

The fact that like-minded organizations received a tax benefit does not alter or add anything to constitutional analysis in any event. The proscribed activity in this case, lying and


committing fraud, has nothing to do with how the government dealt with other charities.[12] Babbit v. Sweet Home Chapter of Communities for a Great Oregon, 515 U.S. 687, 704 n.18 (1995)(due process notice standard is supplemented by administrative regulations). Indeed, even if the government currently supported the mujahideen, that is, supported the position that the defendants contend they are being prosecuted for holding, the defendants would still be prosecutable for their deception.[13] To the contrary, they are being prosecuted because they lied to and defrauded the government.

The defendants' selective omission information about their mujahideen related activities evidences an awareness of the corrupt nature of those activities, and the heightened attention which they would receive under the eyes of the IRS if they disclosed these activities. See United States v. Damrah, 334 F.Supp 2d. 967, 979 (N.D.Oh. 2004) (another defendant concealing connection to Al-Kifah Refugee Center among others). The allegations in the indictment, among others, evidence a scienter requirement which negate any postulate of vagueness as to what the IRS considered material to the tax-exemption question. See Vill. Of Hoffman Estates v. The Flipside, Hoffman Estates, Inc., 455 U.S. 489, 499 (1982). As a matter of law and fact, the

---

[12]Defendants claim this is relevant to the issue of Constitutional notice, prosecutorial estoppel, a factual scienter issue (which counsel couches as a due process concern because the defendants were complying with earlier policy), and whether supporting the mujahideen is contrary to public policy. However, none of these bases can apply unless the defendants can show that these organizations were similarly situated vis-a-vis the allegations in the indictment. They were not.

[13]This defense strategy has been attempted unsuccessfully by present and other counsel in other cases. Consider Curley v. North American Man Boy Love Association, 2001 WL 1822730 (D. Mass. 2001)(O'Toole, D.J.); see also United States v. Marzook, 2005 WL 3095543 (N.D. Ill. Nov. 17, 2005)(case currently on trial in which similar motion denied); United States v. Holy Land Foundation for Relief and Development, No. 3:04-CR-00240-1 (Fish, D.J.) (November 2, 2006)(similar motion denied).

defendants are alleged to have known what they were doing.

## **CONCLUSION**

Accordingly, for the reasons stated herein and in its Opposition to the Defendants' Motion to Dismiss, the government respectfully requests this Court to DENY the defendants' Motion to Dismiss.

                        Respectfully submitted,
                        MICHAEL J. SULLIVAN
                        United States Attorney

          By:    /s/ Aloke Chakravarty
                  ALOKE S. CHAKRAVARTY
                  B. STEPHANIE SIEGMANN
                  Assistant U.S. Attorneys

Date: January 10, 2007