

*U.S. Department of Justice*

***Michael J. Sullivan***
*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

January 30, 2007

***Via Electronic Notice***

The Honorable Timothy S. Hillman,
Magistrate Judge
Federal Courthouse
Donohue Federal Building
595 Main Street
Worcester, MA 01608

    Re:  United States v. Muhamed Mubayyid and Emadeddin Z.
         Muntasser
         <u>Criminal No. 05-40026-FDS</u>

Dear Judge Hillman:

    Pursuant to your Order issued on January 23, 2007 and the concerns you expressed at the hearing on defendants' motion for discovery on January 22, 2007, the government has conferred with officials from the Internal Revenue Service.  Below is a summary of the most pertinent information provided regarding the defendants' discovery requests.

    The preliminary information the government was provided prior to the motion hearing was inaccurate.  Although the government indicated at the hearing that the committee charged with amending the IRS Form 1023 (Application for Recognition of Exemption under Section 501(c)(3) of the Internal Revenue Code) was composed of only 2-3 people, in fact more than thirty employees and outside consultants of the Internal Revenue Service ("IRS") were involved in the process to amend the Form 1023, which culminated in the Form 1023 that was issued in October 2004.

    The IRS designated Marvin Friedlander, a supervisory tax law

Judge Hillman
Page 2

specialist of Exempt Organizations, who has been employed with Exempt Organizations since 1970 and with IRS since 1967, to speak to the government about this process.  Mr. Friedlander was chairman of the committee charged with revising the Form 1023.  I spoke to him about the process involved with revising the Form 1023, the number of people involved, the volume of materials (e-mails, notes, reports, drafts, and other memoranda) produced during this process, and the defendants' discovery requests.

    Mr. Friedlander indicated that the unlike other tax forms, the Form 1023 is not changed every year.  In 2000, however, the Commissioner of the Tax Exempt and Government Entities Division ("TE/GE") of the IRS initiated a project that would modify the then existing Form 1023.  At that time, TE/GE (Exempt Organizations is a section within TE/GE) was experiencing a huge backlog in processing Form 1023 applications.  Mr. Friedlander estimated that 90,000 applications were filed per year and the staff of TE/GE had been decreasing.  Accordingly, one of the motivators for amending the form was to ask more questions in the initial application thereby eliminating the necessity to ask follow-up questions during the approval process.  Additionally, the Form 1023 was also being changed to better address abuses by charities in general, including the use of charities to support or funnel money overseas for terrorism related activities,[1] and where applicable, to simplify the forms' questions and instructions by using plain English.

    Mr. Friedlander explained that the process to revise the Form 1023 took four years.  It took two years to prepare a draft of the proposed form for public comment.  It took another two years to consider comments from the public and prepare and publish a final Form 1023 for use in the field.  During this four year process, hundreds of meetings occurred involving IRS employees and consultants located primarily in Washington, D.C. and Cincinnati, Ohio.  Over the four year process, in excess of thirty people were involved.  Additionally, on or about October 15, 2002, the draft form was published on the IRS' website and in its bulletin for public comment.  As a result, the IRS received approximately 25-30 responses from the public comprising several hundred of pages of documents.

---

[1] A series of new questions were added to the form that were designed specifically to elicit more accurate descriptions of a charity's operations in foreign countries and to better ensure that these operations furthered a charity's exempt operations and were not a subterfuge for supporting terrorism.

Judge Hillman
Page 3

    During the four year process, Mr. Friedlander surmised that in excess of 10,000 pages of documents (notes, reports, drafts, and other documents) were generated because form work is document intensive. He further believed that thousands of e-mails amongst IRS employees and consultants, some of whom no longer work for IRS, were generated.

    With regards to the defendants' discovery requests for any IRS memoranda that discussed changes/modifications in the outgrowth/successor questions on the Form 1023 made in October 2004 and the addition of Schedule G to the 2004/2006 version of the Form 1023 and any instructions regarding these questions/sections, Mr. Friedlander indicated it would take IRS approximately six months to comply with that request. He explained that TE/GE would have to dedicate one person full-time to this task and it would take approximately six months to gather all the documents that were generated and still exist from the Form 1023 revision project from 2000-2004 and then review those materials for any information that falls within the defendants' discovery requests. Mr. Friedlander also described the question regarding whether an applicant organization was an outgrowth or successor to another organization as not being "controversial." In fact, it was not a question of much interest during the deliberations of the IRS during the revision process. Mr. Friedlander further did not recall any discussion in any meeting or e-mail communication about the original outgrowth/successor question[2] being vague or ambiguous. Mr. Friedlander recalled that the IRS chose to delete the word "outgrowth" from the new form because it was redundant; the committee members and other IRS participants in the revision process determined that the term "outgrowth" meant the same thing as "successor."

    Additionally, Schedule G, entitled "Successors to Other Organizations," (added to the October 2004 form), which consists of a number of questions about any predecessor organization, was designed to streamline the approval process. During the approval process prior to October 2004, all applicant organizations were

---

    [2]As indicated in the government's opposition to the defendants' motion for discovery, the outgrowth/successor question contained in the September 1990 version of the Form 1023 completed and executed by Emadeddin Muntasser asked the following question: "[i]s the organization the outgrowth of (or successor to) another organization . . ."

Judge Hillman
Page 4

required to answer these questions, or variants thereof,[3] if they answered yes to the original outgrowth/successor question.  As alleged in the Indictment, the government contends defendant Emadeddin Muntasser fraudulently answered "no" to this question when he completed the Form 1023 for Care International, Inc. in June 1993.

Additionally, I was advised today by counsel for IRS that the IRS will likely assert a deliberative process privilege as to a substantial portion of the documents sought in the defendants' discovery requests on the grounds that they reflect internal communications of the IRS that are both pre-decisional and deliberative.  This assertion, however, cannot be made until all the documents created during the four year Form 1023 revision process have been gathered and reviewed by IRS.  The IRS will then make a document by document privilege determination.

The government hopes this letter answers all of the Court's questions.

                            Very truly yours,

                            MICHAEL J. SULLIVAN
                            United States Attorney

                   By:   /s/ B. Stephanie Siegmann
                          B. STEPHANIE SIEGMANN
                          Assistant U.S. Attorney


cc:   Malick W. Ghachem, Esq., Counsel for Emadeddin Muntasser
      Michael C. Andrews, Esq., Counsel for Muhamed Mubayyid

---

[3] If an applicant organization did not include this information in the initial application, the IRS Exempt Organizations' reviewer would send a list of questions to the applicant to be answered prior to any tax exempt status determination being made.  These inquiries could extend the approval process by months.