# Zalkind, Rodriguez, Lunt & Duncan LLP

ATTORNEYS AT LAW

65a Atlantic Avenue, Boston, Massachusetts 02110

TELEPHONE (617) 742-6020

FAX (617) 742-3269

www.zrld.com

Norman S. Zalkind
Elizabeth A. Lunt
David Duncan
also member of PA Bar
Inga S. Bernstein
William B. Van Lonkhuyzen
also member of CA Bar

Monica Pastorok
also member of NY and CA Bars
Malick W. Ghachem
Rachel Stroup

Of Counsel:
Barbara Equen Rodriguez

February 1, 2007

The Honorable Timothy S. Hillman
Magistrate Judge
Federal Courthouse
Donohue Federal Building
595 Main St.
Worcester, MA 01608

Re:   United States v. Muhamed Mubayyid and Emadeddin Z. Muntasser, Crim. No. 05-40026-FDS

Dear Judge Hillman,

Defendants respectfully submit this letter responding to the Government's letter of January 30, 2007 concerning your January 23, 2007 Order.

At issue is the discoverability of Internal Revenue Service (IRS) communications as well as public comments concerning changes made in the IRS Form 1023 prior to the issuance of that form's October 2004 revision. The Government notes that the Form 1023 was revised in part in order to "simplify the forms' question and instructions by using plain English." Government's Letter at 2. It must be underscored that this information clearly supports Defendants' discovery motion and motion to dismiss, which contend that the wording of the "successor/outgrowth" inquiry on the 1993 version of the form was vague and ambiguous. The requested materials are thus critical and directly relevant to Defendants' case.[1]

---

[1] At the January 22, 2007 hearing, defense counsel noted that in addition to being directly relevant to a key issue in this case, the requested materials can be seen as the administrative law

The Government also notes that the IRS received 25-30 responses from the public to the draft Form 1023 posted on the IRS website in October 2002. To the extent that these comments relate to the successor/outgrowth inquiry, they are relevant to this litigation and should be discoverable, no less than the internal IRS communications themselves. With respect to those IRS communications, Defendants have provided in their motion a clear and specific basis for narrowing the Government's search for discoverable documents to a much smaller range than the 10,000 pages of materials that the Government indicates it will have to review to answer Defendants' discovery request. Indeed, the Government states in its letter that the successor/outgrowth inquiry was "not a question of much interest during the deliberations of the IRS during the revision process." Government's Letter at 3. This implies both that the successor/outgrowth inquiry was a matter of at least some interest, and that the volume of materials in question is relatively slim.

As a preliminary matter, Defendants suggest that the Government should be required to turn over any final briefing memos or explanatory annotations that were presented to the actual decision-makers, who approved the final changes to the Form 1023. This should not be a burden to locate these particular documents in the short term, even if it may require a longer review to go through all of the rest of the materials that preceded any final summary or explanatory documents presented to the decision-makers.

With respect to the deliberative process privilege that the IRS indicates it may ultimately assert, there would obviously be occasion for both parties to brief that issue if and when the appropriate time arrives. It should be noted even at this stage, however, that the applicability of that privilege to Defendants' discovery motion is far from clear, for at least two reasons. First, the deliberative process privilege has been construed by courts to apply in the civil discovery context. See Taxation With Representation Fund v. I. R. S., 646 F.2d 666, 676 (D.C. Cir. 1981) ("Given the literal language of Exemption 5, it is not surprising that the courts have construed this exemption to encompass the protections traditionally afforded certain documents pursuant to evidentiary privileges in the civil discovery context."). This, however, is a criminal case, and

---

equivalent of legislative history, which the Supreme Court in Bob Jones University v. U.S., 461 U.S. 574 (1983) found relevant to a determination as to whether the 501(c)(3) organization in that case could be considered a legitimate charitable organization. The Court held that Bob Jones University could not be so considered, reasoning in part that Congress's failure to correct the 1970 and 1971 IRS rulings that educational institutions engaging in racially discriminatory practices were not entitled to tax-exempt status evidenced a congressional acquiescence in the IRS rulings. See id. at 599-602, 607. If evidence of a lack of congressional action was seen as relevant in Bob Jones, surely it is relevant in this case that there exist IRS records – or administrative history – explaining why affirmative steps were taken to alter the forms and instructions by which tax-exempt status is determined.

where a defendant's constitutional rights are at issue, as here,[2] these rights must override whatever limited administrative privileges the Government could theoretically claim in the civil discovery context. Second, even assuming that the standard for discoverability is the same in both the criminal and civil contexts, the Supreme Court has held that "the public is vitally concerned with the reasons which did supply the basis for an agency policy actually adopted. These reasons, if expressed within the agency, constitute the 'working law' of the agency and have been held by the lower courts to be outside the protection of Exemption 5" of the Freedom of Information Act. N. L. R. B. v. Sears, Roebuck & Co., 421 U.S. 132, 152-153 (1975).

Finally, for some of the same reasons already set forth above, the Government's position that it would require six months to identify the materials requested by Defendants is unreasonable. In a few months' time, it will have been two years since the indictment in this case was returned (May 2005). The burdens of having to wait so long for a trial while enduring the stresses of litigation have not rested easily on Defendants. The Government and Defendants have been making vigorous efforts to prepare for a trial that they have anticipated for this spring or early summer. Defendants' submit that, in the event this Court allows Defendants' discovery motion, a period of two months should be more than sufficient to locate what even the Government concedes is a very slim number of critical documents.

Respectfully submitted,

/s/ Michael C. Andrews  
Michael C. Andrews  
Counsel for Muhamed Mubayyid

/s/ Malick W. Ghachem  
Malick W. Ghachem  
Counsel for Emadeddin Z. Muntasser

cc:   B. Stephanie Siegmann, AUSA  
      Aloke Chakravarty, AUSA

---

[2] In connection with the successor/outgrowth issue, Defendants have raised vagueness claims grounded both in the Due Process Clause of the Fifth Amendment and in the federal common law rule of lenity.