```
                  UNITED STATES DISTRICT COURT
                   DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA     )
                             )
          v.                 )    Crim. No. 05-40026-FDS
                             )
MUHAMED MUBAYYID, and        )
EMADEDDIN Z. MUNTASSER,      )
                             )
                             )
          Defendants.        )
```

**GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTION
TO DISSOLVE OR MODIFY PROTECTIVE ORDER GOVERNING
DISCOVERY AND TO UNSEAL ALL SEALED FILINGS IN THIS CASE**

The United States, by and through its attorney, Michael J. Sullivan, the United States Attorney for the District of Massachusetts, Aloke Chakravarty and Stephanie Siegmann, Assistant United States Attorneys, respectfully submits its Opposition to Defendants' Motion to Dissolve or Modify Protective Order Governing Discovery and To Unseal All Sealed Filings In This Case, and states as follows.

**INTRODUCTION**

On August 1, 2005, the Government moved for a Protective Order to ensure that non-publicly available and sensitive information was carefully handled by all the parties in light of the nature of the information produced in discovery in the instant case. The same day, the Government filed its notice of intent to use information obtained and derived from electronic surveillance and physical search authorized by the Foreign

1

Intelligence Surveillance Court (FISC) pursuant to The Foreign Intelligence Surveillance Act of 1978 (FISA), as amended, 50 U.S.C. §§ 1801-1811, 1821-1829.  The documents and information produced in the discovery included the pertinent fruits of FISC-authorized electronic surveillance and physical search and other sensitive information that had been declassified.  The Government sought declassification of the discovery information for the express purpose of enabling defense counsel to easily handle that information without the necessity of obtaining a security clearance.  Providing declassified information in discovery pursuant to a Protective Order also enabled defense counsel to share that information with their clients.

   Defense counsel assented to the motion and consented to this procedure.  On August 5, 2005, the Honorable Charles B. Swartwood, III, entered the Protective Order pertaining to the public disclosure of documents and information provided in discovery, which was docketed soon thereafter.  *See* Attachment A.  Based on the assent and the Protective order, the Government provided to the defense approximately 20,000 pages of documents and information in discovery.  Included within the discovery was sensitive information and the pertinent fruits of FISC-authorized electronic surveillance and physical search that had been declassified.  When the Government and the defense file a document which references or otherwise includes non-publicly

available information produced in discovery, the Protective Order requires that the submission be done under seal.  This modest requirement is clearly within the purview of Rule 16(d)(1) and the inherent authority of the Court.

Defendants seek to dissolve or modify the Protective order and move that "all sealed filings be unsealed."  Defendants Motion at 1.  The defendants do not provide adequate justification for disclosure of sensitive unclassified information.  Additionally, the defense motion sweeps too broadly and potentially includes the unsealing of classified information that has been and may be provided to the Court pursuant to FISA and the Classified Information Procedures Act (CIPA), 18 U.S.C. App. 3.  For the reasons set forth herein, the Government strongly opposes the defendants' motion.

As described below, the Government obtained the Protective Order with defense consent for good reason, and no cause has shown for the Protective Order to be dissolved or modified. Moreover, disclosure of the classified documents that have been and may be submitted to the Court for *in camera* and *ex parte* review are governed by Congressionally-mandated procedures set forth in specific statutes, and those statutes do not permit their disclosure other than in accordance with the applicable law.

Nonetheless, counsel for the Government is not averse to

exploring with the Court, and the defense, ways in which the current procedures can be improved. Indeed, as set forth below, the Government recommends that a number of pleadings be unsealed, and in the future, should the defendants or government have concerns that a pleading contains non-publicly available information which may impact the protective order, a brief discussion and assent of the other party may obviate the need to file the pleading under seal. The defense motion, however, should be denied, and the protective order should remain in place.

**ARGUMENT**

While the defendants are generally correct that there is a strong public interest in having access to judicial proceedings, "[t]he constitutional right of public access is a qualified right that may be outweighed by competing interests in a given case." *In re Providence Journal Co.*, 293 F.3d 1, 13 (1st Cir. 2002) (accused's Sixth Amendment right to a fair trial takes precedence over public access). Prior to engaging in this inquiry, the Court must first assess whether the type of information sought to be accessed should be, in the "experience and logic" of the Court, open to the public, or whether competing interests outweigh this presumption. *See Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8 (1986)("Press-Enterprise II"). Among the competing interests that courts must consider is the privacy

interest of third parties and, if applicable, the interests of national security.

The Second Circuit has held that "the privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation." *United States v. Amodeo*, 71 F.3d 1044, 1050 (2nd Cir. 1995)(internal quotation omitted); *see also United States v. Sampson*, 297 F.Supp.2d 342, 346 (D. Ma. 2003)(Wolf, D.J.)("Significantly, it has not been argued that the release of the recordings will injure the privacy interests of the victims, their families, or any other third-parties."). *See United States v. Corbitt*, 879 F.2d 224, 228 (7th Cir. 1989)("While this court has recognized that the common law right of access creates a 'strong presumption' in favor of public access to materials submitted as evidence in open court, this presumption should not apply to materials properly submitted to the court under seal. Where judicial records are confidential, the party seeking disclosure may not rely on presumptions, but must instead make a specific showing of need for access to the document.")(citation and footnote omitted). For example, there is no right of access to discovery determination decisions in criminal matters. *United States v. Wolfson*, 55 F.3d 58 (2d Cir.1995).

In discussing the balancing with respect to sealed documents, in *Siedle v. Putnam Investments, Inc.*, 147 F.3d 7,10 (1st Cir. 1988), the First Circuit stated:

5

> Though the public's right of access to such materials is vibrant, it is not unfettered. Important countervailing interests can, in given instances, overwhelm the usual presumption and defeat access. *See* [*FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987).]. It follows that when a party requests a seal order [sic], or, as in this case, objects to an unsealing order, a court must carefully balance the competing interests that are at stake in the particular case. *See* [*Nixon v. Warner Communications, 435 U.S. 589, 599 (1978)*]; *In re Globe Newspaper Co.*, 920 F.2d 88, 96 (1st Cir. 1990).

Here, the defendants trumpet the public's right of access, but, in fact, in this case, the *defendants* are seeking to expose the sealed information to the public.  Moreover, unclassified pleadings can easily be redacted of any information covered by the Protective Order and sanitized for the public or press if requested.  Rather, the defendants seek to dissolve the Protective Order and unseal documents purely for the convenience of counsel.  Given the defendants' complaints of unfair publicity in this case, and their own statements in the press, it is ironic, to say the least, that the defense is now seeking to dissolve the Protective Order.

The Protective Order has been put in place to prevent the discovery aspects of a criminal prosecution from prejudicing the government's and the defendants' interests, as well as those of other parties who are not before the court.  Merely because material has been provided in discovery in confidence to the defendants, the interests against public disclosure of this information are not extinguished.  While it is much more apparent

why evidence actually introduced at an adversarial proceeding may no longer need to be sealed from public disclosure, there is no reason why all discovery materials should be subject to similar exposure. Indeed, this calculus, and the protective order executed prior to producing discovery in this case, influenced the decision to embark on the process to declassify discovery materials in the first place.  The alternative would be classified information being made accessible to cleared defense lawyers, with even less cause for public disclosure, and even greater logistical restrictions on handling and access.

The propriety of the protective order has also recently manifested in a current case in a prosecution in the Southern District of Florida.  In that case, a similar protective order has been in place covering declassified FISA-derived information produced in discovery, and when attorneys reference that information in submissions, they do so under seal.  In that case, after a leak to the press of some of the declassified FISA-derived information, that Court has found a violation of the protective order, and has commented that such disclosure jeopardizes the parties' right to a fair trial and an impartial jury. *See United States v. Padilla, Hassoun, Jayyousi*, 04-60001, (S.D.Fl January 24, 2007)(Cooke, D.J.); Curt Anderson, "Federal judge finds lawyer leak in case of alleged al-Qaida operative Padilla violated court order", International Herald Tribune,

January 24, 2007.

Defendants' motion also sweeps too broadly and potentially reaches classified documents that have been and may be properly submitted to the Court to resolve legal issues. Indeed, two of the most important duties of the Executive Branch are prosecuting violations of federal criminal laws and protecting the nation's secrets. *See Haig v. Agee,* 453 U.S. 280, 307 (1981)("[i]t is 'obvious and unarguable' that no Governmental interest is more compelling than security of the Nation").

With respect to CIPA, documents submitted to the Court *in camera*, *ex parte* and under seal pursuant to CIPA are protected from discovery and are "not subject to the public's qualified right of free access under the First Amendment." *United States v. Ressam*, 221 F. Supp. 2d 1252, 1265 (W.D. Wash. 2002); *see United States v. Aref*, 2006 WL 1877142, * 1 (N.D.N.Y. 1006) ("Government's interest in protecting the national security and preventing the dissemination of classified information outweighs the defendants' and/or public's right of access to these materials")(*citing Globe Newspaper Co. V. Superior Ct.*, 457 U.S. 596, 606 (1982)).

With respect to documents submitted to the Court *in camera*, *ex parte* and under seal pursuant to FISA, and as fully set forth in previous memoranda concerning FISA submitted by the Government, which we incorporate by reference as if fully

rewritten herein,[1] FISA's Congressionally-mandated procedures govern the circumstances under which the disclosure of such documents and any related FISA materials may take place.  *See United States v. Johnson*, 952 F.2d 565, 571 (1st Cir. 1992). Indeed, when, as has happened in the instant case, "the Attorney General files an affidavit under oath that disclosure or an adversary hearing would harm the national security of the United States," the court must "review *in camera* and *ex parte* the application, order, and such other materials relating to the surveillance [and physical search] as may be necessary to determine whether the surveillance of the aggrieved person was lawfully authorized and conducted."  50 U.S.C. §§ 1806(f), 1825(g); *see United States v. Johnson*, 1990 WL 78522 at *2 (D.Ma. 1991)(holding that the "proper procedure" is *in camera* and *ex parte* review when the Attorney General files an affidavit pursuant to section 1806(b)); *United States v. Belfield*, 692 F.2d 141, 147 (D.C. Cir. 1982)(*in camera, ex parte* determination is to be the rule and disclosure and an adversary hearing the "exception occurring only when necessary").

The Government has a legitimate interest in protecting national security information.  In addition to the specific harm

---

[1] *See* Dockets 186 & 183 (unclassified version), Government's Opposition to Defendants' Motion To Suppress Evidence Obtained From FISA Searches And Surveillance And All Fruits Thereof and Motion for Disclosure Or Ex Parte Review of Materials Related To Searches and Surveillance Conducted Pursuant to FISA.

that would result from the disclosure of the classified information which has been and may be submitted to the court in the instant case, the underlying rationale for nondisclosure is clear:  "In the sensitive area of foreign intelligence gathering, the need for extreme caution and sometimes even secrecy may not be overemphasized."  *United States v. Ott*, 637 F. Supp. 62, 65 (E.D. Cal. 1986), *aff'd,* 827 F.2d 473 (9th Cir. 1987).  *See United States v. Yunis,* 867 F.2d 617, 623 (D.C. Cir. 1989) ("Things that did not make sense to the District Judge would make all too much sense to a foreign counter-intelligence specialist who could learn much about this nation's intelligence-gathering capabilities from what these documents revealed about sources and methods.").

   The Government is not averse to discussing with the Court and the defense ways in which to improve the manner in which the Protective Order is implemented.  However, in addition to the reasons stated, the documents and information provided in discovery also contain the identities of numerous individuals associated with Care International and/or other organizations, and these individuals have not consented to the disclosure of the non-publicly available information.  Notwithstanding the erroneous defense accusations that cast aspersions on the Government, individuals' identities, and their involvement with the defendants, Care International, as well as other

organizations and entities, as detailed in the discovery materials, should remain protected at this time. Although the protection need not be particularly high, at the very least, there is no necessity to have such information publicized on the record, unless and until public disclosure is necessary through a court proceeding.

The need for the Protective Order is, therefore, clear from the fact that both the Government and the defense have filed and may continue to file pleadings that reference non-publicly available information which has been provided in discovery, and which include references to declassified information which was obtained through FISC-authorized electronic surveillance and physical search. The fact that the pertinent fruits of the FISA collection were declassified to enable the Government to satisfy its discovery obligations, however, does not mean that the documents and information provided in discovery should be disclosed to the public. Indeed, as one former federal prosecutor has observed, the disclosure in federal criminal discovery of declassified and sensitive information has reportedly been known to circumnavigate the globe and fall into the hands of terrorists and others who can exploit that information.[2] Moreover, the Addendum to this motion being filed

---

[2] *See* Andrew McCarthy, "The Intelligence Mess: How the Courts Forced Me to Give Sensitive Information to Osama Bin Laden", Wall Street Journal, September 20, 2006, Editorial:

under seal notes additional significance of this disclosure.

The Government acknowledges that the Protective order has influenced both the Government and the defendants, and both parties have submitted some pleadings under seal.  Moreover, in some pleadings, the Government responded under seal to a defense motion because the defense motion was under seal, and the Government was trying to protect the integrity of the defendants' submission.  The Government, however, is not averse to exploring ways in which some of the pleadings may be quickly unsealed.  For example, the Government lists below a number of dockets from the

---

> When, moreover, there is any dispute about whether a sensitive piece of information needs to be disclosed, the decision ends up being made by a judge on the basis of what a fair trial dictates, rather than by the executive branch on the basis of what public safety demands.
>
> It is true that this mountain of intelligence is routinely surrendered along with appropriate judicial warnings: defendants may use it only in preparing for trial, and may not disseminate it for other purposes. Unfortunately, people who commit mass murder tend not to be terribly concerned about violating court orders (or, for that matter, about being hauled into court at all).
>
> In 1995, just before trying the blind sheik (Omar Abdel Rahman) and eleven others, I duly complied with discovery law by writing a letter to the defense counsel listing 200 names of people who might be alleged as unindicted co-conspirators--i.e., people who were on the Government's radar screen but whom there was insufficient evidence to charge. Six years later, my letter turned up as evidence in the trial of those who bombed our embassies in Africa. It seems that, within days of my having sent it, the letter had found its way to Sudan and was in the hands of bin Laden (who was on the list), having been fetched for him by an al-Qaeda operative who had gotten it from one of his associates.

public docket record, which do not appear to be required to remain under seal under the spirit of the Protective order. For example, a citation to a defendants' own statement given to an investigating agent does not implicate the Government's concerns about sources, methods and scope of investigation. Finally, it should also be noted that the defendants' may have misconstrued the scope of the Protective Order itself. The Government's concern with the public disclosure of the pertinent fruits of the FISC-authorized collection (and documents provided in discovery that relate to that FISA collection), and its concern with how such a public disclosure would reveal information concerning the nature of, the duration, and the targeted facilities of the FISA collection, is quite a different issue from than the fact that the Government has given a public notice to the Court and the defendant that it intends to use FISA-obtained and derived information at trial.

## CONCLUSION

Accordingly, and based on the foregoing, the Government respectfully submits that the classified pleadings and documents that have been and may be submitted to the Court *in camera*, *ex parte* and under seal, must continue to be treated in the manner that they are provided to the Court. Additionally, the declassified pertinent fruits of the FISC-authorized collection, and other non-publicly available identifying information provided

13

in discovery should remain out of the public sphere at this time. To the extent that counsel for either the Government or the defense are required to refer to such materials in a pleading or argument, there is no restriction on counsel's ability to file such a pleading with a sealed attachment and/or make such an argument in open court and the record may be sealed.  Admittedly, filing a sealed pleading is more cumbersome for both the Government and the defendants, and poses additional responsibilities for the Court's staff.  These procedures, however, do not adversely affect the defendants' right to counsel and a fair trial, and are necessary to ensure the continued protection of non-publicly available and sensitive information which should not be released to the public.  In the future, if there is a question as to whether a future pleading is required to be filed under seal pursuant to the existing Protective order, a brief discussion of the relevant information may result in a simple assent to the filing of the document in an unsealed fashion.

WHEREFORE, the Government respectfully requests that the Court DENY the Defendants' motion.  Insofar as the Government shares the concerns for reasonable public access, it assents to the unsealing of the unclassified and adversarial docketed documents listed below (upon confirmation with the Clerk that the listed numbers in fact correspond to the described documents):

Docket Entries:

112 (Discovery Motion)

130 (Motion to Dismiss)

132 (Motion to Suppress)

140 (Objection)

147 (Motion for FISA Discovery)

148 (Motion to Suppress FISA)

150 (Response to Objection)

The Government's Motion to set FISA-litigation schedule dated 10/24/06 (believed to be 163)

160 (Opposition to 130)

168 (Motion for Leave to file Reply)

169 (Reply to Opposition)

179 (Sealed Addendum)

183 (Unclassified FISA Memorandum)

Transcript of Hearing of 1/16/07 and 1/19/07.

                    Respectfully submitted,

                    MICHAEL J. SULLIVAN
                    United States Attorney

          By:   /s/ Aloke Chakravarty
                ALOKE S. CHAKRAVARTY
                B. STEPHANIE SIEGMANN
                Assistant U.S. Attorneys

Date: February 2, 2007

CERTIFICATE OF SERVICE

     I hereby certify that this document will be served on this date, February 2, 2007 via Electronic Notice to counsel for the defendants in this case, Malick Ghachem, Esq. and Michael Andrews.

                          /s/ Aloke Chakravarty
                          ALOKE S. CHAKRAVARTY
                          ASSISTANT UNITED STATES ATTORNEY