UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL NO. 05-40026-FDS |
| Plaintiff | ) | |
| v. | ) | |
| MUHAMED MUBAYYID and EMADEDDIN Z. MUNTASSER, | ) | |
| Defendants | ) | |

**DEFENDANT' MOTION FOR LEAVE TO REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO DISSOLVE PROTECTIVE ORDER**

Now come Defendants Emadeddin Z. Muntasser and Muhamed Mubayyid, pursuant to Local Rule 7.1(B)(3), to move this Honorable Court for leave to reply to the Government's opposition to their motion to dissolve the protective order governing discovery and unseal all sealed filings in this case. As grounds therefor, Defendants states as follows:

1. Defendants' proposed reply brief will facilitate this Court's efforts to evaluate the validity of the Government's arguments in opposition.

2. The Government has raised certain arguments, including those reflected in the Sealed Appendix filed with the Government's opposition, that have not heretofore been advanced as reasons for either the protective order governing discovery or the sealing of documents in this case.

3. No hearing has yet been scheduled on Defendants' motion to dissolve the protective order.

4. The interests of justice recommend that this motion be granted.

WHEREFOR Defendants respectfully request that this Honorable Court grant their

motion for leave to file a reply to the Government's opposition to their motion to dissolve the protective order. Defendants' proposed reply is attached to this Motion as an exhibit.

Respectfully submitted,

| MUHAMMED MUBAYYID, | EMADEDDIN Z. MUNTASSER |
|---|---|
| By his attorney, | By his attorneys, |

  /s/ Michael C. Andrews             /s/ Malick W. Ghachem
Michael C. Andrews BBO# 546470)   Norman S. Zalkind (BBO# 538880)
21 Custom House Street            Elizabeth A. Lunt (BBO# 307700)
Boston, MA 02110                  Malick W. Ghachem (BBO#661018)
(617) 951-0072                    Zalkind, Rodriguez, Lunt & Duncan LLP
                                  65a Atlantic Ave.
                                  Boston, MA 02110

                                  _____Susan R. Estrich
                                  Robert Kingsley Prof. of Law and Political Science
                                  Univ. of Southern California Law School
                                  University Park, MC-0071
                                  Los Angeles, CA 90089-0071

                                  Harvey Silverglate (BBO # 462640)
                                  607 Franklin St.
                                  Cambridge, MA 02139

Dated: February 13, 2007

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff | )<br>)<br>)<br>) | CRIMINAL NO.  05-40026-FDS |
| v. | )<br>) | **Leave to file granted on** _____ |
| MUHAMED MUBAYYID and<br>EMADEDDIN Z. MUNTASSER,<br>Defendants | )<br>)<br>)<br>)<br>) | |

**DEFENDANTS' REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANTS'
MOTION TO DISSOLVE OR MODIFY PROTECTIVE ORDER**

Now come Defendants to submit the following response to the Government's opposition to Defendants' motion to dissolve the protective order governing discovery in this case and unseal all sealed filings.  The Government's opposition takes the form of a proposed compromise that would lead to the (a) unsealing of about a dozen filings in this case, the vast majority of which are Defendants' filings; and (b) an *ad hoc* licensing system whereby Defendants would be required to seek the consent of the Government every time they wish to file a pleading referencing a currently sealed or protected document.  For the following reasons, this proposed compromise is an inadequate response to Defendants' motion:

1. The Government cites cases purportedly standing for the proposition that the constitutional right of public access to a criminal proceeding must be weighed against competing interests in a given case.  The two First Circuit decisions relied upon by the Government do not support the continued restrictions on public access to the instant proceedings.  In one of these decisions, the First Circuit held that sealing was justified only because one of the parties to the case made a showing that certain documents were

protected by the attorney-client privilege. Siedle v. Putnam Investments, Inc., 147 F.3d 7, 12 (1st Cir. 1988). This decision involved a claim put forward by a litigant whose own interests were directly concerned. And the attorney-client privilege is a compelling interest that can be fairly said to compete with the constitutional right of public access to judicial records. In the other decision, In re Providence Journal Co., Inc., 293 F.3d 1 (1st Cir. 2002), the First Circuit stated that the "weighing must proceed on the assumption that restrictions on access to presumptively public judicial documents should be imposed only if a substantial likelihood exists that *the accused's* right to a fair trial will otherwise be prejudiced." 293 F.3d at 13 (emphasis added). But here Defendants are themselves invoking their own Sixth Amendment right to a public trial. It would be odd if the Government could outweigh this claim by telling Defendants, in effect, that they do not know how best to protect their own constitutional rights.[1]

2. This is also what the Government appears to be telling Defendants when it argues that, "[g]iven the defendants' complaints of unfair publicity in this case, and their own statements in the press, it is ironic, to say the least, that the defense is now seeking to dissolve the Protective Order." Government's Opposition at 6. The referenced "statements in the press" were letters to the editor that counsel for Defendants submitted in order to protect their clients from prejudicial and near hysterical publicity in the *Worcester Telegram* prompted by the Government's selective disclosure of information

---

[1] See also Government's Opposition at 12 ("in some pleadings, the Government responded under seal to a defense motion because the defense motion was under seal, and the Government was trying to protect the integrity of the defendants' submission"). This solicitude for Defendants' interests would be entirely unnecessary if Defendants themselves were not required to submit certain of their filings under seal.

  about this case via the indictment and the unsealing of FBI Agent James Marinelli's affidavit accompanying the criminal complaint application. The status quo gives the Government the ability to disclose whatever information it finds convenient for its purposes while restricting Defendants and the public from having unqualified access to the case as a whole. Moreover, even assuming that Defendants' motion is motivated by a desire for favorable – or, for that matter, prejudicial – publicity, Defendants' right of access to a public proceeding is of a constitutional dimension and is a compelling interest as such.

3. The Government cites to a recent finding by the District Court in <u>United States v. Padilla</u> et al., No. 04-60001 (S.D. Fl. Jan. 24, 2007), that defense counsel in that case violated the Court's protective order by leaking protected discovery to the *New York Times*. How this supports the Government's position on the instant motion in this case is not clear: Defendants are not proposing to violate the protective order but rather to have it dissolved and the sealed filings unsealed.

4. The Government is silent as to why it moved for complex case designation on May 17, 2005 on the grounds that "discovery in this case may implicate classified information, which must be handled pursuant to the Classified Information Procedures Act. Accordingly, the government will request security clearances for counsel for the defendants." Government's Motion for Complex Case Designation at 2 (Dkt #16). But the Government declined to seek security clearances for defense counsel after this Court granted the Government's motion. The Government does not explain why this Court, having once already deferred to the Government on the basis of what later turned out to

be incorrect information, should do so again when Defendants are now asserting their constitutional right to a public proceeding.

5. Citing a September 20, 2006 *Wall Street Journal* "editorial" by a former federal prosecutor that was never published in that newspaper but rather posted on its website after publication in a conservative political monthly, the Government persists in the notion that media reports should somehow be allowed to determine the course and outcome of a federal criminal proceeding. See Government's Opposition at 11 n.2 as well as the Sealed Addendum thereto. Subtitled "How the Courts Forced Me to Give Sensitive Information to Osama Bin Laden," the article sends a not very subtle message of intimidation: by granting Defendants' instant motion, this Court too could end up aiding and abetting the designs of Osama Bin Laden! Should it find this essay relevant, the Court may wish to compare that article with a recent *New York Times* story detailing the extraordinary tactics used by the Department of Justice in connection with suits involving the NSA's wiretapping program. See "Secrecy is at Issue in Suits Opposing Spy Program," *The New York Times*, January 26, 2007 (attached as Exhibit A). This article relates such remarkable incidents as the recent attempt of an FBI agent to seize possession of a case-related document from a sitting Article III judge who declined to surrender it. The Court in that case noted that the Government's position on the secrecy of documents involved an "Alice in Wonderland" mentality. The FBI and the Department of Justice ("DOJ") are also involved in the prosecution of the instant case. The Government seems to be seeking to hold undersigned counsel responsible for what other defendants and/or their lawyers have done – see ¶3 above – even though

4

undersigned counsel are not controlled by those other parties and are not working in concert with them. By contrast, the prosecution team in the instant case is an extension of the DOJ and so can and should be associated with the misdeeds of the DOJ. And it does appear that the DOJ is pursuing a practice, if not a policy, of selective sealings and unsealings, and selective use of secrecy, in order to foster an inaccurate impression that certain practices, certain organizations, and certain defendants are involved somehow in supporting terrorism when, in fact, they are not.

6. The Sealed Addendum to the Government's opposition is of a piece with the Government's general strategy of trying to inflame this Court, the media, and the public and to distort the issues in this case by making prejudicial reference to unrelated matters involving the 1993 World Trade Center bombing and/or Osama Bin Laden. The Government has used this tactic in the indictment, in various FBI agent affidavits, in virtually every status conference held before the magistrate judges, in the motion to dismiss hearing before the District Court itself, and no doubt in an untold number of sealed filings with this Court. As the First Circuit has stated, "the First Amendment right of public access is too precious to be foreclosed by conclusory assertions or unsupported speculation." Providence Journal Co., Inc., 293 F.3d at 13. Just as the Supreme Court has warned that the "war on terror" is not a "blank check" for the President to do whatever he wishes with regard to constitutional structures, see Hamdi v. Rumsfeld, 542 U.S. 507, 536 (2004) (O'Connor, J.), so too the Government's designation of cases as purportedly involving national security does not give it a limitless license to litigate in secret, as it selects and as it wishes, thus overcoming a centuries-old tradition, backed by

        constitutional mandate, of an open judicial system. Defendants here seek an open and public trial not only for their own benefit – we are confident that to the extent the facts and truth come out, Defendants are more likely to be acquitted – but also for the benefit of the Nation, which has seen its institutions suffer considerably in recent years as a result of the enveloping darkness of secret proceedings.

7. Contrary to the Government's suggestion, see Government's Opposition at 13, Defendants have not misconstrued the scope of the protective order. During a status conference held before the Magistrate Judge, the Government took the position that the mere fact that FISA telephone wiretaps were used in the investigation of this case was itself a protected fact, even though the Government had already filed a public notice of its intent to use FISA-derived evidence and had earlier referenced in open court the existence of FISA wiretaps in this case.

8. The recent hearings on Defendants' motion to dismiss and discovery motion, during which all parties to this case made reference to protected or sealed information, were held in open court with members of the public and/or the press in attendance.

For all of the above reasons, Defendants respectfully urge this Court to allow their motion to dissolve the protective order and unseal all sealed filings in this case.

Respectfully submitted,

| | |
|---|---|
| MUHAMMED MUBAYYID,<br>By his attorney, | EMADEDDIN Z. MUNTASSER,<br>By his attorneys, |
| /s/ Michael C. Andrews<br>Michael C. Andrews BBO# 546470)<br>21 Custom House Street<br>Boston, MA 02110<br>(617) 951-0072 | /s/ Malick W. Ghachem<br>Norman S. Zalkind (BBO# 538880)<br>Elizabeth A. Lunt (BBO# 307700)<br>Malick W. Ghachem (BBO#661018)<br>Zalkind, Rodriguez, Lunt & Duncan LLP<br>65a Atlantic Ave.<br>Boston, MA 02110 |
| | Susan R. Estrich<br>Robert Kingsley Professor of Law and Political Science<br>Univ. of Southern California Law School<br>University Park, MC-0071<br>Los Angeles, CA 90089-0071 |
| | Harvey Silverglate (BBO # 462640)<br>607 Franklin St.<br>Cambridge, MA 02139 |

Dated: February __, 2007



# The New York Times
nytimes.com

January 26, 2007

## Secrecy Is at Issue in Suits Opposing Spy Program

**By ADAM LIPTAK**

The Bush administration has employed extraordinary secrecy in defending the National Security Agency's highly classified domestic surveillance program from civil lawsuits. Plaintiffs and judges' clerks cannot see its secret filings. Judges have to make appointments to review them and are not allowed to keep copies.

Judges have even been instructed to use computers provided by the Justice Department to compose their decisions.

But now the procedures have started to meet resistance. At a private meeting with the lawyers in one of the cases this month, the judges who will hear the first appeal next week expressed uneasiness about the procedures, said a lawyer who attended, Ann Beeson of the American Civil Liberties Union.

Lawyers suing the government and some legal scholars say the procedures threaten the separation of powers, the adversary system and the lawyer-client privilege.

Justice Department officials say the circumstances of the cases, involving a highly classified program, require extraordinary measures. The officials say they have used similar procedures in other cases involving classified materials.

In ordinary civil suits, the parties' submissions are sent to their adversaries and are available to the public in open court files. But in several cases challenging the eavesdropping, Justice Department lawyers have been submitting legal papers not by filing them in court but by placing them in a room at the department. They have filed papers, in other words, with themselves.

At the meeting this month, judges on the United States Court of Appeals for the Sixth Circuit asked how the procedures might affect the integrity of the files and the appellate records.

In response, Joan B. Kennedy, a Justice Department official, submitted, in one of the department's unclassified filings, a detailed seven-page sworn statement last Friday defending the practices.

"The documents reviewed by the court have not been altered and will not be altered," Ms. Kennedy wrote, and they "will be preserved securely as part of the record of this case."

Some cases challenging the program, which monitored international communications of people in the United States without court approval, have also involved atypical maneuvering. Soon after one suit challenging the program was filed last year in Oregon, Justice Department lawyers threatened to seize an exhibit from the court file.

This month, in the same case, the department sought to inspect and delete files from the computers on which lawyers for the plaintiffs had prepared their legal filings.

The tactics, said a lawyer in the Oregon case, Jon B. Eisenberg, prompted him to conduct unusual research.

"Sometime during all of this," Mr. Eisenberg said, "I went on Amazon and ordered a copy of Kafka's 'The Trial,' because I needed a refresher course in bizarre legal procedures."

A federal district judge in the case, Garr M. King, invoked another book after a government lawyer refused to disclose whether he had a certain security clearance, saying information about the clearance was itself classified.

"Frankly, your response," Judge King said, "is kind of an Alice in Wonderland response."

Questions about the secret filings may figure in the first appellate argument in the challenges, before the Sixth Circuit, in Cincinnati, on Wednesday. The three judges who will hear the appeal met with lawyers for the Justice Department and the American Civil Liberties Union on Jan. 8 in a judge's chambers in Memphis.

"The court raised questions about the procedures the government had used to file classified submissions in the case and the propriety and integrity of those procedures," said Ms. Beeson, associate legal director of the A.C.L.U., which represents the plaintiffs in the appeal.

"They were also concerned about the independence of the judiciary," given that "the Justice Department retains custody and total control over the court filings." Ms. Beeson said.

Nancy S. Marder, a law professor at the Chicago-Kent College of Law and an authority on secrecy in litigation, said the tactics were really extreme and deeply, deeply troubling.

"These are the basics that we take for granted in our court system," Professor Marder said. "You have two parties. You exchange documents. The documents you've seen don't disappear."

A spokesman for the Justice Department, Dean Boyd, said employees involved in storing the classified documents were independent of the litigators and provided "neutral assistance" to courts in handling sensitive information. The documents, Mr. Boyd said, are "stored securely and without alteration."

The appellate argument in Cincinnati will almost certainly also concern the effects of the administration announcement last week that it would submit the program to a secret court, ending its eavesdropping without warrants.

In a brief filed on Thursday, the government said the move made the case against the program moot.

Ms. Beeson of the A.C.L.U. said the government was wrong.

At least one case, the one in Oregon, is probably not moot. It goes beyond the other cases in seeking damages from the government, because the plaintiffs say they have seen proof that they were wiretapped without a warrant.

In August 2004, the Treasury Department's Office of Foreign Assets Control, which was investigating an Oregon charity, al-Haramain Islamic Foundation, inadvertently provided a copy of a classified document to a foundation lawyer, Lynne Bernabei.

That document indicated, according to court filings, that the government monitored communications

between officers of the charity and two of its lawyers without a warrant in spring 2004.

"If I gave you this document today and you put it on the front page of The New York Times, it would not threaten national security," Mr. Eisenberg, a lawyer for the foundation, said. "There is only one thing about it that's explosive, and that's the fact that our clients were wiretapped."

Ms. Bernabei circulated the document to two directors of the charity, at least one of them in Saudi Arabia, and to three other lawyers. She discussed them with two more lawyers. A reporter for The Washington Post, David B. Ottaway, also reviewed the document.

The full significance of the document was apparently not clear to any recipient, more than a year before The New York Times disclosed the existence of the N.S.A. program in December 2005.

The F.B.I. learned of the disclosure almost immediately in August 2004, Judge King said at a court hearing last year, but made no effort to retrieve copies of the document for about six weeks.

When it did, everyone it asked apparently returned all copies of the document. In a statement reported in The Post in March, for instance, Mr. Ottaway said he the F.B.I. had told him that the document had "highly sensitive national security information."

"I returned it after consulting with Washington Post editors and lawyers, and concluding that it was not relevant to what I was working on at the time," Mr. Ottaway said.

In a sworn statement in June, a lawyer who had the document, Asim Ghafoor, said the bureau took custody of his laptop computer "in order that the document might be 'scrubbed' from it."

The computer was returned weeks later.

In February 2006, the charity and the two lawyers who say they were wiretapped sued to stop the program, requesting financial damages. They attached a copy of the classified document, filing it under seal. They have not said how they came to have a copy.

Three weeks later, the lawyers for the foundation received a call from two Justice Department lawyers. The classified document "had not been properly secured," the lawyers said, according to a letter from the plaintiffs' lawyers to the judge.

As Mr. Eisenberg recalled it, the government lawyers said, "The F.B.I. is on its way to the courthouse to take possession of the document from the judge."

But Judge King, at a hurriedly convened hearing, would not yield it, and asked, "What if I say I will not deliver it to the F.B.I.?"

A Justice Department lawyer, Anthony J. Coppolino, gave a measured response, saying: "Your Honor, we obviously don't want to have any kind of a confrontation with you. But it has to be secured in a proper fashion."

The document was ultimately deposited in a "secure compartmented information facility" at the bureau office in Portland.

In the meantime, copies of the document appear to have been sent abroad, and the government concedes that it has made no efforts to contact people overseas who it suspects have them.

"It's probably gone many, many places," Judge King said of the document at the August hearing. "Who is it secret from?"

A Justice Department lawyer, Andrew H. Tannenbaum, replied, "It's secret from anyone who has not seen it."

He added, "The document must be completely removed from the case, and plaintiffs are not allowed to rely on it to prove their claims."

Judge King wondered aloud about the implications of that position, saying, "There is nothing in the law that requires them to purge their memory."

Mr. Eisenberg, in an interview, said that was precisely the government position. "They claim they own the portions of our brains that remember anything," he said.

In a decision in September, Judge King ruled that the plaintiffs were not entitled to review the document again but could rely on their recollections of it. In October, they filed a motion for summary judgment, a routine step in many civil litigations. In a sealed filing, they described the classified document.

Government lawyers sent Judge King a letter saying the plaintiffs had "mishandled information contained in the classified document" by, among other actions, preparing filings on their own computers.

In a telephone conference on Nov. 1, Judge King appeared unpersuaded. "My problem with your statement," he told Mr. Tannenbaum, "is that you assume you are absolutely correct in everything you are stating, and I am not sure that you are."

Mr. Boyd of the Justice Department said the government "continues to explore with counsel ways in which the classified information may be properly protected without any intrusion on the attorney-client privilege."

Copyright 2007 The New York Times Company

Privacy Policy | Search | Corrections | RSS | First Look | Help | Contact Us | Work for Us | Site Map