UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | Crim. No. 05-40026-FDS |
| | |
| v. | Violations |
| | 18 U.S.C. §371 - Conspiracy |
| MUHAMED MUBAYYID, | to Defraud United States; |
| EMADEDDIN Z. MUNTASSER, | 26 U.S.C. 7206(1) - False |
| and | Tax Return; |
| SAMIR AL-MONLA a/k/a | 18 U.S.C. §1001(a)(1) - Scheme |
| SAMIR ALMONLA, | to Conceal Material Fact; |
| | 18 U.S.C. §1001(a)(2) - Making |
| Defendants. | False Statements; and |
| | 26 U.S.C. §7212(a) - |
| | Obstructing and Impeding IRS |

## SUPERSEDING INDICTMENT

The Grand Jury charges:

### INTRODUCTORY ALLEGATIONS

1.   The Al-Kifah Refugee Center ("Al-Kifah") was a supporter
of "mujahideen," or Muslim holy warriors, engaged in "jihad," or
violent, religiously-based military conflict overseas.

2.   In the early 1990s, there were branch offices of Al-
Kifah in several cities, including Boston.  EMADEDDIN MUNTASSER
("MUNTASSER") was involved in operating the Al-Kifah Boston
office.  Al-Kifah in Boston published a pro-jihad newsletter
called "Al-Hussam," an Arabic term meaning "the Sword."

3.   In 1993, media reports linked the New York office of
Al-Kifah to the 1993 World Trade Center bombing.  At or about the
time of those media reports, MUNTASSER founded and incorporated
in Massachusetts Care International, Inc. ("Care"), a purported
Muslim charitable organization.

1

4.   MUNTASSER represented in Care's Articles of
Incorporation, filed with the Massachusetts Secretary of State's
Office in or about April 13, 1993, that Care was "organized
exclusively for charitable, religious, educational, and
scientific purposes, including but not limited to, engage in,
establish, promote, contribute and carry out human welfare,
charitable and relief activities, programs, projects,
organizations, institution and funds." MUNTASSER served as
Care's President from on or about 1993-1996.

5.   Despite MUNTASSER's representation in Care's Articles of
Incorporation, Care, like Al-Kifah, was engaged in activities
involving the solicitation and expenditure of funds to support
and promote the mujahideen and jihad, including the distribution
of pro-jihad publications. Care was located at Al-Kifah's Boston
office, and assumed publication of Al-Kifah's pro-jihad
newsletter, Al-Hussam.

6.   Shortly after Care was incorporated in Massachusetts,
MUNTASSER sought a tax exemption for Care from the Internal
Revenue Service ("IRS") pursuant to 26 U.S.C. § 501(c)(3) on the
basis that Care was a charitable organization.

7.   The IRS is responsible for reviewing applications under
26 U.S.C. §501(c)(3) and the related regulations, 26 C.F.R.
§1.501(c)(3)1(c)(1). To qualify for exemption under that
section, an organization must file an IRS Form 1023, the

2

Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code. In it, the organization must demonstrate that it is organized and operated exclusively for charitable exempt purposes, and any non-exempt purpose must be incidental and not substantial to its operation. The IRS makes the initial determination as to whether an organization qualifies for tax exempt status based upon the information contained in the IRS Form 1023. If the IRS grants an organization tax exempt status under 26 U.S.C. §501(c)(3) and its regulations, any donations made to that organization are tax deductible.

8. On or about June 1, 1993, MUNTASSER, on behalf of Care, filed IRS Form 1023 (hereinafter, "the Form 1023 application"). MUNTASSER signed the form under the pains and penalties of perjury that the "application, including the accompanying schedules and attachments, ... to the best of my knowledge [are] true, correct and complete." In the Form 1023 application, MUNTASSER stated that Care was recently incorporated, would become operational shortly, and would provide charitable services such as "provid[ing] assistance to victims of natural and man-made disasters ... primarily in Bosnia and later in African countries. ... [and] develop[ing] a program for orphan sponsorships." Attached to the Form 1023 application were copies of Care's Articles of Incorporation and By-Laws.

9. Nowhere in the Form 1023 application did MUNTASSER

3

disclose that Care planned to support jihad and the mujahideen by
soliciting contributions for, and distributing publications to
promote, jihad and the mujahideen.

10. The Form 1023 application asked whether "the
organization [is] the outgrowth of (or successor to) another
organization, or does it have a special relationship with another
organization by reason of interlocking directorates or other
factors? ... If ... answered "Yes," explain." MUNTASSER answered
"no" to this question, and concealed from the IRS in the Form
1023 application and elsewhere that Care was an outgrowth of, and
successor to, Al-Kifah.

11. In or about October 1993, the IRS granted Care tax
exempt status under 26 U.S.C. §501(c)(3) and its regulations
based upon the information MUNTASSER supplied in Care's Form 1023
application. In its letter notifying MUNTASSER of this decision,
the IRS instructed MUNTASSER to report any changes in Care's
"purposes, character, or method of operation" to the IRS.

12. After the IRS grants an organization tax exempt status
under 26 U.S.C. §501(c)(3) and its regulations, the charitable
organization is required to file with the IRS a Form 990, "Return
of Organization Exempt from Income Tax" ("Form 990 Tax Return"),
each year in which its contributions exceed $25,000. The IRS
uses information contained on the Form 990 Tax Returns to
determine whether an organization granted a tax exemption under

4

26 U.S.C. §501(c)(3) and its regulations is operating in accordance with those authorities and thus still qualifies for its tax exempt status. Question 76 of the IRS Form 990 specifically asks the organization if it had engaged in any activity not previously reported to the IRS. If the IRS determines that the organization is not operating consistently with its tax exempt status, the IRS would revoke such a designation. Once the IRS revokes an organization's tax exempt status under 26 U.S.C. §501(c)(3) and its regulations, contributions or donations made to that organization are not tax deductible.

13. From in or about 1993 to 2003, Care, through MUNTASSER, SAMIR AL-MONLA a/k/a SAMIR ALMONLA ("AL-MONLA"), MUHAMED MUBAYYID ("MUBAYYID") and others, filed Form 990 tax returns to the IRS. AL-MONLA served as Care's President from in or about 1996-1998 and MUBAYYID served as Care's Treasurer from in or about 1997-2003. None of these tax returns reported any change in activity from Care's 1023 application. No tax return disclosed that Care was engaged in activities involving the solicitation and expenditure of funds to support and promote the mujahideen and jihad, including the distribution of pro-jihad publications.

14. As a result of Care's fraudulent tax filings, the IRS continued to accord Care tax exempt status under 26 U.S.C. §501(c)(3) and its regulations from in or about 1993 until in or

5

about 2003. From on or about 1993 to 2003, Care collected approximately $1.7 million dollars in donations, which was considered tax deductible by the IRS.

15. Had MUNTASSER, AL-MONLA, and/or MUBAYYID provided truthful information to the IRS about Care, Care would not have been accorded, nor would have enjoyed, tax exempt status under 26 U.S.C. §501(c)(3) and its regulations.

16. In or about April, 1999, MUNTASSER was interviewed by the Federal Bureau of Investigation, Joint Terrorism Task Force. MUNTASSER made material omissions when he stated that Care was a charitable organization and did not disclose that Care was engaged in activities involving the solicitation and expenditure of funds to support and promote the mujahideen and jihad. MUNTASSER also stated that in 1994-1995, he traveled to Pakistan. MUNTASSER concealed that during that trip, he also traveled to Afghanistan. In fact, MUNTASSER had traveled to Afghanistan in or about 1994-95 in furtherance of Care's activities.

17. In or about October, 2002, MUNTASSER filed an Application for Naturalization with the then-named Immigration and Naturalization Service (now part of the Department of Homeland Security). In that application, MUNTASSER failed to list his association with either Care or Al-Kifah, as required. In addition, MUNTASSER did not disclose that he had traveled to Afghanistan, as required. In fact, MUNTASSER was a member of and

6

responsible for activities of Al-Kifah and Care and had traveled to Afghanistan in or about 1994-95 in furtherance of Care's activities.

18. In or about April, 2003, MUNTASSER was interviewed by the Federal Bureau of Investigation, Joint Terrorism Task Force. In that interview, MUNTASSER claimed that Care served humanitarian purposes, did not disclose that Care was engaged in activities involving the solicitation and expenditure of funds to support and promote the mujahideen and jihad, and falsely denied having ever traveled to Afghanistan.

19. On or about November 6, 2003, MUNTASSER was interviewed by the Department of Homeland Security about his Application for Naturalization filed in 2002, as described above. At this interview, MUNTASSER admitted that he had traveled to Pakistan and Afghanistan from in or about December 1994 to January 1995. MUNTASSER also admitted that he had been a member of Care and "Alkifah Refugee Center" from 1991-1996.

20. On or about April 6, 2004, MUNTASSER was interviewed by the Department of Homeland Security and provided a sworn statement. Among other things, MUNTASSER admitted that he traveled to Pakistan and Afghanistan in the winter of 1994 in furtherance of his "humanitarian work" for Care and claimed that Care was a humanitarian organization.

21. MUBAYYID and AL-MONLA were interviewed by the Federal

7

Bureau of Investigation, Joint Terrorism Task Force, at various dates between 2001 and 2003 and concealed that Care was engaged in activities involving the solicitation and expenditure of funds to support and promote the mujahideen and jihad.

22.   When AL-MONLA was interviewed by the Federal Bureau of Investigation, Joint Terrorism Task Force in 2001, he falsely stated that one of his main duties was to ensure Care's donations were not used to support terrorist activities and he did not know anyone who had participated in terrorist activities.   Later in 2003, when AL-MONLA was again interviewed by the Federal Bureau of Investigation, Joint Terrorism Task Force, he falsely denied knowing Bassam Kanj, a person who died while fighting against Lebanese military forces in Lebanon in January 2000 and had previously fought in Afghanistan.

23.   Through the acts described above, MUNTASSER, AL-MONLA, and MUBAYYID deprived the United States of material information to which it was entitled to perform its lawful functions.

8

**COUNT ONE:**    **(18 U.S.C. §1001(a)(1) - Scheme to Conceal**
**Material Facts; Aiding and Abetting, 18 U.S.C. §2)**

The Grand Jury charges that:

The allegations contained in paragraphs 1-23 are hereby re-alleged and incorporated by reference as if fully set forth herein.

From a date unknown to the Grand Jury, but at least from in or about April 1993, and continuing thereafter until in or about April 2003, in the District of Massachusetts and elsewhere,

**EMADEDDIN Z. MUNTASSER,**
**MUHAMED MUBAYYID, AND**
**SAMIR AL-MONLA a/k/a SAMIR ALMONLA**

defendants herein, in a matter within the jurisdiction of the executive branch of the Government of the United States, did knowingly and willfully falsify, conceal and cover up by trick, scheme and device material facts from the Internal Revenue Service ("IRS") of the Treasury Department, the Federal Bureau of Investigation ("FBI"), and the Immigration and Naturalization Service, now part of the Department of Homeland Security, ("INS/DHS"), to wit: the Defendants concealed the fact that Care International, Inc., was an outgrowth of and successor to the Al-Kifah Refugee Center and was engaged in non-charitable activities involving the solicitation and expenditure of funds to support and promote mujahideen and jihad.

All in violation of 18 U.S.C. §1001(a)(1) and §2.

9

**COUNT TWO:**   **(18 U.S.C. §371 - Conspiracy to Defraud the United States)**

The Grand Jury further charges that:

The allegations contained in paragraphs 1-23 are hereby re-alleged and incorporated by reference as if fully set forth herein.

From a date unknown to the Grand Jury, but at least from in or about April 1993, and continuing thereafter until in or about April 2003, in the District of Massachusetts and elsewhere,

**EMADEDDIN Z. MUNTASSER,**
**MUHAMED MUBAYYID, AND**
**SAMIR AL-MONLA a/k/a SAMIR ALMONLA**

defendants herein, did unlawfully, willfully and knowingly conspire, combine, confederate and agree with each other and others known and unknown to the Grand Jury to defraud the United States for the purpose of impeding, impairing, interfering, obstructing and defeating through deceit, craft, trickery and dishonest means the lawful functions of the Internal Revenue Service ("IRS") of the Treasury Department in the ascertainment, assessment, and determination of whether Care International, Inc., qualified and should be designated as a §501(c)(3) organization in 1993 and should continue to be accorded status as §501(c)(3) organization thereafter.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the conspiracy was sought to

10

be accomplished included, among other things, the following during the dates of the alleged conspiracy:

1. In or about June 1993, defendant MUNTASSER executed and, with the assistance of others, filed an Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code on behalf of Care, which contained false information. This application detailed Care's planned future charitable activities such as providing financial assistance to widows and orphans. In this application, MUNTASSER did not disclose that: Care was an outgrowth or successor to Al-Kifah; Care's planned activities included support for jihad and the mujahideen; and Care would engage in activities involving the solicitation of contributions for, and distribution of publications to support, jihad and the mujahideen.

2. Between in or about 1993 and 2002, the defendants reported on Care's tax returns, Returns of Organization Exempt From Income Tax (Form 990), that Care distributed money for various charitable purposes, among others, providing financial assistance to orphans and widows, food distribution, and providing grants to other welfare organizations. The defendants did not disclose to IRS that Care was engaged in activities involving the solicitation and expenditure of funds to support and promote the mujahideen and jihad, including the printing and distribution of pro-jihad publications.

3.  Between in or about 1993 and 2001, Care published reports and articles in support of the mujahideen in its newsletter or on its website.

4.  Between in or about 1994 and 2001, Care distributed brochures entitled "Zakat Calculation Guide", in which the mujahideen was identified as one of the eight categories of eligible recipients.

5.  Between in or about 1997 and in or about September 2001, Care's websites, originally located at www.cybercom.net/~cib/ and later www.care-intl.org, contained direct solicitations for tax deductible donations to support the mujahideen.

## OVERT ACTS OF THE CONSPIRACY

In furtherance of the conspiracy, and to effect the objects thereof, the following overt acts were committed in the District of Massachusetts and elsewhere:

6.  In or about April 1993, defendant MUNTASSER filed Care's Articles of Incorporation with the Massachusetts Secretary of State's office.

7.  In or about June 1993, defendant MUNTASSER executed and, with the assistance of others, filed an Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code on behalf of Care.  This application detailed Care's planned future charitable activities such as providing financial assistance to widows and orphans.  MUNTASSER did not disclose

12

that: Care was an outgrowth of or successor to Al-Kifah; Care's planned activities included support for jihad and the mujahideen; and Care would engage in activities involving the solicitation of contributions for, and distribution of publications to support, jihad and the mujahideen.

8.   Between in or about 1993 and 1998, Care published and distributed a newsletter, Al-Hussam (an Arabic term meaning "the Sword"), formerly the newsletter of Al-Kifah, which actively promoted "jihad," or holy war, involving "mujahideen," or Islamic holy warriors.

9.   Between in or about 1997 and in or about September 2001, Care published articles about the military operations and activities of the mujahideen on its website and also solicited money for the mujahideen on its website.

10.  Between in or about 1994 and 2001, Care printed and distributed solicitations for tax deductible donations to support the mujahideen.

11.  At a date unknown between in or about 1995 and 2001, Care published and distributed an English translation of "Join the Caravan," a pro-jihad book authored by Abdullah Azzam.

12.  MUNTASSER, MUBAYYID, and AL-MONLA signed and filed with the Internal Revenue Service false tax returns, Returns of Organization Exempt from Income Tax (Form 990s), for calendar years 1994, 1995, and 1997-2000.

13

13.   Between 2001 and 2003, defendants MUNTASSER, AL-MONLA,
and MUBAYYID made materially incomplete and misleading statements
to the Federal Bureau of Investigation about Care's activities,
claiming that Care was a charitable organization and failing to
disclose that Care was engaged in activities involving the
solicitation and expenditure of funds to support and promote the
mujahideen and jihad, in part, for the purpose of continuing the
within conspiracy.

14.   Between 2001 and 2003, defendant AL-MONLA further made
false statements to the Federal Bureau of Investigation regarding
his role at Care in ensuring that money was not spent on
supporting terrorist activities.   During these interviews with
the Federal Bureau of Investigation, AL-MONLA also falsely stated
that he did not know Bassam Kanj or anyone who had participated
in terrorist activities.

All in violation of 18 U.S.C. §371 and §2.

14

**COUNT THREE:**   **(26 U.S.C. §7206(1) - False Tax Return)**

The Grand Jury further charges that:

The allegations contained in paragraphs 1-23 are hereby re-alleged and incorporated by reference as if fully set forth herein.

On or about June 7, 2002, in the District of Massachusetts and elsewhere,

**MUHAMED MUBAYYID,**

defendant herein, did willfully make and subscribe a Form 990, Return of Organization Exempt from Income Tax, for Care International, Inc., for the 1997 calendar year, which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service ("IRS"), which said Form 990 defendant then and there well knew and believed was not true and correct as to every material matter in that Line 76 was falsely answered to wit: that Care had never previously disclosed to the IRS in any tax return or other filing that it was engaged in activities involving the solicitation and expenditure of funds to support and promote the mujahideen and jihad.

All in violation of 26 U.S.C. §7206(1).

**COUNT FOUR:**     **(26 U.S.C. §7206(1) - False Tax Return)**

The Grand Jury further charges that:

The allegations contained in paragraphs 1-23 are hereby re-alleged and incorporated by reference as if fully set forth herein.

On or about November 4, 2000, in the District of Massachusetts and elsewhere,

**MUHAMED MUBAYYID,**

defendant herein, did willfully make and subscribe a Form 990, Return of Organization Exempt from Income Tax, for Care International, Inc., for the 1999 calendar year, which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service ("IRS"), which said Form 990 defendant then and there well knew and believed was not true and correct as to every material matter in that Line 76 was falsely answered to wit: Care had never previously disclosed to the IRS in any tax return or other filing that it was engaged in activities involving the solicitation and expenditure of funds to support and promote the mujahideen and jihad.

All in violation of 26 U.S.C. §7206(1).

**COUNT FIVE:**    **(26 U.S.C. §7206(1) - False Tax Return)**

The Grand Jury further charges that:

The allegations contained in paragraphs 1-23 are hereby re-alleged and incorporated by reference as if fully set forth herein.

On or about July 31, 2001, in the District of Massachusetts and elsewhere,

**MUHAMED MUBAYYID,**

defendant herein, did willfully make and subscribe a Form 990, Return of Organization Exempt from Income Tax, for Care International, Inc., for the 2000 calendar year, which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service ("IRS"), which said Form 990 defendant then and there well knew and believed was not true and correct as to every material matter in that Line 76 was falsely answered to wit: Care had never previously disclosed to the IRS in any tax return or other filing that it was engaged in activities involving the solicitation and expenditure of funds to support and promote the mujahideen and jihad.

All in violation of 26 U.S.C. §7206(1).

17

**COUNT SIX:**      **(18 U.S.C. §1001(a)(2)- False Statements)**

The Grand Jury further charges that:

The allegations contained in paragraphs 1-23 are hereby re-alleged and incorporated by reference as if fully set forth herein.

On or about April 7, 2003, in the District of Massachusetts,

**EMADEDDIN Z. MUNTASSER,**

defendant herein, in a matter within the jurisdiction of the executive branch of the Government of the United States, and specifically within the jurisdiction of the Federal Bureau of Investigation, did knowingly and willfully make materially false, fictitious or fraudulent statements and representations, to wit, that he had never traveled to Afghanistan.

All in violation of 18 U.S.C. §1001(a)(2).

18

**COUNT SEVEN:**    **(18 U.S.C. §1001(a)(2)- False Statements)**

The Grand Jury further charges that:

The allegations contained in paragraphs 1-23 are hereby re-alleged and incorporated by reference as if fully set forth herein.

On or about April 7, 2003, in the District of Massachusetts,

**SAMIR AL-MONLA a/k/a SAMIR ALMONLA,**

defendant herein, in a matter within the jurisdiction of the executive branch of the Government of the United States, and specifically within the jurisdiction of the Federal Bureau of Investigation, did knowingly and willfully make materially false, fictitious or fraudulent statements and representations, to wit, that he did not know a man named Bassam Kanj.

All in violation of 18 U.S.C. §1001(a)(2).

19

**COUNT EIGHT:**   **(26 U.S.C. §7212(a) - Obstructing and Impeding the Internal Revenue Service)**

The Grand Jury further charges that:

The allegations contained in paragraphs 1-23 are hereby re-alleged and incorporated by reference as if fully set forth herein.

From in or about June 1993 and continuing thereafter until in or about April 2003, in the District of Massachusetts and elsewhere,

### EMADEDDIN Z. MUNTASSER, MUHAMED MUBAYYID, AND SAMIR AL-MONLA a/k/a SAMIR ALMONLA

defendants herein, did corruptly endeavor to obstruct and impede the due administration of the internal revenue laws by: concealing from the Internal Revenue Service that Care International, Inc. ("Care"), was an outgrowth of and successor to the Al-Kifah Refugee Center, and was engaged in non-charitable activities, including the solicitation and expenditure of funds to support and promote mujahideen and jihad; filing a false and fraudulent Form 1023, Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code, on behalf of Care, that failed to disclose all of Care's current and planned activities and that it was the successor to Al-Kifah Refugee Center; filing false and fraudulent Forms 990, Return of Organization Exempt from Income Tax, on behalf of Care; and

20

making false and misleading statements to law enforcement agents

of the Internal Revenue Service, Criminal Investigation and

Federal Bureau of Investigation and employees of the Department

of Homeland Security, all of which actions obstructed and impeded

the Internal Revenue Service in its ascertainment, assessment,

and determination of whether Care International, Inc., qualified

and should be designated as a §501(c)(3) organization in 1993 and

should continue to be accorded status as a §501(c)(3)

organization thereafter.

All in violation of 26 U.S.C. §7212(a).

21

A TRUE BILL

FOREPERSON OF THE GRAND JURY

B. STEPHANIE SIEGMANN
ALOKE CHAKRAVARTY
Assistant United States Attorneys

DISTRICT OF MASSACHUSETTS                    March 8, 2007  @ 3.40pm

Returned into the District Court by the Grand Jurors and filed.

Deputy Clerk

22

Criminal Case Cover Sheet                          U.S. District Court - District of Massachusetts

**Place of Offense:**   Massachusetts      **Category No.** II            **Investigating Agency** FBI/IRS

**City**   Westboro, Worcester and Boston      **Related Case Information:**

**County**   Worcester and Suffolk      Superseding Ind./ Inf.   X            Case No.   05-40026-FDS
                                        Same Defendant      X         New Defendant _____
                                        Magistrate Judge Case Number    05-1657-CBS _____
                                        Search Warrant Case Number   _____
                                        R 20/R 40 from District of   _____

**Defendant Information:**

Defendant Name   MUHAMED MUBAYYID            Juvenile     ☐ Yes    ☒ No

Alias Name   _____

Address   _____

Birth date (Year only): 1965  SSN (last 4 #): 5346  Sex M  Race: _____  Nationality: Lebanese

**Defense Counsel if known:**   Michael Andrews      **Address:** 21 Custom House
                                                          Boston, MA 02110
**Bar Number:**   _____

**U.S. Attorney Information:**

**AUSA**  B. Stephanie Siegmann and Aloke Chakravarty    **Bar Number if applicable** _____

**Interpreter:**     ☐ Yes  ☒ No          **List language and/or dialect:** _____

**Victims:**  ☐ Yes  ☒ No      If Yes, are there multiple crime victims under 18 U.S.C. §3771(d)(2)  ☐ Yes  ☐ No

**Matter to be SEALED:**     ☒ Yes      ☐ No

        ☐ **Warrant Requested**        ☒ **Regular Process**        ☐ **In Custody**

**Location Status:**

**Arrest Date:**   _____

☐ **Already in Federal Custody as**  _____  in  _____  .
☐ **Already in State Custody**  _____  ☐ **Serving Sentence**  ☐ **Awaiting Trial**
☒ **On Pretrial Release:**   Ordered by  Swartwood       on   May 2005

**Charging Document:**     ☐ Complaint      ☐ Information      ☒ Indictment

**Total # of Counts:**     ☐ Petty  _____   ☐ Misdemeanor  _____   ☒ Felony   6

Continue on Page 2 for Entry of U.S.C. Citations

☒    I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are
     accurately set forth above.

Date:  3/8/07          Signature of AUSA:  _____

JS 45 (5/97) - (Revised USAO MA 11/15/05) Page 2 of 2 or Reverse

District Court Case Number  (To be filled in by deputy clerk): _____

Name of Defendant    MUHAMED MUBAYYID _____

### U.S.C. Citations

| Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|
| Set 1  18 U.S.C. § 1001(a)(1) | Scheme to Conceal Material Facts | 1 |
| Set 2  18 U.S.C. § 371 | Conspiracy to Defraud United States | 2 |
| Set 3  26 U.S.C. § 7206(1) | Making False Tax Returns | 3-5 |
| Set 4  26 U.S.C. § 7212(a) | Obstructing and Impeding IRS | 8 |
| Set 5 | | |
| Set 6 | | |
| Set 7 | | |
| Set 8 | | |
| Set 9 | | |
| Set 10 | | |
| Set 11 | | |
| Set 12 | | |
| Set 13 | | |
| Set 14 | | |
| Set 15 | | |

ADDITIONAL INFORMATION:

**Criminal Case Cover Sheet**      **U.S. District Court - District of Massachusetts**

**Place of Offense:** _Massachusetts_    **Category No.** _II_    **Investigating Agency** _FBI/IRS_

**City** _Westboro, Worcester and Boston_    **Related Case Information:**

**County** _Worcester and Suffolk_    Superseding Ind./ Inf. _X_    Case No. _05-40026-FDS_
Same Defendant _X_    New Defendant _____
Magistrate Judge Case Number _05-1657-CBS_ _____
Search Warrant Case Number _____
R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name _EMADEDDIN MUNTASSER_    Juvenile  ☐ Yes  ☒ No

Alias Name _____

Address _____

Birth date (Year only): _1964_ SSN (last 4 #): _0538_ Sex _M_ Race: _____ Nationality: _Libyan_

**Defense Counsel if known:** _Norman Zalkind_    **Address:** _65A Atlantic Avenue_
_Boston, MA 02110_

**Bar Number:** _____

**U.S. Attorney Information:**

**AUSA** _B. Stephanie Siegmann and Aloke Chakravarty_    **Bar Number if applicable** _____

**Interpreter:**  ☐ Yes  ☒ No    **List language and/or dialect:** _____

**Victims:**  ☐ Yes  ☒ No    If Yes, are there multiple crime victims under 18 U.S.C. §3771(d)(2)  ☐ Yes  ☐ No

**Matter to be SEALED:**  ☒ Yes  ☐ No

  ☐ **Warrant Requested**    ☒ **Regular Process**    ☐ **In Custody**

**Location Status:**

**Arrest Date:** _____

☐ **Already in Federal Custody as** _____ in _____ .
☐ **Already in State Custody** _____ ☐ **Serving Sentence**  ☐ **Awaiting Trial**
☒ **On Pretrial Release:**   Ordered by _Swartwood_    on  _May 2005_

**Charging Document:**  ☐ Complaint    ☐ Information    ☒ Indictment

**Total # of Counts:**  ☐ Petty _____ ☐ Misdemeanor _____ ☒ Felony _4_

Continue on Page 2 for Entry of U.S.C. Citations

☒    I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are
accurately set forth above.

Date: _3/8/07_    **Signature of AUSA:** _____

JS 45 (5/97) - (Revised USAO MA 11/15/05) Page 2 of 2 or Reverse

District Court Case Number (To be filled in by deputy clerk): _____

Name of Defendant     EMADEDDIN MUNTASSER _____

## U.S.C. Citations

| Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|
| Set 1  18 U.S.C. § 1001(a)(1) | Scheme to Conceal Material Facts | 1 |
| Set 2  18 U.S.C. § 371 | Conspiracy to Defraud United States | 2 |
| Set 3  18 U.S.C. § 1001(a)(2) | Making False Statements | 6 |
| Set 4  26 U.S.C. § 7212(a) | Obstructing and Impeding IRS | 8 |
| Set 5 | | |
| Set 6 | | |
| Set 7 | | |
| Set 8 | | |
| Set 9 | | |
| Set 10 | | |
| Set 11 | | |
| Set 12 | | |
| Set 13 | | |
| Set 14 | | |
| Set 15 | | |

ADDITIONAL INFORMATION:

JS 45 (5/97) - (Revised USAO MA 11/15/05)

**Criminal Case Cover Sheet**                    **U.S. District Court - District of Massachusetts**

**Place of Offense:**    Massachusetts    **Category No.**  II          **Investigating Agency**  FBI/IRS

**City**   Worcester and Boston          **Related Case Information:**

**County**    Worcester and Suffolk          Superseding Ind./ Inf.    X          Case No.    05-40026-FDS
                                            Same Defendant          New Defendant    X
                                            Magistrate Judge Case Number    05-1657-CBS
                                            Search Warrant Case Number
                                            R 20/R 40 from District of

**Defendant Information:**

Defendant Name   SAMIR AL-MONLA a/k/a SAMIR ALMONLA          Juvenile        ☐ Yes    ☒ No

Alias Name

Address

Birth date (Year only):  1957  SSN (last 4 #):  0035  Sex  M  Race:              Nationality:  Lebanese

**Defense Counsel if known:**                              Address:

**Bar Number:**

**U.S. Attorney Information:**

**AUSA**  B. Stephanie Siegmann and Aloke Chakravarty   **Bar Number if applicable**

**Interpreter:**      ☐ Yes  ☒ No          **List language and/or dialect:**

**Victims:**   ☐ Yes  ☒ No    If Yes, are there multiple crime victims under 18 U.S.C. §3771(d)(2)   ☐ Yes  ☐ No

**Matter to be SEALED:**      ☒ Yes      ☐ No

          ☒ **Warrant Requested**          ☐ **Regular Process**          ☐ **In Custody**

**Location Status:**

**Arrest Date:**

☐ **Already in Federal Custody as**                    in
☐ **Already in State Custody**                  ☐ **Serving Sentence**    ☐ **Awaiting Trial**
☐ **On Pretrial Release:**    Ordered by                    on

**Charging Document:**      ☐ Complaint      ☐ Information      ☒ Indictment

**Total # of Counts:**      ☐ Petty          ☐ Misdemeanor          ☒ Felony    4

Continue on Page 2 for Entry of U.S.C. Citations

☒    I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are
     accurately set forth above.

Date:  3/8/07          Signature of AUSA:

JS 45 (5/97) - (Revised USAO MA 11/15/05) Page 2 of 2 or Reverse

District Court Case Number  (To be filled in by deputy clerk): _____

Name of Defendant    SAMIR AL-MONLA a/k/a SAMIR ALMONLA _____

**U.S.C. Citations**

| Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|
| Set 1  18 U.S.C. § 1001(a)(1) | Scheme to Conceal Material Facts | 1 |
| Set 2  18 U.S.C. § 371 | Conspiracy to Defraud United States | 2 |
| Set 3  18 U.S.C. § 1001(a)(2) | Making False Statements | 7 |
| Set 4  26 U.S.C. § 7212(a) | Obstructing and Impeding IRS | 8 |
| Set 5 | | |
| Set 6 | | |
| Set 7 | | |
| Set 8 | | |
| Set 9 | | |
| Set 10 | | |
| Set 11 | | |
| Set 12 | | |
| Set 13 | | |
| Set 14 | | |
| Set 15 | | |

ADDITIONAL INFORMATION: