UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                                    )<br>)<br>MUHAMED MUBAYYID,             )<br>EMADEDDIN Z. MUNTASSER,      )<br>AND SAMIR AL-MONLA,           )<br>        Defendants,              )<br>)                                                    ) | **Criminal Action**<br>**No. 05-40026-FDS** |

**ORDER**
April 24, 2007

HILLMAN , M.J.

Introduction

On May 11, 2005, this matter was referred to Chief Magistrate Judge Swartwood for determination of all pretrial proceedings. On February 21, 2006, this matter was reassigned to me for those same purposes. See Docket No. 94. This Order Addresses Defendants' Motion For Discovery (Docket No. 180)[1].

---

[1] Mr. Al-Monla was added as a Defendant after this motion had been filed and argued. Unless he notifies the Court to the contrary, I will assume that Mr. Al-Monla wishes to join the motion.

<u>Defendants' Request For Materials Related To Amendments to IRS Form 1023</u>

On January 4, 2007, the Defendants filed a Motion For Discovery (Docket No. 180) in which they requested that the Government be ordered to provide copies of any Department of Treasury ("DOT") or Internal Revenue Service ("IRS") memoranda, notes, e-mails, reports, correspondence, or other documents or communications relating to specified revisions made to IRS Form 1023 and related Schedules and Instructions. A hearing was held on this motion on January 22, 2007. On January 23, 2007, I ordered the Government to confer with the appropriate official(s) from the IRS and to inform the Court whether there is any information responsive to the Defendants' requests concerning the 2004 modifications to IRS Form 1023 and its related Schedules and Instructions.

In its response to my January 23, 2007 Order, the Government filed a letter to the Court (*see* Docket No. 195)("Government's Letter) in which it provided the following information:

1.      Marvin Friedlander, a supervisory tax law specialist of Exempt Organizations, was the chairman of the committee charged with revising Form 1023; he is the source of the information provided to the Court about this process.

2.      More than thirty employees and outside consultants were involved in the process to amend Form 1023, which culminated in the modified Form 1023 (including revised Instructions and Schedule G) issued in October 2004.

3.      The project to amend Form 1023 was initiated in 2000; the determination to amend Form 1023 was made as the result of the huge backlog encountered by the IRS in processing Form 1023 applications. It was determined that it was necessary to request that additional information be provided in the initial Form 1023 application in order to eliminate the need to ask as many follow-up questions during the approval process. It was also determined that the form should be amended to better address abuses by charities in general, including the use by charities to support or funnel money overseas for terrorism related activities, and where applicable, to simplify the forms' questions and instructions by using plain English.

4.      The process to revise Form 1023 took four years, including two years to prepare a proposed draft for public comment and two more years to consider those comments (the IRS received 35-30 responses, comprising several hundred

pages) and publish a final form for use in the field. During the four year process, hundreds of meetings occurred involving IRS employees and outside consultants and Mr. Friedlander estimates that over 10,000 pages of documents (including notes, reports, drafts, etc.) and thousands of e-mails were generated.

5.    Mr. Friedlander estimates that it would take approximately six months for the IRS to comply with the Defendants' request.[2]

6.    Mr. Friedlander has stated that the primary modification to Form 1023 with which the Defendants are concerned, *i.e.,* the change to the phrasing of the question of whether an applicant organization was an "outgrowth" or "successor" (in which the reference to "outgrowth" was deleted) was not controversial and he did not recall it as an issue to which the committee devoted any discussions or e-mails. It is Mr. Friedlander's recollection that the word "outgrowth" was deleted because it was redundant.

The Defendants filed a response to the Government's Letter (*see* Docket No. 196). Additionally, both parties further addressed the Defendants' request concerning materials relating to the modification to Form 1023 during the March 5, 2007 status conference.

The information which Mr. Friedlander has provided, *via* the Government's Letter, suggests that the IRS does not possess any documents/e-mails relating to the modification of Form 1023 which would be relevant or material to the defense. However, the Defendants argue that at a minimum, the IRS should be able to produce the summary memorandum which is generally prepared for the decision makers (the Defendants also referred to this as the final advisory memorandum). I agree. The Government shall produce the summary memorandum prepared for the decision makers, *i.e.,* the final advisory memorandum prepared in connection with the 2004 amendments to Form 1023. The IRS shall notify the Government (who will

---

[2]Defendants suggest that the number of documents and e-mails involved is relatively small (over ten thousand documents and over one thousand e-mails), and therefore, locating such materials should not take anywhere near six months, particularly if the IRS devotes a sufficient number of employee's to the task. While I sympathize with the timing issues facing the Defendants, who want a trial as soon as possible, I do not doubt that finding the documents will take the IRS a prolonged period of time. The issue is not only the number of documents and/or e-mails involved, which is substantial, but also locating the materials. Furthermore, the IRS will have to examine the responsive documents/e-mails and make a determination of whether to assert a deliberative process privilege with respect to any of them. Therefore, if the IRS is ultimately ordered to provide the requested documents/e-mails, Defendants must be prepared for the likelihood that it will take months to comply with such order.

promptly notify the Defendants) as soon as possible, and no later than May 11, 2007, whether it intends to assert the deliberative process privilege.  The parties and the IRS shall then have fourteen days from the date of such notification to the Defendants to brief the issue of whether the privilege should apply.

The Defendants further argue that although the information provided by Mr. Friedlander suggests that the IRS does not possess information which would be relevant or material to their defense, it is not clear from the Government's Letter that this is actually the case.  Therefore, I will allow the Defendants to jointly serve five interrogatories on the Government, to be answered by Mr. Friedlander, for purposes of determining whether there is a likelihood that any of the 10,000 documents and over one thousand e-mails relating to the 2004 amendments to Form 1023, Schedule G and the Instructions are relevant or material to their defense.  Mr. Friedlander shall have thirty days to respond to the interrogatories (from the date which service is made on the Government).  After the Defendants receive Mr. Friedlander's response to the interrogatories, the parties and the Court will further address whether any additional discovery is warranted.[3]

## Conclusion

Defendants' Motion For Discovery (Docket No. 180) is allowed, in part, as provided in this Order.

/s/ Timothy S. Hillman
TIMOTHY S. HILLMAN
MAGISTRATE JUDGE

---

[3] The Defendants shall provide the Court with a courtesy copy of the interrogatories and the Government shall provide the Court with a courtesy copy of Mr. Friedlander's response.