UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
)
**UNITED STATES of AMERICA**        )
)
v.                           )
)  **Criminal No.**
**MUHAMED MUBAYYID,**               )  **05-40026-FDS**
**EMADEDDIN Z. MUNTASSER, and**     )
**SAMIR AL-MONLA a/k/a**            )
**SAMIR ALMONLA,**                  )
)
**Defendants.**               )
)
_____

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION
TO SUPPRESS STATEMENTS BY ATTORNEY KHALID NASEEM**

**SAYLOR, J.**

This is a criminal prosecution under 18 U.S.C. § 371 (conspiracy to defraud the United States), 18 U.S.C. § 1001 (false statements), and 26 U.S.C. § 7206(1) (false statements on tax returns). In essence, the indictment charges that defendants Muhamed Mubayyid, Emadeddin Z. Muntasser, and Samir Al-Monla fraudulently obtained a charitable exemption under § 501(c)(3) of the Internal Revenue Code for an entity known as Care International, Inc. According to the indictment, defendants concealed the fact that Care International solicited and distributed funds for, and issued publications supporting and promoting, Islamic holy war ("jihad") and holy warriors ("mujahideen").

Defendants have moved to suppress statements made to the government by an attorney, Khalid Naseem. They contend that the statements should be suppressed on the grounds that the

government obtained the statements in violation of the attorney-client privilege.[1]  For the reasons set forth below, the motion will be denied.

I.     **Background**

On March 8, 2007, a grand jury returned a superseding indictment charging defendants Mubayyid, Muntasser, and Al-Monla with one count of scheming to conceal material facts in violation of 18 U.S.C. § 1001(a)(1), one count of conspiring to defraud the United States in violation of 18 U.S.C. § 371, and one count of obstructing and impeding the Internal Revenue Service in violation of 26 U.S.C. § 7212(a).  The indictment also charges Mubayyid with three counts of filing a false tax return in violation of 26 U.S.C. § 7206(1), and charges Muntasser and Al-Monla with one count each of making false statements in violation of 18 U.S.C. § 1001(a)(2).

Khalid Naseem is a self-employed attorney and a certified public accountant.  In the past, Naseem has prepared tax returns for Care International, and he has represented defendant Muntasser in connection with immigration matters.  At issue here are statements the government elicited from Naseem concerning those matters.

A.     **Statements Related to the Preparation of Care International's Tax Returns**

Naseem prepared federal tax returns for Care International for the years 1997 and 1998 and signed the returns as preparer.  On April 8, 2003, special agents from Immigration and Customs Enforcement and the Internal Revenue Service interviewed Naseem regarding the

---

[1] Defendants also contend that the statements were obtained in violation of their Sixth Amendment right to counsel.  However, the right to counsel "does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *United States v. Coker*, 433 F.3d 39, 42 (1st Cir. 2005) (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991) (internal quotation marks and citation omitted)).  Naseem's statements do not implicate the Sixth Amendment because he made them well before any defendant was indicted.

preparation of those returns.  During the interview, Naseem acknowledged that he prepared the returns, and described how he came to provide the service and the source of the information set forth in the returns.  He stated that he became involved with Care International after meeting defendant Muntasser at their mosque.  Muntasser had described Care International to him as a charitable organization that helped widows and orphans in third world countries, and Naseem agreed to prepare federal tax returns for Care International at no charge.  Naseem told the special agents that he would not assert any attorney-client privilege related to Care International, as he did not perform any legal services or prepare any other documents on its behalf.

During the interview, Naseem also told the agents that he would locate and provide any records in his possession that related to Care International.  On May 14, 2003, he produced copies of Care International's federal tax returns for the years 1993 through 1998.

### B.    Statements Related to the Preparation of Muntasser's INS Application

On October 18, 2002, Muntasser filed an Application for Naturalization (Form N-400) with the former Immigration and Naturalization Service seeking to become a naturalized United States citizen.  Among other things, the form requires the applicant (in Part 7) to list "all the trips of 24 hours or more that you have taken outside of the United States since becoming a Lawful Permanent Resident."  Muntasser became a Permanent Resident on September 21, 1992.  The form also requires (in Part 10B) that the applicant answer questions about affiliations with organizations, associations, and similar groups.

> Part 11 of the application requires the applicant's signature, with the following attestation:
>
> I certify, under penalty of perjury under the laws of the United States of America, that this application, and the evidence submitted with it, are all true and correct.  I authorize the release of any information which INS needs to determine my

eligibility for naturalization.

Part 12 of the application requires the preparer to sign the application, with the following attestation:

> I declare under penalty of perjury that I prepared this application at the request of the above person. The answers provided are based on information of which I have personal knowledge and/or were provided to me by the above named person in response to the *exact questions* contained on this form.

(emphasis in original). The application was signed as preparer by "Khalid Naseem, Esq." The application also requires (and Naseem provided) his daytime telephone number.

According to the government, Muntasser did not list any trips taken prior to April 1999, including a thirty-day trip to Pakistan and Afghanistan in approximately 1994-95, and did not list an affiliation with Care International or the Al-Kifah Refugee Center. Muntasser was interviewed by FBI agents in April 2003 and acknowledged additional foreign travel and organizational affiliations. He then filed a supplement to his Form N-400 that listed additional travel and the Care International and Al-Kifah affiliations.

On April 6, 2004, Muntasser was seeking to re-enter the United States at Logan Airport in Boston when a Customs and Border Protection officer stopped him for questioning. During the interview, the officer asked Muntasser about his Form N-400. According to the "Record of Sworn Statement" prepared by the agent (and signed by Muntasser with acknowledgment of its accuracy), Muntasser provided the following answers:

> Q. Your first N-400 application was filed on or about October 18, 2002 on your behalf by Khalid Naseem, Esq. Is this correct?
>
> A. Yes and that is the only application we have filed.
> . . .
> Q. Part 7 of the N-400 Application deals with trips out of the U.S. What trips were

> missing from your original N-400 application?
>
> A. Maybe Mr. Nassim [sic] did not go all the way back to the beginning 1992. . . .
> . . .
> Q. Part 10B of the N-400 deals with organizations that applicant belongs to. What new organizations were added to the original N-400 application . . . by amendment?
>
> A. I do not remember specifically. We just wanted to put down everything.
> . . .
> Q. Why did you filed [sic] an incomplete N-400 in October 2002?
>
> A. Either the lawyer thought that we had to go back only five years or he missed something.
> . . .

One year later, on April 4 and 5, 2005, government agents interviewed Naseem telephonically and asked questions about his role in preparing the Form N-400 for Muntasser. Naseem explained that his typical practice was either to provide a blank Form N-400 to a client for completion or to review the form with the client to obtain the answers. Naseem stated that he completed the Form N-400 on the basis of information that Muntasser had provided. He further stated that he would not have omitted any information if Muntasser had provided it.

After reviewing his records, Naseem stated that he had sent a blank form to Muntasser, which Muntasser completed in his own handwriting and returned. Naseem also indicated that he did not advise Muntasser to include only trips within the last five years, and reiterated that he completed the Form N-400 solely with information provided by Muntasser.

## II.     Analysis

The First Circuit has adopted Wigmore's formulation of the elements of the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence

>   (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

8 J.H. Wigmore, *Evidence* § 2292, at 554 (McNaughton rev. 1961) (quoted in *United States v. Massachusetts Inst. of Tech.*, 129 F.3d 681, 684 (1st Cir. 1997)). The attorney-client privilege is to be construed narrowly, "because it comes with substantial costs and stands as an obstacle of sorts to the search for truth." *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003). The party who invokes the privilege "bears the burden of establishing that it applies to the communications at issue and that it has not been waived." *In re Keeper*, 348 F.3d at 22.

For the reasons set forth below, the Court finds that none of the statements by Naseem are protected by the attorney-client privilege.

### A.   The Preparation of Tax Returns

The first issue involves statements by Naseem related to Care International's tax returns. The government contends that the preparation of tax returns involved solely accounting services, and therefore no attorney-client privilege attached to these services even if a lawyer provided them.

It is well-settled that "[i]n contrast to the attorney-client privilege, 'no confidential accountant-client privilege exists under federal law.'" *United States v. Cavallaro*, 284 F.3d 236, 246 (1st Cir. 2002) (quoting *Couch v. United States*, 409 U.S. 322, 335 (1973)). When a person happens to be both a lawyer and an accountant—as is true of Naseem—there is no privilege for communications that are "characteristic of an accountant-client relationship." *United States v. Bisanti*, 414 F.3d 168, 172 (1st Cir. 2005). Preparation of tax returns, without more, is an

accounting, not a legal function.  *See*, *e.g.*, *United States v. Frederick*, 182 F.3d 496, 500 (7th Cir. 1999); *In re Grand Jury Investigation*, 842 F.2d 1223, 1224 (11th Cir. 1987).

Because Naseem was clearly acting as an accountant, not as an attorney, when he prepared the Care International tax returns, no attorney-client privilege attached to those services.

### B.     The Preparation of INS Form N-400

The statements made by Naseem concerning his role in preparing Muntasser's Form N-400 require more extended discussion.  As noted above, Naseem signed the Form N-400 as a preparer, certifying that he prepared the application from information provided by Muntasser.  He also gave Muntasser legal advice concerning his obligations in connection with the application.  There are thus two issues:  whether the privilege applies to the source of the factual information actually set forth on the form and whether it applies to the legal advice provided in connection with the preparation of the form.

#### 1.     Statements about the Source of Facts for INS Form N-400

"For the attorney-client privilege to attach to a communication, it must have been made in confidence and for the purpose of securing or conveying legal advice."  *In re Keeper*, 348 F.3d at 23.  *See also Massachusetts Inst. of Tech.*, 129 F.3d at 684.  When information is supplied to a lawyer with the intent that it be disclosed in a required filing, such as a tax return or securities filing, such information is not confidential and, therefore, not protected by the privilege.  *Denius v. Dunlap*, 209 F.3d 944, 952 (7th Cir. 2000) (citing *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983)).

The present case, however, goes far beyond the mere disclosure of information on a government form.  The Form N-400 requires that the preparer (here, Naseem) declare under

penalties of perjury that he "prepared [the] application at the request of [Muntasser]" and that the "answers provided are based on information of which I have personal knowledge and/or were provided to me by [Muntasser] in response to the *exact questions* contained on this form." (emphasis in original). Such an attestation plainly contemplates that factual information transmitted to counsel as preparer will *not* be treated as confidential. Indeed, the attestation would be meaningless if the government were prohibited from following up with the preparer and asking about the source of the information. And to underscore that point even further, the application asks for the preparer's telephone number, clearly indicating that the government may seek to contact the preparer and ask questions about the preparation of the form.

The information set forth in a Form N-400 is thus intended to be conveyed to the government, and the form makes clear that the preparer may be required to answer questions concerning the accuracy of information relayed to him. That information, therefore, is not privileged, either because it was never intended to be confidential or because any confidentiality was waived as soon as the form was submitted to the government. *See Denius*, 209 F.3d at 952; *In re Keeper*, 348 F.3d at 23 ("The privilege evaporates the moment that confidentiality ceases to exist.").

### 2. Statements about Advice on Completing INS Form N-400

Naseem was not only asked by government agents about the source of information on the form, but also about legal advice he may have given to Muntasser concerning his obligations: whether he in fact advised Muntasser that he only needed to list trips going back five years.

As noted, at the airport, Muntasser was asked, "What trips were missing from your original N-400 application?" In response, Muntasser did not give a factual response (e.g., "all

trips between 1992 and 1999"), but gave a reason for the omission: "Maybe Mr. [Naseem] did not go all the way back to the beginning 1992." Later in the interview, he was asked, "Why did you [file] an incomplete N-400 in October 1992?" Muntasser responded, "Either the lawyer thought that we had to go back only five years or he missed something."

In substance, Muntasser thus contended that either (1) his attorney provided inaccurate information on the form (i.e., made a factual mistake) or (2) provided erroneous legal advice (i.e., made a legal mistake). Regardless of the precise label one puts on the statements, it is clear that Muntasser was affirmatively relying on the actions and advice of his counsel in order to defend himself against a suggestion by law enforcement that he had not provided accurate information when legally required to do so. Under the circumstances, any privilege that may have existed was waived. *See*, *e.g.*, *In re Keeper*, 348 F.3d at 24 (client cannot claim reliance on advice of counsel and then assert privilege as to lawyer's advice); *Johnson v. Alabama*, 256 F.3d 1156, 1178 (11th Cir. 2001) (habeas petitioner cannot claim ineffective assistance of counsel and then assert privilege as to communications with lawyer).

Nor is that conclusion altered by the fact that plaintiff gave alternative explanations ("*Either* the lawyer thought that we had to go back only five years *or* he missed something") (emphasis added). Under either scenario, the privilege was either waived or never came into existence in the first instance.

The Court also notes that when he signed the Form N-400, Naseem affirmed under penalty of perjury that the answers provided were "in response to the *exact questions* contained on this form." If Naseem had advised Muntasser to only provide information going back five

years, such advice would be directly contrary to the "exact questions" on the form.[2]  Because the government was entitled to determine whether Naseem had asked Muntasser the exact questions set forth on the Form N-400, it would appear that any deviation from those questions is not privileged.

Accordingly, the Court finds that any communications pertaining to the preparation of the Form N-400 are not privileged, and the motion to suppress will be denied.

### III.   Conclusion

For the foregoing reasons, defendants' motion to suppress statements made by attorney Khalid Naseem is DENIED.

**So Ordered.**

                                                /s/ F. Dennis Saylor
                                                F. Dennis Saylor IV
                                                United States District Judge

Dated: August 6, 2007

---

[2] As to trips, the Form N-400 unambiguously instructs the applicant: "List below all the trips of 24 hours or more that you have taken outside of the United States since becoming a Lawful Permanent Resident."