```
                  UNITED STATES DISTRICT COURT
                    DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA        )
                                )
          v.                    )  Crim. No. 05-40026-FDS
                                )
MUHAMED MUBAYYID, and           )
EMADEDDIN Z. MUNTASSER,         )
and                             )
SAMIR AL-MONLA a/k/a            )
SAMIR ALMONLA,                  )
                                )
          Defendants.           )
```

**GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE*
TO EXCLUDE EVIDENCE OF DOCUMENT DESTRUCTION**

The United States, by and through Michael J. Sullivan, and B. Stephanie Siegmann, Aloke S. Chakravarty, and Donald L. Cabell, Assistant United States Attorneys for the District of Massachusetts, hereby opposes the defendants' motion to exclude evidence that the defendant Muhamed Mubayyid ("Mubayyid") destroyed or removed certain Arabic documents from the storage unit of Care International, Inc. ("Care") and an intercepted conversation discussing the destruction of evidence between Mubayyid and Mohamed Chehade ("Chehade") on the grounds that it is properly admissible under Fed. R. Evid. 404(b) as evidence of consciousness of guilt.[1]

---

[1] "[S]everal courts of appeals have concluded that evidence of consciousness of guilt is intrinsic to the charged offense, and thus outside Rule 404(b)." United States v. Kemp, 500 F.3d 257, n.23 (3rd Cir. 2007); but see United States v. Levy-Cordero, 67 F.3d 1002, 1011 (1st Cir. 1995) ("[w]e think the evidence in question was properly admissible under Rule 404(b) to show consciousness of guilt").

1

On October 2, 2001, Chehade, the President of Global Relief Foundation ("GRF") and a former member of Al-Kifah Refugee Center, called Mubayyid at his workplace. During a cryptic telephone conversation, Mubayyid informed Chehade that law enforcement went into Care's "old location" and searched it. Mubayyid further advised Chehade that "we had already moved" the effects that were originally in the office to storage. Chehade responded: "[r]emove them." Mubayyid in turn stated that he was afraid to remove them in fear of getting caught but Chehade again encouraged Mubayyid: "No, no, no, remove them, remove them . . ." Mubayyid did not further disagree with this instruction. The subject of the conversation then turned to checks Mubayyid had sent to Chehade.

Within three days of this telephone conversation, on October 5, 2001, agents of the Federal Bureau of Investigation ("FBI") conducted a search of Care's storage unit located at Storage USA, 160 Otis Street, Northboro, Massachusetts pursuant to the Foreign Intelligence Surveillance Act ("FISA"). On August 4, 2001, Mubayyid leased the 10 foot by 20 foot storage unit on behalf of Care and signed the lease as the primary contact for Care. Storage USA was located within two blocks of Mubayyid's residence.

During the FISA search of Care's storage unit, approximately

667 pages of documents were copied,[2] including ten pages of Arabic notes. These notes, which were described in detail in the Affidavit of James Marinelli filed in November 2006 with the Government's Opposition to the Defendants' Motion to Dismiss, memorialize at least one meeting between members of Care and another purported charity, GRF in April 1995 and largely concerned a jihad waged by a battalion in Afghanistan. These notes also, among other things, include at least one specific reference to "Bin Laden" (believed to refer to Usama bin Laden) and contain a draft of a pledge of loyalty to Gulbuddin Hekmatyar, an Afghan warlord.[3] Muntasser signed this pledge of support to Hekmatyar using the name "Abu Adbul Rahman."[4] In this letter, Muntasser tells Hekmatyar that "those who love you in the Boston Office" are seeking his direction in the jihad effort. Further, in this letter, Muntasser refers to his meeting with Hekmatyar in Afghanistan two months earlier.[5] In addition to

---

[2] Because this search was clandestine, documents were copied and not seized.

[3] In 2003, Hekmatyar was designated by the United States Government as a Specially Designated Global Terrorist.

[4] During an interview by Special Agent James Marinelli and Chris Peet, FBI, in April 2003, Muntasser admitted to using this name.

[5] This trip is the subject of Count 6 of the Indictment, which charges Muntasser with lying to the agents of the FBI when he told them in April 2003 that he had never traveled to Afghanistan.

these Arabic notes, an email from Azzam Publications addressed to CAREBOSTON@aol.com (one of the subjects of the defendants' Motion in Limine to Exclude Non-Expert Documentary Evidence) was found and copied. This email addressed the issue of how to get money to the "'fighting groups'" or 'mujahideen'" in Kosova and warned people to be careful when donating money to certain charities. Although this email was sent to a general email address of Care, the evidence at trial will demonstrate that this email address was checked by Mubayyid.

In April 2003, when a criminal search of the same storage unit was conducted, neither the arabic notes, including the pledge of support of Hekmatyar, nor the email was found. A document shredder was also found in the storage unit. No such equipment was observed during the earlier search in October 2001.

During a search of Mubayyid's residence that occurred on the same day as the criminal search of the storage unit, however, the same exact email as that observed in the storage unit during the 2001 FISA search was found. The email was found amongst newsletters of Care and Al-Kifah Refugee Center and other Care materials that appeared to have been moved from the storage unit to Mubayyid's apartment. Unlike the Azzam publications email, the jihad related arabic notes that were observed and copied during the 2001 FISA search were not found at either location suggesting that they were destroyed by Mubayyid.

The facts establish that the defendants took steps to destroy and move documents that were of an evidentiary value in establishing the defendants' involvement in criminal activity. "That an inference of consciousness of guilt can be drawn from the destruction of evidence is well-recognized in the law." Haemonetics Corp. V. Dupre, 238 B.R. 224, 228 n. 10 (D. Mass. 1999); United States v. Stackpole, 811 F.2d 689, 693 (1st Cir. 1987) ("obstruction of justice acts would have been admissible to show consciousness of guilt").  It is not necessary to prove that the defendants knew that they were under scrutiny for the alleged offense, in order to introduce evidence that they took steps to alter, hide or destroy evidence.  See United States v. Maravilla, 907 F.2d 216 (1st Cir. 1990) (evidence that defendant took steps to eliminate evidence that would tie him to the crime was admissible as consciousness of guilt evidence, even though undertaken days before crime was discovered).

The defendants argue that the conversations and evidence of destruction are ambiguous and subject to an interpretation that is consistent with innocence.  First, the government disagrees with the defendants' presentation of the facts.  As presented above in full context, the evidence supports an inference that the defendants, conscious of their guilt, moved and destroyed evidence.  Second, the defendants can make their argument to the jury; an alternative explanation is not a basis for excluding the

evidence.  "The fact that he [the defendant] might have had a good reason, consistent with innocence [for certain acts] ... makes the evidence less probative, not irrelevant."  <u>Maravilla</u>, 907 F.2d at 221.  "[T]he possibility of innocuous explanations for behavior does not foreclose the jury's contrary inference." <u>United States v. Ortiz</u>, 447 F.3d 28, 33 (1st Cir. 2006).

The government further objects to the defendants' request for further discovery.  Government is not required to show precisely where the Arabic notes were found in order to argue the reasonable inference that Mubayyid destroyed the notes because they demonstrate that Care was, as alleged, involved in activities designed to support the Mujahideen, which were concealed from the Internal Revenue Service.

WHEREFORE, the government respectfully requests that the Court deny the defendants' motion in limine to exclude evidence of document destruction.

                                       Respectfully submitted,

                                       MICHAEL J. SULLIVAN
                                       United States Attorney

                              By: <u>/s/ B. Stephanie Siegmann</u>
                                   B. STEPHANIE SIEGMANN
                                   ALOKE S. CHAKRAVARTY
                                   DONALD L. CABELL
                                   Assistant U.S. Attorneys

Date: November 2, 2007

## Certificate of Service

    I do hereby certify that a copy of foregoing was served upon the counsel of record for the defendants by electronic notice on this 2nd day of November 2007.

                                  /s/ B. Stephanie Siegmann
                                  B. Stephanie Siegmann