UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　　　　Plaintiff<br><br>V.<br><br>MUHAMED MUBAYYID,<br>EMADEDDIN Z. MUNTASSER and<br>SAMIR AL-MONLA,<br>　　　　　　　　Defendants | CRIMINAL NO. 05-40026-FDS |

### DEFENDANTS' MOTION IN LIMINE RE: WIRETAPS AND INCORPORATED MEMORANDUM OF LAW

The defendants move to exclude portions of the following transcripts of wiretapped telephone conversations between defendants and individuals who are not coconspirators. Since all of these intercepts were FISA intercepts, defendants renew their motions that the intercepts were unlawful under the FISA statute.

Almost all of these intercepts are of conversations involving Adham Hassoun or Kifah Jayyousi. The government nowhere claims that Hassoun or Jayyousi were co-conspirators in this case. Moreover, most of the phone intercepts offered by the government in the 1995-1997 period regard the exchange of videos of atrocities against Muslims in Bosnia and elsewhere, as well as written materials to the same effect. Such materials are protected under the First Amendment and are not probative of unlawful conduct in a Klein conspiracy. For these reasons, defendants object to the admission of any FISA intercepts involving Hassoun and/or Jayyousi.

1. <u>Exhibit 512</u> (1/19/96 conversation between defendant Emadeddin Muntasser, Adham Hassoun and Kassim Daher)

The beginning of the transcript is captioned "redacted," apparently indicating redaction of prior conversation between Messrs. Hassoun and Jayyousi before Mr. Muntasser joined the call. Consistent with this redaction, the first eleven lines on page 2, which also do not involve Mr. Muntasser, should be redacted.

The conversation on pages 4 and 5 should be redacted under Fed. R. Evid. 403 because it pertains to the confiscation by Customs of "clothes and things" which Mr. Muntasser was importing. This subject is irrelevant to Care's activities and is unfairly prejudicial in that a jury could infer wrongdoing on Mr. Muntasser's part from this Customs matter.

2. <u>Exhibit 514</u> (1/27/96 Hassoun/Wassim Yassin)

Wassim Yassin is listed by the government as an unindicted coconspirator. The government explicitly stated in open court on September 20, 2007 that Hassoun is not an unindicted coconspirator in this case. The second half of page 6 of this transcript should be redacted. Here Hassoun says that he wants to buy a "scope" which "mounts on the M-16", mentions the price and says that "it works nice". Hassoun's personal interest in buying this item has nothing whatever to do with Care's activities. It is therefore irrelevant and obviously unfairly prejudicial.

Even if Hassoun were a coconspirator, these remarks would not be deemed in furtherance of a conspiracy and hence would not be admissible. Statements made for personal objectives or as part of idle conversation are not in furtherance of a conspiracy. <u>United States v. Moran</u>, 493 F.3d 1002, 1010 (9th Cir. 2007); <u>see also</u> <u>United States v. Darwich</u>, 337 F.3d 645, 657 (6th Cir.

Case 4:05-cr-40026-FDS    Document 329    Filed 11/02/2007    Page 3 of 9

2003) (mere "idle chatter or casual conversation about past events" is not in furtherance of the conspiracy); United States v. Cornett, 195 F.3d 776, 782-786 (5th Cir. 1999) (a statement must advance a conspiracy's ultimate objectives; idle chatter is therefore not admissible even if it is prejudicial and was made among coconspirators; fact that conversation "touched on" the conspiracy was not sufficient for admissibility); United States v. Johnson, 927 F.2d 999 (7th Cir. 1991) (idle chatter, narrative declarations and superfluous casual remarks are not in furtherance of the conspiracy).

3.     Exhibit 519 (8/26/96 Hassoun/Mohammed Akra)

Mohammed Akra is listed by the government as an unindicted coconspirator. Mr. Muntasser answered Hassoun's call, but at Hassoun's request puts him through to Akra (p. 2) and is not a participant in the remainder of the conversation between Hassoun and Akra. This entire conversation should be excluded as evidence because none of it relates in any way to Care's activities. The subject of the conversation is a sheikh who is coming from Lebanon to raise money for a mosque and how to publicize his visit. It is clear from the conversation that this was something Hassoun and Akra were planning independently of Care. (Hassoun wanted to talk only with Akra, and not with Mr. Muntasser, about this. Tr. p. 2) Furthermore, there is no extrinsic evidence linking this matter to CARE.

4.     Exhibit 529 (12/19/96 Hassoun/Kifah Jayyousi/defendant Samir al-Monla)

Regarding this specific intercept, the first four pages of transcript concern scheduling a visit of Mr. Hassoun to Boston in early January 1997 for a speaking engagement. Al Monla mentioned that another man was coming at the same time, Suleiman Al-Ahmar, but that "we aren't bringing him." Hassoun began an extended rant against Suleiman, that he is "useless,"

3

that Suleiman had stayed at Hassoun's house and had lied to him, that Sulieman at the time "started babbling, saying we give to the tourists, we give to the tourists," but that Hassoun replied to him "why are you saying that you give to the tourists then, why then this kind of talk...." Al Monla replied:

> O.K. I'm going to tell you something. I personally uh, am short on information in details. When you say that you talked to the men, I mean I personally was not aware of this matter [cough].

It is evident that Al Monla was taken aback by the conversation, and "personally was not aware of this matter [cough]." Moments later, he added: "I didn't know that the matter was like this." Al Monla did not contribute to the conversation or affirm its thrust. Hassoun's recounting of his confrontation with Suleiman, while surely prejudicial as Hassoun is talking about a past conversation with another person about "tourists," was not part of or in furtherance of the conspiracy charged here, and should be excluded as well under Rule 403.

5.  <u>Exhibit 532</u> (2/18/97 Hassoun/Muntasser)

Again, at p. 7 of the transcript of this conversation (all but last three lines of the page), Hassoun indulges in gossip about a lesson given by an unnamed sheikh. Mr. Muntasser says nothing but polite interjections such as "Yeah" and "Praise be to Allah". There is no additional conversation linking this to Care. These idle remarks should be redacted since they are neither made by a coconspirator nor made in furtherance of the conspiracy.

6.  <u>Exhibit 533</u> (2/18/07 Hassoun/Akra)

At page 6 of this conversation, Hassoun asks Akra, "What do you think about coming [to Somalia] with us?" Akra does not respond. There is no evidence, intrinsic or extrinsic, that Care was involved in any way in Hassoun's proposed jaunt and therefore the conversation about

Somalia (which continues to p. 7) should be redacted.

7.    Exhibit 537 (8/3/98 Jayyousi/al-Monla)

On page 9 of the transcript, Jayyousi told Al Monla about an individual named Mahmoud Abu Halima who was incarcerated and whose family needed help. Jayyousi stated that Halima "was put in prison because he was the chairman of the defense panel for brother Sayyed Nasir ... [f]or the Kahana case" and that he (Halima) "joined the group of the skyscraper in New York." Jayyousi asks for a contribution to the support of the woman, who had 4 or 5 children and who wished to relocate the family to Egypt. Defendants submit that the comments about Halima, that he aided the defense panel for another person and was thereafter charged and given a life sentence in connection with the first World Trade Center prosecution, are extraneous to the alleged conspiracy, and are extremely prejudicial in violation of Rule 403.

8.    Exhibit 540 (10/2/01) Chehade/Mubayyid)

According to a transcript of the intercepted conversation, Mohammad Chehade told Mubayyid to '[r]emove" records from storage, and "take them out of storage." Mubayyid replied: "...[O]ne is afraid that they may think that there is something, I mean ... I don't want to touch anything, so that there is no." Tr. October 2, 2001, at 4. Thus, Mubayyid replied that he did not want to touch anything, concerned that "they," presumably investigators, would think that he was hiding something. This conversation hardly evidences guilty conduct by Mubayyid. Nonetheless, the government proposes to use the comment by Chehade, not a defendant here, as the basis for some inference that Mubayyid himself had concerns about the records. That Mubayyid had no designs on destruction of records is apparent from another fact: the intercepted conversation occurred on October 2, 2001, three days before the FISA secret search of the

storage facility (on October 5, 2001), at which time the government says it found documents. As it turned out, Mubayyid had destroyed nothing, and there is no basis for the inference that he intended to do so at that time, or later.

9. <u>Exhibit 545</u> (4/10/03 al-Monla/Ramez al-Monla)

According to the transcript, Al Monla called his brother Ramez Al Monla, asking "[d]id they come to you the other day?" The reference is presumably to the government's questioning of persons in the wake of April 7, 2003 search. According to the transcript, Al Monla asked to see his brother to meet with him for 5 minutes and said "[i]t is very, very important that you don't talk to them at all ...." This conversation occurred within minutes of a conversation where Al Monla related to Mubayyid that "[t]oday I went to the lawyer" who told him "do not talk to them," and that Al Monla said:

> ...I urge everybody not to speak to those people ... [u]nless there is a lawyer there with you... This is incriminating. It could be you, could be somebody else. And I think it's us, and we didn't do anything wrong. We know what we collected, we know where we spent (sic) it and so forth and so on. That's it.... O.K., So don't sleep on this. ... You have to give your lawyer time to prepare.

Transcript April 10, 2003, MUB22778. Thus, in the context of the conversations, Al Monla sought advise of counsel and was communicating to others the advice (entirely sensible) to speak with counsel. The government is miscasting the single conversation, of all things a conversation of Al Monla with his brother, to suggest that Al Monla was counseling his brother to obstruct justice. This use is, frankly, entirely unfair and distasteful, and demonstrates how the government monitored conversations about consultations with counsel and personal conversations among family members, under the purported aegis of FISA, even as the criminal

prosecution advanced headlong.

10.     Exhibit 546 (4/14/03 Mubayyid/al-Monla)

This transcript reveals the same issues. Al Monla called his brother-in-law Mubayyid, and they talked about the agent's visit. Al Monla revealed his personal distress, not surprising for anyone who finds himself under investigation, that he "can't even do my work, ... Don't tell my sister. I am just telling you." Mubayyid said: "I saw the attorney for CARE" who conveyed that "[t]here is nothing...." They discuss that another person "made with them, what do you call it? A plea bargain." "Why? Because he sent a little money to Chechnya". Mubayyid told his brother in law to get rest, to "[t]ake it out of your head," and asks him if he wanted to meet with the attorney the following day. This conversation was in significant part about the effort to get advice of counsel, and revealed the personal distress of a person under investigation, confided privately (or so he thought) to his brother-in-law. The conversation, then, is sensitive, should have been minimized, sheds no light on any issue before the jury, and should not be admitted.

12.    Exhibit 547 (7/19/-3 Mubayyid/Mahmoud El-Asmar)

Some three months after public searches were executed at the Care storage locker and Mr. Mubayyid's home, this FISA wiretap intercepted a conversation between Mr. Mubayyid and one Mahmoud El-Asmar, who is neither a defendant nor a co-conspirator. No Care business or activities were discussed. Nonetheless, the government offers this conversation which is of little if any probative value, yet loaded with the following potential unfair prejudice: Mr. El-Asmar speaks of events in Lebanon, including the torture techniques employed by what are presumed to be the authorities. Mr. Mubayyid adds only the observation that "Bassam's story over there, messed things up the way 9/11 messed things up here," which is clearly no endorsement of either

"Bassam's" activities or the events of 9/11 . One can only guess that the conversation is being offered because Mr. Mubayyid uttered the words "9/11". The conversation then segues into the cost of long distance telephone calls, corrupt custom officials in Lebanon, and the fact that Mr. El-Asmar was fired, after having complained of discriminatory treatment at work due to being passed over for promotion, in his view by a less qualified born-again Christian, and was now suing. The transcript of this conversation and gossip exchange is some 21 pages long, and has no place in this trial.

    For the foregoing reasons the above-listed conversations should be excluded or redacted.

Respectfully submitted,

MUHAMMED MUBAYYID
By his attorney,

  /s/ Michael C. Andrews
Michael C. Andrews (BBO# 546470)
121 Custom House Street
Boston, MA 02110
(617) 851-0072

EMADEDDIN Z. MUNTASSER
By his attorneys,

  /s/ Norman S. Zalkind
Norman S. Zalkind (BBO# 538880)
Elizabeth A. Lunt (BBO#307700)
David Duncan (BBO# 546121)
Zalkind, Rodriguez, Lunt & Duncan LLP
65a Atlantic Avenue
Boston, MA 02110
(617) 742-6020

SAMIR AL-MONLA
By his attorney,

\_\_/s/ Charles P. McGinty\_\_
Charles P. McGinty (BBO# 333480)
Federal Defender's Office
408 Atlantic Avenue
Boston, MA 02110
(617) 223-8061

Dated: November 2, 2007