```
                UNITED STATES DISTRICT COURT
                 DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA      )
                              )
           v.                 )   Crim. No. 05-40026-FDS
                              )
MUHAMED MUBAYYID,             )
EMADEDDIN Z. MUNTASSER, and   )
SAMIR AL-MONLA                )
                              )
           Defendants         )
```

**GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* AND TO STRIKE RE: "OUTGROWTH OR SUCCESSOR" AND SUPPORTING MEMORANDUM**

**Introduction and Summary**

The United States of America, by and through its attorneys Michael J. Sullivan, United States Attorney, and Assistant United States Attorneys Donald L. Cabell, B. Stephanie Siegmann and Aloke S. Chakrvarty, hereby opposes the defendants' motion. As an initial matter, the title of the defendants' motion is grossly misleading; the defendants seek to (1) strike any allusions to "outgrowth or successor," (2) strike any allusions to Al-Kifah and any links that Al-Kifah had to Care International, and (3) dismiss counts one, two and eight. See Defs.' Mem. at 12-13.[1]

---

[1] One has to go all the way to page 12 of the defendants' memorandum to realize the broad scope of relief they seek. The defendants "request that the Court strike paragraphs and allegations relating to the activities or nature of Al-Kifah Refugee Center (Introductory Allegation paragraphs 1, 2, 3, and 3; Count Two paragraph 8; and Portions of Counts One and Eight." Defs.' Mem. at 12. The defendants also "request that the government be prevented from introducing at trial information regarding the nature and actions of Al-Kifah Refugee Center its alleged links to terrorist activities." Id. The defendants concede that these "requests" amount to "a [Rule 12(b)(2)] motion

The motion is wholly without merit. First, assuming the Court does not summarily reject the motion as untimely to the extent it is advanced as a Rule 12(b)(2) motion to dismiss, the motion is based on the faulty premise that the IRS has, as a matter of law, through the testimony of an IRS employee at a discovery hearing on a different matter, defined "outgrowth or successor" in a narrow way that rendered the defendants' answer on Question 5 truthful. The Court should decline to even consider this argument because the Court has already held in rejecting a prior challenge to the indictment [Order on M. To Dismiss, p. 19] that the meaning of the "outgrowth or successor" language in "Question 5 is not fundamentally ambiguous, and that the portion of the indictment charging defendants with concealing Care's relationship with Al-Kifah is valid." Accordingly, the defendants' attempt to take a second bite at the apple should not be countenanced. The motion should also be rejected because the defendants do no more than to ask the Court to adopt their theory of the evidence over the government's theory of the evidence, and the motion thus improperly usurps the role of the jury.

To be sure, the motion fails just as easily if considered on the merits. The defendants seek a legal ruling that they did not lie when they answered "no" to Question 5 because IRS employee Lucinda Westcott purported to speak for, and so bound, the

---

to dismiss the offending allegations." Id.

government when she reportedly stated that the term "outgrowth or successor" in Question 5 was only meant to ensure that taxable entities do not shift debt or assets into a tax free organization. However, Ms. Westcott was authorized to testify only regarding the Form 1023 and the revision process to the Form. She had no authority to bind the IRS or the government and, indeed, did not ever purport to define the term "outgrowth or successor." Moreover, Care International would still have satisfied the artificially narrow definition of "successor" urged by the defendants because Al-Kifah **was** a taxable entity with taxable assets and did transfer assets into Care, a tax free organization.[2]

### Lucinda Westcott and the Discovery Hearing on June 13, 2007

The defendants' motion arises almost entirely from the parties' evidentiary hearing before Magistrate Judge Hillman on June 13, 2007. As the Court may be aware, the defendants had requested that the government search for and produce any documents relating to any revisions to the Form 1023 from 1990 through 2006, and the government had responded that the request was unduly burdensome. In order to determine whether the request

---

[2]The defendants assert throughout their memorandum that the government, upon information and belief, does not intend to introduce any evidence that assets were transferred from Al-Kifah to Care. That is incorrect. As the defendants are well aware, the government expects to show that defendant Muntasser transferred thousands of dollars from Al-Kifah to Care around the time that Care was incorporated.

was in fact excessively onerous, the Court ordered a hearing to answer that narrow question, and the government offered Ms. Westcott as its representative, again, on that narrow question.

The defendants suggest in the introduction to their motion that the government offered Ms. Westcott to discuss the "outgrowth or successor" language in the context of the pending indictment, but that is simply wrong, and the language they quote is taken out of context.[3]  In fact, prior to Ms. Westcott taking the stand, the government, in an effort to ensure that everyone present understood the very limited scope of the hearing as ordered by M.J. Hillman, i.e., whether requiring the government to search for the requested information would be unduly burdensome, summarized that the defendants had requested revisions to the Form 1023 from 1990 through 2006, and had, in order to help "narrow the inquiry," specifically requested revisions to the "particular questions"  "at issue in this indictment..."  Westcott Tr. at 7.  Again, the government never stated that Ms. Westcott was being "offered" to speak for the IRS on the meaning of "outgrowth" or "successor," and reiterated that she was there solely to testify about the revision process itself rather than the meanings of any terms:

---

[3]In summarizing the defendants' discovery request, and Ms. Westcott's anticipated testimony, AUSA Chakravarty used the word "revision" a number of times, but it was erroneously transcribed as "provision."  See Westcott Tr. at 6-7.  The government uses the word "revision" here.

> Ms. Westcott is here competent to testify not
> only to what the Form 1023 is itself but the
> revisions and process.  She's been with IRS
> for probably the last 24 years, working
> exclusively primarily in this area.  She is
> familiar with the significant revision
> process that occurred between late 1999 to
> 2004, which is the substantial revision of
> the form from 1993 when the defendants
> initially submitted that form.  Again, the
> government's argued that what happened 11
> years later is irrelevant, but I say that, I
> suppose, for gratuitous argument as opposed
> to frame the issue.  That substantial
> revision, the October 2004 revision is the
> four year process that the IRS ultimately
> arrived and that has slightly changed for the
> 2006 revision.  I think some of it's minor
> fees and some other things have changed, the
> format has changed a little bit.  So she's
> going to - she was integral to that process.
> She's going to testify about that.  And then
> finally she's going to testify about what it
> would take to try to collect the information
> that the defense is asking for.

Westcott Tr. at 7-8.

In addition to making clear the limited scope of Ms. Wescott's anticipated testimony, the government introduced as an exhibit a letter from the IRS.  The letter authorized Ms. Westcott to testify but also made it clear that she could not speculate about answers to question outside of the revision process.  More specifically, Ms. Westcott was authorized to testify about the 2004 revisions to the Form 1023.  She was specifically barred, however, from testifying as to matters about which she had no personal knowledge.  She was also prohibited from testifying as to her personal views, opinions or intentions

with respect to any matter.  She also was not permitted to testify in response to hypothetical questions, or to any general questions concerning the positions, policies, procedures or records of the IRS.  In short, she was not authorized to testify regarding the IRS's position as to the meaning of the terms "outgrowth" or "successor."

Nonetheless, the defendants through counsel tried hard to get Ms. Westcott to go outside the scope of her authority and to speculate what she and/or the IRS would have said in 1992 if asked what the word "successor" meant, especially since the Form 1023 then provided no definition but was revised in 2004 to include some examples where an organization might be considered a successor.  If anything, though, Ms. Westcott stated that applicants back in 1992 would and should have submitted more information than applicants in later years because "if they're unclear that they should be submitting information, we expect organizations to provide all the information up front and then if we have questions we would have written to them and asked them." Westcott Tr. at 26-27.

### Argument

**I. THE COURT SHOULD SUMMARILY DENY THE DEFENDANTS' MOTION WITHOUT REGARD TO IT MERITS**

   A.  The Court should Decline to Consider the Defendant's Motion to Dismiss because it is Untimely.

The defendants concede as noted above that the motion to

strike significant portions of the government's case, filed on the eve of trial, may be viewed as a motion to dismiss under Fed. R. Crim. Pro. 12(b)(2). The defendants have neither sought leave to file a dispositive motion at this late juncture, nor attempted to offer an explanation as to why it is being filed so late. Given that the hearing on which the motion is based took place in June of 2007, over four months before the filing of this motion, it is difficult to imagine a reason that would justify the late filing. Regardless, it would simply be unfair to the government to entertain the defendant's dispositive, and the Court should accordingly reject it.

    B.    The Court has Already Resolved this Issue Against the Defendants and Should Reject it Under the Law of the <u>Case Doctrine.</u>

In their first motion to dismiss, the defendants also argued that the indictment should be dismissed as it related to the terms "successor" and "outgrowth," albeit there the defendants argued that the terms were fundamentally ambiguous. In rejecting the argument, the Court noted that the Form 1023 provided no definitions for the terms, that they were not fundamentally ambiguous, that a person of ordinary intellect could discern their meaning, and that the portion of the indictment charging defendants with concealing Care's relationship with Al-Kifah is valid. [Order on M. To Dismiss, p. 19].

Accordingly, the defendants have already argued about the

7

meaning of terms "outgrowth" and "successor" in the Form 1023, and lost.  Although that prior argument was slightly different than this one, the government submits that the law of the case doctrine should preclude the court from reconsidering a challenge to the meaning of the terms "outgrowth" or "successor" where it has already addressed and resolved the issue.  See <u>United States v. Phillips</u>, 367 F.3d 846, 856 (9th Cir. 2006).  Issues that a district court determines during pretrial motions become law of the case. <u>Id.</u>;  See also <u>United States v. Cheely,</u> 814 F.Supp. 1430, 1434 (D. Alaska 1992).

    The defendants acknowledge that the Court has resolved this issue against them but "suggest that this issue should be revisited in light of the IRS's interpretation of its own question." Def.'s Mem. at 26.  As the government argues below, though, in section II, the Court should not revisit this issue because the defendants' characterization of Ms. Westcott's testimony is wrong, and the IRS has not interpreted or defined these terms in the manner suggested by the defendants.

    C.   <u>The Court Should not Usurp the Role of the Jury.</u>

    There is little dispute that the evidence in this case proves beyond any doubt that Care International had a relationship with Al-Kifah, and that Al-Kifah was engaged in pro-jihad and pro-mujahideen activities.  In seeking to strike or dismiss the indictment as it relates to Care's connection to Al-

8

Kifah, the defendants essentially preview one of their potential defenses, that is, as they understood Question 5, or as the IRS understood it, their answer concealing any link to Al-Kifah was not false, or was not material assuming it was false. However, the defendants may present these arguments to the jury and they will decide the defendants' guilt. "Whether an answer is literally true raises a factual question to be resolved by a jury." <u>United States v. Lighte</u>, 782 F.2d 367, 373 (2nd Cir. 1986).

**II.   THE MOTION FAILS EASILY ON THE MERITS**

    A.   Lucinda Westcott Did not Attempt to Define "Outgrowth" or Successor" and did not have Authority to Bind the IRS in any Event.

The defendants argue that they did not lie when they answered "no" to Question 5 because Ms. Westcott ultimately indicated that the term "successor" was meant only to ensure that taxable entities shift debt and assets to tax free organizations. The defendants appear to argue further that, because the focus of the IRS was to "track shifts in taxable assets," it doesn't matter, for example, whether Care published the same newsletter as Al-Kifah, because this fact was not material to the narrow "successor" inquiry the defendants urge on the Court. As a result, the defendants contend, even if their answer was false, it was not material. Defs.' Mem. at 20-22. This argument has no force.

To begin, Ms. Westcott was granted limited authority to testify about the revision process to the Form 1023. She did not have the authority to speculate about answers outside of her bailiwick, and she did not have the authority to bind the IRS or the government. The First Circuit's opinion in United States v. Kattar, 840 F.2d 118 (1st Cir. 1988), cited by the defendants for support, is not to the contrary. In Kattar, the Court held that it was proper to admit statements made in appellate briefs submitted by the Solicitor General, i.e., the Justice Department, in a case being prosecuted by the Justice Department, as statements of a party opponent under Fed. R. Evid. 802(d)(2). Kattar, 840 F.2d at 130. The Court explicitly declined to rule on whether the entire federal government in all its capacities should be deemed a party-opponent in criminal cases. Id. However, since the IRS is an agency of the U.S. Treasury Department, and is not a party to the criminal prosecution, it cannot be deemed to be a party-opponent for purposes of Rule 801(d)(2).

Even assuming for the sake of argument that Ms. Westcott had the authority to speak for and bind the IRS, which she surely did not, the simple fact is that she was never asked to define "outgrowth" or "successor." Accordingly, she did not at any point attempt to define the terms, going out of her way to note that the terms were not defined, and that she would have expected

10

applicants back in 1992, where there was little guidance given as to the meaning of the terms, to err on the side of providing more rather than less information than applicants in later years. She stated that she would have had this expectation because "if they're unclear that they should be submitting information, we expect organizations to provide all the information up front and then if we have questions we would have written to them and asked them." Westcott Tr. at 26-27.

Accordingly, because the defendants' motion rests entirely on the claim that Ms. Westcott both defined the term "successor," and bound the IRS when she did so, the motion must fail and be denied.

B.   Regardless, Care was a "Successor" to Al-Kifah

Finally, Care would be deemed to be a "successor" to Al-Kifah, whether viewed in light of the 2006 Form 1023, or under the strained and novel definition the defendants have attempted to argue was offered by Ms. Westcott.

With respect to the 2006 Form 1023, the defendants argue that Care would not meet the definition of "successor" as it exists in the revised form because, according to Ms. Westcott, the focus of the IRS "was the transfer of debts and assets and the resulting tax consequences" rather than whether Care took over the activities of another organization. Defs.' Mem. at 21. However, Ms. Westcott never defined "successor," let alone in the

way suggested by the defendants, and the plain language of the Form 1023 removes any doubt that Care was indeed a "successor" to Al-Kifah.

Specifically, Question VII, entitled "Your History," asks **"Are you a successor to another organization?"** It then instructs the applicant to answer "**Yes**" if, among other things, "**you have taken or will take over the activities of another organization**." Applied here, there is no issue that Care would be deemed a "successor" under the 2006 version of the Form 1023 because Care took possession of monetary assets of Al-Kifah, and engaged in some of the same activities, including publication of the Al-Hussam newsletter, distribution of the Zakat Calculation guide, and solicitation for support for the mujahideen.

Further, even assuming that the focus of the IRS was to "track shifts in taxable assets," Care's answer of "no" on Question 5 would still be materially false because Al-Kifah did not enjoy 501(c)(3) status, and thus should have been paying taxes on its assets.[4] Accordingly, the defendants deprived the IRS of the ability to track shifts in taxable assets when they failed to disclose Care's connection to Al-Kifah and their negative answer would be material even under the scenario they offer.

---

[4] The government expects to show that Al-Kifah falsely represented in its publications and solicitations that it enjoyed tax exempt status.

**Conclusion**

For the foregoing reasons, the Court should deny the defendants' motion to strike and dismiss portions of the superseding indictment.

                                      Respectfully submitted,

                                      MICHAEL J. SULLIVAN
                                      United States Attorney

                   By: /s/ Donald L. Cabell
                        Donald L. Cabell
                        B. Stephanie Siegmann
                        Aloke S. Chakravarty
                        Assistant U.S. Attorneys