UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| UNITED STATES OF AMERICA, ) | |
| Plaintiff ) | |
| ) | |
| V. ) | CRIMINAL NO.  05-40026-FDS |
| ) | |
| MUHAMED MUBAYYID, ) | |
| EMADEDDIN Z. MUNTASSER and ) | |
| SAMIR AL-MONLA, ) | |
| Defendants ) | |
| _____ ) | |

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION
*IN LIMINE* TO LIMIT OR EXCLUDE THE TESTIMONY OF THE
GOVERNMENT'S EXPERT WITNESS EDWARD VALLA AND FOR FURTHER
DISCOVERY OF MATERIALS REGARDING BASSAM KANJ
REFERENCED IN HIS EXPERT REPORT**

In the hearing on November 7, 2007, which was itself a continuation of a hearing begun on

November 6, 2007, the United States District Court (Saylor, J.) issued a series of rulings limiting

argument and testimony in the forthcoming trial of this case, consistent with the court's recognition

that this is *not* a terrorism case but rather a false statements case related to the requirements of the

Internal Revenue Code as applicable to non-profit organizations.  At the time of the hearings,

counsel for defendants were provided, for the first time, with an expert report from Dr. Edward

Valla, a proposed witness for the government, and requested and received permission from this

Court to file a supplement to their motion in limine to challenge that testimony based on the just-

received report and in light of the rulings made by the court governing expert testimony.

Defendants hereby move to exclude Dr. Valla's testimony, to the extent it is reflected in the

expert report provided on November 7th (attached hereto as Exhibit A).  The defendants further

1

reaffirm their earlier motion for a *Daubert* hearing addressed both to Dr. Valla's qualifications to

testify, the scope of his proposed testimony, and the limits that should be applied to it.  In addition,

the defendants request further discovery of the "extensive additional materials on Bassam Kanj"

referenced by Dr. Valla at page 4 of his Expert Report and identified as "BS 6778 - OA," which, to

the defendants' knowledge has not been provided to them.

On Tuesday, November 7, counsel for the defendants were provided a single document,

stapled together, entitled "Expert Report."  The first four pages of that document include typewritten

statements, apparently produced by Dr. Valla, summarizing certain opinions that he may wish to

offer at trial.  The next 12 pages, included as part of the same document, appear to be recently

declassified although partially redacted FBI documents including information about CARE's

activities.  The document details four types of activities allegedly engaged in by CARE:

"encouraging the *jihad* via its bi-weekly publication; sponsoring visits to the Boston area by Muslim

extremists; conducting local para-military training; actual travel overseas to Bosnia, Pakistan and

Afghanistan sponsored by key members of Care International."  The "balance of this report takes

each of these topics in turn."

It is simply unclear whether "*this report,*" as it is referenced on the second page of the FBI

document, is intended to be viewed as part of the Expert Report to which it is attached, or solely as

Jencks material being belatedly provided to defense counsel in order to prepare cross-examination

on the materials included in the first four pages of the "Expert Report."  The difference is obviously

critical, for purposes of this motion.  Much that is included in "*this report*" would be absolutely

inadmissible under the rules governing expert testimony, if that is how it is to be offered.  At this late

date, the defendants obviously do not wish to distract this court with a lengthy, sentence-by-sentence

analysis of a report which may not really be intended as an expert report at all; at the same time, it would be derelict of the defendatns not to offer such an analysis if that is how the government intends to use this document.

Counsel for the defense raised the issue of just what should be considered as part of the "Expert Report" both with the prosecutors individually and in open court in the course of seeking this court's permission for time to address it. No answer was forthcoming. For current purposes, we assume that pages 5 and following of the "Expert Report" are not in fact part of the Expert Report, but if this is not correct, the defendants respectfully urge that the government has an obligation so to notify both the defendants and the court, so that they may analyze this document under the appropriate rules. More broadly, the provision of such a report/or "not report," as the case may be, on the eve of trial, should weigh against the government's ability to rely on this witness in offering opinions and admissible evidence, where the defendants even now cannot determine whether what has been provided is even intended to constitute either.

Turning to the first four pages of the "Expert Report," which would seem at least to be a partial summary of what Dr. Valla would testify to, if allowed, it is clear that much if not all of it plainly violates the rules laid down by this court in its November 7th ruling as well as the well-established precedents in this field.

In the first paragraph, Dr. Valla opines about the presence and activities of non-Afghan mujahideen in Afghanistan following the departure of Soviet forces in 1989. "Some intended to help establish a true Islam state which would be free of foreign influence and under Islamic law. As the 1990's progressed, others sought military training in various camps established by Usama Bin Laden." Dr. Valla should not be allowed to offer such an "opinion." While the court has ruled that

the conditions in Afghanistan at the time of Care's founding are relevant to this case, Dr. Valla has

offered no basis, either in this report or in his resume, for his expertise in describing those

conditions. There is no indication, in his resume or other materials provided by the government, that

Dr. Valla has any expertise on Afghanistan. There is no indication that he traveled to Afghanistan

during this period (or ever), served there, or studied the area as part of his professional training or

academic work.

Moreover, the court has clearly and correctly ruled that references to Al Qaeda and Bin Laden

had no place in a case about false statements about what information is necessary and how it is to

be used for determining tax exempt status. And yet the very first paragraph of Dr. Valla's expert

report openly flouts those limits, suggesting a challenge for the courts and counsel in restricting

expert witnesses so that, to quote the court, a very short tail does not wag a very large dog.

In his second paragraph, Dr. Valla goes on to opine that it is "not surprising" that members

of Care, in the meeting minutes of April 23, would (he surmises) offer support to Pashtun warlord

Gulbuddin Hekmatyar. The authenticity and significance of these meeting minutes have already

been the subject of much discussion in the hearings to date. But this much has been established by

the court. The role of an expert is not to summarize what is contained in meeting minutes. Other

than describing who Hekmatyar is, a job for which others of the government experts appear far more

qualified, he purports to do no more than summarize (or, more accurately, surmise as to the meaning

of) the minutes, adding the flourish that what they may (or may not) imply is "not surprising" to him.

This is not the sort of expert opinion which the courts have had in mind when they have allowed

those with superior knowledge of scientific or social science data to offer that expertise to the jury.

Drawing conclusions as to what is "surprising" or not is not the role of the expert. Nor is offering

conjecture not based on any expertise how to interpret notes of a meeting.

What is worse, indeed far worse, is that in the very next paragraph, in further damning Hekmatyar and inviting the worst sort of guilt by association, Dr. Valla describes an interview given by Hekmatyar in *May 2006 – long after Care had ceased to exist and long after the incidents in this case* - in which Hekmatyar, a chameleon who at one point was the United States' mainstay in Afghanistan, praised by Ronald Reagan and invited to the White House and at another, turned on the United States – expressed his opposition to the United States and his desire to fight under Bin Laden.  The source for this interview, "Afghan Leader Hekmatyar Pledges Allegiance to Usama Bin Laden," as reported by Al Jaziran (sic), is as damning as the substance of it.  Even before this court's ruling this week, it should have been clear to the government, and its expert, that this sort of information was precisely the kind of inflammatory, prejudicial information that is probative of nothing in this case that even courts dealing with terrorism cases have excluded from evidence, and *a fortiori* is not admissible in this false statement/tax law case.

In the next paragraph, Dr. Valla returns to the subject of the meeting "minutes."  There is no suggestion, here or elsewhere, that he has interviewed anyone who attended this meeting.  Thus this paragraph, and those that follow it, amount to no more than uninformed speculation as to the meaning of materials that, if authenticated, the government may introduce directly into evidence. What is worse, his speculation is unfounded:  Dr. Valla describes a letter which he says the Care members "write" to Hekmatyar asking his views as to the possible merger of the two organizations without even pausing to acknowledge that there is no evidence who wrote the letter.  He describes the letter as being "signed" when all that the document shows is a list of names at the bottom, in a handwriting the government has not suggested it can identify.  Dr. Valla's unfounded speculation

that those names identify the authors of the letter, and that the letter was "signed," underscores the reason that experts are limited to testifying and opining about what they know and are trained in, rather than offer uninformed, and speculative, summaries of government exhibits. And, again, this proposed testimony is cumulative of the testimony of the government's other experts, Dr. Levitt and Mr. Kohlmann. None of them may permissible speculate regurgitate government evidence, but to the extent there is any proper subject of expert testimony regarding these notes, Dr. Valla's testimony is cumulative.

Much of the remainder of Dr. Valla's report, with the exception of the concluding paragraphs relating to the late Bassam Kanj (which appear to be based on no more than summaries of interviews which are either admissible independently, or not, but certainly not the basis for expert summaries), consists of an inflammatory description of the late Abdullah Azzam and the summary of an email sent by Azzam Publishers to its "list," which included Care. As for Azzam himself, the court has ruled that the jury has a right to know who the late spiritual leader was, since his name is mentioned in this case and his work was published by Care. But it does not need to know the details of his activities with Usama bin Laden in the founding of MAK in 1984, many years before anything relevant to this case occurred, nor may the jury, under this court's ruling, hear such testimony. Bin Laden does not appear in the indictment and neither does MAK, and yet they feature prominently in Dr. Valla's description, a description, by the way, which simply restates yet again the gist of the descriptions already offered by Dr. Levitt and Mr. Kohlmann.

Dr. Valla also summarizes an email sent by Azzam Publications urging its recipients to exercise caution when making contributions to support the mujahideen. Initially there is a problem with this email: there is no evidence that anyone from Care ever read it or acted on it, or that it was

directed specifically to Care rather than having been broadcast to dozens, hundreds or thousand of

organizations.  My storage bins are full of emails from organizations as varied as the Republican

National Committee to the Giuliani campaign, and the fact that I receive them proves absolutely

nothing about my participation in or agreement with the causes they support.  The defendants have

moved to exclude it in a separate *in limine* motion.  But whether or not the email is admissible, to

be the subject of expert testimony, the expert must have something to add to its meaning, based on

his own research or expertise; otherwise his summary of it simply provides an expert gloss of

legitimacy on evidence, which is why such summaries are impermissible.

In short, Dr. Valla's "expert report," far from answering the questions presented by his

cryptic resume and addressed in the defendants' initial motion in limine, only underscores them.

When first described as an expert, the one area where Dr. Valla was said to be prepared to testify that

was not cumulative of the testimony (much of it now clearly prohibited) of Dr. Levitt and Mr.

Kohlmann related to the issue of codes which might have been used by the defendants.  That was

curious, on its own terms, since there is no indication in his resume or other works that Dr. Valla in

fact speaks Arabic.  But at least it suggested that there was some need for what the government itself

initially described as its third "terrorism" expert.  This report, which incidentally makes no reference

to code, eliminates even that justification, and provides no answer to the question of what this

"expert" is intended to add to the case and why he is qualified to do so.

In view of that, the defendants respectfully request that either Dr. Valla be excluded from

testifying or, at a minimum, a Daubert hearing be held to examine the nature of his expertise and the

scope of his testimony.  We also respectfully request that the government make clear just how much

of the documents stapled together as the "Expert Report" is intended to be considered that, and how

much of it is to be viewed as Jencks material relevant to a possible witness.

| | |
|---|---|
| Respectfully submitted, | MUHAMED MUBAYYID |
| EMADEDDIN Z. MUNTASSER | By his attorney, |
| By his attorneys, | |

| | |
|---|---|
| /s/Susan R. Estrich | /s/ Michael C. Andrews |
| Susan R. Estrich | Michael C. Andrews (BBO#: 546470) |
| Robert Kingsley Professor of Law and | 21 Custom House Street |
| Political Science | Boston, MA 02110 |
| University of Southern California | (617) 951-0072 |
| Law School | |
| University Park, MC-0071 | SAMIR AL-MONLA |
| Los Angeles, CA 90089-0071 | By his attorney, |

| | |
|---|---|
| /Norman S. Zalkind | /s/ Charles P. McGinty |
| Norman S. Zalkind (BBO#: 538880) | Charles P. McGinty (BBO # 333480) |
| Elizabeth A. Lunt (BBO#: 307700) | Federal Defenders |
| David Duncan (BBO#: 546121) | 408 Atlantic Avenue |
| Zalkind, Rodriguez, Lunt & Duncan, LLP | Boston, MA 02110 |
| 65a Atlantic Avenue | (617) 223-8061 |
| Boston, MA   02110 | |
| (617) 742-6020 | |

Dated: November 9, 2007

### Certificate of Service

I hereby certify that a true copy of the foregoing document was served this day upon all counsel of record by electronic filing.

/s/ David Duncan