UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | ) | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff | ) | |
| | ) | |
| V. | ) | |
| | ) | CRIMINAL NO.  05-40026-FDS |
| MUHAMED MUBAYYID, | ) | |
| EMADEDDIN Z. MUNTASSER and | ) | |
| SAMIR AL-MONLA, | ) | |
| Defendants | ) | |

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM REGARDING
EVIDENCE AS TO THE ACTIVITIES OF OTHER MUSLIM CHARITIES**

A question that remained unresolved at the conclusion of arguments on the motions in limine concerns the extent to which expert witnesses will be allowed to opine not about CARE but about the activities, and tendencies – especially criminal tendencies - of other Muslim charities.  This is vitally important because due process requires that a conviction rest on proof of wrongdoing by the individual charged, not on evidence that he had a propensity to do wrong, much less evidence that others in his racial or religious group did.

What the prosecution seeks to introduce as relevant and its expert, Dr. Levitt, along with others, perhaps, hope to opine on as probative, is the supposed tendency of Muslim charities to violate the law and support terrorism.  It is entirely appropriate for an expert to explain a term such as "Zakat" to the jury.  However, the facts that zakat money collected by a charity can be diverted to noncharitable purposes, and that charities can otherwise abuse their charitable status, are not concepts that the jury needs the help of an expert to understand.  Similarly, as the court has recognized, a jury needs no expert assistance to appreciate that a charity may change its name and

continue its activities under the new name, whether those activities are legitimate or illegitimate. The government's proposed "expert" testimony regarding the activities of Muslim charities is the worst kind of propensity evidence, the propensity of others of a similar religion or race to engage in crimes with which these defendants have not even been charged. There is no other way to characterize Dr. Levitt's proposed testimony on his concept of "economic jihad": "Charities in general and zakat charity committees in particular are especially susceptible to abuse by terrorists and their supporters for whom charitable or humanitarian organizations are particularly attractive front organizations," Dr. Levitt argues. (Levitt, p. 21) "Charities offer a veil of legitimacy for terrorist fundraising.... [and] are ideal money laundering institutions." (Levitt p. 22) "Dawa organizations are key nodes in what radical Islamist leaders frequently describe as `the economic jihad.'" (Levitt p. 23) "The concept is simple in practice. Radical leaders claim their followers have a religious duty to engage in jihad – either by physically fighting Islam's enemies or supporting those who do." (Id.)

In short, economic jihad refers to the practice of diverting charitible contributions to the economic support of fighters engaged in fighting, something which Care is not charged with doing, and which the government has repeatedly conceded that it has no proof that Care did.

It is well-established that a defendant cannot be convicted of wrongdoing charged in an indictment based on proof that he had a propensity for wrongdoing, as demonstrated by other bad acts which may have been done by him in the past. Rule 404(b) strictly limits the introduction of such evidence:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as

>proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident . . . .

A district court may admit evidence of a defendant's other bad acts only if that evidence meets the requirements of both Rules 404(b) and 403. To be admissible under Rule 404(b), "the evidence must have 'special relevance' to an issue in the case such as intent or knowledge, and must not include 'bad character or propensity as a necessary link in the inferential chain.'" *United States v. Varoudakis*, 233 F.3d 113, 118 (1st Cir. 2000)(quoting *United States v. Frankhauser*, 80 F.3d 641, 648 (1st Cir. 1996)); see also *United States v. Escobar-De Jesus*, 187 F.3d 148, 169 (1st Cir. 1999) (permitting the introduction of bad act evidence "if the evidence is relevant for purposes other than proof of a defendant's bad character or criminal propensity"). Second, pursuant to Rule 403, the probative value of the bad act evidence must not be "substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403; see also *Varoudaki*s, 233 F.3d at 118. See generally *United States v. Tse*, 375 F.3d 148 (1st Cir. 2004).

In short, even when it is a defendant's own bad acts that might suggest a propensity towards wrongdoing, careful analysis is required to ensure that the evidence is being used NOT to show a propensity, but to help establish an element of the crime, and ONLY if its probative value outweighs its prejudicial effect is such evidence admitted.

Here, by contrast, what the government is seeking to introduce is not evidence of other bad acts by the defendants but by people with whom their only connection is religious and ideological, in the hopes that this will convince the jury that the fact that other Muslim charities have crossed the legal line means that Care did as well – even if it has not been charged with doing so, and the government acknowledges that the "crown jewel" in this case is *not* financial support for fighters but

3

*publications,* which are protected by the first amendment.

Such an effort is doubly offensive, not only because it would convict based on the propensity of others rather than individualized proof, but that it would do so on the basis of an alleged religiously-based propensity to engage in wrongdoing. It invites precisely the sort of cultural and religious stereotyping which courts have rejected even in contexts where the basis for it is much stronger, precisely because it has no place in our legal system. See, e.g., *Bains v. Cambra*, 204 F.3d 964, 974-75 (9th Cir. 2000) (condemning as error prosecutor's closing argument suggesting that "Sikhs" had a tendency to violence and retribution); *Jinro Am., Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 1007 (9th Cir. 1991) (allowing an expert witness to generalize that most Korean businesses are corrupt, are not to be trusted and will engage in complicated business transactions to evade Korean currency laws is tantamount to ethnic or cultural stereotyping, inviting the jury to assume the Korean litigant fits the stereotype); *United States v. Verduzco*, 373 F.3d 1022, 1034 (9th Cir. 2004) (holding that it was not an abuse of discretion to exclude expert witness testimony regarding drug cultures); *United States v. Rubio-Villareal*, 927 F.2d 1495, 1502 n. 6 (9th Cir. 1991) (holding that it was not an abuse of discretion to reject testimony that "would have shown that [defendant's] failure to register his truck is a common phenomenon in Mexico"), *aff'd*, 967 F.2d 294, 295 (9th Cir. 1992 *en banc*).

This court, in addressing issues raised by voir dire and jury questionnaires, has afforded admirable and appropriate sensitivity to the challenges posed by the need to assure defendants a trial by a jury free from racial or religious bias. It would be ironic indeed, not to mention unconstitutional, to allow the prosecution to circumvent the court's careful efforts to avoid even the appearance of bias by inviting the sort of speculations by experts which would smack of bias of the

worst sort.

| | |
|---|---|
| Respectfully submitted,<br>EMADEDDIN Z. MUNTASSER<br>By his attorneys, | MUHAMED MUBAYYID<br>By his attorney, |
| /s/Susan R. Estrich<br>Susan R. Estrich<br>Robert Kingsley Professor of Law and Political Science<br>University of Southern California Law School<br>University Park, MC-0071<br>Los Angeles, CA 90089-0071 | /s/ Michael C. Andrews<br>Michael C. Andrews (BBO#: 546470)<br>21 Custom House Street<br>Boston, MA 02110<br>(617) 951-0072 |
| /Norman S. Zalkind<br>Norman S. Zalkind (BBO#: 538880)<br>Elizabeth A. Lunt (BBO#: 307700)<br>David Duncan (BBO#: 546121)<br>Zalkind, Rodriguez, Lunt & Duncan, LLP<br>65a Atlantic Avenue<br>Boston, MA  02110<br>(617) 742-6020 | SAMIR AL-MONLA<br>By his attorney,<br><br>/s/ Charles P. McGinty<br>Charles P. McGinty (BBO # 333480)<br>Federal Defenders<br>408 Atlantic Avenue<br>Boston, MA 02110<br>(617) 223-8061 |

Dated: November 9, 2007

**Certificate of Service**

I hereby certify that a true copy of the foregoing document was served this day upon all counsel of record by electronic filing.

/s/ David Duncan