UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA       )
                               )
          v.                   )    Crim. No. 05-40026-FDS
                               )
MUHAMED MUBAYYID, and          )
EMADEDDIN Z. MUNTASSER,        )
and                            )
SAMIR AL-MONLA a/k/a           )
SAMIR ALMONLA,                 )
                               )
          Defendants.          )

### GOVERNMENT'S REPLY TO DEFENDANTS' SUPPLEMENTAL MEMORANDUM REGARDING REFERENCES TO 1993 WORLD TRADE CENTER BOMBING IN NEWS ARTICLES

The United States of America, by and through its attorneys, United States Attorney Michael J. Sullivan, and Assistant United States Attorneys B. Stephanie Siegmann, Aloke S. Chakravarty, and Donald L. Cabell for the District of Massachusetts, hereby responds to defendants' supplemental memorandum regarding the admissibility of references to the 1993 World Trade Center Bombing in two news articles[1] that were published within two weeks of defendant Emadeddin Muntasser's ("Muntasser") incorporation of Care International, Inc. ("Care").  Indeed, the New York Times articles, published two days before Muntasser incorporated Care, clearly and unequivocally reported that police were investigating Alkifah Refugee Center, known by its

_____

[1]On March 29, 1993, an article entitled "The Trail to 'the Jihad Office': Connecting the players in the WTC bombing" was published in Newsweek.  On April 11, 1993, an article entitled "After Blast, New Interest in Holy-War Recruits in Brooklyn" was published in the New York Times.

volunteers as the "'service for jihad' office", for the World
Trade Center Bombing.  In a case involving a scheme to conceal
information about whether Care was the outgrowth and successor to
AlKifah Refugee Center ("Alkifah"), these articles provide a
strong motive for Muntasser to lie and are admissible under Fed.
R. Evid. 404(b).  Additionally, defendants' requested stipulation
that merely states that two "unflattering" articles were
published about Alkifah days prior to Care's incorporation is
insufficient to convey to the jury the full extent of the
motivation for Muntasser to distance himself from an organization
being investigated for a bombing.

**I.    Subject Matter of Articles is Investigation of AlKifah
Refugee Center for the February 1993 World Trade Center
Bombing.**

The subject of the New York Times article is unquestionably
the "Alkifah Refugee Center"[2] and the investigation of that
office and its members for the February 1993 World Trade Center
bombing.  It describes in detail the activities of Alkifah in
recruiting and training Arab-Americans "to fight in their own
holy war in Afghanistan."  The article further contains a picture
of the New York office with the following caption:

> Police investigating the World Trade Center bombing are
> taking another look at the Alkifah Refugee Center on
> the second floor at 566 Atlantic Avenue in Brooklyn,
> from which Islamic fundamentalist emigres sent recruits

---

[2]Despite defendants' suggestions to the contrary, the
subject of the New York Times article is undoubtedly the "Alkifah
Refugee Center," which is itself mentioned six times in the text
of the article.

to fight in their own holy war in Afghanistan. Moreover, the article indicated that "[i]n the wake of the World Trade Center bombing, those who worked with the Alkifah center are afraid to allow themselves to be identified by name . . ." Lastly, this article reports that after the World Trade Center Bombing in 1993, government officials were voicing concern with our former allies, the Afghan mujahideen, turning their skills against the United States in favor of terrorism. Similarly, the Newsweek article describes connections between Alkifah, "known simply as 'the jihad office'", and every suspect implicated in the World Trade Center bombing.

## II. Articles themselves or Stipulation Referencing the February 1993 World Trade Center Bombing Are Admissible.

At the outset, the government, through this response and in its indictment,[3] does not express any view as to the journalistic value of these articles. Rather, the government merely offers these articles for the non-hearsay purpose of its effect on the listener(s). Clearly, knowledge that Alkifah was being investigated for its involvement with the 1993 World Trade Center bombing provides a strong motive to lie. Indeed, it is difficult to conceive of a stronger motive to conceal a connection between Alkifah and Care. The fact that Care was incorporated only two

---

[3]The indictment clearly defines the entity known as Alkifah Refugee Center. When Muntasser was questioned about "Alkifah" in April 2003, he did not seek clarification because he knew to which entity the investigators were referring.

days after the second article strongly suggests a direct link
between the press coverage and the activities at issue in the
indictment.  The defendants allege that the press coverage of
Alkifah and the incorporation of Care was mere coincidence.[4]
This argument can be made to the jury and does not render this
evidence inadmissible.

The First Circuit "has held that when evidence goes to show
motive, the relevancy hurdle is particularly low."  United States
v. McMahon, 938 F.2d 1501, 1508 (1st Cir. 1991).  The government
has clearly met this burden.  This evidence is admissible under
Rule 404(b) as it is highly probative and not substantially
outweighed by the danger of unfair prejudice.  See United States
v. Freeman, 208 F.3d 332, 345 (1st Cir. 2000) (evidence of
defendant police officer's excessive drinking, invasion of
dancers' dressing room, and violent behavior at strip club
relevant to show both motive for witness tampering and knowledge
of the criminal nature of "his underlying conduct -- whether

---

[4]Defendants contend that Muntasser had already started the
process of incorporating Care and therefore these articles have
no evidentiary value.  That, however, is not the issue. The issue
is whether Care was a successor or outgrowth of Alkifah.  In
other words, did Muntasser merely change the name of Alkifah to
Care and perform the same activities under a new name.  The fact
that Muntasser filed boilerplate incorporation records to create
Care within two weeks of Alkifah being linked to the 1993 World
Trade Center bombing does not render the articles irrelevant.
The extreme negative publicity provides a strong motive to lie
and hide Care's connection to Alkifah when applying for tax
exempt status in June 1993.  In addition, the jury could also
conclude that the articles hastened the process of Muntasser
incorporating Care.

characterized as conspiracy or extortion"); <u>United States v.</u>
<u>Gilbert</u>, 181 F. 3d 152, 160-61 (1st Cir. 1999) (evidence that
defendant was target of separate, unrelated investigation
admissible as proof of motive for making telephone bomb threat
and not unfairly prejudicial); <u>United States v. Lowe</u>, 145 F.3d
45, 51 (1st Cir. 1998) (evidence of defendant's involvement in
car ramming incident hours before he encountered victim
admissible as motive to commit carjacking).  This evidence is
also admissible to provide relevant background to the scheme to
conceal and conspiracy to defraud.  See <u>United States v. Flemmi</u>,
402 F.3d 79, 89-90 (1st Cir. 2005) (in prosecution for perjury
and obstruction of justice, testimony by leader of organized
crime organization that defendant's brother was implicated in a
bombing "provided relevant background of the illegal relationship
. . . that culminated in the concealment conspiracy in question"
and not unfairly prejudicial where counteracted by limiting
instructions).

Defendants' proposed stipulation would downplay any
reasonable inference that the articles provided Muntasser with a
motive to conceal information from the government related to his
incorporation of another organization with, as he told FBI agents
Chris Peet and James Marinelli in April 2003, "the same basic
mission."  They propose telling the jury that "unflattering
articles" were published days before the incorporation of Care.
Without more context, the jury cannot fairly evaluate the import

of the articles.  Unflattering without more description could be interpreted to mean a variety of things, most of which conjure up thoughts of organizations who have gotten in trouble for relatively minor misconduct.

Additionally, the Court's proposed instruction would minimize any potential danger of unfair prejudice caused by the admission of this evidence.  This instruction would make clear that defendants were not involved or alleged to have been involved in the 1993 World Trade Center bombing.

WHEREFORE, the government respectfully requests that this Court either admit the articles in their entirety or a stipulation that references the February 1993 World Trade Center bombing.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: /s/ B. Stephanie Siegmann
    B. STEPHANIE SIEGMANN
    ALOKE S. CHAKRAVARTY
    DONALD L. CABELL
    Assistant U.S. Attorneys

Date: November 12, 2007

Certificate of Service

I do hereby certify that a copy of foregoing was served upon the counsel of record for the defendants by electronic notice on this 12th day of November 2007.

/s/ B. Stephanie Siegmann
B. Stephanie Siegmann