```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,      )
                               )
        Plaintiff              )
                               )
        v.                     )    Crim. No. 05-40026-FDS
                               )
MUHAMED MUBAYYID, and          )
EMADEDDIN Z. MUNTASSER,        )
and                            )
SAMIR AL-MONLA a/k/a           )
SAMIR ALMONLA,                 )
                               )
        Defendants.            )
```

**GOVERNMENT'S REPLY TO DEFENDANTS' SUPPLEMENTAL MEMORANDUM REGARDING EVIDENCE AS TO THE ACTIVITIES OF OTHER MUSLIM CHARITIES**

The government does not intend to introduce propensity evidence into this case and an explanation to the jury as to the mechanisms by which the mujahideen are financially supported does not do so. These mechanisms, which are well outside the common understanding of the jury, are necessary and helpful explanation as to the conduits of how the mujahideen are supported and the trappings of such support.

The defendants also do not fairly characterize the concept of economic jihad. The government offers the testimony of Dr. Levitt to describe the concept of economic jihad, demonstrate to the jury how this concept has been employed by some other ostensible Islamic charities, and to present Dr. Levitt's expert opinion based on his review of the evidence, that Care International, Inc. ("Care") employed the concept of economic

1

jihad in soliciting and expending funds.  The concept and its use by other organizations is crucial to understanding not only how money is channeled to fighters, but also why.

   Merely because evidence refers to other organizations does not make it propensity evidence.  Neither does economic jihad tend to impute guilt by association with other organizations anymore than acknowledging that there are mujahideen who actually fought in a variety of circumstances in specific places around the world.  Such concepts do not impute guilt to the defendants.  Rather, as described in expert disclosures, Dr. Levitt will explain this relevant and likely-foreign concept and describe how it manifests in a field outside the realm of the common experience of the average juror.  See Levitt Report, p. 23 ("The concept is simple in practice.  Radical leaders claim their followers have a religious duty to engage in jihad -- either by physically fighting Islam's enemies or by supporting those who do.").  It is up to the evidence at trial to link the two.

   The government intends to introduce evidence that Care explicitly called for the fulfillment of economic jihad.  For example, the government intends to introduce evidence that Al-Hussam newsletters, audio recordings taken from Care, the Zakat calculation guide, and intercepted communications all contain specific invitations to participate in economic jihad.  Dr. Levitt, cites to this proposed evidence as showing that Care

advocated the concept of economic jihad and specifically called upon its supporters to fulfill their duty of supporting jihad through financial donations.  See Levitt, p. 26-27.  Without knowledge of how some other ostensible Islamic charities engaged in economic jihad, the jury would not even know why or how an organization would engage in non-charitable activities in the name of religion, or the mechanisms through which they could support mujahideen.

This is especially necessary in this case, since jurors will not be familiar with the mechanisms of how monies are distributed by esoteric non-profit organizations such as Care, which vary significantly from larger, well-vetted non-profits with which the jurors may be familiar.  The idea that money solicited even under charitable auspices can somehow be diverted to fighters, or even that humanitarian aid may be devoted exclusively for the benefit of the families of fighters, is an important novation which the average juror does not even know exists.

The law in the First Circuit allows for wide latitude in admitting expert testimony that discusses behavior of other actors that demonstrates concepts that are beyond the common knowledge of the typical juror.

> It is well established that, [in drug cases], the government may call expert witnesses to testify about criminal modus operandi when such testimony would be helpful to the jury. We have admitted expert testimony regarding the operation of criminal schemes and activities in a variety of contexts,

3

>finding such testimony helpful to juries in understanding some obscure or complex aspect of the crime.

United States v. Lopez-Lopez, 282 F.3d 1, 14-15 (1st Cir. 2002), cert denied by Lopez-Lopez v. United States, 2002 U.S. LEXIS 4847 2002)(quoting United States v. Montas, 41 F.3d 775, 783 (1st Cir. 1994); see also United States v. Hensel, 699 F.2d 18, 38 (1st Cir. 1983).[1]

The defendants erroneously cast their argument as a Rule 404(b) argument. Indeed, had the defendants separately provided money to the mujahideen through use of a zakat committee or other mechanism, this would likely be evidence of *modus operandi*, absence of mistake, and intent. Nevertheless, because the evidence here does not pertain to the *defendants'* other conduct, but rather other organizations', the real test for the court is found in Rules 401 and 403 (with the caveat that bad act evidence by others is necessarily less prejudicial than unrelated bad act evidence of a defendant). In typical cases, the actions of others is not relevant. However, as described above, when

---

[1] Courts frequently permit the government to introduce expert testimony to describe little-known tradecraft and *modus operandi* evidence about other criminal enterprises which are not readily within the juror's experience. See, e.g., United States v. Burchfield, 719 F.2d 356, 358 (11th Cir. 1983) (counterfeiting); United States v. Scavo, 593 F.2d 837, 843-844 (8th Cir. 1979)(bookmaking); United States v. Jackson, 425 F.2d 574, 576-577 (D.C.Cir.1970) (Pickpocketing schemes); United States v. Alonso, 48 F.3d 1536, 1541 (9th Cir. 1995)(credit card scam); United States v. Hutchins, 757 F.2d 11, 13 (2nd Cir. 1985)(confidence schemes); United States v. Anderson, 61 F.3d 1290, 1297-1298 (7th Cir. 1995)(operation of clandestine PCP laboratory).

4

necessary to explain how and why money is channeled to mujahideen and economic jihad generally, this conduct becomes quite probative. The defendant's argument that such testimony is propensity evidence has been carefully considered by this Circuit and repeatedly rejected in operatively similar circumstances. See, e.g., United States v. Lopez-Lopez, 282 F.3d 1 at 14-15.

The government does agree that Fed. R. Evid. 403 is always a consideration when admitting evidence, but the concern of prejudice from *modus operandi* evidence has been routinely evaluated, and rejected by this Circuit. See id. Evidence cannot be excluded under Rule 403 merely because it is prejudicial; it may only be excluded when the probative value of the evidence is "substantially outweighed" by the danger of unfair prejudice. United States v. Montas, 41 F.3d 775, 783 (1st Cir. 1994). In this case, evidence of how the abstract concept of economic jihad is employed by other ostensible Islamic charities goes directly to assist the jury in understanding the concept and determining the purpose and activities for which Care solicited and expended funds. Neither does the government intend to argue that because other Islamic charities have engaged in such activity, that *ipso facto* Care must also have engaged in such activity.

The government respectfully ask that this court deny the defendant's motion to exclude expert testimony related to activities of other ostensible Islamic charities.

5

```
                              Respectfully submitted,
                              MICHAEL J. SULLIVAN
                              United States Attorney

                        By:    /s/ Aloke Chakravarty
                              ALOKE S. CHAKRAVARTY
                              B. STEPHANIE SIEGMANN
                              DONALD L. CABELL
                              Assistant U.S. Attorneys
```

Date: November 13, 2007


CERTIFICATE OF SERVICE

    I hereby certify that I have sent this document on this date, November 13, 2007 via Electronic notice to counsel for the Defendants in this case.
```
                               /s/ Aloke Chakravarty
                              ALOKE CHAKRAVARTY
                              ASSISTANT UNITED STATES ATTORNEY
```