UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Crim. No. 05-40026-FDS |
| ) | |
| MUHAMED MUBAYYID, ) | |
| EMADEDDIN Z. MUNTASSER, and ) | |
| SAMIR AL-MONLA ) | |
| ) | |
| Defendants ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL MEMORANDUM REGARDING THE USE OF THE TESTIMONY OF CINDY WESTCOTT, MANAGER, EXEMPT ORGANIZATIONS DETERMINATIONS, EXEMPT ORGANIZATIONS DIVISION, IRS AS ADMISSIONS OF A PARTY-OPPONENT, PURSUANT TO FED. R. EVID. 801(d)(2)**

**Introduction**

Based on representations of counsel, the defendants may seek to use or introduce portions of Lucinda Westcott's pretrial testimony as early as the cross examination of Robert Charnoff, who reviewed Care International's Form 1023 application when it was filed in 1993. As the government has argued previously[1], Ms. Westcott's testimony should not be admitted at the trial as the statement of a party opponent because: (1) the IRS authorized Ms. Westcott to speak about her involvement in the 2004 Form 1023 revision process but did not authorize her to testify about the meaning of the terms "outgrowth" or "successor;" and (2) Ms.

---

[1] In the interests of brevity, the government incorporates by references the arguments contained it its initial response to the defendants' motion to strike the term "outgrowth or successor" from the indictment, found at docket entry 332.

1

Westcott did not purport to define the terms "outgrowth" or "successor" in any event.

In this brief response to the defendants' supplemental memorandum, the government explains why, with citations to additional legal authority and to portions of the transcript of the pretrial hearing, why Ms. Westcott lacked the authority to bind the IRS as a matter of law, and, regardless, never sought to define the terms "successor" or "outgrowth."

**Argument**

1. <u>Ms. Westcott had Limited Capacity and Authority to Testify.</u>

Treasury Regulation § 301.9000-3(a) prohibits any employee of the Internal Revenue Service from testifying, or disclosing IRS records or information, to any court without a testimony authorization.  The testimony authorization "sets forth the scope and limitations on proposed testimony and/or disclosure of IRS records or information."  Treas. Reg. § 301.9000-1(i).  <u>See</u> Treas. Reg. § 301.9000-4(g) ("In the event the court . . . rules adversely with respect to the refusal to disclose the IRS records or information pursuant to the testimony authorization, . . . the IRS . . . employee . . . shall . . . respectfully decline to testify").

There is no issue that Ms. Westcott appeared in her official capacity as an employee of the Internal Revenue Service.  <u>See</u> IRS Testimony Authorization Memorandum ("IRS Memorandum") p. 1. ("You

are to testify in your official capacity as an employee of the Internal Revenue Service."). As such, she appeared as a lay witness testifying solely with respect to her own personal knowledge of the facts. IRS memorandum, p. 2 ("You may [t]estify as to facts of which you have personal knowledge"). Thus, her authorized testimony was limited to her own understanding and recollection of the facts. IRS Memorandum, p. 2 ("You may not [t]estify as to matters of which you have no personal knowledge").

Importantly, Ms. Westcott was not called, nor did she appear, pursuant to F.R.C.P. 30(b)(6) as a designee of the Internal Revenue Service to testify on the agency's behalf. A Rule 30(b)(6) witness, as distinguished from an individual witness like Ms. Westcott, testifies as to "matters known or reasonably available to the [agency]." Nor did Ms. Westcott testify as an expert on the law. IRS Memorandum, p. 2 (testimony limited to personal knowledge of the facts). Further, Ms. Westcott's authority to testify was limited to the "revisions the Service published in 2004 to the Form 1023" and "and the official position of the Service with respect to such revisions." IRS Memorandum, p. 2. No where in the IRS Memorandum is there any suggestion that Ms. Westcott was authorized to define IRS terms and phrases contained in IRS forms and publications.

In short, Ms. Westcott did not have the authority to testify with respect to the meaning or content of terms contained in the

1990 Form 1023.

    2.   <u>Ms. Wescott's Testimony Cannot Bind the IRS.</u>

It is well established that the Internal Revenue Service's official positions are set forth in the regulations and agency publications, which speak for themselves. <u>See</u>, <u>e.g.</u>, 1993 Internal Revenue Cumulative Bulletin, 93-1 C.B. (Introduction) ("The Internal Revenue Bulletin is the authoritative instrument of the Commissioner of Internal Revenue for announcing official rulings and procedures of the Internal Revenue Service."). Accordingly, courts typically do not ascribe to the Service the personal views and recollections of its individual employees about the interpretation of the Service's official positions. <u>See</u> <u>Sidell v. Commissioner</u>, 225 F.3d 103, 111 (1st Cir. 2000)(rejecting the taxpayer's reliance on a number of internal IRS memoranda to show that a proposed regulation was not meant to cover a particular situation); <u>Conn. Gen. Life Ins. Co. v. Commissioner</u>, 177 F.3d 136, 145 (3d Cir. 1999)("reliance upon remembered details from officials who lacked the ultimate authority to issue any proposed regulation has little support in the law"); <u>Schwalbach v. Commissioner</u>, 111 T.C. 215, 228 n.4 (1998) (giving "no weight" to oral statements made by "agents of the Commissioner" describing the content of final regulations); <u>Armco Inc. v. Commissioner</u>, 87 T.C. 865, 867-68 (1986) (affidavit of IRS employee explaining his intent in drafting a regulation

irrelevant to interpreting the regulation); Bankers Trust N.Y. Corp. v. United States, 225 F.3d 1368 (Fed. Cir. 2000) (personal views and intentions of the drafters are irrelevant).

Applied here, Ms. Westcott's personal recollections or views interpreting the Form 1023 and its instructions do not constitute the official position of the Service, and accordingly are not binding on the Service, regardless of whether they are consistent or inconsistent with the Service's official publications. See e.g., Vons Companies v. United States, 51 Fed. Cl. 1, 21 (2001) ("this court [should be] extraordinarily hesitant to attribute to the IRS or the Treasury Department interpretations of a revenue ruling made by individual IRS employees that represent their personal views, rather than the official position of the agency").[2]

    3.    The Defendants Have Misrepresented the Point of Ms. Westcott's Testimony.

Even if Ms. Westcott's testimony were to be deemed admissible, which it should not, the jury would have to be allowed to consider the testimony in the context of the entire

---

[2]Similarly, because the only "authoritative sources of federal tax law are the statutes, regulations, and judicial decisions," statements or information contained in informal IRS publications, or administrative guidance contained in IRS forms, are not binding on the IRS. See Miller v. Commissioner, 114 T.C. 184, 195 (2000); Zimmerman v. Commissioner, 614 F.2d 1294 (2d Cir. 1979). Johnson v. Commissioner, 620 F.2d 153 (7th Cir. 1980); Carpenter v. United States, 495 F.2d 175 (5th Cir. 1974); Adler v. Commissioner, 330 F.2d 91, 93 (9th Cir. 1964).

transcript rather than through the piecemeal introduction of selected excerpts taken out of context.  This would be necessary in order to avoid to very issue before the Court –namely, a dispute as to exactly what Ms. Westcott did and did not purport to testify about.

To be clear, in the government's view, a review of the transcript as a whole makes it plain that Ms. Westcott's involvement in the revision process was limited.  For example, Ms. Westcott stated that "the Washington office just took over in the end." (Tr. p. 12, lines 11-12).  She also stated that, "when I was transitioning into a new job, I was not reviewing the revisions." (Tr. p. 13, 6-7).  She also stated that, "I was not involved in the development of the 1992 form" (Tr. p. 25, 13).  In addition, when asked the question, **And you don't remember seeing any document cross your desk that involved a specific discussion of the outgrowth or successor question**, she responded, "That is correct." (Tr. p. 33, 8).

A review of the whole transcript also shows beyond any doubt that Ms. Westcott never focused during the revision process on the meaning of the terms "outgrowth" or "successor," or sought to define them at the pretrial hearing.  She stated that there were "no questions as far as that it was confusing or anything."  (Tr. p. 21, 1-2).  She also testified that "there was no discussion about that [the purpose of the question]," (Tr. p. 21, 19), and

6

that "I don't believe we in Cincinnati ever changed that question" (Tr. p. 23, 14-15). She also indicated that, if anything, the IRS "would have expected an organization to provide the information to say even more in the old version of the form." (Tr. p. 27, 4-5).

Additionally, when asked questions as to whether there were discussions about narrowing the scope of "successor" when the IRS revised the Form 1023, Ms. Westcott stated that "there was no discussion that I'm aware of and there was none in Cincinnati." (Tr. p. 28, 9-10). Similarly, when asked whether it was her "understanding from reviewing the [revised] form that it has narrowed the scope of the term successor," Ms. Westcott responded that "it's not my understanding that it's limited in any way." (Tr. p. 28, 11-12, 19).

### Conclusion

For the foregoing reasons, the Court should find that Ms. Westcott did not define the terms "outgrowth" or "successor" at the June 2007 pretrial hearing and lacked the authority to bind the IRS in any event. Accordingly, Ms. Westcott's testimony does not constitute the statements of a party opponent and should be excluded from the trial.

```
                              Respectfully submitted,

                              MICHAEL J. SULLIVAN
                              United States Attorney


                          By: /s/ Donald L. Cabell
                              Donald L. Cabell
                              B. Stephanie Siegmann
                              Aloke S. Chakravarty
                              Assistant U.S. Attorneys
```