UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES | ) ) ) ) ) ) ) ) ) ) ) | Cr. No. 05-40026-FDS |
| v. |  |  |
| MUHAMED MUBAYYID |  |  |

### REPLY TO GOVERNMENT'S OPPOSITION TO MUHAMED MUBAYYID'S RULE 29 MOTION

The Government's opposition requires Mr. Mubayyid to submit this reply, which will be kept brief in consideration of the voluminous filings to date. The government correctly states that in the context of a Rule 29 motion, the Court must review the evidence adduced at trial in a light most favorable to the government, drawing all reasonable inferences there from which will support the verdict. Government Opposition at 13-14. The key modifier is, of course, "reasonable".

In his Rule 29 Memorandum, Mr. Mubayyid has argued that there was insufficient evidence to convict him of knowingly and willfully filing false tax returns for the years 1997, 1999 and 2000. The crux of the argument is that the government never proved that returns were in fact incorrectly or falsely answered.[1] To this day, even in its Opposition, the government has never straightforwardly stated what specifically the law

---

[1] The second part of the argument is that if Line 76 was answered incorrectly, the government failed to prove it was done so knowingly and willfully, and not by accident, carelessness or negligence.

required Mr. Mubayyid to answer when he completed Line 76 of the Form 990, or to be more precise, what activity (or activities) should he have disclosed and failed to.

The inquiry is two pronged. First, did Care engage in activities Form 990 required to be reported? The instruction to Line 76 required reporting of

"any <u>significant</u> changes in the kind of activities the organization conducts to further its exempt purpose. <u>Include new or modified activities</u> not listed as current or planned in the organization's application for recognition of exemption or not yet reported to the IRS by letter to its key district director or by an attachment to the organization's return for any earlier year. Also include any major program activities that are being discontinued.

Thus, for example, when Mr. Mubayyid was completing the 990 tax filing for the tax year 2000, and he encounted Line 76, which asked "Did the organization engage in any activity not previously disclosed to the IRS", did he have a legal obligation to answer the question "Yes" if he knew that:

1. Care had sponsored lectures in 1995 or 1996 which discussed the religiously based duty of Jihad, and/or,

2. Care had sold or distributed a few books and tapes on occasion in 1993, 1994 and 1995, some of which discussed the religiously based duty of Jihad, and/or,

3. Care had published a newsletter from 1993 to January 1997?

The trial record is silent. Despite calling a tax expert, Dawn Goldberg, the government never asked her what activities Mr. Mubayyid failed to report in response to Line 76.

By way of further example, what evidence was introduced that the sponsorship of a lecture in 1996 qualified as a "significant [change] in the kind of activities the organization conducts [present tense] to further its exempt purpose" for the purpose of the year 2000 Form 990, and thereby required an affirmative response to Line 76? The

2

short answer is none. The government tax expert never testified (nor was there evidence from any other source) that lectures, sales of books or tapes, or orphan sponsorship programs were activities that Care was required to disclose in the Form 990 in response to Line 76.

The second part of the inquiry is if at some point in time Care engaged in an activity or activities that constituted a "significant change in the types of activity", was the duty to respond in the affirmative to the Line 76 inquiry an ongoing one.

Dawn Goldberg testified that the publication of an <u>ongoing</u> newsletter was an activity she would expect to have been disclosed in response to Line 76. She never testified that Line 76 question applied to activities that had been discontinued years earlier. She never testified that the publication of the Al-Hussam newsletter should have been reported on the 1997, 1999 or 2000 returns. The government's response is that "Question 76 itself contains no explicit time limitations". In other words, because Line 76 does not explicitly state it applies to the tax year which is being reported, which common sense argues it would , then it <u>could</u> apply any previous tax year in the past as well.

The government cites no authority for this proposition. Certainly no case law, to the knowledge of undersigned counsel, has discussed the scope of Line 76. This may be because no one has ever been prosecuted for falsely answering Line 76. The one person who might have shed light on the meaning of Line 76, Dawn Goldberg, the 990 expert, declined to offer such an open ended interpretation of the Line 76's temporal scope.

Mr. Mubayyid cannot be found criminally liable for answering Line 76 in the negative where there was no evidence that the law or the facts required an affirmative

3

response. As argued in his original Rule 29 Memorandum, the instructions to Line 76 plainly did not put him on notice that the publication of a newsletter, long discontinued, was required to be disclosed in subsequent tax filings.

The First Circuit in United States v. Anzalone 766 F.2d 676, (1985), finding that a defendant's conduct did not fall afoul of a currency transaction reporting law, stated the following:

> Although this court, like all other institutions of the United States, is supportive of the law enforcement goals of the government and society, we cannot engage in unprincipled interpretation of the law, lest we foment lawlessness instead of compliance. Kolender v. Lawson, 461 U.S. 352, 361, 75 L.Ed. 2d 903, 103 S.Ct. 1855 (1983) This is particularly so when the confusion and uncertainty in this law has been caused by the government itself, and when the solution to that situation, namely eliminating any perceived loop holes, lies completely within the government's control. If the government wishes to impose a duty on customers, or "other participants in the transaction," to report "structured" transactions, let it require so in plain language. It should not attempt to impose such a duty by implication, expecting that the courts will stretch statutory construction past the breaking point to accommodate the government's interpretation.
> Anzalone at 682

The law does not countenance the "open-ended" interpretation of criminal liability the government suggests the Court adopt. In the complete absence of evidence that the law was violated, that Line 76 was knowingly and willfully falsely answered, Mr. Mubayyid's conviction cannot stand.

                                            Respectfully Submitted,
                                            Muhamed Mubayyid
                                            By his attorney

                                            /s/ Michael C. Andrews

                                            Michael C. Andrews
                                            21 Custom House Street
                                            Boston, Massachusetts 02110
                                            (617) 951-0072
                                            BBO# 546470