```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA       )
                               )
            v.                 )     Crim. No. 05-40026-FDS
                               )
MUHAMED MUBAYYID, and          )
EMADEDDIN Z. MUNTASSER,        )
and                            )
SAMIR AL-MONLA a/k/a           )
SAMIR ALMONLA,                 )
        Defendants.            )
```

**GOVERNMENT'S MEMORANDUM REGARDING RELEVANCY OF SENTENCING INFORMATION PERTAINING TO THE NATURE AND EFFECT OF DEFENDANTS' ACTIVITIES IN SUPPORT OF VIOLENCE**

The government hereby files a memorandum to assist the Court in determining whether information related to the defendants solicitation and expenditure of funds to promote and support armed conflict, is relevant to impose an appropriate punishment in this case. Much of this information is already replete in the record, and the government urges the Court to consider it. In addition, for sentencing purposes, the description of some individuals and entities mentioned at trial was not previously elaborated in the record, and, to the extent necessary, the government intends to provide limited documentary evidence explaining who they are.

**I.        Introduction**

To state the obvious dynamic throughout this case, this is more than just an ordinary tax case. The defendants stand convicted of crimes involving, among other things, the

1

solicitation and expenditure of tax-exempt money to engage in violent jihad over an extensive and crucial period in history. Care International's ("Care") parent organization, Maktab al-Khidamat, is a designated terrorist organization, and the defendants' activities in brazen support of the ends and means of that organization and others, characterizes the type of fraud involved here. The defendants' promotion of violence, its affiliation with terrorist-related individuals and organizations, and promotion of other terrorist organizations cannot be ignored. The sentencing statute provides the required vehicle for its consideration. 18 U.S.C. § 3553(a); Gall v. United States, 128 S. Ct. 586, 596 (2007).

   The trial evidence reveal: (1) the motivations and desires of the defendants to support violent religious-based conflict around the world; (2) the intended impact of their use of Care to support the mujahideen; (3) the glorification of specific terrorists, terrorist organizations and violent acts of death and mayhem, and (4) the solicitation and expenditure of over one and a half million dollars exempt from taxes for donors and for Care. Consideration of who the beneficiaries of the crime were is necessary in order to determine the non-monetary impact of their fraud.

   The Pre Sentencing Report ("PSR") describes the information which is relevant to the court's inquiry in this regard. To the

extent that additional evidence is required, the government has pared down its supplement to consist of documentary evidence which demonstrates that many of those with whom the defendants allied themselves were themselves designated terrorist entities, and that these dots, once connected, demonstrate a sinister aspect of the defendants' fraud which is characteristically different than greed or selfish inurement reflected under the guidelines calculations.

    A.        **Sentencing Posture**

All frauds are not equal. Section 3553(a) requires the court to consider the nature and circumstances of the defendant and the crime, the deterrence and protection factors. The underlying facts of this case demonstrate that the defendants' crimes were motivated by their desire to support aggravated activities. Such activities were not squarely anticipated by the Sentencing Commission.

The government, however, in encouraging the court to consider the pro-violence aspects at sentencing, is not suggesting that the necessary conclusion to be drawn from such consideration is an upward departure from the final sentencing guideline range. Rather, in this case, largely because of the extent of the fiscal harm, a guideline sentence appears to be

appropriate, but is also reasonable on alternate grounds.[1] Cf. United States v. Jiminez-Beltre, 440 F.3d 514 (1st Cir. 2006)(in which this court concluded that the guidelines sentence was appropriate when the guidelines did capture the conduct of conviction). The government's calculation includes one enhancement not included in the PSR, that of role in the offense, which yields a different range for each defendant.[2] Although the final GSR yields a reasonable sentencing range, the mandatory Section 3553(a) analysis adds alternative support for the need to impose that lengthy sentence. Nevertheless, despite its supportive character, the analysis must be considered, and it can weigh the aggravating activities in its assessment. See, e.g., United States v. Rodriguez, 2008 WL 2025066 at *18 (1st Cir. May 13, 2008)(instructing that in issuing a guidelines sentence, a district court is permitted to weigh aggravating 3553(a) factors more heavily than mitigating factors).

**B. The evidence not adduced at trial which should be considered**

While the court is abundantly familiar with the evidence at

---

[1] The extent of the real or intended fiscal harm becomes a proxy for the seriousness of the offense. United States v. Lilly, 13 F.2d 15, 19 (1st Cir. 1994). While the loss is one of the reasons why this offense is particularly serious, another is the promotion and support of the mujahideen that the defendants did under the auspices of the benefit they fraudulently received.

[2] After this adjustment, the government's calculation of the guidelines range for Defendant Muntasser is 30, for Al-Monla is 27 and for Mubayyid is 26.

trial, because it was not necessary for the jury, the trial evidence paints only a partial picture of the defendants' motivations and commitment to a sinister broader objective. The defendants have repeatedly contended that this Court should not consider any evidence not introduced in the trial record for purposes of sentencing. This is simply incorrect. <u>See</u> <u>United States v. Sepulveda</u>, 15 F.3d 1161 (1st Cir. 1994). The existence of a shadow agenda was exposed at trial, but the nature of the groups and individuals with whom the defendants allied was not. These entities shared common objectives to wage holy war, and the court should consider this in sentencing. Rather than guilt by association, the fact that groups for whom the defendants openly espoused support were themselves all supporting terrorism and violence is probative of the defendants' motivation and intent in concealing these links and activities. Indeed, the defendants' own publications describe some of the acts of terrorism, as described in the PSR. The potentially prejudicial aspect of this was carefully shielded from the jury as unnecessary to determine guilt or innocence, but the Court ought not self-impose blinders to assess the nature of each defendant, and the seriousness of the crimes.

During the sentencing hearing, the government proposes to provide a description of organizations and individuals described

in the PSR,[3] by introducing documentary evidence of the designation of these entities as terrorist entities by the United States Government, along with the issuing statements which describe generally the reasons for the designation.  Similarly, in order to describe certain individuals including Bassam Kanj, Aafia Siddiqui, Adham Hassoun, Kifah Jayoussi, the government will introduce documents which summarize their association with violent groups/activities.

**II. The evidence that the defendants solicited and expended funds to promote and support violent jihad and the mujahideen is a necessary sentencing consideration under Section 3553.**

A court must consider all relevant factors before sentencing a defendant.  See Jiminez-Beltre, 440 F.3d at 517. This breadth of consideration is even more important under an advisory guidelines system. See 18 U.S.C. § 3553; see e.g., Gall v. United States, 128 S. Ct. 586, 596 (2007); Kimbrough v. United States, 128 S. Ct. 558, 574 (2007).  It is still the case that "before

---

[3] This consists of individuals and organizations introduced at trial, but not further described as terrorist organizations, such as Maktab al Khidamat/Al-Kifah Refugee Center (MAK/ARC), Global Relief Foundation (GRF), Benevolence International Foundation (BIF), Holy Land Foundation for Relief and Development (HLFRD), Usbat al Ansar, Libyan Islamic Fighting Group (LIFG), Armed Islamic Group (GIA), Al Gamaa Al Islamiyya (AGAI), Gulbuddin Hekmatyar/Hizb e Islami, Sheikh Omar Abdel Rahman, Mahmoud Abu Halima, Aafia Siddiqui.  Additionally, evidence excluded from trial referencing Osama Bin Laden is also relevant for sentencing inasmuch as the defendants carefully preserved notes and a speech of this leader of Al Qaeda, which became publicly affiliated with all of the groups listed above.

making [the sentencing] determination, a judge must appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider or the source from which it may come." United States v. Tucker, 404 U.S. 443, 446 (1972); see also United States v. Vega-Santiago, 519 F.3d 14, 20 (1st Cir. 2008)("...after *Gall* the sentencing inquiry-once the court has duly calculated the GSR-ideally is broad, open-ended and significantly discretionary.").

The Code explicitly provides for the acceptance of this information in considering the appropriate sentence. 18 U.S.C. §3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."); United States v. Grayson, 438 U.S. 41, 50 (1978).

It is a routine and required function of the court to assess this type of information in its mandatory consideration of the factors listed in 18 U.S.C. §3553(a). See Gall, 128 S.Ct. At 598 (instructing the court to "consider every convicted person as an individual and every case as a unique study in human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue."). Specifically, the pro-violence activities supported and concealed by the defendants bear on subsections: [(a)(1)] "nature and circumstances of the offense

and the history and characteristics of the defendant", (a)(2)(A)"the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (a)(2)(B) to afford adequate deterrence to criminal conduct; [and] (a)(2)(C) to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1) & (2)(A-C).

These facts must be considered by the sentencing court and are necessary to craft a punishment to fit the crime, regardless of the label placed on them or whether they warrant a departure from the sentencing guidelines. Cf. 18 U.S.C. §3553(b)(1)("In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in [3553(a)].".  While the overwhelming majority of the pro-jihad activities and connections are already in the trial record in this case, the significance of who some of the individuals and entities are was not previously described. The commonalities across these entities corroborates the conclusion of the sinister purpose and impact of the defendants' crimes.

Specifically, the intended beneficiary class of the defendants' fund-raising and promotion activities bears on the defendants' personal motivations, the impact of the crime, and the deterrence of the defendant and others from engaging in

similar conduct.  The defendants' motives and the nature of and extent of the harm (intended and real) are important factors to weigh in determining the impact of the crime.  The jury necessarily concluded that the defendants solicited and expended funds to support and promote violent jihad, and used their organization to solicit money for armed conflict.  The defendants intended that violent jihadist fighters and supporters be the beneficiary of their charitable solicitations.  These facts, then, are relevant to the offense conduct to determine the propriety of specific sentencing guidelines, and for the Section 3553(a) analysis.

**III. Sentencing Guidelines Requirements**

The Sentencing Guidelines provide some structure for how these factors may counsel a court on a punishment appropriate to the crime.  The Guidelines specifically require determination of the Guideline range after considering all relevant acts and omissions by the defendant and those reasonably foreseeable to others, as well as the harm that resulted from or was the object of those acts.  See U.S.S.G. §3B1.3(a) (Conduct that is not formally charged or is not an element of the offense of conviction may enter into a determination of the applicable guideline sentencing range.). In this case, the support and promotion of violent jihadist activities, including some terrorist activities and terrorist groups, were the objects of

the concealment and the purpose of the lies for which the defendant was convicted.

In determining an appropriate sentence, the Court needs to consider the context of the defendants fraud. <u>See</u> <u>e.g.</u> U.S.S.G. §§ 1B1.3 app. note 5, 2B1.1 app. note 7(B), 5K2.8 (Extreme Conduct), 5K2.9 (Criminal Purpose), 5K2.14 (Public Welfare).  In this case, which is beyond the heartland of any specific combination of sentencing guidelines, the court must consider the context of the crime, that is whether "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. §3553(b)(1). In this case, that consideration can, but does not necessarily require an upward departure from the guidelines, despite the fact that the Sentencing Commission did not adequately consider the circumstances of this case.

**IV. Seriousness of the Crime and Characteristics of Defendant**

The "Al Capone" case has been cited as part of the jurisprudential and popular lexicon to connote prosecution of a notorious criminal for relatively innocuous-sounding tax offenses.[4] <u>See generally</u> <u>United States v. Capone</u>, 56 F.2d 927 (7th

---

[4] As a point of information, on October 18, 1931, Capone was convicted after trial, and on November 24, was sentenced to eleven years in Federal prison, fined $50,000 and charged $7,692

Cir. 1932). While not perfectly congruent, this case stands for the proposition that the court should consider more than just narrow elements of a crime to levy an appropriate punishment which captures the impact of the crime. As one court said, the departure power can operate upward as well as downward, as "would have been appropriate when Al Capone was prosecuted for a relatively minor tax violation." United States v. Rodriquez, 724 F.2Supp 1118, 1121-1122 (S.D.N.Y. 1989)(citations omitted). While this analogy is not a perfect one, the point is that the sentence for a sterile white-collar crime which is part of a broader, more sinister harm, should be commensurate with the overall seriousness of the crime. That is to say, the seriousness of a crime is not wholly dependent on reliance of proxies such as amount of loss or drug weight. See e.g. United States v. Lilly, 13 F.3d 15, 17 (1st Cir.1994) (stating that in typical white-collar crime case, loss is the barometer of harm), United States v. Aitoro, 446 F.3d 246, 255 (1st Cir. 2006)(post-Booker drug weight analysis). The gestalt of some crimes exceeds reliance on mathematical formulas to capture the conduct, and this is one of them.

   Nevertheless, in this case, the government is neither asking for a departure, nor is it suggesting that the defendants are

---

for court costs, in addition to $215,000 plus interest due on back taxes.

11

liable for crimes of terrorism which they did not commit. Rather, as in Al Capone's case the underlying activity which was being supported by the defendants' tax fraud, is worthy of consideration of the seriousness of the offense, the nature of the defendant, and the deterrent impact at sentencing.  In this case it provides a parallel justification for the period of incarceration.  As a legal matter, however, it relies on the axiomatic proposition that the court should consider all 3553(a) factors before deciding whether the guidelines calculation should be applied to a particular defendant.

**V.    Deterrence**

While the broader impact of any criminal case is irrelevant to virtually every aspect of a criminal case, the one place where it is appropriate to consider is in a court's assessment of the deterrent impact.  <u>Consider e.g.</u>, <u>United States v. Snipes</u>, 05-06-CR-22-Oc-10GRJ (M.D.Fl. April 24, 2008)(recent sentencing of famous actor for tax fraud).  This is codified in Section 3553(a)(2)(B), and it is appropriate in cases, such as this, where the impact of a sentence here, will likely be interpreted across the world, as some barometer of the United States' attitude toward the abuse of its civil infrastructure to support fighting and armed conflict.  Even through that lens, however, the government is not proposing an extraordinary sentence as a surrogate for terrorism charges.  To the contrary, the laws in

this country treat crimes of fraud similarly, and the government's sentencing guidelines calculations instruct an appropriate sentence in this case; the resulting sentence is also reached when analyzing the purposes for and the impact of the particular fraud found in this case.

Criminal tax prosecutions specifically implicate the importance of general deterrence as the prosecutions are few, and tax obligations are legion. See U.S.S.G. ch 2, pt. T, introductory cmt. ("Recognition that the sentencing for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would-be violators".) Especially when the problem of ostensible charitable organizations diverting money to non-charitable activities is a contemporary concern of international significance, the deterrent impact is magnified. Moreover, the media and public attention to this case heightens the likelihood of deterrence.

Finally, with regard to specific and general deterrence, fraudulently soliciting and expending money for violence in the name of religion is unlike the motivations for most crimes. When a noble religious concept is perverted, as these defendants have done, to support violence, the psycho/sociological motivations to perpetuate that activity are not inherently decreased by prosecution. Crimes based on such deeply-felt ideological motivation are more apt to be repeated or modified, and those who

13

are prosecuted for it are more likely to view themselves as martyrs for a greater cause.  Indeed, in this case, the defendants themselves viewed others through this same lens.  <u>See</u> Ex. 537A (describing defendants' fraudulent support for family of Mahmoud Abu Halima, a separate convicted terrorism conspirator).  Moreover, the evidence at trial bore out that the defendants' organization coordinated and planned to engage in similar conduct with other organizations who are also apt to repeat this type of organization. <u>See e.g.</u> Ex. 213A ("[i]f one organization [referring to Care and other associated charities, including Global Relief Foundation] closes, another will stay open.").  To deter both the defendants' future criminal acts under a perverse religious view, and to discourage others who are similarly inclined, the sentence in this case must reflect consideration of these facts to clearly discourage future exploitation of charities, religion and the government.

   Additionally, the defendants and others have characterized this case as one thriving on hyper-technical readings of arcane tax laws.  To cut through a web of rhetoric implicating ambiguous interpretations and allegations of governmental overreaching, it is important that a simple but strong message be sent that if you are going to seek a governmental benefit, you cannot lie in order to get it.  If what you misrepresent or conceal relates to armed conflict couched in the language of religion, then the court can

consider the nature of that misrepresentation in determining the reasonable punishment.

## Conclusion

The United States therefore requests that this Court consider all the information relevant to sentencing, including that information related to the nature and extent that the defendants were motivated by and intended to perpetuate violence around the world. Many of the groups and individuals who they supported became designated as terrorist organizations before the defendants completed their crimes. While some of this information is already in the record, a documentary submission which explains through designation statements and public and open source records who the defendants were referring to is appropriate to consider to determine the nature and characteristics of the defendant, the seriousness of the crime, and to deter similar conduct by others. Wherefore the government respectfully requests that the Court consider this information in its Section 3553 analysis.

Respectfully submitted,

MICHAEL J. SULLIVAN<br>
United States Attorney

By: /s/ Aloke Chakravarty<br>
B. STEPHANIE SIEGMANN<br>
ALOKE S. CHAKRAVARTY<br>
DONALD L. CABELL<br>
Assistant U.S. Attorneys

<u>Certificate of Service</u>

    I do hereby certify that a copy of foregoing opposition was served upon the counsel of record for the defendant by electronic notice on this 30th day of May 2008.

                            <u>/s/ Aloke Chakravarty</u>
                            Aloke Chakravarty
                            Assistant U.S. Attorney