UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA       )
                               )
          v.                   )    Crim. No. 05-40026-FDS
                               )
MUHAMED MUBAYYID, and          )
EMADEDDIN Z. MUNTASSER,        )
and                            )
SAMIR AL-MONLA a/k/a           )
SAMIR ALMONLA,                 )
          Defendants.          )

## GOVERNMENT'S OBJECTION AND MEMORANDUM RESPONDING TO DEFENDANTS' NOTICE OF TAX EXPERTS

The government hereby objects to the Court's consideration of the additional expert testimony related to tax loss proposed by the defendants.

**I.  The Proposed Testimony is legal argument rather than factual information**

The defendant offers expert testimony to emphasize four legal arguments, none of which require additional factual elaboration.  Moreover, two of the defendants' arguments seem at best to be argument on why the Court should discount the government and probation's calculation of tax loss based on alternative bases by which Care could have deducted income. Expert testimony is not required for the Court to engage in simple mathematical calculations.  Moreover, there is no evidence that the defendants sought alternative tax treatment for Care's income or expenses, and expert testimony cannot conjure any *ex post facto*.  The defendants offer four reasons why the Court

1

should listen to the tax experts:

1.    Novelty of the case

The novelty of this case does not necessitate expert testimony.[1]  The proffered rationale is that the case is outside the heartland for Sentencing Guidelines purposes – this is a legal conclusion which counsel has already amply made; another law professor explaining how novel the case is makes it no more substantive of an argument.

2.    Protected activities

The defendants also claim expert testimony is necessary for the Court to determine whether protected activities can be the basis for a tax exemption denial.  In the first instance, this is not a question before the Court – the defendants have not been prosecuted for their protected beliefs, neither does the testimony at trial bear out that the denial of their tax-exempt status would be on the basis of their protected beliefs.[2] Rather, those manifestations of the defendants' belief served to

───────────────

[1]Some case has to be the first of anything, and merely being a case for which there is not much guidance from how other courts dealt with these issues does not mean that law professors must be flown in from around the country to assist this court in resolving them.  This court is better equipped than most to assess the facts as relevant to the tax issues, and to determine the applicable law through which to view those facts.

[2]Even if this was a live issue, the Court has already resolved it in the denying the defendants' motion to dismiss, where the defendants made lengthy argument under the "Unconstitutional Conditions" doctrine.

elucidate the fact that Care's purposes and its activities were not exclusively charitable, as they were soliciting and expending money to support and promote mujahideen. That was not a protected activity, and it was the misrepresentation of this history of Care and these non-charitable activities which were material to the government.

    3.   Widows and Orphans of Martyrs

    The defendants argue that expert testimony is necessary to describe that widows and orphans of martyrs are charitable beneficiaries. First, this question is not before the Court to determine the tax loss. The trial evidence makes plain that several of Care's activities were non-charitable, and an orphan sponsorship program which was uniquely non-charitable was but one of them. Secondly, it is not in dispute that an orphan sponsorship program, without more, would likely fall within a well-established class of charitable beneficiaries. However, in the context of defendants who have been convicted of intentionally defrauding the government by shielding their pro-violence activities, the Court could find that a particular part of the fraud was in fact an alternative means of supporting fighters. However, it is not the Court's function to re-engage in the petit jury's determination of whether Care's activities were in fact charitable or not; rather among other things, it is to determine the extent of the harm caused by the criminal

conduct.  The government has not, and need not, itemize for sentencing how much money went to the orphan sponsorship program, because ALL of Care's income was tax exempt on account of the defendants' fraud.

    4.  Gift Income

    There is simply no evidence in the record that all of the money donated to Care over the 10 years of its existence was or could be considered unrestricted gift income.  The defendants forfeited their ability to claim alternative deductions when they fraudulently obtained and maintained a tax exemption.  The premise that donations given to Care were all unrestricted gifts which would have automatically been deductible by Care (but not its donors) exemplifies the defendants' hypothetical extrapolation.  To the contrary, trial testimony indicated that the charitable deduction was a factor in donors' decision-making to donate to Care, and that they donated it because they thought it was going to a charitable purpose.  An expert witnesses' explanation of what alternative tax treatment should now follow is irrelevant to the Court's determination of loss, and should be excluded.

**II.  The Proposed Testimony is premised on the incorrect assumption that alternative tax-deductions ameliorate the <u>harm in this case</u>**

    The choice that the defendants made when they sought and maintained their tax exemption was to forego alternative bases

4

for deductibility of their income and expenses.  They, and the
government, relied on this choice.  Now at sentencing, the
defendants offer law professors to offer creative accounting
options which the defendants might have considered during their
criminal scheme.  However, the crime of conviction is complete;
the defendants cannot now try to mitigate it by explaining that
they could have taken other legal steps to minimize their tax
obligation.  The fact is, they didn't.  This is a criminal
sentencing based in part upon a determination of financial loss.
To permit a retroactive re-characterization of income would turn
criminal tax prosecutions on their head.  Indeed, by this
measure, a defendant could simply pay their outstanding tax bill
and claim that there was no governmental loss.

    The defendant argues that this testimony is necessary to
illuminate the "tax issues".  The tax issues as relates to what
actually happened in this case, however, have been sufficiently
debated at trial.  The defendant appears to be arguing, as he
might in a civil context, why there were alternative bases of
deduction if the IRS disallowed a deduction on the basis of
Care's tax exemption.  The problem with this analysis is that the
defendants were not convicted of merely failing to file tax
returns or some passive crime which allows them return *ab initio*
to determine the theoretical tax treatment of Care's income.  The
alternative theories of deductibility for which the defendants'

experts are being offered require immersion into a hypothetical
retrospective tax treatment of Care's income.  The whole point of
this case is that the defendants were not entitled to the tax
exemption and they committed fraud to obtain and to maintain it.
To suggest 1) that the defendants would have been able to deduct
their income under alternative theories at the time and 2) that
they would have done so if they had known that the tax-exemption
would be denied or revoked ignores the fundamental conclusions of
the jury in this case, that the defendants intended to defraud
the government, and also presumes that Care would have received
$1.7 million if it had not obtained the tax exemption.

III.        **The Proposed Testimony is insufficient in its
            detail to consider**

        Additional testimony from tax experts should also be
excluded because the defendants' disclosure is insufficient to
provide notice as to what the experts' opinions will be, the
bases for those opinions, and any underlying statements related
to the subject matter of the testimony.  While for sentencing
some discovery leeway is to be expected, there still must be
sufficient disclosure which will demonstrate relevancy and
provide meaningful ability for impeachment and presentation of
contrary testimony.  The defendants provided naught but a one
paragraph precis of the witnesses' credentials akin to the
introductory remarks before a speaking engagement.  There is
neither a statement as to what the witnesses are being called to

say, the need for three tax experts to advance simple legal concepts, the bases for the proffered opinions, any disclosure of prior statements or writings about the same, or anything else which will either allow for a fair cross-examination or presentation of contrary testimony.  The absence of this information suggests an abstractness which is divorced from the record in this case.

**Conclusion**

The defendants' request to present additional expert testimony related to the tax issues should be DENIED.

                          Respectfully submitted,

                          MICHAEL J. SULLIVAN
                          United States Attorney

                    By:   /s/ Aloke Chakravarty
                          B. STEPHANIE SIEGMANN
                          ALOKE S. CHAKRAVARTY
                          DONALD L. CABELL
                          Assistant U.S. Attorneys

**Certificate of Service**

    I do hereby certify that a copy of foregoing opposition was served upon the counsel of record for the defendant by electronic notice on this 3rd day of June 2008.

                          /s/ Aloke Chakravarty
                          Aloke Chakravarty
                          Assistant U.S. Attorney