UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1

2

3

4    UNITED STATES OF AMERICA        )
                                     )
5                                    )
                                     )
6    vs.                             )   CR No. 05-40026-FDS
                                     )
7                                    )
                                     )
8    MUHAMED MUBAYYID and            )
     EMADEDDIN Z. MUNTASSER          )
9

10

11   BEFORE:  THE HONORABLE F. DENNIS SAYLOR, IV

12

13   STATUS CONFERENCE

14

15

16                            United States District Court
                              Courtroom No. 2
17                            595 Main Street
                              Worcester, Massachusetts
18                            Friday, June 6, 2008
                              9:02 A.M.

19

20

21   Cheryl Dahlstrom, RMR
     Official Court Reporter
22   John J. Moakley United States Courthouse
     One Courthouse Way, Room 3209
23   Boston, MA 02210
     Mechanical Steno - Transcript by Computer

24

25

1    APPEARANCES:

2    OFFICE OF THE UNITED STATES ATTORNEY
     By:  B. Stephanie Siegmann, AUSA, and
3         Aloke Chakravarty, AUSA
     One Courthouse Way, Suite 9200
4    Boston, Massachusetts 02210
     On behalf of the Government.

5
     LAW OFFICES OF MICHAEL C. ANDREWS
6    By:  Michael C. Andrews, Esq.
     21 Custom House Street, Suite 920
7    Boston, Massachusetts 02110
     On behalf of the Defendant Muhamed Mubayyid.

8
     ZALKIND, RODRIGUEZ, LUNT & DUNCAN, LLP
9    By:  David Duncan, Esq.
     65a Atlantic Avenue
10   Boston, Massachusetts 02110
     - and -
11   QUINN, EMANUEL, URQUHART, OLIVER & HEDGES, LLP
     By:  Kathleen M. Sullivan, Esq., and
12        Adam Abensohn, Esq.
     51 Madison Avenue, 22nd Floor
13   New York, New York 10010
     On behalf of the Defendant Emadeddin Z. Muntasser

14

15

16

17

18

19

20

21

22

23

24

25

1          P R O C E E D I N G S

2          THE CLERK:  Case No. 05-40026, United States vs.

3  Muhamed Mubayyid and Emadeddin Muntasser.  Counsel, please note

4  your appearance for the record.

5          MS. SIEGMANN:  Good morning, your Honor.  Stephanie

6  Siegmann for the United States.

7          MR. CHAKRAVARTY:  Al Chakravarty, your Honor.

8          MS. SULLIVAN:  Kathleen Sullivan for Mr. Muntasser,

9  together with Adam Abensohn and David Duncan.

09:03 10         MR. ANDREWS:  Good morning, your Honor.  Michael

11  Andrews for Mr. Mubayyid.

12         THE COURT:  Good morning.  All right.  Before we

13  proceed any further, and before I forget, let me take care of a

14  housekeeping matter.  Apparently, when I announced my decision

15  on Tuesday, at one point I misspoke and said 1001(a)(2) rather

16  than 1001(a)(1).  I guess counsel picked that up and spoke with

17  the stenographer.

18         If it's all right, what I propose to do is correct the

19  transcript at Page 9, Line 14, from (a)(2) to (a)(1).  Is there

09:04 20  any objection to that?

21         MR. CHAKRAVARTY:  Your Honor, I haven't read it.  I

22  certainly trust your judgment on that, what you have to say.

23  We'll look at it.  If you want to make the change now, that's

24  --

25         THE COURT:  All right.  Obviously, the landscape has

1     changed in light of my ruling.  I certainly apologize to

2     everyone for the way this thing has unfolded in the sense that

3     I think the lawyers have done work that perhaps might not have

4     been necessary had things unfolded in a slightly different

5     order.

6          But, in any event, we need to decide -- or I need to

7     decide some issues.  In no particular order, whether the

8     current schedule makes sense; whether we need an evidentiary

9     hearing on any issues, if so, as to what issues; whether the

09:05 10     PSRs need to be revised; what objections remain to the PSRs

11     that need to be resolved and how they're going to be resolved.

12          We have the further issue of Mr. Muntasser has filed a

13     renewed motion for bail.  But let me set that aside for the

14     time being and talk about where we go from here and what makes

15     sense in terms of doing this in an organized and coherent way.

16          Let me ask the government first.  What do you think

17     makes sense under the circumstances?  No one needs to simply

18     preserve their objections or rights.  In other words, for

19     example, I'm confident the government is going to appeal my

09:06 20     ruling, and you don't need to state at every interval that

21     you're preserving your rights with regard to that ruling.  I've

22     made the ruling.  I need to sentence in a way that flows from

23     that ruling, and both sides' rights are preserved in all

24     respects.  Mr. Chakravarty.

25          MR. CHAKRAVARTY:  Thank you, your Honor.  Miss

1   Siegmann might jump in.

2        You're clearly providing an option that might make

3   sense.  I think your Honor is correct in assessing where we

4   stand in terms of -- we don't agree with your ruling,

5   obviously.  But that being the case, I think that we -- I think

6   an expedited -- but the current schedule for sentencing should

7   continue and that there's no reason why any new factual

8   elaboration, whether it be -- regardless of the

9   violence-related activities or the tax loss at issue, we were

09:07 10   going to be on that schedule anyway.  So nothing has changed

11   that way.

12        To the extent the PSR needs to be amended, the

13   government's position, again, is the same in the sense of the

14   relevant conduct which we allege the Court should be

15   considering in sentencing the defendants has not changed.

16   Regardless of the Court's findings of what the jury was

17   permitted to consider, the facts, as proven, we think are

18   equally as relevant today as they were on Monday.

19        So I think what we're saying is let's stick with the

09:07 20   schedule.  And we are seeking an above guidelines -- current

21   guidelines sentence for Mr. Muntasser which -- and for a lot of

22   the reasons that we stated in our previous briefing, we think

23   that all of the other conduct, activity related to Care, is

24   squarely relevant and goes to the purposes and motivation as to

25   why he was lying to Agent Peet.  As a scheduling matter, we

1    don't see why that ought to change.

2         THE COURT:  Okay.  We'll come back to that.  Let me at

3    least hear defendants' position.  Miss Sullivan.

4         MS. SULLIVAN:  Good morning, your Honor.  The

5    landscape has, indeed, changed, and it's Mr. Muntasser's

6    position that no evidence relevant to terrorism any longer

7    belongs in the sentencing hearing or in the PSR and that no

8    evidence -- and I speak, of course, here only for Mr.

9    Muntasser.  Obviously, the circumstances of Mr. Muntasser and

09:08 10   Mr. Mubayyid are different, and Mr. Mubayyid's counsel will

11   speak for Mr. Mubayyid.

12        As far as Mr. Muntasser is concerned, with Counts 1

13   and 2 out of the case, no terrorism-related evidence has any

14   bearing on the sentence for Count 6, the sole remaining count

15   of conviction, for a single false statement regarding travel to

16   Afghanistan made to FBI Agent Peet in 2003.  And just as

17   obviously, no evidence related to tax loss any more pertains to

18   Mr. Muntasser.

19        The government related all of its arguments about tax

09:09 20   loss to Counts 1 and 2.  In fact, the PSR, the Presentence

21   Report, in Paragraph 73, identifies the tax loss as tied to the

22   supposed scheme and conspiracy to misrepresent Care's

23   charitable status.  Paragraph 73 of the PSR is what gives you

24   the tax loss.  That's in the PSR calculation.  And with Count 1

25   and Count 2 gone, the scheme and conspiracy are gone.  And with

1    Count 1 and 2 gone, any tax loss issue is gone.  It's

2    inconceivable that there's any tax loss or any loss of any kind

3    from the single false statement to an FBI agent in 2003.

4         So we think that the grounds for any sort of

5    evidentiary hearing with respect to terrorism or with respect

6    to tax loss are gone from the case.  That's our first point.

7    That might affect the scheduling.  You don't need an

8    evidentiary hearing as far as I'm concerned.

9         THE COURT:  Let me stop you there.  The first level of

09:10 10   that is a legal argument, right?  The standard for determining

11   what is other relevant conduct, what nexus or connection needs

12   to be drawn between the offense of conviction and the other

13   conduct, correct?  Step one is what is the legal standard?

14   Step 2 is do any of these activities, either tax loss or what

15   the government has characterized as evidence concerning violent

16   activities -- and there may be another category as well, but

17   let's take those two big ones -- whether or not they constitute

18   such other relevant conduct?

19        And we have other issues, I think, at least in the

09:11 20   abstract.  The government has proposed various enhancements or

21   adjustments to the guideline sentence for abuse of position of

22   trust or obstruction of justice or aggravating role or things

23   of that nature.  And those two probably are part of the mix as

24   well.  Maybe I'm getting ahead of your argument here.

25        I'm trying to be linear about this.  In other words,

1    what is it that I need to decide?  It seems to me the first

2    thing I need to decide is are any of these things other

3    relevant conduct within the meaning of the guidelines --

4         MS. SULLIVAN:  Yes, your Honor.

5         THE COURT:  -- or 3553, as the case may be?

6         MS. SULLIVAN:  Yes, your Honor.  You're absolutely

7    right.  I didn't mean to put the cart ahead of the horse.

8         THE COURT:  No.  I think you had the horse first, so

9    to speak.

09:11 10        MS. SULLIVAN:  To begin with the horse, your Honor,

11    let's speak about the legal standard for sentencing here.

12    Obviously, we begin with the guidelines.  That's your standing

13    order.  That's, even in the post-Booker world, where we begin.

14        The government has always -- until Mr. Chakravarty

15    spoke a moment ago, the government has always advocated a

16    guidelines sentence here.  The guideline sentence here on Mr.

17    Muntasser's remaining count, Count 6, a single false statement

18    count under 1001 -- the guidelines sentence is set forth in the

19    PSR, at Paragraphs 100 and 105, to which the government did not

09:12 20    object.  Count 6 is subject to a base level offense under the

21    guidelines of 6.

22        The government has consistently maintained there

23    should be a guideline sentence.  The PSR says the guideline

24    sentence on Count 6 is a base offense level of 6 and the

25    government's never disputed that.

1          Now, as to the enhancements, there's four enhancements

2     in the PSR.  One I've already addressed.  That's the 14-level

3     add-on for tax loss.  Tax loss is out of this case with Counts

4     1 and 2 gone.  There can be no serious argument otherwise under

5     the law.  The guideline section that pertains to loss,

6     2B1.1(b), refers to monetary loss or pecuniary harm.  There's

7     no monetary loss or pecuniary harm from a false statement to

8     the FBI.  So as to -- Point 1 on the legal standard is

9     guidelines apply.  Base offense level is 6.  No loss.

09:13 10          And then there are three other two-point add-ons that

11    are in the PSR.  None of those apply here anymore either.  The

12    first was a two-point add-on for misrepresentation that one is

13    acting on behalf of a charity.  Obviously, that doesn't pertain

14    to the 2003 statement to Agent Peet.  In fact, to Agent Peet,

15    Mr. Muntasser expressly said, "I no longer represent Care."  So

16    that add-on is gone.

17          The second two-point add-on that was in the PSR -- and

18    these are at Paragraphs 107 to 113 of the PSR.  The second one

19    was for breach of a public or private trust.  That, obviously,

09:14 20   does not pertain to the statement to Agent Peet because Mr.

21    Muntasser was speaking solely on his own behalf to Agent Peet

22    about his own travel.  He wasn't speaking for any entity or

23    persons to whom he had a trust obligation.

24          And the third one is the two-point add-on for

25    obstruction of justice.  That, too, as a legal matter, cannot

1    apply to a single false statement because, as defined in the

2    very terms of the guidelines, the obstruction add-on can only

3    apply when the defendant has obstructed investigation into the

4    offense of conviction.  You can't obstruct an investigation

5    into the offense of conviction while committing the offense of

6    conviction.  And there's no suggestion anywhere in the record

7    that there was any attempt to obstruct the FBI before or after

8    the statement.  It couldn't be otherwise, your Honor, or else

9    every false statement would automatically carry a two-point

09:15 10   obstruction enhancement.

11         Just to summarize, PSR Paragraphs 107 to 113, we say,

12    are no longer applicable.  There's no add-on for loss.  There's

13    no add-on for misrepresentation of charitable organization.

14    There's no add-on for breach of private or public trust.

15    There's no add-on for obstruction.

16         Your Honor, the government asked for, and the

17    Probation Office correctly rejected, the argument for the

18    additional add-on for leadership role.  Obviously, Mr.

19    Muntasser was not acting in a leadership role with respect to

09:15 20   his sole statement to Agent Peet regarding his own sole

21    individual travel to Afghanistan.

22         So on the government's own methodology, which is that

23    they've been seeking a guideline sentence, they've never asked

24    for more than a guideline sentence before.  The guidelines have

25    changed now because, as your Honor said -- I'm surprised Mr.

1    Chakravarty thinks that nothing changed on Tuesday.  What

2    changed on Tuesday was dramatic.  What changed on Tuesday is

3    that the two serious counts of conviction on which the

4    government has penned its arguments for tax loss, its arguments

5    for bringing unrelated terrorism evidence into the case, and I

6    would add -- we'll get to this when your Honor wishes to later

7    -- the government's premised its whole argument for detention

8    as well on Counts 1 and 2.

9            With Counts 1 and 2 gone from the case, we're looking

09:16 10    at a single false statement count of conviction that carries a

11    guideline sentence of, maximum, six months, of which Mr.

12    Muntasser has already served five.  And just to correct, your

13    Honor, he served five months of that sentence.  It's nearly

14    six, but it's not quite as close as I said last time.

15            THE COURT:  I managed to figure that out on my own.

16            What about -- let's play this out a little bit and

17    maybe uncouple from the guidelines a little bit.  3553(a),

18    obviously, is ultimately what's going to determine the

19    sentence.  I'll confess that I have not had a single case yet

09:17 20    post-Booker in which 3553 might be used to have a longer

21    guideline sentence.  I mean, obviously, the arguments are

22    always that it ought to be shorter.

23            But at least arguably, some of this information might

24    be relevant under 3553(a) even if not fitting within the

25    guideline framework.  And intertwined with that is the

1    statute -- I think it's 3161 -- that says there shall be no

2    limitation placed on the information before the sentencing

3    court.

4         What's your reaction to that?  Maybe to frame it a

5    little more carefully, the circumstances of the travel to

6    Afghanistan and the misstatement might open doors that would

7    not be present if, say, the misrepresentation about whether he

8    had gone to Greece to go to the beach -- in other words, that

9    there might be information that's relevant there that might not

09:18 10   be in a different kind of false statement case.  What's your

11   reaction to that?

12        MS. SULLIVAN:  Yes, your Honor.  To begin with, let's

13   recall that 3553 is not an invitation to an unstructured or

14   free-floating inquiry.  3553 still requires a nexus.  We've

15   cited your Honor First Amendment case law from before Booker

16   that suggests there has to be a nexus.  Of course, Guidelines.

17        Section 1B1.3 defines relevant conduct in a way that

18   requires a nexus.  It can't be that 3553 eliminates all

19   requirements of a nexus.  1B1.3 defines relevant conduct as

09:18 20   including only, and I quote, "acts or omissions that occur

21   during the commission of the offense of conviction, in

22   preparation for that offense, that is, the offense of

23   conviction, or in the course of attempting to avoid detection

24   or responsibility for that offense, the offense of conviction."

25        Just to go back to the guidelines, 1B1.3 says there's

1    got to be a nexus to the offense of conviction.  It's got to be

2    during, in preparation for, or to cover up the offense of

3    conviction.

4         So if we stay for a moment in the guidelines as a

5    guide to how 3553 should be interpreted, it requires a nexus

6    crucially to the offense of conviction, that any sort of

7    acquitted conduct or other conduct, it has to be related to the

8    offense of conviction.  That really places a very narrow

9    restriction on the nexus here.  The nexus here really has to be

09:19 10    to a single false statement regarding travel to Afghanistan.

11         Obviously, all of what Mr. Muntasser did with tax

12    filings for Care in 1993 to 1996 can't be in preparation for

13    talking to Agent Peet seven years later.  He never would have

14    known he was going to do that.  It certainly wasn't during

15    talking to Agent Peet.  Temporally, it can't be to cover up

16    talking to Agent Peet because he hasn't done it yet.  So within

17    the guideline's definition of relevant conduct, it's kind of a

18    slam-dunk that the Care-related activity is not relevant.

19         Then the question becomes is some broader nexus

09:20 20    permitted under 3553?  And as your Honor notes, it would be

21    most strange if the sentencing discretion that was restored to

22    your Honor by Booker, Fanfan, Gall and Kimbrough, would be most

23    strained if that discretion was to enable you to enhance a

24    sentence for acquitted conduct because the very basis of those

25    cases was the Sixth Amendment, saying that a jury has to find

1    the basis on which a sentence is imposed.  And the guidelines

2    err to the extent that they in a sense mandate consideration of

3    acquitted conduct.

4         So you're right.  We're in a new world in which it's

5    legally questionable whether using acquitted conduct to enhance

6    a guideline sentence would ever be permissible at all.  But

7    let's imagine it could be in this new world.  We would argue

8    that, your Honor, the particular findings that you made on

9    Tuesday, the particular ruling you made under Rule 29, really

09:21 10   precludes any nexus here under 3553 even assuming you could

11   ever have a nexus under 3553 to increase a guideline sentence.

12        The reason is, your Honor, that you very specifically

13   found correctly that there was no nexus between the FBI

14   statement to Agent Peet in 2003 and IRS influence.  You found

15   it repeatedly in the Rule 29 ruling.  You found that there was

16   no nexus between the FBI statement and IRS activity.  There was

17   no nexus between the FBI statement and the collection of taxes.

18        And in finding that there was no nexus -- your words

19   were "nexus or causative nexus."  In finding that there was no

09:22 20   nexus, for purposes of Count 1, between the statement to Agent

21   Peet within the Statute of Limitations period and the necessary

22   effect on the IRS, you really precluded by that very Rule 29

23   ruling any nexus, for purposes of sentencing, between the

24   statement to the FBI and the conduct that the government now,

25   despite its defeat on Count 1 and Count 2, wants to bring back

1    into the sentencing process.  So, as a matter of law of the

2    case, your Honor, we really believe that the nexus, even if

3    it's theoretically possible under 3553, is precluded by the

4    Rule 29 ruling.

5              THE COURT:  Okay.

6              MS. SIEGMANN:  Your Honor, may the government respond

7    to that argument?  Were you done?

8              MS. SULLIVAN:  I'm happy to yield to the government,

9    your Honor, unless you have further questions.

09:23 10              THE COURT:  No.  All right.  Miss Siegmann, I'll hear

11    from you.

12              MS. SIEGMANN:  Thank you, your Honor.  Going back to

13    -- as this Court knows, the guidelines are now advisory, and

14    3553(a) is written in a very general manner.  The nature and

15    circumstances of the offense and the history and

16    characteristics of the defendant is something this court must

17    consider during sentencing.  And as the Court has noted under

18    3661 -- 18 U.S.C. Section 3661, and which is actually codified

19    in the guidelines itself under 1B1.4, this court may consider,

09:23 20    without limitation, any information concerning the background,

21    character and conduct of the defendant.

22              As Mr. Chakravarty noted earlier, the facts the

23    government submitted in its statement of conduct we believe are

24    still relevant despite your rulings on Monday -- I'm sorry, on

25    Tuesday, as to the false statement.

1          Why is that, you may ask?  Let me give you a little

2     more background, and let's talk about that interview that

3     Special Agent Peet conducted on that day.  What false

4     statements did he state in addition to the ones he was charged

5     with?  Because that would be relevant conduct, your Honor.

6          After Special Agent Peet questioned Mr. Muntasser

7     about Care because, as was quite clear to Special Agent Peet,

8     Care was being investigated, he asked questions about Care,

9     your activities, its connection to Al-Kifah, as the Court is

09:24 10     fully aware.  Then he asked about his travel, and he denies

11     numerous times going to Afghanistan.

12          What else did he deny?  He denied meeting Gulbiddin

13     Hekmatyar, a mujahideen warlord in Afghanistan.  He denied that

14     twice.  That was in the testimony that the jury heard, this

15     Court heard, and the government proved beyond a reasonable

16     doubt -- by at least a preponderance, if not beyond a

17     reasonable doubt.

18          That is relevant.  Why is it relevant?  Because Mr.

19     Muntasser was concealing the true nature of his trip overseas,

09:25 20     concealing what he was doing as president of Care

21     International, an allegedly Muslim charity.  No.  What he did

22     overseas, which we proved based upon the evidence at trial,

23     Government Exhibit 66A, was that he was pledging support; Care

24     was pledging support; every one of the individuals that we

25     allege were coconspirators were signing on a pledge of support

1    that they were going to pledge to support this person in the

2    cause of jihad, alleging military allegiance to this person.

3         That is relevant because it goes directly to the

4    reason why Mr. Muntasser lied to Special Agent Peet, covering

5    up, concealing, what Care was all about by virtue of his false

6    statement.

7         That is relevant.  And it goes -- and those statements

8    were obstructing the investigation of Care International being

9    conducted by the FBI.  Mr. Muntasser was clearly on notice that

09:25 10    they were being investigated.  This was not the first time he

11    was interviewed by the FBI about Care.

12         Additionally, as to the issue that Miss Sullivan

13    raised about acquitted conduct not being -- you can't use for

14    sentencing purposes, there's a case that is just not the law.

15    There's actually a recent case on April 29, 2008, the First

16    Circuit decided, United States vs. Marti-Lon, at 524 F.3d 295,

17    in which the court -- this district court -- the First Circuit

18    said it was fine.  It was actually -- it was clearly

19    appropriate to consider acquitted conduct in determining the

09:26 20    amount of loss with regards to stolen drugs.

21         And based upon that case -- and it cited to actually

22    United States vs. Woodward as well, a First Circuit case in

23    2002 -- that you can, your Honor, consider the conduct that you

24    -- well, the Count 1 and Count 2 that were Rule 29.  And in so

25    doing -- I read the transcript because I wasn't -- I was unable

1     to be at the hearing -- you found that there was substantial

2     evidence that all three defendants supported and promoted jihad

3     and mujahideen.

4          We ask and we are seeking that you consider that.

5     That's the history and characteristics of the defendant.  These

6     are things that you should consider in determining an

7     appropriate sentence under the circumstances because you cannot

8     dissociate what happened during the interview of Special Agent

9     Peet from the conduct that Mr. Muntasser committed earlier

09:27 10    because during that interview he did lie to cover up what Care

11    was all about, to make sure that the FBI did not learn about

12    the true activities of Care, that he went overseas to -- and

13    pledged allegiance to a warlord, that Care was -- part of its

14    purpose was to support jihad and mujahideen.

15          THE COURT:  Let me --

16          MS. SIEGMANN:  And, again, as Mr. Chakravarty said, we

17    will be seeking an above-guideline sentence, and the maximum

18    sentence in this case, as you're well aware, is five years.

19          THE COURT:  What about tax loss?  I mean, suppose

09:28 20    you're right in terms of the activities of Hekmatyar and

21    activities concerning jihad and so forth.  What about tax loss,

22    financial loss, to the U.S. Government?  The connection there

23    is much less clear to me.  Why does that come in under a false

24    statement case even if I agree with you on the other piece of

25    it?

1          MS. SIEGMANN:  Your Honor, again, I go back to the

2     fact that 3553(a) -- again, there was some argument saying that

3     the government always said the guidelines were, you know, what

4     we were asking for.  That's true.  But I think the facts now

5     with regards to the Rule 29 has changed that, and we shouldn't

6     be bound by the fact that we were seeking a guideline sentence

7     before.  The guideline sentence we thought was appropriate.  It

8     was in excess of five years, just saying that at the outset.

9          3553(a) is broad and it includes the nature and

09:29 10    circumstances of the offense which, again, the nature and

11    circumstances of the offense, the false statement that he made

12    to cover up what Care was doing.  And the fact that he

13    defrauded the IRS in obtaining tax-exempt status, we believe,

14    is relevant, No. 1.

15          Number 2, it goes to the history and characteristics

16    of the defendant.  The fact is he defrauded the IRS.  That is

17    the evidence that was before this Court.  And the fact that we

18    couldn't -- the Court has ruled that we didn't have a

19    coconspirator at the relevant time period, despite that fact,

09:29 20    he actually -- there was substantial evidence.  We proved

21    beyond a reasonable doubt to the jury that he defrauded the IRS

22    necessarily for them to convict on the conspiracy charge.

23          THE COURT:  What additional information do you wish to

24    put before the Court in terms of -- again, for want of a better

25    word, evidence of violent activities, or jihad or things of

1    that nature?

2         MR. CHAKRAVARTY:  I'll address that, your Honor.  As

3    the Court said previously, which is -- but the final point on

4    it, it's evidence of the designations as specially designated

5    terrorist entities of the groups that are already in the

6    record.  Your Honor may not be aware and the record may not

7    reflect who groups like Libya and Islamic Fighting Group or the

8    Armed Islamic Group, the fact that they were in the first

9    instance designated and then what they were designated

09:30 10   essentially for, which was reflected by the Department of

11   Treasury, the Department of State, issuing statements at the

12   time of the designations.

13        And so there would be a very small supplement

14   describing, I think -- I want to say ten groups, including the

15   Maktab al-Khidmat, Global Relief Foundation, Gulbiddin

16   Hekmatyar, obviously, Islami -- I think they're all listed in

17   the -- as long as you're writing them down, give me a moment

18   and I will --

19        THE COURT:  But this is documentary evidence, not live

09:31 20   testimony?

21        MR. CHAKRAVARTY:  Yes, documentary evidence.  I'm

22   saying about two or three pages per organization.  And it's

23   purely to supplement the record so that there's context as to

24   who these organizations were.  And that relates to -- relates

25   to Muntasser.

1          Defendant Mubayyid, we allege, his sentencing posture

2     is much more on par with where you were on Monday.  We don't

3     think much has changed in that.

4          It will be a documentary submission, about ten

5     different groups we're going to be describing based on what I

6     think the Court can probably take judicial notice of.  But it

7     will be a submission so that you will have some -- you can look

8     at the four corners to say these ten groups, which the evidence

9     is already in the record, that the defendant had promoted and

09:32 10   supported, they all happen to be terrorist organizations.  And

11    the Court can construe that the sum of the parts to be greater

12    than each individual.

13         So this notion, as your Honor has repeatedly said, if

14    the government was able to prove that the defendant knew that

15    he was supporting a terrorist organization, obviously, we would

16    be in a different charging posture.  However, the Court can

17    consider, in determining the nature and circumstances of the

18    defendant and what their ultimate objectives were in committing

19    both the crime of conviction -- with regard to Mr. Muntasser,

09:32 20   lying about meeting Hekmatyar.  They can -- the Court should

21    consider the fact that the people who he was promoting were, in

22    fact, designated terrorists, especially Gulbiddin Heckmatyar,

23    who, a month and a half prior, had been designated by the

24    federal government as a terrorist, a month and a half prior to

25    the interview with Agent Peet.  Squarely relevant to what his

1    motives would be in lying and concealing this ten-year --

2    ten-plus years of involvement with Care which was promoting and

3    supporting the mujahideen.

4         So the submission would be minor.  The evidence is

5    already in the record.  The Court is -- what the government is

6    encouraging is the Court to consider that evidence in weighing

7    those 3553(a) factors to levy the appropriate sentence.  And as

8    Miss Siegmann has just suggested, effectively, we've asked for

9    a guideline sentence all along because, as we calculated the

09:34 10   guidelines and as the Probation had calculated the guidelines,

11   that accurately reflected the 3553(a) factors in terms of what

12   a sentence should be.

13        The fact that those crimes of conviction have now been

14   reversed by your Honor does not change the fact that the

15   appropriate sentence should be on par with that.  Obviously,

16   there's a statutory cap here because there's only one count of

17   conviction.  But there should be a lengthy period of

18   incarceration for the prolonged, we argue, relevant offense

19   conduct under 1B1.3 and especially under 3553(a).

09:34 20        THE COURT:  I think I need to hear from Mr. Andrews

21   because I think the tax piece of it is in the case regardless

22   because of Mr. Mubayyid.  Mr. Andrews.

23        MR. ANDREWS:  Thank you, your Honor.  I apologize.  I

24   lost the last part of what you just said regarding the tax.

25        THE COURT:  Whatever the tax arguments are with regard

1    to Mr. Muntasser, I think they're in the case because of Mr.

2    Mubayyid given the posture of it.  So I want to hear from you.

3         MR. ANDREWS:  Yes, your Honor.  I believe my

4    colleagues filed something with you recently indicating, as

5    they did, that they believe the tax issue is no longer live

6    vis-a-vis Mr. Muntasser.

7         I'm grateful to my colleagues for having picked up

8    this laboring oar.  In working on the tax issue, they've

9    contacted certain experts.  When we had the status conference

09:35 10    by telephone, the Court indicated it would be amenable to live

11    testimony and/or documentary submissions.  So the landscape has

12    changed in a practical sense for me since Tuesday.  They've

13    been exceedingly helpful in lining people up.  If the tax issue

14    is not a live issue for Mr. Muntasser, it certainly still is

15    for Mr. Mubayyid.

16         Mr. Mubayyid's tax loss issues are somewhat different

17    because -- but still very much -- very important as far as the

18    calculation of any guidelines.  The Court will recall the tax

19    loss for Mr. Muntasser and in the PSR stems from the filings of

09:36 20    the 1023 and the -- I guess the PSR and the government's

21    proposition that Care would never have been granted a tax

22    exempt.  All the monies that they received are subject to tax,

23    and so the tax loss is taken from the $1.7 million though we

24    disputed that.

25         The tax loss for Mr. Mubayyid, your Honor, might be

1    better calculated as -- since he had nothing to do with the

2    original filing -- the Court has found he didn't conspire with

3    the original filing; he wasn't a party to it -- he did file

4    990s in the years 2000, 2001 and 2002.  The question for the

5    Court is -- and the question for the expert, I think, will

6    address is -- would Care's tax-exempt status have been revoked

7    in 2000, 2001, 2002 had Mr. Mubayyid divulged that in 1997 and

8    1995, 1996, Care published a newsletter; in 1995, 1996, Care

9    had sponsored lectures; that in 1995, 1996, 1994, Care had

09:37 10    distributed certain tapes and other literature.

11         I think the experts will be prepared to say that

12    revocation would have been a highly unlikely result.  We note

13    that the government's expert, Dawn Goldberg, actually never

14    testified that she would have recommended revocation for Care

15    even having seen the Al-Hussam newsletter.  She did say that if

16    the Al-Hussam newsletter was an ongoing publication she would

17    have wanted to see it.  And one of the things that she said,

18    well, that she would have had -- perhaps they would have -- I

19    think her language was, "We possibly could have gotten excise

09:38 20    taxes or sought revocation."  So she was anything but certain

21    on that matter.

22         That's sort of a summary of the argument.  The

23    practicality of it, your Honor, is I need to get up to speed; I

24    need to meet with experts.  You started this hearing asking

25    about scheduling, asking about the experts.  I don't believe --

1    I think the case posture has changed significantly, obviously,

2    for my two codefendants but also for Mr. Mubayyid as far as

3    practicality.

4         I would seek to have the sentencing date postponed.  I

5    would suggest there's -- I have submitted to the Court certain

6    documents so that I can prepare with the experts.  I know the

7    Court probably is seeking some sort of resolution to the

8    matter.  However, the case has gone on for almost three years

9    now with Mr. Mubayyid.  The Court's decision on Tuesday changed

09:39 10    things.  After a three-year case, he doesn't need to -- we

11    don't need to rush in the last ten days and sprint to the

12    finish line.

13         I'd like to be prepared.  I have a right to be

14    prepared.  Mr. Mubayyid deserves counsel who's prepared.  These

15    are complicated issues.  I intend to challenge the tax loss

16    vigorously.  If I'm successful, your Honor, Mr. Mubayyid's

17    guideline sentence would be in the zero to six-month range.

18         My sister just -- as far as -- the relevant conduct as

19    far as Mr. Mubayyid, that really came in at the end,

09:40 20    post-lectures, post-newsletters.  There was a website that

21    republished certain articles on Suheil Laher's jihad Islam

22    page, thousands and thousands of documents regarding --

23    relative to Islam, which a few pages of some articles had been

24    reprinted.  That's really his only connection to that part.

25         My sister claims that everyone we charge as

1    conspirators was pledging allegiance to Hekmatyar.  Mr.

2    Mubayyid was living in Australia as a software engineer when

3    all this -- this meeting occurred.  He had nothing to do with

4    any of this stuff.  He had nothing to do with the publication

5    of -- the original publication of the newsletters.  He had

6    nothing to do with the lectures.

7          So the tax loss is going to be critical.  And if this

8    Court finds -- I think this Court will be -- I predict -- I

9    think the Court may be very hard-pressed to find that there's a

09:41 10    tax loss in Mr. Mubayyid's case because the Court would have

11    had to have found, as a matter of certainty, that they would

12    have revoked Care's charitable status had he answered the

13    answers correctly in 2000, 2001.  They would have gone back to

14    those years.  They would have declared all that money taxable

15    despite the evidence that all of it went to charity.  It is not

16    a result I think this Court is going to come to easily.

17          I do ask for some additional time.  I don't want to

18    drag it on.  I can, to a certain extent, tailor my presentation

19    as far as the experts go.  I would seek perhaps a date in

09:41 20    mid-July, the 14th, so not -- not forever, your Honor, but just

21    perhaps 30 days.

22          I'd also note that the government -- just as an aside,

23    the government seeks to produce documents to supplement the

24    record, which I do oppose, but I'd like to see them in

25    preparing -- it's not fair for these tax issues and at the same

1    time, I guess, be handed a sheaf of documents that I have to

2    argue its relevancy sometime next week because we don't have

3    them as yet.  Thank you.

4         THE COURT:  Okay.

5         MR. ANDREWS:  If the Court has any questions.  That's

6    my position.

7         THE COURT:  Who wants to respond to Mr. Andrews?

8         MR. CHAKRAVARTY:  We don't think that the -- for the

9    reasons we stated in our opposition to the tax experts, we

09:42 10    don't think that the tax experts elucidated the issue of tax

11    loss as a factual matter, the Court finding what the tax loss

12    is.

13         THE COURT:  I'm not sure I understand that.  I may or

14    may not agree or disagree with this position.  But at least as

15    I read the defense submission, they say that their tax experts

16    will contend that -- for example, that this would not have been

17    taxable income.  It would have been gift income regardless.  I

18    have no idea whether that's right or not.  How do I decide that

19    without someone explaining it to me?  In other words, how can I

09:43 20    say that's just simply irrelevant?

21         MR. CHAKRAVARTY:  First, it relies on this

22    hypothetical construction that they didn't have the 501(c)(3)

23    status and that they would have actually applied under these

24    alternative tax theories.

25         THE COURT:  But the tax loss itself is sort of a --

1    you have to sort of go back and say suppose this charity had

2    never been granted the exemption.  What would the tax rate have

3    been?  And that constitutes the tax loss.  We're always kind of

4    working in a hypothetical world when we're making these

5    calculations.

6            MR. CHAKRAVARTY:  Typically, it doesn't come up in

7    501(c)(3) context where you have this kind of -- you're saying

8    every -- it's a little bit different.

9            The other reason why 501(c)(3) changes things is

09:44 10   because the scheme to conceal -- understanding what your Honor

11   has done with regard to Muntasser.  Mr. Mubayyid is still in

12   that mode.  Scheming to conceal this 501(c)(3) status means

13   that under the nontax loss but under the financial loss fraud

14   guidelines calculations, it's not a direct result of what he

15   was required -- what he otherwise would have been required to

16   pay under the tax rules.

17           So the reason why we're saying it's different is

18   because the perpetuation of this fraud, what was the loss

19   caused by the fraud?  It happens to be it's best quantified by

09:44 20   taxes because that's what -- the benefit that they were

21   receiving.  But alternative constructions presumes --

22   alternative constructions of the tax calculations would have

23   been presumed that they didn't actually fraudulently obtain and

24   maintain tax exemption.  Even under 7212 and the 1001

25   conviction for Mr. Mubayyid, that is a fraud that he

1    perpetuated.

2         And so I can't argue with the fact that people who are

3    knowledge accountants, law professors, that how to calculate

4    taxes may be helpful in figuring out how to benefit a client

5    who is trying to shield taxes.  To do that retroactively at

6    this stage for sentencing to determine what the government may

7    not have been entitled to if they had followed these procedures

8    seems to be a far cry from determining what the harm was by the

9    crime of conviction that they did do.  That's what the

09:45 10   rationale was.

11         And it also ignores this -- the benefit, as described

12   at trial, that getting 501(c)(3) status is both shielding tax

13   liability for the defendants as well as for the donors.  And

14   the defendant will not be able to demonstrate what the other

15   alternative benefits of the tax -- alternative basis of

16   liability or not by the donors was for this whole time.

17         So that's why we use these percentages to determine

18   what the approximated tax loss would have been based on what

19   the total loss is.  The truth is that Care obtained $1.7

09:46 20   million plus.  They never paid taxes on it.  And that's the

21   data that we should be working with, not to try to do

22   microscopic analysis of whether this was -- this may have been

23   exemptible at the time if we had deducted it under this other

24   theory and not filed a Form 990 but filed some other form with

25   the IRS.  That seems to get into a revisionist history as to

1    what Care would have done.

2         THE COURT:  Again, I'm not agreeing or disagreeing,

3    but it seems to me that that's an appropriate argument that you

4    make in the context of this expert testimony.  In other words,

5    you could say, for example, after the expert has rendered his

6    or her opinion, this doesn't make any sense because it's all

7    hypothetical, and it assumes the following four facts which

8    didn't exist.  Maybe I buy that; maybe I don't.  But that's

9    different.  Right now we're doing this in the abstract.  I just

09:47 10    don't understand the issues well enough.

11         MR. CHAKRAVARTY:  I understand.  But, at best, the

12    proffer of what they're going to say, which, as you know, we

13    think is not detailed enough, but it's a purely legal basis.

14    It's not saying that I looked at these records.  These records

15    demonstrate that the defendants would have been able to take

16    out -- aside from looking at the 990s, which is not an analysis

17    of the receipts and the inflow and the outflow of Care.  It's

18    based on their own representations.  I don't know that they

19    have actual factual testimony for your Honor.  Rather, it's a

09:47 20    legal basis which you can consider in determining what the loss

21    calculation should be.

22         THE COURT:  Let me cut to the chase here on something

23    that, I guess, is the No. 1 thing on my mind at this stage.

24    Under other circumstances, I think I would clearly postpone the

25    sentencing and allow everyone a little more time to unpack

1    this, maybe to get some revised PSRs and to sort through some

2    of these issues.

3         I, obviously, don't know whether or not Mr. Muntasser

4    would receive a six-month sentence.  It's at least not outside

5    the range of possibility.  Let's put it that way.  I'm

6    concerned about postponing it such that he would remain

7    detained.  In other words, I'd like to resolve that issue

8    sooner rather than later.  And I'd like to try to walk through

9    that.

09:48 10         In fact, let me talk to Probation about possible

11    revisions to the PSR.  Miss Foster is not here, unfortunately,

12    which is one more complication.  Let me speak with Miss Howarth

13    for a moment.

14    (Discussion held off the record.)

15         THE COURT:  All right.  Speaking purely in practical

16    terms here again, here's what I would like to do, and let's see

17    if this would work.  I have no problem postponing the sentence

18    of Mr. Mubayyid -- or the sentencing until mid-July.  The

19    sentencing of Mr. Muntasser, I think it probably ought to be

09:52 20    put back, but I'm thinking more on the order of a week rather

21    than a month.  In other words, I think I need to decide this

22    issue.

23         And what needs to be accomplished in my mind is a

24    revised Presentence Report in what's probably going to be in an

25    impossibly short time frame, which I think Probation can do

1    because it doesn't require any additional investigation but

2    simply a recasting of a PSR, and an opportunity for objections,

3    which, again, I think will have to be in a very short time

4    frame.  But I think your objections have been made.  It's

5    really a matter of recalculating it.

6         And perhaps holding either Tuesday, the 10th, or

7    Thursday, the 12th, for whatever evidentiary hearing we need to

8    have, I think not on tax issues because Mr. Andrews is now more

9    or less in charge of that and he needs more time, although it's

09:53 10   -- again, it's possible these tax issues may come back into

11   Muntasser, in which case we may need to rethink this.

12        But what I'd like to do is see if we couldn't

13   accomplish all of that, say, by June 20th or so.  Probation

14   says that they are -- Miss Foster is willing to revise the PSR

15   at high speed.  And we can't have a final PSR without an

16   opportunity for objections.  Again, if counsel can turn around

17   objections -- which I think have already been made.  I think

18   it's a matter of recasting them, making sure they're tied to

19   the right paragraphs and so forth.

09:54 20        I think what I'd like to do is try to go forward with

21   the sentencing of Mr. Muntasser, again, approximately June

22   20th, because that afternoon works for me.  And we'll move Mr.

23   Mubayyid to, say, mid or early July.

24        What is the government's reaction to that, first?  And

25   I don't think we can do this without a final PSR,

1   unfortunately.  In other words, the PSR is an important

2   document, not simply for calculation of the sentence but for

3   other purposes.  We've got to get a final PSR that addresses

4   this, and the parties have to have an opportunity to object to

5   it.

6          MR. CHAKRAVARTY:  Your Honor, we're not in favor of

7   the time.  We understand that practical aspect of it.  A week

8   seems reasonable, your Honor.  We have bigger concerns with

9   pushing off Mr. Mubayyid's understanding and really empathizing

09:55 10   with Mr. Andrews as counsel.  But in terms of the posture for

11  his client, it hasn't changed that much.  And our clock is

12  ticking with regards to the notice of appeal.  If and when we

13  file that, there's also divestiture of this Court with regards

14  to some of the issues.

15         THE COURT:  It's sort of mandamus.  Your appeal clock

16  doesn't start ticking until I sentence them and enter a

17  judgment.

18         MR. CHAKRAVARTY:  Having not briefed that, I can't

19  tell you definitely.  It's quite possibly, your Honor, that the

09:56 20   allowance of the Rule 29 triggers the clock for purposes of

21  appeal of that ruling.  And 30 days from a couple of days ago

22  is going to be well before July 14th.

23         If we were able to compress and add that extra burden

24  on Mr. Andrews and Mr. Mubayyid to be able to marry up at the

25  same time frame, then I think we avoid both problems.

1          THE COURT:  Let me do this, then.  I do not want this

2     to interfere with anyone's right of appeal.  It seems to me

3     that it would be fair -- if you're right and it could affect

4     the government's right to appeal, it would be fair to have as a

5     condition of putting off Mr. Mubayyid's sentencing to

6     accommodate Mr. Andrews that Mr. Mubayyid consent to --

7     assuming he can consent -- to an extension of time or tolling

8     of the time in that regard.  But you'll have to let me know.

9          MR. CHAKRAVARTY:  We'll have to look at that.  We are

09:57 10   looking at that now, obviously.  It might be a jurisdictional

11    issue which we might --

12         THE COURT:  All right.  If it's a problem, we'll just

13    make due in the time frame allotted.  I'm certainly sympathetic

14    to Mr. Andrews, but --

15         MS. SIEGMANN:  Your Honor, just based upon what I've

16    seen, appellate lawyers in Washington have looked at this issue

17    and have -- preliminarily, but have decided that we should

18    appeal within 30 days of your ruling on Tuesday.

19         THE COURT:  Thirty days of June 3rd, is that right; is

09:57 20   that the date?

21         MS. SIEGMANN:  Yes.

22         THE COURT:  So that's July 2nd.

23         MS. SIEGMANN:  For scheduling purposes --

24         THE COURT:  Right.  Is it something that can be waived

25    by consent of the defendant?

1        MS. SIEGMANN:  I believe, as Mr. Chakravarty said,

2   it's jurisdictional.  And there's no way that our office is

3   going to want to lose the right to appeal on that basis.

4        THE COURT:  All right.  Let me hear Miss Sullivan.

5   Let me hear defendant's reaction.

6        MS. SULLIVAN:  Thank you, your Honor.  I'd like to be

7   heard, if I could, on two things.  First, I'd like to

8   articulate our position that bail for Mr. Muntasser is now

9   appropriate under the statute, under 3143.  And then I'd like

09:58 10   to respond, if I could, to the government's argument with

11   respect to the 3553 issue.

12        Just to begin with bail, your Honor, especially in

13   light of you pushing back the sentencing to June 20th --

14        THE COURT:  I haven't done that yet.  I've just

15   proposed it.

16        MS. SULLIVAN:  We're willing, your Honor, to have the

17   sentencing hearing on Mr. Muntasser on June 20th.  As I've

18   already said, we believe it should contain no discussion of tax

19   loss.  And we believe the PSR -- you should order the PSR to be

09:58 20   amended to strike the paragraphs -- the irrelevant paragraphs

21   on terrorism so we need have no further evidentiary inquiry

22   into terrorism.  On that basis, yes, we are prepared to go

23   forward on the 20th.

24        We would like to brief the 3553 issues.  That's the

25   only thing we would need to do in preparation for that hearing.

1        But, your Honor, Mr. Muntasser has served over five

2    months -- or it will be over five months, and nearly the full

3    six-month sentence, as of June 20th.  And if I could, your

4    Honor, I'd just like to make the case briefly for why we think

5    you should grant bail immediately under 3143.

6        Your Honor said back in January when you remanded Mr.

7    Muntasser to custody that it was a very close call.  You said

8    it was very close.  And at that time Mr. Muntasser was facing

9    three serious counts of conviction for which the government was

09:59 10    soon to ask for 97 to 121 months.  That comes out of Counts 1

11    and 2 as a guideline sentence.

12        Mr. Muntasser scrupulously complied with all the

13    conditions of bail during the trial.  As your Honor remembers,

14    you wanted him to not leave Massachusetts without permission.

15    You wanted him to observe a curfew.  You wanted him to put up

16    his house as collateral.  He observed all those conditions

17    absolutely scrupulously when he was facing three counts of

18    conviction and a potential sentence of ten years and nearly

19    automatic deportation.

10:00 20        Now the scales have tipped.  Your Honor has dismissed

21    Counts 1 and 2.  As I've already articulated, that means a

22    guideline sentence of six months, zero to six months.  Your

23    Honor has already said it's very possible you would sentence

24    him only to six months, of which he's served nearly all.

25        That change in exposure for Mr. Muntasser means that

1    under 3143, under the language of 3143, he's no longer a flight

2    risk.  Danger to the community has never been an issue.  The

3    only issue has always been risk of flight.  Risk of flight,

4    your Honor, in January, the whole reason you thought there was

5    risk of flight, as compared to the prior situation where you

6    gave him pretrial bail, was that he was facing these serious

7    counts.  These serious counts are gone.  They're gone.  He

8    doesn't face exposure to the kind of sentence he was exposed to

9    before for the reasons I've already articulated.

10:01 10        So if he complied with bail before when he faced three

11    serious counts, he's now facing only one false statement count.

12    His exposure is gone.  We've submitted to your Honor a renewed

13    motion for bail in which we articulated the reasons why we

14    think there is minimal risk of deportation now as a result of

15    the false statement count.  So that risk is also down.  I won't

16    go into all those now, but we've got them in our brief that we

17    filed with you yesterday.

18        He's facing a zero- to six-month sentence.  Your Honor

19    has already said it's highly possible that you would give him

10:01 20    six months.  That means, under 3143, the scales have tipped,

21    your Honor.  If it was close -- if it was evenly balanced, as

22    the First Circuit said, the scales are certainly tipped on risk

23    of flight.

24        Why would a man who scrupulously complied with every

25    condition of bail during a long investigation and the grueling

1    trial, when he faced three counts of conviction involving

2    potentially ten years, when at least under even the

3    government's new argument as of today, the statutory maximum

4    has been cut in half -- why would a man who scrupulously

5    adhered to his bail conditions flee when he's won on Counts 1

6    and 2 against the government's prediction, when he has every

7    reason to expect that he will be sentenced to something close

8    to the time he's already served, at most?  Why would there be

9    any risk of flight?  Since risk of flight is the only relevant

10:02 10   statutory factor, we think he's actually, under your Honor's

11   own reasoning, entitled to bail.  If it was a close call in

12   January, the scales have tipped now.

13           I would just add, your Honor, it's not even clear to

14   us, given the language of 3143, that there's any presumption in

15   favor of the government on detention to begin with because,

16   remember, the language of 3143 refers to the presumption in

17   favor of detention if the guideline sentence recommends

18   incarceration.  And since the guideline sentence here is zero

19   to six months, the exact language of 3143 is that, "The

10:03 20   judicial officer shall order that a person who has been found

21   guilty of an offense and who is awaiting imposition or

22   execution of a sentence other than a person for whom the

23   applicable guideline promulgated pursuant to 28 U.S.C. 994 does

24   not recommend a term of imprisonment."  Zero to six is as low

25   as the guidelines have.  The sentencing table of the guidelines

1    can't get any lower than zero to six.  It's arguable that the

2    burden shifted back to the government in the first place.  We

3    would submit that even if we bear the burden we've more than

4    amply met it.  There's clear and convincing evidence that

5    there's no flight risk.

6          Mr. Muntasser has already lost his freedom.  He has

7    lost time with his family, his four children.  His wife is now

8    pregnant with their fifth child.  She's lost his companionship

9    throughout the duration of that pregnancy.  It's our position

10:03 10   that under 3143 he shouldn't have to spend another day in jail

11   even as we await sentencing.  He's not a flight risk.  We're

12   perfectly prepared to submit to the very same conditions your

13   Honor imposed as a matter of pretrial bail.  And we submit that

14   you should grant bail forthwith.

15         THE COURT:  That was your first point.  I think you

16   said you had two.

17         MS. SULLIVAN:  Yes, your Honor.  If I may just briefly

18   respond to the government, two quick points, your Honor, one on

19   the facts, one on the law.  On the facts, I just want to

10:04 20   correct, for the record, Miss Siegmann, who was not here on

21   Tuesday when your Honor read his ruling from the bench,

22   suggested that you found that there was substantial evidence of

23   support for jihad and mujahideen.

24         I just want to point out your Honor's opening remarks

25   in the transcript of June 3rd, on Page 3, where you explicitly

1    said the opposite.  There was no evidence that they, the

2    defendants, provided legal aid or similar support to any

3    fighters.  So your finding was the opposite as her remark was

4    intended to refer to materials from -- you found the opposite.

5    There is no support for fighting in this record.  That's just

6    on the factual point.

7        Your Honor, on 3553, it remains an open issue in the

8    Supreme Court and in the First Circuit whether 3553 permits you

9    to enhance a sentence based on acquitted conduct.

10:05 10   Unfortunately, the case that Miss Siegmann cited and was kind

11   enough to share with me during the break a moment ago, it does

12   not refer to 3553.  It's a 2B1.1 case which allows acquitted

13   conduct to be used in connection with a loss calculation under

14   the guidelines.  It doesn't refer to 3553 at all.

15        I think, as your Honor correctly said, it remains a

16   new world, after Booker, Fanfan, Gall and Kimbrough, whether

17   3553 will permit the use of acquitted conduct for an upward

18   enhancement.

19        I'd also just point out to your Honor that the

10:05 20   language in 3553 doesn't really support the use of acquitted

21   conduct.  Acquitted conduct might be relevant conduct for

22   purposes of sentencing, but the language of 3553 refers to the

23   nature of the offense, the nature of the offense, or the

24   history and characteristics of the defendant.  3553 doesn't

25   contain a clause about relevant conduct.  It's about the nature

1   of the offense or the history and characteristics of the

2   defendant.

3           So I would submit to you that 3553 really doesn't

4   allow the government a vehicle to bring in all the relevant

5   conduct it was trying to assert under the guidelines.  I would

6   submit that it was irrelevant as well under the guidelines for

7   the reasons I've already mentioned to you.  It doesn't have a

8   sufficient nexus to the offense.

9           But then the last legal point, your Honor, this is a

10:06 10 rare case.  This is a rare case in which you've already made a

11  nexus determination.  If we accept that 3553 turns on nexus and

12  nexus, in particular, to the nature of the offense, the offense

13  of conviction, false statement, the history and characteristics

14  of the defendant, if we accept there's got to be a nexus, this

15  is the rare case where you've already made a finding about

16  nexus.

17          That's because of the peculiar way this was charged,

18  peculiar and in the end not a successful way in which this was

19  charged.  The government tried to link up two disparate series

10:07 20 of events, separated by a decade in time, and say, well, we're

21  stuck on the Statute of Limitations as to the first set, but

22  we've got you because we've got another set of conduct in the

23  second set.

24          Your Honor precisely ruled that there's no nexus

25  between those two sets of events.  That was the basis for your

1    Rule 29 ruling on Count 1.  The specific language in the

2    transcript from Tuesday, at Page 28, is that, "I conclude that

3    there is not sufficient evidence of a nexus or connection

4    between the FBI interview on April 7, 2003, to sustain a

5    finding that the lawful functions of the IRS were impaired and

6    impeded by those assumed acts of concealment back in 1993 or

7    1996.  I think the jury could not fairly infer the necessary

8    nexus between the FBI and the IRS."

9           So this is the rare case in which the substantive

10   finding as to Rule 29 has already negated the very nexus the

11   government would need to prove to bring the two unrelated sets

12   of activities together for sentencing purposes under 3553.

13          And just on the nexus point, your Honor, I'd refer

14   your Honor to cases such as United States vs. D'Andrea, 107

15   F.3d 949, First Circuit, 1997.  We cite a related case from the

16   Seventh Circuit on the same point.  These are cited in the

17   several motions we filed with your Honor yesterday.  Those were

18   cases that came down during the guidelines period.  But what

19   they said is that for a sentencing court to consider conduct

20   that is not the subject of conviction, the offense of

21   conviction, the government must show sufficient nexus between

22   the conduct and the offense of conviction by a preponderance of

23   the evidence.

24          Nothing about Booker, Fanfan, Gall or Kimbrough

25   suggests that the nexus requirement is gone from 3553, and, as

1    I would suggest to your Honor, 3553 doesn't approach the

2    breadth of the relevant conduct inquiry.  There's got to be a

3    nexus to the offense of conviction or the characteristics of

4    the defendant.

5         So for all those reasons, we really don't think that

6    the remaining count of conviction can possibly sustain the

7    multiple paragraphs the government relies on in its terrorism

8    proffer.  Page after page after page in Paragraphs 11 through

9    80, specifically, we've asked that PSR Paragraphs 11 through 80

10:09 10    be stricken.

11        The government has come back and said, well, the

12    statement was about Hekmatyar.  But a statement about one --

13    the statement, first of all, was about travel to Afghanistan.

14    The assumption that this involved a warlord, of course, we

15    dispute, but the assumption -- that assumption still can't bear

16    bringing in an entire laundry list or telephone directory of

17    all the designated organizations of the world.  That's taking

18    it from a tail wagging the dog to a flea on the tail wagging

19    the dog.  To bring in that volume of evidence that's so

10:09 20    unrelated to the defendant here and so unrelated to the false

21    statement would be, we think, an abuse of 3553.

22        So for all those reasons, your Honor, we think that

23    the PSR is easily amended along the lines of our motion to

24    amend.  We think the base offense level should be 6, end of

25    story; no tax loss enhancement; no enhancement for

1    misrepresenting a charity, obstruction, leadership, or abuse of

2    public or private trust.  6 is zero to six months, end of

3    story.  All of the paragraphs about unrelated terrorism conduct

4    should be out of the PSR and out of consideration under 3553.

5            But we are -- so, your Honor, we respectfully request

6    bail forthwith.  We think that it's not a close question under

7    your own analysis of 3143 given the elimination of Counts 1 and

8    2.

9            Just to be clear, it was Counts 1 and 2 that were the

10:10 10  basis for the government's entire argument for detention.  I

11   can quote to your Honor from the government's argument at the

12   bail hearing of January 18th.  Miss Siegmann, addressing your

13   Honor, said, "There shouldn't be a double standard here, your

14   Honor.  This individual has been convicted."  This is, I'm

15   sorry, transcript of January 18th, at Page 26.  "This

16   individual has been convicted of not just one count, false

17   statement.  He was convicted of a ten-year scheme to conceal

18   and ten-year conspiracy charge, and those were significant

19   counts.  And that's why we're asking for detention."

10:11 20         With those counts gone, I'm sorry, we are looking at

21   just one count, false statement, and the government's case for

22   detention has evaporated.  Mr. Muntasser has already lost his

23   freedom for five months, and it's entirely possible the

24   guideline sentence would have been zero.  It's entirely

25   possible, as your Honor said today, it might be six.  He will

1   have already served six.  There's no danger he won't come back

2   for sentencing.  There's no danger he won't come back for

3   appeal.  He's awaiting the birth of his fifth child with his

4   wife, Adela, who's been here with him faithfully throughout

5   these proceedings.

6          His family is waiting for him here in Massachusetts.

7   He's not going anywhere.  We've already detailed under seal,

8   your Honor, there are very powerful reasons why he would not go

9   out of the country to his homeland.  And there are -- if

10:12 10   there's ever a reason to expect that he will comply with bail

11   -- if he complied with bail facing Counts 1 and 2, there's no

12   reason in logic or fact or experience that would suggest he

13   wouldn't comply with bail now.

14          He's stayed in this country to vindicate his rights,

15   to vindicate his belief in the rule of law that you so

16   powerfully expressed on Tuesday.  He's certainly not going to

17   flee now.  So we respectfully request that you grant bail

18   forthwith and that we -- we're prepared to proceed with the

19   sentencing on June 20th on that basis.

10:12 20          THE COURT:  Thank you.  Miss Sullivan, before you sit

21   down -- the question is actually directed to all three parties

22   and it's perhaps a mundane question.  Once we have revised

23   PSRs, how quickly do you think you can get objections on file?

24          MS. SULLIVAN:  Well, your Honor, it depends on if you

25   strike the terrorism evidence.  If you strike the terrorism

1    paragraphs that we've asked be stricken, it will take a shorter

2    time than if you don't.  But, in any event --

3         THE COURT:  But they're already in there, and your

4    objections are already in there.  In other words, even if I

5    don't strike them --

6         MS. SULLIVAN:  Your Honor, I think all we need to do

7    is to brief the 3553 matters we've just discussed.  We're

8    prepared to do that in a matter of several days.

9         THE COURT:  Mr. Andrews, how quickly do you think --

10:13 10   in other words, suppose I had a new PSR that magically appeared

11   overnight.  How quickly do you think you could get objections

12   to that on file?

13        MR. ANDREWS:  I can do it right away, your Honor.  I

14   mean, there's the PSR -- I filed my objections -- lengthy

15   objections to the original PSR, but I think that's probably

16   something this -- this Court is going to have to make a

17   determination on.  So if Mr. Mubayyid's PSR is changed to the

18   extent that it reflects his acquittal on Count 2, the rest of

19   it may still be there.  I still have all the same objections.

10:14 20   Again, I'll just renew those objections to the extent the

21   paragraphs haven't changed.

22        I'm very concerned about -- I'd like to have his

23   sentencing the dates we talked about, but I'm not going to

24   delay the matter through seeking time to making objections to

25   the PSR.  I'll be able to turn them right around, your Honor.

1        THE COURT:   What about the government?

2        MS. SIEGMANN:   Your Honor, our position is that the

3    relevant conduct that we've already briefed should remain in

4    there, as you obviously understand.   We only need a matter of a

5    day probably to object to -- if we have any objections to the

6    sentencing guideline calculation assuming that the Probation is

7    going to do it.

8        THE COURT:   All right.

9    (Discussion held off the record.)

10:16  10        MR. ANDREWS:   Your Honor, may I make a -- I'm not sure

11    how the new PSR will turn out.   Obviously, though, there's a

12    lot of material in the existing one that really had to do more

13    with Mr. Mubayyid's codefendants than it had to do with him.

14        Now, in a multidefendant case, that's the way it works

15    out sometimes.   Even though I don't want to have all that

16    information that doesn't pertain to my client in the PSR, it's

17    often the case that they're bundled.   There may be a need for a

18    lot of this stuff to be excised.

19        So when I say I'll turn it right around, I think I'll

10:16  20    beg the Court's indulgence.   If my objections seem to be --

21    they will be specific, but I probably won't be able to go into

22    detail if the Court wants a quick turnaround time and a lot of

23    material about stuff that doesn't relate to Mr. Mubayyid is

24    still in the report.

25        THE COURT:   Yes.

1          MR. ANDREWS:  What I'm saying is I didn't object to a

2     lot of this stuff the first time around because it might have

3     been relevant to codefendants.  But if it all appears again,

4     I'm not going to be able to simply resubmit my original

5     objections and then add a couple.  So that's the issue, your

6     Honor.

7          THE COURT:  All right.  What I think I'd like to do is

8     to set a timetable that gets all of this done within the 30-day

9     period in which the government can appeal.  And if it looks

10:17 10   like we have some room to maneuver there as to Mr. Mubayyid, in

11    particular, I will not be averse to extending it.  But I think

12    under the present assumption that we have only 30 days in which

13    to work or it impairs the government's right of appeal or I

14    lose jurisdiction or something, I'm going to set a timetable.

15         MR. ANDREWS:  May I be heard?  Is it the government's

16    position that they cannot appeal the ruling of the Court's Rule

17    29 on a single count until Mr. Mubayyid is sentenced on the

18    other count?

19         THE COURT:  I was assuming they couldn't appeal until

10:18 20   there was a judgment.  They seem to think that they can only

21    appeal within 30 days of my having issued my decision on June

22    3rd.  I'm not going speculate.  I have no idea what the law is.

23    And what I'm going to do is set a timetable that gets this done

24    in 30 days.  If it turns out either, (a), the government is

25    wrong or, (b), you can consent to a longer period of time, I

1    will certainly be amenable to postponing Mr. Mubayyid's

2    sentencing to early or mid-July.

3           MR. ANDREWS:  I'll do the research right away.

4    Although jurisdictional matters sometimes are firm, this would

5    seem to be an odd result.

6           THE COURT:  It doesn't sound right to me, but I'm just

7    saying that off the top of my head.  I really have no idea what

8    I'm talking about, which is not the first time that that's

9    happened.

10:19 10       But I do think, in fairness to the government, I want

11   to make sure that they do have an opportunity to appeal my

12   decision, and I don't want to have that appeal put this case

13   somehow on hold so that I can't sentence people.  That makes no

14   sense to me at all.  I'm just going to set a timetable to try

15   to get it done before July 3rd.  And then, again, if that can

16   be extended as to Mr. Mubayyid, I'm amenable.  I think Mr.

17   Muntasser, we ought to probably address the issues earlier.

18          But let me state what I'm going to do with the bail

19   decisions.  I'm going to take it under advisement.  I'm not

10:20 20  going to rule now.  And if I do, in fact, release him, as to

21   which I intimate no suggestion one way or the other, that may

22   change the timing of this as well, and the need to address Mr.

23   Muntasser's issues immediately may dissipate somewhat.

24          I think what I propose is this:  Probation, with some

25   heroic efforts, thinks that they can have amended PSRs by

1    Wednesday, the 11th.  What I would propose is that objections

2    to the amended PSRs from all parties be produced by June 16th;

3    that we hold the sentencing of Mr. Muntasser on the afternoon

4    of Friday, the 20th.

5          And I have -- the trial I had scheduled for June 23rd

6    has settled, although, of course, the calendar has immediately

7    become flooded with other things.  But I could sentence Mr.

8    Mubayyid on either Monday, the 23rd, in the morning, or Friday,

9    the 27th, in the morning.  And that leaves open the question of

10:21 10   when we would have either a further legal argument or

11   evidentiary hearing on tax issues.

12         Obviously, we have time held open on Tuesday, the

13   10th, in the afternoon; Thursday, the 12th, in the afternoon;

14   and Friday, the 13th, in the afternoon.

15         Let me start with the basics.  Can the parties live

16   with that?  That is, amended PSRs to be submitted by Wednesday,

17   the 11th; objections to the amended PSRs by Monday, the 16th;

18   sentencing of Muntasser on Friday, the 20th; and sentencing of

19   Mubayyid on either the 23rd or the 27th.  The government's

10:22 20   reaction?

21         MS. SIEGMANN:  The government can live with that

22   schedule.  The only thing that we would request is that,

23   between the dates of June 23rd and 27th, we do it on June 23rd.

24   Both myself and Mr. Chakravarty were planning on going on

25   vacation during that week, but we could be here for Monday.

1       THE COURT:  I don't want to -- I'm extremely reluctant

2  to interfere with anyone's vacation.  Mr. Andrews.

3       MR. ANDREWS:  Was it -- can I just jump ahead, your

4  Honor?  One of the things is that -- because you're talking

5  about maybe having an evidentiary hearing on the tax issues

6  next week.  That's just where I am right now.  The tax issue is

7  my issue.  That does me no good.  I was going to ask for the

8  27th so I would have as much time as possible, (a), to prepare

9  and, (b), to be as flexible as possible to get the expert here.

10:23 10  So if the government -- I understand the government wants a

11  hearing before the 3rd.  I don't know if the Court had any time

12  on the 30th or the 1st or the 2nd.

13       THE COURT:  I'm out that week, unfortunately.  So it

14  would have to be after the July 4th weekend.

15       MR. ANDREWS:  It might be moot if -- I'll have to

16  research this appeal issue.

17       MS. SIEGMANN:  Again, your Honor, this was information

18  that the tax lawyers and the -- in Washington and appellate

19  lawyers preliminarily told us.  It's not something -- we're not

10:23 20  experts on this issue either.  We rely on our experts in the

21  Department of Justice, and that's what they preliminarily have

22  told us.

23       THE COURT:  I understand.  Why don't we handle it this

24  way.  I'll set the sentencing of Mr. Mubayyid for Monday

25  morning, the 23rd.  I would be -- I have no problem whatsoever

1    with postponing that to early or mid-July.  I'm setting it that

2    early only to accommodate this issue of the government.  And if

3    that issue can somehow go away, you can go on your vacation,

4    and we can give Mr. Andrews a little more time.

5            MR. ANDREWS:  That's fine, your Honor.  Thank you.

6            MS. SIEGMANN:  We would obviously give Mr. Andrews

7    time.  It's just this other issue that's lurking.

8            THE COURT:  I understand.  Let's let that sort itself

9    out.

10:24 10          I think I need, then, to set a time for a hearing on

11   the tax issues.  For want of a better time, I do think it would

12   be useful for me to hear from these experts, so I'm going to

13   set that for Thursday, the 19th, at 3:00.  Again -- and that's

14   not an optimal schedule.  I'm just -- if we're going to

15   sentence Mr. Mubayyid on the 23rd, we need to have that

16   proceeding, I think, in advance of that.

17          What I would propose is that we reconvene on the

18   afternoon of Thursday, the 12th, at 2:00, when we were going to

19   have the sentencing originally, in which I can render rulings

10:25 20   on sort of the relevance and scope of some of these issues, at

21   least preliminarily.  I may not have the parties' objections.

22   I won't have the parties' final objections, but at least I can

23   let you all know how I think this ought to play out, that is,

24   what I think is on the table and what is not, so you all know

25   where I'm going with it.  Miss Sullivan.

1          MS. SULLIVAN:  Your Honor, may I --

2          THE COURT:  You look concerned.

3          MS. SULLIVAN:  Not concerned, just inquisitive, your

4     Honor.  I wonder if your Honor -- your Honor, we've suggested

5     today that tax loss is out of Mr. Muntasser's case.  I've asked

6     you to so rule.  I've offered to withdraw our tax expert

7     notice.  I take it your Honor is not ruling on that today

8     because --

9          THE COURT:  Let me give my tentative ruling on that.

10:26 10    My tentative ruling is the tax loss is off the table on

11    Muntasser but on the table for Mr. Mubayyid.  I say "tentative

12    ruling" because I think that's right, but I'd like to reserve

13    the right to think about that a little bit more.  But I think

14    that that result makes some sense to me.

15         MS. SIEGMANN:  Your Honor, may the government brief

16    this issue for you since this is something that we haven't

17    briefed before because, obviously, the rulings hadn't come down

18    before we submitted our tax loss?

19         THE COURT:  I will give you that opportunity although

10:26 20    you'd better get something on file quickly.  I'd like to make a

21    final resolution on Thursday, the 12th, of all of those sorts

22    of issues.  Again, what is on the table as to both defendants

23    as far as I'm concerned and what is not; what open issues need

24    to be resolved?  We may not have every detail nailed down

25    because I won't have the final objections to the PSRs.  But I

1  think at least I can give the parties some notice as to where

2  I'm going with it.

3       I'd also like to order some cross-disclosure of the

4  additional information the government seeks to submit and some

5  more flesh on the bones in terms of these tax experts, which I

6  would -- let me ask the government first.  Is there any issue

7  in terms of disclosing relatively promptly what it is the

8  government is going to want to add to the record concerning

9  these specially designated terrorist organizations and so

10:27 10  forth?

11       MR. CHAKRAVARTY:  No.  It would be done quickly.

12  We're trying to assemble -- early next week.

13       THE COURT:  Okay.  Mr. Andrews, I know you're behind

14  the eight ball here, but with -- I'm sure, with the healthy

15  cooperation of Mr. Muntasser's counsel, how quickly do you

16  think you could at least get something in the order of a Bill

17  of Particulars, perhaps not an expert -- you know, full expert

18  disclosure report within the meaning of Rule 26 of the Rules of

19  Civil Procedures but something that fleshes things out a little

10:28 20  more so that the government has a little better handle on what

21  it's responding to?  Is the middle of next week realistic for

22  that?  You want to consult --

23       MR. ANDREWS:  I think so.  May I consult?

24       THE COURT:  Yes.

25  (Discussion held off the record.)

1          MR. ANDREWS:  Next Thursday.

2          THE COURT:  Next Thursday, the 12th?

3          MR. ANDREWS:  Yes, your Honor.

4          THE COURT:  Let's do this, then.  I'm going to order

5    that the government provide further disclosure concerning the

6    additional evidence it wishes to have the Court consider by

7    close of business on Wednesday, the 11th.  And I'm going to

8    order that defendants provide a more detailed statement of the

9    tax opinions or tax evidence it expects to -- they expect to

10:29 10    offer, I'm going to say by 10:00 a.m. on Thursday, the 12th,

11   the reason being so that people have an opportunity to at least

12   read it before we have our hearings at 2:00 and perhaps react

13   to it.  Miss Sullivan.

14          MS. SULLIVAN:  Your Honor, you said "defendants."  May

15   we rely for now on your ruling that this applies just to Mr.

16   Mubayyid?  Mr. Mubayyid will submit that?

17          THE COURT:  Yes.  Again, I fully recognize that I'm

18   putting everyone behind the eight ball here, including

19   Probation.  I'm not doing this lightly or because I take

10:30 20   pleasure in it.  I do think we have some practical issues that

21   we just need to deal with.

22          Before I forget, Mr. Andrews, your ex parte motion is

23   granted.

24          MR. ANDREWS:  Thank you, your Honor.

25          THE COURT:  So let me see if I can recap, then, where

1    we are.  The issue of bail for Mr. Muntasser is under -- I will

2    take that under advisement.

3         MS. SIEGMANN:  Your Honor, the government hasn't had a

4    chance to respond to that.

5         THE COURT:  You can -- I think you need to act quickly

6    on that as well.

7         MS. SIEGMANN:  I was going to make an oral argument if

8    you'd like to hear it now.

9         THE COURT:  All right, I will.  Let me do my recap,

10:31 10   and then I'll hear the oral argument.

11        Bail is under advisement.  The motion under seal filed

12   by Mr. Andrews is granted.  The sentencing of Mr. Muntasser is

13   set for Friday afternoon, the 20th, at 2:00.  The sentencing of

14   Mr. Mubayyid is set for Monday, the 23rd, at 10 a.m.  Probation

15   will provide amended PSRs by Wednesday, the 11th.  The parties

16   will provide objections to the amended PSRs by Monday, the

17   16th.  The government will make further disclosures concerning

18   additional sentencing information by close of business on

19   Wednesday, June 11th.  And the defense will provide more

10:31 20   detailed statements of the tax opinions or other tax

21   information by 10:00 a.m. on Thursday, the 12th.

22        And this schedule is subject to being stretched out

23   slightly if, (a), this issue can be worked out in terms of the

24   government's right to appeal; and, (b), if I do, in fact, grant

25   bail to Mr. Muntasser, that may also relieve the pressure here

        1    somewhat, and we can give everyone a little more breathing
        2    room.  Did I miss something?
        3           MS. SULLIVAN:  Not at all.  Just with respect, your
        4    Honor, I would just like to point out, with Mr. Muntasser's
        5    wife imminently due to give birth to their child, every day is
        6    precious to us, and we appreciate very much you taking the bail
        7    under advisement.
        8           THE COURT:  When is her due date?
        9           MS. SULLIVAN:  We think that under 3143 it is no
10:32 10    longer a close case.  It's an easy case for bail.  We
       11    respectfully request that your Honor, while taking it under
       12    advisement with respect, rule as soon as possible and that we
       13    take it up on the 12th if your Honor has any further questions.
       14           THE COURT:  I don't intend to dawdle, but I think it
       15    was filed last night, right, the motion?
       16           MS. SULLIVAN:  Your Honor -- I do apologize for that,
       17    your Honor.  We had a lot to do since Tuesday.
       18           THE COURT:  You don't have to apologize.  I read it.
       19    I do want to hear from the government, which I omitted to do.
10:33 20    And I want to think about it.
       21           MS. SULLIVAN:  That's fair enough, your Honor.
       22           THE COURT:  When is his wife's due date?  Ballpark?
       23           MS. SULLIVAN:  Your Honor, Mrs. Muntasser is due
       24    toward the end of the summer, so I may have -- "imminent,"
       25    obviously, being with his family, with four children, in the

1    late term of a pregnancy, is as important in their view as

2    anything else here in the family circumstances.

3         The basic argument, your Honor, is that 3143 speaks to

4    our -- thank you, your Honor.

5         THE COURT:  Mr. Castles reminds me I had set two other

6    dates which I had forgotten as part of my recap.  12:00 -- I'm

7    sorry, 2:00 on Thursday, the 12th, we will reconvene, at which

8    point I will indicate to the parties what I think the scope of

9    topics or issues for sentencing is going to be.  And we've set

10:34 10   the tax expert hearing for Thursday afternoon, the 19th, at

11   3:00.  So it's a pretty full schedule.  Again, until we can at

12   least resolve this legal issue, I think I'm going to leave this

13   in place.

14        All right.  Miss Siegmann, let me hear from you on the

15   bail issue.

16        MS. SIEGMANN:  Thank you, your Honor.  At the outset,

17   I want to be clear if there was any question in what I said

18   earlier, which I don't believe there was, that when I read the

19   transcript, what you said was there was substantial evidence

10:35 20   that all three defendants supported and promoted jihad and

21   mujahideen.  I did not insinuate in those words anything about

22   legal aid.  We all know what the evidence was at trial.  We

23   heard it and the -- your rulings, as you are well aware, don't

24   relate to that element of the crime.

25        Having said that, the government will likely seek a

1    very serious term of imprisonment in this case.  We may likely

2    seek a maximum sentence, under the circumstances, of five years

3    which we believe is warranted based upon the facts that were

4    proven at trial and Mr. Muntasser's conduct.  That is well

5    within what 3553(a) allows you to consider, the nature and

6    circumstances of the offense, the entire circumstances of the

7    offense.

8            There's no nexus requirement written into 3553(a), and

9    the history and characteristics of the defendant.  The history

10:36  10   of the defendant, the fact that he defrauded the IRS within --

11   relating to Care International, the subject matter of that

12   interview that Special Agent Peet asked him about and that

13   Special Agent Cleary had asked him about years earlier.  He was

14   interviewed multiple times.  He was clearly aware of the

15   investigation of Care; and, therefore, the obstruction of

16   justice enhancement that the Probation properly found before

17   still is in play here, is the government's contention.

18           Now, the other sentences that -- the other convictions

19   -- offenses that he was convicted of also carry a five-year

10:36  20   maximum sentence.  Despite the guideline's zero to six

21   calculation, we do still feel and strongly support and believe

22   that in this case it's warranted that he be detained,

23   especially when we're talking about sentencing being only a

24   couple of weeks down the road.  It's not like he was just

25   convicted yesterday, and you're now looking -- the PSR hasn't

1   been done, and it's been months before he's being sentenced.

2   He's being sentenced two weeks from now, give or take.

3        And for that reason, there's not -- this is -- at this

4   point, it seems that it's appropriate to keep him detained,

5   especially where, again, the government intends to ask for a

6   sentence above the guideline range of six months.  Again, the

7   guidelines are merely advisory, and in light of the unique

8   circumstances of this case, we're going to ask for a more

9   lengthy sentence.

10:37 10        Additionally, on the immigration status, his

11  immigration status -- now, obviously, this is something that we

12  will consult with the -- further with Department of Homeland

13  Security, but it's unchanged.  He still stands convicted of an

14  offense involving moral turpitude, a lie, to the FBI.  And we

15  also in our papers previously have cited to you that this is

16  not the only reason that you -- he would likely be deported.

17  There's national security reasons for him to be deported, that

18  the immigration -- under the immigration laws could pursue and

19  seek his deportation on that basis.

10:38 20        So based on those reasons, the government believes

21  that there is no reason at this point in time, especially where

22  we stand only two weeks away from sentencing, to release Mr.

23  Muntasser from prison.

24        THE COURT:  All right.  In fairness, I'll give the

25  government the opportunity, if you want, to supplement that in

1    writing.  But I think really it's going to have to be by

2    Monday.

3              MS. SIEGMANN:  Yes, your Honor.  Again, I only briefly

4    saw it at 10:00 last night, Miss Sullivan's submission.

5              MS. SULLIVAN:  Your Honor, just briefly.  Thank you.

6    Your Honor, we have a pending renewed motion for bail that's

7    been pending since the First Circuit rejected our appeal.  In

8    fairness, this has been on the books.  The government had ample

9    opportunity to respond to our still pending, renewed motion for

10:39 10    bail following the First Circuit's affirmance.  The First

11    Circuit affirmed only on the basis that the scales were evenly

12    balanced.  The scales obviously have tipped.

13              It's really quite stunning, your Honor, to hear the

14    government act as if nothing changed on Tuesday; that they

15    spent three years charging and seeking to prove Counts 1 and 2;

16    that they spent 200 pages in our case and several hundred pages

17    in the codefendant's case briefing Counts 1 and 2; that the

18    disappearance of Counts 1 and 2 from the case -- Miss Siegmann

19    refers to the facts proved at trial.  You found there was

10:39 20    insufficient evidence to prove Counts 1 and 2 at trial.

21              With those counts gone, the calculus, both for

22    sentencing and for bail, has changed dramatically.  The

23    government is now announcing for the first time its intentions

24    to depart from a guideline sentence even though it consistently

25    throughout this case said it was sticking to a guideline

1    sentence and use 3553 only as "an alternative basis to justify

2    a guideline sentence."

3         You can't ignore the fact that Counts 1 and 2 are gone

4    both either for the calculation under the sentence or for the

5    calculus for bail relating to the calculation for the proposed

6    sentence.

7         With respect, your Honor, we just can't believe that

8    Counts 1 and 2, as the government suggests, has no effect on

9    the appropriate sentence or the appropriate calculus for bail.

10:40 10  We do respectfully renew our still pending request for bail.

11   Thank you.

12        THE COURT:  All right.  Just because there's one other

13   dangling motion, Muntasser motion to conform the PSR, I'm going

14   to deny it as moot given my order.  We'll wait for a new PSR,

15   and we'll see whether there are issues that need to be resolved

16   outside the context of the normal process.

17        All right.  Then I will see you in six days, on

18   Thursday, the 12th.  We're off for Tuesday, the 10th.  Again, I

19   recognize this schedule is going to impose hardships and

10:41 20  demands on people.  If people want to be heard on short notice

21   by telephone or otherwise to talk about some new issue that's

22   arisen, I will be happy to try to accommodate you and try to

23   work it out.  That goes for, obviously, anything that arises

24   with Probation as well.

25        MS. SULLIVAN:  So, your Honor, the 10th and the 13th

1    are canceled?

2          THE COURT:  Yes.  I think -- yes, the 10th and 13th

3    are canceled.  Obviously, those times are available if we need

4    to have -- if I need to see you on an emergency basis, those

5    will be convenient times at this stage.

6          MS. SULLIVAN:  Counsel on both sides have scheduling

7    conflicts on the 10th:  Mr. Cabell, as reported previously; Mr.

8    Duncan has on our side.  If we could kindly --

9          THE COURT:  I don't see any reason to convene on the

10:42 10   10th.  But if you go back to your office and say, wait a

11   second, we can't get this done, I need to talk to the Court

12   again, all I'm saying is the afternoon on the 10th is open.

13   That's all.  Thank you.

14          We'll stand in recess.

15   (Whereupon, at 10:42 a.m. the hearing concluded.)

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3

4          I, Cheryl Dahlstrom, RMR, and Official Reporter of the

5     United States District Court, do hereby certify that the

6     foregoing transcript, from Page 1 to Page 63, constitutes, to

7     the best of my skill and ability, a true and accurate

8     transcription of my stenotype notes taken in the matter of

9     Criminal Action No. 05-40026-FDS, The United States of America

10    vs. Muhamed Mubayyid and Emadeddin Z. Muntasser.

11

12

13

14

15

16

17                         /s/ Cheryl Dahlstrom

18                         Cheryl Dahlstrom, RMR

19                         Official Court Reporter

20

21

22

23

24

25