UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No. 05-40026-FDS |
| | ) | |
| MUHAMED MUBAYYID, and | ) | |
| EMADEDDIN Z. MUNTASSER, | ) | |
| and | ) | |
| SAMIR AL-MONLA a/k/a | ) | |
| SAMIR ALMONLA, | ) | |
| | ) | |
| Defendants. | ) | |

**GOVERNMENT'S MOTION FOR RECONSIDERATION OF
RULINGS ON DEFENDANTS' RENEWED RULE 29 MOTIONS**

The United States moves for reconsideration of the Court's rulings allowing the defendants' Rule 29 motions with regards to Counts One and Two.  Specifically, the government asks the Court to reconsider its Rule 29 orders with respect to Count Two pertaining to Defendants Muntasser, Al-Monla and Mubayyid, and with respect to Count One pertaining to Defendants Muntasser and Al-Monla (orders entered on the docket on June 3 and June 6, 2008, <u>see e.g.</u> docket entries ("Dkt") 536 and 542), and to reinstate the jury verdicts on Counts One and Two.

With respect to Count Two, the Court erred when it found that the government was required to prove that the defendants conspired to defraud the Internal Revenue Service ("IRS") both by obtaining tax exempt status for Care, International, Inc.

1

("Care"), **and** by maintaining that status.[1]  On the contrary, as explained below, the conspiracy charged in Count Two -- like all <u>Klein</u> conspiracies -- had a single object, namely, to defraud the IRS; and it was sufficient to prove that the defendants achieved that object by fraudulently obtaining **and/or** by fraudulently maintaining Care's tax exempt status during any period within the charged conspiracy.

With respect to Count One, the Court erred when it found that the Government had narrowed the scope of that offense to relate only to the IRS.  Despite related proposed jury instructions on Count One that referred explicitly to the FBI and DHS as well as the IRS, the Court relied solely on the wording of one proposed jury instruction that the government had advised the Court was nothing more than a scrivener's error.

**ARGUMENT**

**I.   COUNT TWO**

In ruling that Count Two charged a "single unitary" conspiracy to obtain and maintain tax-exempt status for Care, the Court erroneously treated the conspiracy's *means* as its *object*.

---

[1]The Court stated: "The government charged a single unitary conspiracy to obtain and maintain tax-exempt status.  There was no evidence that there was a conspiracy to obtain that status. Rather, it appears that Defendant Muntasser was acting without the agreement of Akra or Yassin.  Whether Mubayyid or Al-Monla or both later agreed with Muntasser to maintain charitable status or to commit another offense cannot save the conspiracy count under the circumstances; and accordingly, the evidence does not support a conviction under Count Two[.]" [Tr. 6/3/08:37.]

The conspiracy charged in Count Two is a <u>Klein</u> conspiracy.  It is indeed a single conspiracy with a unitary object, but that object, as in all <u>Klein</u> conspiracies, was to "defraud the United States by impeding, impairing, obstructing and defeating . . . the collection of revenue."  <u>United States v. Carruth</u>, 699 F.2d 1017, 1021 (9th Cir. 1983), <u>cert. denied</u>, 464 U.S. 1038 (1984); <u>accord</u> <u>United States v. Goldberg</u>, 105 F.3d 770, 771 (1st Cir. 1997) (a <u>Klein</u> conspiracy is a conspiracy "to interfere with the proper functioning of the IRS"); <u>United States v. Sabino</u>, 307 F.3d 446, 450 (6th Cir. 2002) (the object of a Klein conspiracy is, "quite simply, to evade taxes").  Obtaining tax-exempt status for a corporation by filing false tax documents is one means of achieving that object, and maintaining tax-exempt status for the corporation by filing false tax documents is another means of achieving it; in either case, however, the object of the conspiracy remains "to evade taxes."  The evidence in this case was sufficient to sustain a conviction on Count Two because -- as the Court (and jury) found -- it proved the existence of a conspiracy to evade taxes within the limitations period.

When Count Two is read as a whole and in a practical, commonsense manner (as it must be, <u>see</u>, <u>e.g.</u>, <u>United States v. Lee</u>, 359 F.3d 194, 209 (3rd Cir. 2004); <u>United States v. Reed</u>, 77 F.3d 179, 140 (6th Cir. 1996) (en banc)), it alleges that the defendants conspired to defraud the IRS in multiple ways.  Specifically, it alleges that the defendants fraudulently

obtained Care's tax-exempt status by filing a false application for tax-exempt status in June 1993, and that they fraudulently maintained Care's tax-exempt status by filing false tax returns between 1993 and 2002.  It his hornbook law that "when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged."  Turner v. United States, 396 U.S. 398, 420 (1970); accord United States v. Miller, 471 U.S. 130, 136 ("[An] indictment count that alleges in the conjunctive a number of means of committing a crime can support a conviction if any of the alleged means are proved"), citing Crain v. Untied States, 162 U.S. 625, 634-36 (1896); United States v. McDonough, 56 F.3d 381, 390 (2nd Cir. 1995) ("Where there are several ways to violate a criminal statute . . . federal pleading requires . . . that an indictment charge in the conjunctive to inform the accused fully of the charges . . . . [but a] conviction under such an indictment will be sustained if the evidence indicates that the statute was violated in an of the ways charged.") (internal punctuation and citations omitted).  Once again, since the Court (and jury) found that the government proved that the defendants conspired to defraud the IRS in at least one of the ways alleged in Count Two, the convictions on that count should be reinstated.

The Court offered no reason for requiring the government to prove every means of defrauding the IRS alleged in Count Two, and the law does not provide a reason.  The error may have occurred

because it became common during the course of the proceedings for the parties and the Court to refer to the *means* alleged in Count Two as the "objects" of the conspiracy, giving rise to the question whether Count Two really charged a one-object conspiracy or a dual-object conspiracy. As we have already noted, however, a <u>Klein</u> conspiracy, by definition, has only one object, to defraud the IRS. Even if the parties used the word object, it cannot alter the legal reality that Count Two charged a conspiracy to defraud the IRS committed by multiple means.

To be sure, if an indictment alleges that a crime was committed in one way and the government then proves that it was committed in another way, there is a variance; but no variance exists where the indictment charges that a crime was committed in multiple ways and the government proves that it was committed in only one of those ways. In <u>United States v. DiCicco</u>, 439 F.3d 36 (1st Cir. 2006), for example, a defendant whose building burned was charged with committing insurance fraud by causing the fire himself and then submitting false claims for building loss insurance proceeds. <u>Id.</u> at 45. At trial, after the court ruled that the government had presented insufficient evidence that the defendant caused the fire, the government argued in closing that the defendant was guilty regardless of whether he caused the fire because he nevertheless filed false insurance claims. <u>Id.</u> The First Circuit rejected the defendant's claim that this constituted a variance, holding that no variance occurs where the

indictment alleges that a crime was committed in two ways but the government offers sufficient proof of only one of them.  <u>Id</u>. at 47-48.

Even where there is a variance, moreover, it is fatal only if it is prejudicial, <u>see</u>, <u>e.g.</u>, <u>United States v. Morrow</u>, 39 F.3d 1228, 1235-1236 (1st Cir. 1994), and any variance in this case was not prejudicial.  The First Circuit has held that "[v]ariance is grounds for reversal only if it affected the defendant's 'substantial rights' -- i.e. the rights to have sufficient knowledge of the charge against him in order to prepare an effective defense and avoid surprise at trial, and to prevent a second prosecution for the same offense."  <u>United States v. Fisher</u>, 3 F.3d 456, 462-63 (1st Cir. 1993) (internal quotation marks and citations omitted).  The defendants in this case have never claimed, nor could they honestly claim, that they lacked notice of the charge against them or were surprised at trial, and they do not risk a second prosecution for the same offense.

Indeed, this case is materially indistinguishable from <u>Miller</u>, <u>supra</u>, in which the Supreme Court rejected a claim of prejudicial variance.  The indictment in that case charged the defendant with defrauding his insurer both by consenting to a burglary of his business and by lying to the insurer about the value of his loss.  <u>Id.</u> at 131-32.  The defendant argued that his conviction should be overturned because the government offered no evidence that he had in fact consented to the burglary (and the government even moved -- unsuccessfully -- to strike that

language from the indictment), but the Supreme Court rejected his argument; it held there was no prejudice because the government had proved that the defendant committed the crime in one of the ways charged in the indictment, the defendant was on notice the government would seek to do so, and there was no risk of double jeopardy.  See id. at 134-35.  Here, likewise, the defendants were not prejudiced from the way in which the government proved that they defrauded the IRS.

In sum, the Court should reconsider its acquittal of all three defendants on Count Two and reinstate their convictions because it erred in finding that the evidence failed to prove the crime charged in Count Two.  Count Two alleged that the defendants defrauded the IRS and described several ways in which they did so, and the government's evidence proved at least one of them.  Even if, moreover, Count Two is read to allege that the defendants defrauded the IRS in only way -- by "obtaining **and** maintaining" Care's tax exempt status -- and the government's evidence varied from that allegation, the variance was not prejudicial and therefore non-fatal.

## II.  COUNT ONE

As the Court is well aware, Count One charged the defendants with engaging in a broad scheme to conceal material information from various government agencies, including the IRS, the FBI and the then INS.  There is also no serious dispute that, consistent with that charge, the government introduced ample evidence at

trial to support this allegation.  Against that backdrop, the
Court erred when it ruled that the government at the end of the
trial narrowed the scope of Count One to refer solely to the IRS,
based on a poorly written jury instruction on one element of
Count One, materiality.  <u>See</u> Government's Amended Jury Instr. No.
11 at 18 (Dkt. 375).  Although this instruction contained the
general materiality language, it focused on the evidence with
regards to the IRS and omitted any specific reference to the
other two agencies charged in that count.[2]  The government
quickly recognized the error and advised the Court of the error
in open court, describing it as a "scrivener's error." [<u>See</u> Tr.
23:116; Tr. 6/3/08:11].  The Court rejected this explanation and
subsequently concluded that the evidence of false statements to
Special Agents of the FBI and INS could not be relied upon to
prove a scheme to conceal from the IRS.

---

[2]The entire proposed instruction No. 11 read:
A fact is "material" if it has a natural tendency to influence or
be capable of influencing the decision or decisionmaker to which
it was addressed, regardless of whether the agency actually
relied upon it.  In other words, a fact is "material" if the
concealed fact had a natural tendency to influence or was capable
of affecting or influencing a governmental function.  The
government need not prove that the disclosure of the concealed
fact would have resulted in a denial of a government benefit but
rather that the disclosure of the fact would have influenced the
IRS' investigation, handling, or consideration of Care's
eligibility for tax exempt status under Section 501(c)(3).
Accordingly, if you find that had the IRS known that (1) Care was
a successor or outgrowth of Al-Kifah or (2) Care was planning to
solicit money for armed fighters or engage in activities
involving the expenditure of money to support or promote
fighting, it, the IRS, would have subjected Care's 501(c)(3)
application to closer scrutiny, you should conclude those facts
were material.

The government submits, respectfully, that there was no basis for the Court to rule as it did where the defendants were aware from the time of the Indictment through the completion of the trial that Count One charged a broad scheme to conceal material information from the FBI and the INS in addition to the IRS.  The government's characterization of Count One remained consistent from the Indictment through the protracted pre-trial proceedings, through the government's opening statements, through the elicitation of testimony, and during the Rule 29 hearings themselves, and significantly, during the charging conference in which a "scrivener's error" on one page of the written proposed instructions was pointed out to the Court. [Tr. 23:116 (identifying error during charge conference)].  Even if the Court was entitled to place some weight on the government's proposed instruction, that surely was outweighed by the fact that the government did identify the instruction as erroneous, and the government's related proposed instructions explicitly made clear that the affected agencies included the FBI, IRS and DHS.  Indeed in the general instruction that described the Count One that immediately preceded the materiality instruction, the government stated that Count One charged a scheme to conceal material information from "three agencies of the United States, the Internal Revenue, Federal Bureau of Investigation, and the Immigration and Naturalization Service, now part of the Department of Homeland Security."  Government's Amended Jury

Instr. No. 10 at 16-17. (Dkt. 375). Similarly, in the Government's proposed instruction on the trick, scheme, and device element of Count One, it described that types of affirmative acts that could prove this elements as including the "making false statements on, or omitting material facts from, forms filed with the Internal Revenue Service or Immigration Naturalization Service, or making false statements during interviews conducted by the Federal Bureau of Investigation." Government's Amended Jury Instr. No. 12 at 19 (Dkt. 375). This proposed jury instruction immediately followed its instruction on materiality. Despite this consistency of position, the Court erroneously held that the inadvertent omission of these three agencies in one proposed instruction which the government orally corrected after their submission and before the Court arrived at a final charge, narrowed the scope of the indictment.

## IV. Conclusion

The Court has persistently voiced its concern for arriving at the correct result in this case, regardless of the collateral consequences or perceptions. The Court erred in treating the conspiracy as having a unitary object of obtaining and maintaining a tax exemption. Rather, as a <u>Klein</u> conspiracy, the object was to defraud the IRS, which could have been done for multiple, disjunctive purposes. Moreover, the defendants were always on fair notice as to the crime alleged, and any variance in the evidence at trial from the language of the indictment was

non-prejudicial.  The Court also erred by construing Count One to
have been narrowed.  Consequently, the Court should revisit its
Rule 29 rulings and reinstate the jury's verdicts on Counts One
and Two.

                            Respectfully submitted,
                            MICHAEL J. SULLIVAN
                            United States Attorney

                    By:   /s/ Aloke Chakravarty    
                            ALOKE S. CHAKRAVARTY
                            B. STEPHANIE SIEGMANN
                            DONALD L. CABELL
                            Assistant U.S. Attorneys
Date: July 2, 2008


### CERTIFICATE OF SERVICE

    I hereby certify that I have sent this document on this
date, July 2, 2008 via Electronic notice to counsel for the
Defendants in this case.    /s/ Aloke Chakravarty          
                        ALOKE CHAKRAVARTY
                        ASSISTANT UNITED STATES ATTORNEY