UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES )<br>)<br>v. )<br>)<br>MUHAMED MUBAYYID ) | Cr. No. 05-40026-FDS |

## MOTION FOR RELEASE PENDING APPEAL AND INCORPORATED MEMORANDUM OF LAW

Now comes the defendant, Muhamed Mubayyid and respectfully moves, pursuant to 18 U.S.C. §3143(b), the Court to order Mr. Mubayyid released on the conditions set forth herein pending the appeal of his conviction and sentence in the above-captioned matter.

### I. Procedural History

On January 11, 2008, following a five week trial and some 9 days of deliberations, a jury convicted Mr. Mubayyid of the six counts in which he was named in the Superseding Indictment. Since his arrest on the initial Indictment in May of 2005, Mr. Mubayyid had been released on conditions, and had consistently abided by all of those conditions for the ensuing three and a half years. However, following his conviction, the Court ordered Mr. Mubayyid temporarily detained pending further argument and briefing. On January 18, 2008, Mr. Mubayyid filed a Motion for Release Pending Sentencing and Incorated [*sic*] Memorandum of Law (Docket 407), in which he set forth proposed conditions of release, including the posting of the family home as

surety, and oral argument was heard that same day. The Court took the matter under advisement, and on January 25, 2008 issued an <u>Order on Defendants' Motion for Release from Custody Pending Sentencing</u> (Docket 413) (hereinafter the "<u>January 25th Order</u>"), in which the Court ordered Mr. Mubayyid detained pending sentencing.

On June 3, 2008, the Court ruled on the Rule 29 motions filed by Mr. Mubayyid and his co-defendants, and acquitted Mr. Mubayyid of Count Two of the Superseding Indictment. On July 18, 2008 the Court sentenced Mr. Mubayyid on the remaining five counts to a term of eleven months incarceration. Crediting Mr. Mubayyid with the time he has been held pending sentencing, his an anticipated release date is on or about December 11, 2008, a little less than four and a half months from now.

## II. <u>Argument</u>

### a. **The Statute**

Pursuant to 18 U.S.C. §3143(b) (1), a defendant who has been found guilty, sentenced to a term of imprisonment, and filed an appeal, shall be detained unless the judicial officer finds:

"(A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of the community if released under section 3142(b) or (c) of this title; and
(B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in –
    (i) reversal,
    (ii) an order for a new trial,
    (iii) a sentence that does not include a term of imprisonment, or,
    (iv) a reduced sentence to a term of imprisonment less than the total term already served plus the expected duration of the appeal process."

18 U.S.C. §3143(b)(1)(A)-(B).

The statute further instructs that "[i]f the judicial officer makes such findings, the judicial officer <u>shall</u> order the release of the in accordance with section 3142(b) or (c) of

this title…"18 U.S.C. §3143(b)(1) (emphasis added). The Court, therefore, must make separate findings as to subparagraphs (A) and (B). Subparagraph (A) addresses traditional bail issues, i.e., danger to the community, and flight risk, and (B) requires a finding that the appeal raises substantial questions of law or fact.

### b. Mr. Mubayyid Is Neither A Danger To The Community Nor A Risk Of Flight

Addressing the findings to be made pursuant subparagraph (A) first, Mr. Mubayyid has amply demonstrated that he poses no danger to the safety of the community. As the Court noted in the January 25th Order, Mr. Mubayyid had abided by all conditions of pretrial release in the three-and-a-half years he spent on release before and during the trial, and had no prior criminal record. January 25th Order at 3. The Court apparently based its decision to detain Mr. Mubayyid's pre-sentencing solely on the conclusion that "the defendants have not carried their heavy burden of establishing by clear and convincing evidence that they are not likely to flee within the meaning of § 3143(a)(1)" January 25th Order at 4, not finding that Mr. Mubayyid posed any danger to the public. The letters filed with Mr. Mubayyid's Sentencing Memorandum document his reputation as polite, charitable, peaceful, humble person who enjoys broad respect, support and affection in his community, a fact the Court noted at his sentencing, and no evidence submitted by the government or included in the Presentence Report contradicts those assessments.

The Court detained Mr. Mubayyid, as quoted supra, because he had not met the "heavy burden "of establishing by clear and convincing evidence that he was not likely to flee within the meaning of the statute. The Court arrived at its decision upon examination of a factual landscape that has dramatically changed in the intervening six months. To

3

continue the analogy, the most prominent feature of that landscape was the government's argument that Mr. Mubayyid faced a sentence of three-and-a-half to four year sentence, and that it would "likely seek higher sentences based on the nature of defendants' activities". January 25<u>th</u> Order at 4. The fact that the government would seek a period of extended incarceration for a man who was not a United States citizen, who had family abroad, and whose immigration status the government claimed was in question[1], evidently proved, in the Court's view, too high a hurdle to overcome on the a risk of flight issue.

That argument no longer carries the same force. Mr. Mubayyid faces less than four-and-a-half further months of incarceration. He is the father of three children, two of whom are American citizens, one in high school, another beginning college. His family's only substantial asset is their home, which his wife is prepared to pledge as security. From all the Court has learned about Mr. Mubayyid, through the trial process, through the Presentence Report, through the letters submitted on his behalf, there is no reasonable basis to conclude Mr. Mubayyid would risk his family's financial security, his deepest desire to resume his role as father and husband, and additional imprisonment[2] to avoid a few months more incarceration.

    **c.   The Issues on Appeal Raise Substantial Issues of Law and Fact**

The statute also requires that a finding be made that "the appeal is not for the purpose of delay and raises a substantial question of law or fact" (which will likely result

---

[1] Mr. Mubayyid, contrary to the government's assertions, is not immediately removable. He is not even in removal proceedings. In fact, Mr. Mubayyid has a pending Application To Adjust Resident Status (I-485), and a pending application for Employment Authorization Document (I-765). If, as he hopes, he is successful on appeal, there are, upon information and belief, no legal prohibitions to his continued residence in the United States.

[2] Mr. Mubayyid would subject himself to far greater penalties than the four months remaining on his sentence should he abscond while on release. See 18 U.S.C. §3146

in reversal, a new trial or a lesser sentence) 18 U.S.C. §3143(b)(1)(B).  In <u>United States v. Bayko</u>, 774 F.2d 516 (1st Cir. 1985),  the First Circuit adopted the interpretation of the statutory phrase "a substantial question of law or fact" to mean "a 'close' question or one that very well could be decided the other way."  <u>United States v. Bayko</u> 774 F.2d at 523, citing <u>United States v. Giancola</u>, 754 F.2d 898, 901 (11th Cir. 1985)  ("We think that the <u>Giancola</u> test more accurately reflects the intent of Congress to restrict access to bail pending appeal and adopt its 'substantial question' definition."  <u>Bayko</u> at 523) The <u>Bayko</u> Court noted that the determination of whether a question is "close" or not is to be made on a case-by-case basis. <u>Id</u>.

　　　　The <u>Bayko</u> Court also addressed the meaning of "likely to result in reversal", and rejected the "Catch 22" interpretation which would require a district court to find it will likely be reversed, and instead found the language to mean only that issues raised on appeal not be harmless error.  ("[W]e reject the construction which would make bail contingent upon a finding by the district court that it is likely to be reversed. We also agree with the other circuits that the language in the statute which reads "likely to result in reversal or an order for a new trial" is a requirement that the claimed error not be harmless or unprejudicial." <u>United States v. Bayko</u> 774 F.2d at 523 )

　　　　In the present case,  the Court has rightly written that "[a]t a minimum, this case-which is both complex and relatively unique-presents a variety of substantial issues for possible appeal, and has a significantly greater-than-average chance of resulting in reversal." <u>January 25th  Order</u> at 4.  In so concluding, the Court has to a significant degree already made the findings which trigger an obligation to release Mr. Mubayyid pending appeal. See 18 U.S.C. §3143(b)(1)( "[i]f the judicial officer makes such findings, the

5

judicial officer shall order the release of the in accordance with section 3142(b) or (c) of this title…")

The multiple grounds for reversal and/or for an order for a new trial were the subject of extensive briefing by all three defendants in their Rule 29 and Rule 33 motions. Mr. Mubayyid stands convicted of on Counts One, Three, Four, Five and Eight of the Superseding Indictment. Count One charged his participation in a scheme to conceal, in violation of 18 U.S.C. §1001(a)(1). Counts Three through Five charged him with the filing of false tax returns, in violation of 26 U.S.C. §7206(1)[3]. Count Eight charged him with corruptly endeavoring to obstruct and impede the due administration of the internal revenue laws, in violation of 26 U.S.C. §7212(a). In denying Mr. Mubayyid's Rule 29 Motion as to Counts One, Three-Five, and Eight, the Court found there was sufficient evidence that he had filed false tax returns on behalf of Care for the years 1997, 1999, and 2000, and it was the filing of the returns which supported the convictions not just on Counts Three through Five, but as to counts One and Eight as well. See Memorandum and Order on Defendants Motions for Judgment of Acquittal under Rule 29 and the Governments' Motion for Reconsideration, dated July 24, 2008, (hereinafter the "Rule 29 Order "), at 38-40, 47-48.

In its Rule 29 Order, the Court focused on Mr. Mubayyid's argument that the Line 76 Question on Form 990 applied only to the particular tax year for which the form was filed (See Rule 29 Order at 38-40)  In rejecting the argument that there were two objectively reasonable interpretations of Line 76, and hence there was insufficient

---

[3] In its Memorandum and Order on Defendants Motions for Judgment of Acquittal under Rule 29 and the Governments' Motion for Reconsideration, dated July 24, 2008, (hereinafter the "Rule 29 Order ")the Court referenced Counts Three through Five as charging Mr. Mubayyid with violation of 18 U.S.C. §1001(a)(2) instead of 26 U.S.C. §7206(1), and ruled that the filing of a false tax return constituted a violation of 18 U.S.C. 1001(a)(2)  See Rule 29 Order at 22, 47.

6

evidence to convict, the Court found that "[e]ven if Question 76 only called for disclosure of activities in the current year, there was sufficient evidence to sustain the conviction". Rule 29 Order at 39. The Court notes how some Al-Hussam articles were "republished" on the Care website, and that the website contained "direct solicitations for financial support for mujahideen"[4]

What the Court failed to address was Mr. Mubayyid's argument that there was no evidence presented at trial at trial that maintenance of a website, or the linkage on that website to certain articles dealing with Jihad constituted an "activity" which was required to be reported in response to the Line 76 Question. As more fully developed in Mr. Mubayyid's Rule 29 Memorandum (Docket 486), the government's expert, Dawn Goldberg, never testified that the maintenance of a website, even one providing a link to articles discussing jihad, was an "activity" required to be reported in response to Line 76. Nor was any other evidence presented on that subject. In short, the government never established the fact that Mr. Mubayyid had a legal duty to disclose specific activities and failed to do so. See e.g., United States v. Anzalone, 766 F.2d 676 (1st Cir. 1985)[5].

Other significant appellate issues include: 1) the government's clear misstatement of evidence in its closing argument (quoting Line 76 question as reading "Has the organization ever engaged in any activity not previously reported to the IRS") which is fully discussed in Mr. Mubayyid's Motion for a New Trial (Docket 487); 2) the Court's decision to give a willful blindness instruction over strenuous objection, where there was

---

[4] While the government repeatedly averred the website contained direct solicitations for the mujahideen, it consistently failed to identify what it was referring to. In its repetition, the averment has risked becoming a fact. The website did contain a Zakat guide, which stated that according to the Koran mujahedeen were one of eight eligible categories of Zakat. The publication of the Zakat guide was certainly not a new activity.

[5] As more fully articulated in his Rule 29 Motion, the record is devoid of any evidence that if there was a duty to disclose certain activities, Mr. Mubayyid failed to do so with the requisite criminal intent, and not by mistake, carelessness or negligence.

7

no evidence that Mr. Mubayyid deliberately or intentionally ignored information which would have alerted him to a duty to disclose information on the tax forms; 3) the serious risk that coconspirator statements, admitted in support of the Count Two conspiracy charge, created the substantial risk of unfair and prejudicial spillover, especially where the evidence that Mr. Mubayyid knowingly and willfully filed false tax returns was far from overwhelming.  (The Court itself raised this serious problem during post-trial bail arguments. See Transcript of January 18, 2008 at 15-16);  4)  the admission of extensive evidence regarding MAK, Al-Kifah and its founding (including repeated references to Sheik Azzam) and its members violent activities in New York,  in support of the Count One scheme and Count Two conspiracy, evidence that bore only on the founding of Care and the failure to disclose its connection to Al-Kifah, events with which Mr. Mubayyid had no connection and absent the finding of a conspiracy, resulted in the substantial risk of unfair and prejudicial spill-over; 5)  the admission, in what was essentially for Mr. Mubayyid a false tax return case, of repeated readings from books, pamphlets, lectures and newsletters into evidence regarding religion, civil strife, terrorism and violence, the probative value of which, in the quantity allowed in, was substantially outweighed by the danger of unfair prejudice, confusion of the issues and misleading the jury.

      Each of the issues set forth above, and in the defendants' filings, constitutes a substantial question of law or fact, i.e.,  "a 'close' question or one that very well could be decided the other way."  United States v. Bayko 774 F.2d 516, 523 (citations omitted) Moreover, it is unlikely should the Court of Appeals find that error occurred conclude that it was harmless.  The evidence against Mr. Mubayyid was far from overwhelming, and the issues outline above go to the heart of whether there was sufficient evidence to

support the verdict and whether he received a fair trial.

### d. Conditions of Release

Mr. Mubayyid has met his burden under 18 U.S.C. §3143(b), and the Court should order his release on conditions. Mr. Mubayyid proposes he be required to sign a surety bond in the amount of $200,000.00, secured by the family residence at 54 Plainview Avenue in Shrewsbury, Massachusetts (in which there is approximately $100,000.00 in equity). In addition, Mr. Mubayyid may be placed on electronic monitoring. The Court will note that Mr. Mubayyid was on electronic monitoring for three-and-a-half years without incident. The Court may also wish to impose a curfew, travel restrictions, and telephone reporting requirements.

### III. Conclusion

The foregoing conditions are more than sufficient to reasonably assure Mr. Mubayyid remain within the Court's jurisdiction pending the appeal process, especially when considering the relatively few months remaining on his sentence. However, the fact that there remain only a little over four months to serve should not dissuade the Court from releasing Mr. Mubayyid on conditions. The case was complex, and the issues raised are novel and substantial, and, as the Court noted, the case has a "significantly greater-than-average chance of resulting in reversal." January 25th Order at 4. If the case is reversed, or a new trial granted, no one can give Mr. Mubayyid and his family back the next four months. For that reason, and those set forth herein, Mr. Mubayyid prays the

9

Court hold a hearing at the Court's earliest convenience and set conditions of release pending appeal.

        Respectfully Submitted,
        Muhamed Mubayyid
        By his attorney

        /s/  Michael C. Andrews
        Michael C. Andrews
        21 Custom House Street
        Boston, Massachusetts 02110
        (617) 951-0072
        BBO# 546470